**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| STACEY BAILEY, ERIC CURRY, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; THE DISABILITY BOARD OF THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; THE DISABILITY INITIAL CLAIMS COMMITTEE OF THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE RETIREMENT BOARD OF THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE DISABILITY INITIAL CLAIMS COMMITTEE OF THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE 88 PLAN and THE 88 BOARD,<br><br>     Defendants. | Case No: 1:23-cv-02661-JRR |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR ENTRY OF AN ORDER PRELIMINARILY APPROVING CLASS SETTLEMENT, CONDITIONALLY CERTIFYING THE PROPOSED CLASS FOR SETTLEMENT PURPOSES ONLY, AND SCHEDULING A FINAL FAIRNESS HEARING**

## TABLE OF AUTHORITIES

**Cases**

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*,
  28 F.4th 513 (4th Cir. 2022) ........................................................................................ 20

*Alford v. The NFL Player Disability & Survivor Benefit Plan*,
  No. 1:23-cv-00358-JRR, 2026 WL 216349 (D. Md. Jan. 28, 2026) ...........................11, 21

*Allison v. Citgo Petroleum Corp.*,
  151 F. 3d 402 (5th Cir. 1998) ....................................................................................... 16

*Alloways v. Cruise Web, Inc.*,
  No. CV CBD-17-2811, 2019 WL 1902813 (D. Md. Apr. 29, 2019) ................................. 19

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .............................................................................................10, 11, 14

*Berry v. Schulman*,
  807 F. 3d 600 (4th Cir. 2015) ............................................................................... 16, 17, 21

*Birks v. Small Cmty. Specialists, L.L.C.*,
  No. 8:23-CV-00837-BAH, 2024 WL 5344437 (D. Md. Dec. 10, 2024) .............. 18, 20, 23

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998). ...................................................................................... 13, 14

*Cuthie v. Fleet Rsrv. Ass'n*,
  743 F. Supp. 2d 486 (D. Md. 2010) ............................................................................... 12

*Dameron v. Sinai Hosp. of Balt., Inc.*,
  595 F.Supp. 1404 (D.Md.1984) ..................................................................................... 12

*Deiter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006) ......................................................................................... 14

*Durm v. Am. Honda Fin. Corp.*,
  No. CV WDQ-13-223, 2015 WL 6756040 (D. Md. Nov. 4, 2015) .................................. 19

*Erny on behalf of India Globalization Cap., Inc. v. MuKunda*,
   No. CV DKC 18-3698, 2020 WL 3639978 (D. Md. July 6, 2020)................................... 20

*Farley v. Eye Care Leaders Holdings, LLC,*
   2023 WL 12236874.........................................................................................................11

*Feinberg v. T. Rowe Price Grp., Inc.*,
   610 F. Supp. 3d 758 (D. Md. 2022) ............................................................................. 23, 25

*Flinn v. FMC Corp.,*
   528 F.2d 1169 (4th Cir.1975) ...................................................................................... 10

*Franks v. Bowman Transp. Co.*,
   424 U.S. 747 (1976)..................................................................................................... 16

*Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*,
   458 U.S. 375 (1982)...................................................................................................... 22

*Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*,
   446 U.S. 318 (1980)...................................................................................................... 12

*Goodlaxson v. Mayor & City Council of Baltimore,*
   776 F. Supp. 3d 311 (D. Md. 2025) ..................................................................... 19, 23, 25

*Gray v. Hearst Commc'ns. Inc.*,
   444 Fed. App'x 698 (4th Cir. 2011) ............................................................................. 12

*Gunnells v. Healthplan Services, Inc.*,
   348 F.3d 417 (4th Cir.2003)........................................................................................ 12

*Hernandez v. Cnty. of Monterey,*
   305 F.R.D. 132 (N.D. Cal. 2015)................................................................................. 15

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
   770 F. 2d 328 (2d Cir. 1985) ....................................................................................... 28

*In re Hyundai & Kia Fuel Economy Litig*.,
   926 F.3d 539 (9th Cir. 2019)........................................................................................ 10

*In re Jiffy Lube Sec. Litig.*,

927 F.2d 155 (4th Cir. 1991) ....................................................................................... 18, 19

*In re Under Armour Sec. Litig.*,
  631 F. Supp. 3d 285 (D. Md. 2022) ........................................................................ 13, 15

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020) ........................................................................ 18

*Johnson v. Meriter Health Services Emp. Ret. Plan*,
  702 F. 3d 364 (7th Cir. 2012) ........................................................................................ 17

*Kirven v. Cent. States Health & Life Co. of Omaha*,
  No. CA 3:11-2149-MBS, 2015 WL 1314086 (D.S.C. Mar. 23, 2015) ............................ 10

*Lewis v. Precision Concepts Grp. LLC*,
  No. 1:18CV64, 2021 WL 7185505 (M.D.N.C. Mar. 23, 2021) ........................................ 23

*McAdams v. Robinson*,
  26 F.4th 149 (4th Cir. 2022) ........................................................................................... 25

*Mikhlin v. Oasmia Pharm. AB*,
  2021 WL 1259559 (E.D.N.Y. 2021) ............................................................................... 22

*Mitchell-Tracey v. United Gen. Title Ins. Co.*,
  237 F.R.D. 551 (D. Md. 2006) ........................................................................................ 15

*Nadendla v. WakeMed*,
  24 F.4th 299 (4th Cir. 2022) ........................................................................................... 22

*Pollard v. Wawa Food Mkt.*,
  366 F. Supp. 2d 247 (E.D. Pa. 2005) .............................................................................. 22

*Seaman v. Duke Univ.*,
  2017 WL 11502696 ......................................................................................................... 11

*Sharp Farms v. Speaks*,
  917 F. 3d 276 (4th Cir. 2019) ......................................................................................... 21

*Singleton v. Domino's Pizza, LLC*,
  No. CV DKC 11-1823, 2013 WL 12246357 (D. Md. May 13, 2013) ............................. 10

iii

*Thompson v. Metro. Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) .................................................................................. 22

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F. 3d 311 (4th Cir. 2006) ................................................................................... 16

*Yue v. Conseco Life Ins. Co.*,
  No. CV 08-1506 AHM, 2009 WL 10671418 (C.D. Cal. Dec. 7, 2009) .......................... 16

**Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................................................ 12

Fed. R. Civ. P. 23(a)(2) ............................................................................................ 13

Fed. R. Civ. P. 23(a)(3) ............................................................................................ 14

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 14

Fed. R. Civ. P. 23(b)(2) ............................................................................................ 15

Fed. R. Civ. P. 23(e)(1).................................................................................... 17, 26

Fed. R. Civ. P. 23(e)(2) ....................................................................................*passim*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   PROCEDURAL HISTORY AND SUMMARY OF RELEVANT FACTS ............................ 2

III.  THE SETTLEMENT ............................................................................................. 4

    A.    Settlement Negotiations ............................................................................ 4

    B.    Settlement Class Definition ....................................................................... 5

    C.    Benefit to the Settlement Class .................................................................. 5

        1.    Permanent Cessation of Race-Based Adjustments in Testing ..................... 5

        2.    Rescoring of any Race-Based Adjustments to Prior Testing and Reconsideration of Benefit Determinations Without Such Adjustments ..................................... 5

        3.    Limited Waiver of Statute of Limitations and Limitation on Damages ....... 8

        4.    Settlement Oversight of Rescoring ............................................................. 8

        5.    No Reduction of Benefits ........................................................................... 8

    D.    The Release ............................................................................................... 9

    E.    Attorneys' Fees, Costs, and Expenses and Class Representative Service Awards Not to Reduce Settlement Class Member Benefits ............................................ 9

IV.   ARGUMENT ..................................................................................................... 10

    A.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES PURSUANT TO RULES 23(a) AND 23(b)(2) ............................................... 10

        1.    Rule 23(a) is Satisfied to Certify a Settlement Class ................................ 12

        2.    The Proposed Settlement Class Satisfies Rule 23(b)(2) ........................... 155

    B.    THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT ...................... 17

        1.    The Proposed Class Representatives and Class Counsel Adequately Represented the Class .................................................................................................... 18

        2.    The Settlement Was Negotiated at Arm's Length by Informed Counsel .... 18

        3.    The Relief Provided by the Proposed Settlement is Adequate ................. 200

        4.    The Proposed Relief Treats Settlement Class Members Fairly Relative to One Another ................................................................................................... 244

        5.    The Settlement is Reasonable ................................................................. 255

V.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL FOR THE PROPOSED SETTLEMENT CLASS PURSUANT TO RULE 23(g) .............................. 26

VI.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND SCHEDULE A
      FINAL FAIRNESS HEARING ................................................................................. 26

   A.   The Parties' Proposed Notice Satifies Rule 23(e)(1) ......................................... 26

   B.   The Court Should Set Settlement Deadlines and Schedule a Fairness Hearing .............. 27

VII. THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION PENDING FINAL
     APPROVAL OF THE PROPOSED SETTLEMENT ........................................................... 27

VIII. CONCLUSION ......................................................................................................... 28

Pursuant to Federal Rule of Civil Procedure 23(e), the Parties jointly submit this memorandum of law in support of their joint motion for preliminary approval of the proposed settlement ("Settlement") of this action, conditional certification for settlement purposes only of the proposed Class (defined below) pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), and related relief.[1]  Plaintiffs are Stacey Bailey and Eric Curry, on behalf of themselves and the proposed Class (collectively, "Plaintiffs").  Defendants are The NFL Player Disability & Survivor Benefit Plan (the "Disability Plan") (previously known as the Neurocognitive and Death Benefit Plan and The NFL Player Disability & Neurocognitive Benefit Plan); The Disability Board of The NFL Player Disability & Survivor Benefit Plan (the "Disability Board"); The Disability Initial Claims Committee of the NFL Player Disability & Survivor Benefit Plan (the "Disability Plan Initial Claims Committee"); The Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Retirement Plan"); The Retirement Board of The Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Retirement Board"); The Disability Initial Claims Committee of The Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Retirement Initial Claims Committee"); The 88 Plan; and The 88 Board (the Disability Plan, the Retirement Plan, and the 88 Plan, collectively, the "Plans"; all Defendants, collectively, "Defendants").

## I.    INTRODUCTION

The settlement results from over two years of arm's-length negotiations among the Parties and counsel, and the input of a nationally known mediator and retired federal judge.[2]

---

[1] Defendants join in the relief requested herein but do not concede the allegations in the Class Action Complaint (the "Complaint") (Dkt. No. 1).

[2] The Settlement Agreement, attached hereto as Exhibit A, is contemporaneously filed with the joint motion.  The Settlement Agreement is referred to as "SA" or the "Agreement" in this brief

Plaintiffs allege that, when Plan participants filed claims for benefits based on neurocognitive impairment, the physicians or neuropsychologists designated by the Plans to examine claimants and report on their medical condition (the "Neutral Physicians") adjusted raw cognitive test scores using demographic factors that included race, resulting in non-white Plan participants being less likely to demonstrate a cognitive impairment and, therefore, less likely to receive the correct benefit award under the Plans.  Plaintiffs allege that the use of the race-based adjustments violated the Employee Retirement Income Security Act of 1974 ("ERISA") and 42 U.S.C. § 1981.

Defendants deny any and all allegations of wrongdoing and further deny any and all liability for the causes of action asserted by Plaintiffs.  As part of the confirmatory discovery that Plaintiffs have conducted during the course of the settlement negotiations in this case, Defendants presented evidence that they allege shows a limited number of Neutral Physicians applied race-based demographic adjustments based on their independent clinical judgment, not pursuant to any directive from Defendants.  Defendants assert they did not discriminate on the basis of race, and further contend that individual Class Members' claims may lack merit due to other defenses, including statute of limitations defenses.  Defendants also produced evidence that upon learning of the use of race-based demographic adjustments, the Plans directed all Neutral Physicians to cease using any race-based demographic adjustments on new testing effective June 2021. Defendants maintain that race-based demographic adjustments have not been applied to Plan participants' new neuropsychological testing since that date.

---

and, except where indicated, all defined terms herein have the same meaning ascribed to them in the Agreement. *See* SA, § II.

1

The Settlement Agreement is designed to ensure that race-based demographic adjustments play no role in the Plans' benefit determinations, whether prospectively or retroactively. It provides an injunctive remedy which will: (1) identify all claims for benefits based on neurocognitive impairment filed by non-white Plan participants from January 1, 2012 through the present in which race-based demographic adjustments were applied by the Plans' Neutral Physicians; and (2) rescore all affected tests using race-neutral methods as negotiated by the Parties, subject to agreed-upon eligibility criteria and exclusions. For any Plan participant whose rescored results demonstrate entitlement to benefits that were previously denied or to a higher level of benefits, the Plans will make payment of the benefits he would have received but for the use of race-based adjustments. Defendants have also agreed to not use race-based demographic adjustments in the future.

The proposed Settlement Class is an injunctive class. The application of the rescoring remedy will produce incidental, individualized results; the extent to which Class Members will qualify for retroactive benefits under the Plans will be determined through the rescoring process, as outlined in the injunctive relief, and a review of whether individual Class Members are eligible for benefits under the Plans' terms.[3]

## II.     PROCEDURAL HISTORY AND SUMMARY OF RELEVANT FACTS

On September 29, 2023, Plaintiffs Stacey Bailey and Eric Curry filed a putative class action on behalf of themselves and all others similarly situated (the "Settlement Class," as defined below). Plaintiffs allege that the Settlement Class members were impacted by the use of race-based adjustments applied to neuropsychological test scores when they applied for benefits under the

---

[3] Payment of plan benefits will not be reduced by attorneys' fees or costs, rather Class Counsel will separately petition the Court for any award of Attorneys' Fees, Costs, and Expenses and Service Awards.

Plans and that the use of race-based adjustments in the administration of the Plans allegedly discriminated against non-white participants, in violation of ERISA and 42 U.S.C. § 1981. (*See* Complaint, ¶¶ 32-44).

When a Plan participant applies for benefits claiming a neurocognitive impairment, the participant is assessed in accordance with Plan terms, which includes testing performed by a Neutral Physician who is a neuropsychologist. In simple terms, to determine whether a Plan participant has an impairment, that participant's current cognitive status must be compared to his previous status; the difference reflects the degree of impairment, if any. Most participants, however, do not have testing to show prior cognitive status. Plaintiffs allege that raw scores from current testing were adjusted in an attempt to estimate prior status, and that certain of these adjustments were based upon race-based assumptions. Under those assumptions, Plaintiffs allege that, for a non-white Plan participant's adjusted scores to show a cognitive impairment, the non-white participant's unadjusted current scores must be lower than a white counterpart's unadjusted current scores.

According to Plaintiffs, as a result of the alleged discriminatory adjustments to non-white Plan participants' test scores, the Plans did not categorize or treat Plan participants equally under the Plans, thereby violating ERISA and § 1981.

Defendants dispute these allegations. As discussed in Section IV below, Defendants maintain that any use of race-based adjustments was made by certain individual physicians in their independent clinical judgment and not pursuant to any Plan policy, and that the Plans directed Neutral Physicians to cease using such adjustments on new testing effective June 2021.

Once the Complaint was filed, the Parties began to engage in arm's-length negotiations toward settlement. Counsel for both Parties engaged in multiple telephonic, video, and in-person meetings, at times attended by the named Plaintiffs and representatives of Defendants, to discuss

3

the issues laid out in the Complaint, and how best to resolve the matter cooperatively. On December 5, 2023, the Court appointed two of the proposed Class Counsel as interim Class Counsel. (*See* December 5, 2023 Electronic Order, Dkt. No. 31). For additional assistance, the Parties retained the Honorable Gerald E. Rosen (Ret.), formerly of the United States District Court for the Eastern District of Michigan (Detroit) and a seasoned and highly regarded mediator, and ultimately reached the proposed Settlement described below.

## III.    THE SETTLEMENT

### A.    Settlement Negotiations

The proposed Settlement was reached through extended arm's-length negotiations, conducted in good faith, between Class Counsel and Defense Counsel under the guidance of a Judge Rosen over the course of seven in person mediation days and numerous telephonic conferences.

To facilitate discussions, Defendants produced thousands of pages of documents to Class Counsel, including Plan documents and amendments in effect during the 14-year class period (January 1, 2012 to the present) and information that has enabled the Parties to identify potentially impacted Plan participants. The Parties, with the input of their respective Experts, negotiated a race-neutral rescoring methodology that the Settlement contemplates applying to the members of the Settlement Class. A Term Sheet was executed on July 11, 2025, reflecting the culmination of these negotiations.

Following the execution of the Term Sheet, Class Counsel and Defense Counsel negotiated and agreed to the Settlement Agreement.

**B.      Settlement Class Definition**

The proposed Settlement Class consists of:

all persons (other than white, non-Hispanic persons) who (i) are participants in any of the Plans; (ii) applied for 88 Plan benefits, Total and Permanent ("T&P") disability benefits, Line of Duty ("LOD") disability benefits, and/or Neurocognitive ("NC") benefits under one or more of the Plans from January 1, 2012 to the present; (iii) underwent neuropsychological testing in connection with that benefits application; and (iv) had their neuropsychological test scores adjusted using (non-white) race-based demographic adjustments.

SA, § II.27.

The proposed Class Representatives are Stacey Bailey and Eric Curry.

**C.      Benefit to the Settlement Class**

**1.      Permanent Cessation of Race-Based Adjustments in Testing**

Effective June 8, 2021, the Plans directed any and all Neutral Physicians performing new neuropsychological testing under the Plans to cease using race-based demographic adjustments in scoring or interpreting such tests (to the extent they may have been used). To Defendants' knowledge, no such demographic adjustments have been used by Neutral Physicians since that time. Defendants consent to the injunctive remedy making permanent this prohibition, which applies to all current and future testing under the Plans. SA, § VI.A.

**2.      Rescoring of any Race-Based Adjustments to Prior Testing and Reconsideration of Benefit Determinations Without Such Adjustments**

To remove the potential impact of any prior race-based demographic adjustments, the Defendants agree to an injunctive remedy precluding the use of race-based demographic adjustments in scoring or interpreting testing under the Plans, and further agree to implement the race-neutral rescoring described herein, and in the Agreement, referred to as the Rescoring Protocol. To perform the Rescoring Protocol, the Parties have agreed to certain parameters to determine which Settlement Class Members' claims are eligible for rescoring and to ensure that eligible claims are rescored with race-based adjustments removed from the calculations. SA, §

5

VI.B.1. This relief will result in reviews of benefit claims submitted by a Plan participant, other than a white, non-Hispanic Plan participant, where the participant sought benefits alleging a neurocognitive deficit, was not awarded the highest benefit for which he applied and was potentially eligible under the Plans, and was not otherwise disqualified for benefits under the Plans as set forth in the Settlement Agreement, §§ VI.B.1-2, including because: the neuropsychological testing occurred in connection with a T&P claim that was approved in any of the four available categories; the claim was denied for reasons other than failure to meet the applicable medical standard based on the Neutral Physician's evaluation that included the use of race-based demographic adjustments; or contemporaneous race-neutral testing independently confirmed the absence of a qualifying neurocognitive impairment.

The proposed Settlement contemplates identifying the Plan participants eligible for rescoring through agreed-upon eligibility criteria and exclusions set forth in the Settlement Agreement. SA, §§ VI.B.1-2. Through the Rescoring Protocol, all members of the Settlement Class who are eligible for rescoring under the terms of the Settlement will have their adjusted scores reversed to raw and then re-adjusted and reviewed without consideration of race.

The Rescoring Protocol, as negotiated, will identify the members of the Settlement Class who applied for benefits under the Plans based upon a neurocognitive impairment and who were either denied benefits or received lesser benefits than they would have otherwise received absent the use of race-based adjustments. In accordance with the Rescoring Protocol, once the testing information is rescored without the use of race, Plaintiffs' Expert will review each impacted member of the proposed Settlement Class and make an Initial Determination of the level of impairment, if any, the Settlement Class Member exhibited at the time of the testing based upon the Rescoring. Where Plaintiffs' Expert determines that a Settlement Class Member meets the medical requirements for a benefit previously denied or for a higher level of benefit than previously

6

awarded, Defendants' Expert will independently review the same information available to Plaintiffs' Expert.

If the Defendants' Expert agrees with the Initial Determination made by Plaintiffs' Expert, then that will be the Medical Determination on impairment and will be forwarded to the Plans for benefit categorization. If Plaintiffs' Expert and Defendants' Expert are unable to agree, an agreed-upon neutral third neuropsychological expert (the "Neutral Third")[4] will review both determinations and all information available to the two Experts, and independently assess the Settlement Class Member's impairment. Upon the Neutral Third's request, the three Experts may confer to discuss the impairment determination. Ultimately, the Neutral Third shall break the deadlock by selecting the determination made by either Plaintiffs' Expert or Defendants' Expert. That decision will become the final and binding Medical Determination for the Settlement Class Member and will be provided to the Plans for benefit categorization. There will be no further remedy available to review the rescored Medical Determination.

Once the Plans receive a Medical Determination, they will assign the appropriate benefits to the Settlement Class Member that the Class Member would have received at the time of the initial application as if the Medical Determination was made at the time of application in accordance with the terms of the Plans. If the Medical Determination results in a new or higher benefit award than the Settlement Class Member was previously awarded, the Settlement Class Member will be entitled to and shall receive the full amount of increased payments he would have received as if the determination was made at the time of the application, plus interest at the rate of 6% per annum. *See* subsection 5, *infra*.

---

[4] Plaintiffs' Expert is Dr. Malcolm Spica, Ph.D., ABPP; Defendants' Expert is Dr. William Garmoe, Ph.D., ABPP-CN; and the Neutral Third Expert is Dr. Jason Soble, Ph.D., ABPP. The experts' resumes are attached as Exhibit B.

The Plans' records shall be updated to exhibit the new classification, and such benefits shall remain subject to all applicable Plan provisions, as amended from time to time, including any reduction or elimination of benefits.

### 3.    Limited Waiver of Statute of Limitations and Limitation on Damages

Defendants are not asserting any statute of limitations defense or invoking any limitation on damages within the Plans for purposes of this Settlement.  Accordingly, all members of the proposed Settlement Class who are determined to be owed a Past Due Benefits Amount shall receive that full Past Due Benefits Amount calculated in accordance with the terms of the Plans then in effect and as amended from time to time, without reduction on account of any statute of limitations or damages-limitation provision, provided, however, that the Back Benefits Amount shall be calculated through the earlier of the effective date of the benefit award under the Settlement or the date on which that benefit would have been exhausted under the Plans' terms.

### 4.    Settlement Oversight of Rescoring

Administration of the Settlement – including identifying Class Members, implementing the Rescoring Protocol (through the Parties' designated Experts and the Neutral Third), making benefit determinations, and issuing Determination Letters and payments – shall be performed by the Plans, with the exception of any necessary monitoring of the Rescoring Protocol by Class Counsel. SA, §§ VI.D.1-2.

### 5.    No Reduction of Benefits

No Settlement Class Member shall have a pre-existing award of benefits reduced as a result of the rescoring and re-evaluation under the Rescoring Protocol.  Nothing in the Settlement Agreement shall preclude the Retirement Board, the Disability Board, or the 88 Board, as applicable, from conducting continuation reviews or other periodic reviews of benefit eligibility in accordance with the governing Plan documents.  SA, § VI.B.10.

**D.    The Release**

In exchange for the benefits of the Settlement, Class Members will agree to release:

[A]ny and all claims, demands, rights, suits, liabilities, obligations, damages, actions, rights of action, and causes of action of every nature and description whatsoever, whether known or unknown, suspected or unsuspected, whether based in law or equity and whether seeking legal or equitable relief, and whether arising under federal, state, local, statutory, common, or foreign law, that the Releasing Parties (as defined [in the Settlement Agreement]) or any of them ever had, now have, or hereafter can, shall, or may have against the Released Parties (as defined [in the Settlement Agreement]) that (i) were asserted in the Action, or (ii) that arise out of or relate in any way to the matters, facts, or occurrences alleged in the Action, including but not limited to any claims arising out of or related to the use of race-based demographic adjustments or consideration of race in any way in neuropsychological or cognitive testing or scoring, or evaluation of claims for benefits under the Plans at any time prior to the Effective Date.  The Released Claims include, without limitation, all claims under ERISA (including but not limited to claims for benefits, breach of fiduciary duty, or equitable relief under 29 U.S.C. §1132) and all claims under 42 U.S.C. § 1981 or any other federal or state law prohibiting race discrimination, to the extent such claims arise from or relate to the allegations in this Action.  The Released Claims do not include any claims to enforce: (i) the terms of this Settlement Agreement; (ii) any rights or benefits due to Class Members under this Settlement Agreement; or (iii) claims under 29 U.S.C. 1132(g) for Attorneys' Fees, Costs, and Expenses.

SA, § II.20.

**E.    Attorneys' Fees, Costs, and Expenses and Class Representative Service Awards Not to Reduce Settlement Class Member Benefits**

Class Counsel will separately petition the Court for an award of Attorneys' Fees, Costs, and Expenses, and Class Representative Service Awards.  The Parties have not reached an agreement on the amounts to be requested.  Any Attorneys' Fees, Costs, and Expenses and Service Awards approved by the Court shall be paid by Defendants separate and apart from the benefits to the Settlement Class and shall not reduce or otherwise affect the relief provided to Class Members.  Defendants reserve all rights to oppose any application for Attorneys' Fees, Costs, and Expenses and Service Awards, in whole or in part.

## IV.    ARGUMENT

Approval of the proposed class action settlement is warranted.  As set forth below, the proposed Settlement meets the requirements of Rule 23(e)(2), and the proposed Settlement Class satisfies the requirements for certification for settlement purposes under Rules 23(a) and 23(b)(2).  Further, the Parties jointly endorse the Settlement as fair, reasonable, and adequate.  *See Kirven v. Cent. States Health & Life Co. of Omaha*, No. CA 3:11-2149-MBS, 2015 WL 1314086, at *5 (D.S.C. Mar. 23, 2015) (citing *Flinn v. FMC Corp.,* 528 F.2d 1169, 1174 (4th Cir.1975)).

### A.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES PURSUANT TO RULES 23(a) AND 23(b)(2)

Before deciding on preliminary approval of a proposed settlement, the Court examines whether the proposed settlement class satisfies the requirements of Rule 23(a) and at least one subsection of Rule 23(b) for settlement purposes.  *See Singleton v. Domino's Pizza, LLC*, No. CV DKC 11-1823, 2013 WL 12246357 at *3 (D. Md. May 13, 2013).

Importantly, the standard for certifying a settlement class differs from that applicable to a litigation class.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997) ("Settlement is relevant to a class certification").  The certification inquiry "must be considered in light of the reason for which certification is sought—litigation or settlement," and "[a] class that is certifiable for settlement may not be certifiable for litigation."  *In re Hyundai & Kia Fuel Economy Litig*., 926 F.3d 539, 558 (9th Cir. 2019).  Concerns of whether it would be manageable to try the dispute as a class action may be lessened or irrelevant in the settlement context.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").  This is because there is a "strong presumption in favor of voluntary settlement agreements, which is especially strong in class actions and other complex

10

cases because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Farley v. Eye Care Leaders Holdings, LLC,* 2023 WL 12236874, at *2 (M.D.N.C. Aug. 23, 2023) (quotation and citation omitted); *Seaman v. Duke Univ.*, 2017 WL 11502696, at *1 (M.D.N.C. Sept. 29, 2017) (same).

Plaintiffs assert that the proposed class would be certifiable even in a litigation context. Defendants vigorously contest that assertion. This Court recently denied class certification in *Alford v. The NFL Player Disability & Survivor Benefit Plan*, No. 1:23-cv-00358-JRR, 2026 WL 216349 (D. Md. Jan. 28, 2026), an action brought by Disability Plan participants against the Disability Plan and the Disability Board. In denying certification in the litigation context, the Court noted that class treatment warrants particular scrutiny where the "underlying claims would ordinarily involve a highly individualized assessment," and held that the claims at issue "must depend upon a common contention" for which "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 9, 13 (internal citations and quotation marks omitted).

Defendants maintain that claims for benefits under the Plans present precisely this type of individualized inquiry, as each claimant's benefit entitlement depends on his particular neuropsychological testing data, medical history, and eligibility under the applicable Plan terms. Because certification is sought solely for settlement purposes, the Court's analysis is appropriately informed by that context. *See Amchem,* 521 U.S. at 619. Defendants agree that the proposed Settlement Class satisfies Rules 23(a) and 23(b)(2) for settlement purposes only, and the Parties jointly request that the Court preliminarily certify the Settlement Class on that basis, as discussed below.

### 1.    Rule 23(a) is Satisfied to Certify a Settlement Class

A class action "must comply with the four prerequisites established in Rule 23(a): (1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims . . .; and (4) adequacy of representation." *Gray v. Hearst Commc'ns. Inc.*, 444 Fed. App'x 698, 700 (4th Cir. 2011) (quoting *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 423 (4th Cir. 2003)). Defendants maintain that, if litigated, these prerequisites would not be satisfied and a class could not be certified, while the Plaintiffs disagree and maintain certification would be appropriate.  For purposes of this settlement only, however, Defendants do not oppose certification and do not set forth their objections to the discussion below about these prerequisites.

### a)    The Class is Sufficiently Numerous for A Settlement Class

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The numerosity requirement "imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980).  In this District, "[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical." *Cuthie v. Fleet Rsrv. Ass'n*, 743 F. Supp. 2d 486, 498 (D. Md. 2010) (quoting *Dameron v. Sinai Hosp. of Balt., Inc.*, 595 F. Supp. 1404, 1408 (D. Md. 1984)). Here, while the exact number of Class Members is currently unknown, thousands of NFL Players are participants in the Plans, and those participants are geographically dispersed across the country. Accordingly, even if only a small percentage of these participants are Class Members, Plaintiffs assert that a joinder of all Class Members is still impracticable and numerosity is therefore satisfied.  Defendants dispute that numerosity would be satisfied in the litigation context but do not oppose certification on the issue of numerosity in the context of the proposed Settlement.

12

**b)**      **There are Common Questions of Law and Fact Sufficient for A Settlement Class**

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality test does not require that class members have identical factual and legal claims in all respects. *Broussard v. Meineke Disc. Muffler Shops, Inc.,* 155 F.3d 331, 344 (4th Cir. 1998). Rather, "[w]here the injuries complained of by [the] named plaintiffs allegedly result from the same unlawful pattern, practice, or policy of the defendants, the commonality requirement is usually satisfied." *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 301 (D. Md. 2022).

Here, Plaintiffs contend that the claims of the Class Members all arise from a single, identified practice: the use of race-based demographic adjustments in scoring neuropsychological tests used in benefits determinations under the Plans.

The Parties dispute whether any such single, identified practice existed, and, if so, whether it is a violation of ERISA and 42 U.S.C. § 1981. And if a violation did occur, determining each Class Member's individual benefit entitlement will require applying the Rescoring Protocol to that Member's testing data and evaluating his benefit eligibility under the applicable Plan terms, which process Defendants maintain would not be viable for litigation class certification. But the Settlement resolves that tension: notwithstanding whether a violation of ERISA or 42 U.S.C. § 1981 occurred, the Rescoring Protocol is a compromise that provides an agreed-upon, uniformly applied process for conducting review for settlement purposes across the Settlement Class and determining any resulting monetary relief, which is incidental to the performance of the process, for impacted participants. Defendants maintain that commonality would not be satisfied in the litigation context but do not oppose certification on the issue of commonality in the context of the proposed Settlement.

13

  **c)**  **The Class Representatives' Claims Are Sufficiently Typical to Certify A Settlement Class**

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality test does not require that the plaintiff's claims and those of absent class members "be perfectly identical or perfectly aligned." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). Rather, "[t]he premise of the typicality requirement is … as goes the claim of the named plaintiff, so go the claims of the class." *Broussard*, 155 F.3d at 340.

Plaintiffs allege the proposed Class Representatives, like the other Class Members, are Plan participants who are not white, non-Hispanic persons, who underwent neuropsychological testing in connection with their benefits applications, who had their test scores subjected to race-based demographic adjustments, and who allegedly received no benefits or lower benefits as a result of those adjustments. Plaintiffs contend the proposed Class Representatives' claims arise from the same course of conduct and rest on the same legal theories as those of the proposed Settlement Class. Accordingly, Plaintiffs assert that typicality is satisfied. Defendants maintain that typicality would not be satisfied in the litigation context, particularly given Defendants' position that Class Representatives' claims and physician evaluations involve different factual bases and analysis that would otherwise be asserted outside of settlement, but do not oppose certification on the issue of typicality in the context of the proposed Settlement.

  **d)**  **Adequacy Is Satisfied to Certify A Settlement Class**

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc.*, 521 U.S. at 625-26. "[T]he adequacy of a class representative is chiefly determined by

14

whether [his] interests are opposed to those of other class members*." In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 308. Class Counsel's competence and experience is a second factor in determining adequacy of representation. *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 558 (D. Md. 2006).

Here, there is no conflict between the proposed Class Representatives and the other Class Members. Plaintiffs assert that the claims of the proposed Class Representatives are nearly identical to those of the proposed Class and seek the same relief. Moreover, the proposed Class Representatives retained the services of highly qualified, competent Class Counsel who are well-experienced in class action litigation. Therefore, Plaintiffs contend that the adequacy requirement is satisfied. Defendants maintain that adequacy of representation would not be satisfied in the litigation context but do not oppose certification on the issue of adequacy in the context of the proposed Settlement.

### 2.     The Proposed Settlement Class Satisfies Rule 23(b)(2)

The Parties seek certification for settlement purposes only under Rule 23(b)(2). Rule 23(b) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Hernandez v. Cnty. of Monterey,* 305 F.R.D. 132, 150 (N.D. Cal. 2015) (quoting Fed. R. Civ. P. 23(b)(2)) (citation modified).

### a)     Certification under Rule 23(b)(2) is appropriate

Rule 23(b)(2) allows certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Plaintiffs contend that certification of the Settlement Class under Rule 23(b)(2) is appropriate because Defendants are alleged to have applied race-based demographic adjustments

uniformly to non-white Plan participants' test scores, and thus to have acted on grounds generally applicable to the Settlement Class, making final injunctive relief appropriate with respect to the class as a whole. *See Yue v. Conseco Life Ins. Co.*, No. CV 08-1506 AHM, 2009 WL 10671418, at *5 (C.D. Cal. Dec. 7, 2009) ("Class certification is appropriate because Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."); *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 772-73 (1976) (upholding certification of 23(b)(2) class alleging pattern and practice of racial discrimination under Title VII). Defendants maintain that the Settlement Class would not be certifiable under Rule 23(b)(2) in the litigation context but do not oppose certification under Rule 23(b)(2) in the context of the proposed Settlement.

#### b)      Any Monetary Relief is Incidental to the Injunctive Relief

Rule 23(b)(2) classes may be certified when monetary relief is at issue, but not when it predominates the injunctive relief. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F. 3d 311, 331-32 (4th Cir. 2006). If monetary relief is incidental to the injunctive or declaratory relief, or flows from the relief, Rule 23(b)(2) certification is allowed. *Berry v. Schulman*, 807 F. 3d 600, 608-11 (4th Cir. 2015); *see also Allison v. Citgo Petroleum Corp.*, 151 F. 3d 402, 415 (5th Cir. 1998).

Here, Plaintiffs contend that any payments that flow from the Settlement are incidental to the injunctive relief. The Settlement mandates that Defendants take specific action: review the claims of all Settlement Class Members, apply eligibility criteria and exclusions, identify where race-based adjustments were used, rescore those tests without such adjustments, and assess whether the rescored results entitle a Class Member to a new or additional award of benefits. All of this will be performed without knowing whether it will lead to any monetary relief for any Class Member, and it is expected that some Class Members will not obtain any monetary relief as a result of the rescoring. After the injunctive relief (*i.e.*, the Rescoring Protocol) is implemented, Class

Members will be put in the position they would have been in had race-based adjustments not been applied to their neurocognitive testing scores. Class Members may then be entitled to lump-sum payments—the Past Due Benefits Amount—representing the difference between what they should have received but did not, which is incidental to the injunctive relief.

The Settlement also provides for the payment of interest at the rate of 6% per annum on the Past Due Benefit Amount, a uniform rate that applies across the board. The 6% interest itself is incidental to the Past Due Benefits Amount that a Class Member may be automatically entitled to once the injunctive remedy is implemented. As in other cases in which courts have granted motions for preliminary approval, the only relief actually being awarded here is injunctive; any Past Due Benefits Amount payments that may be made as a result of the Settlement will not be known until the injunctive relief is performed. Therefore, class certification is entirely warranted. *Berry*, 807 F. 3d at 611; *see also Johnson v. Meriter Health Services Emp. Ret. Plan*, 702 F. 3d 364, 371 (7th Cir. 2012).

## B.   THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT

Rule 23(e)(2) provides that the Court may finally approve a settlement only after "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making that determination, a court must consider whether: (A) "the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). At the preliminary approval stage, Plaintiffs need only demonstrate the Court "will likely be able to" approve the settlement based on the Rule 23 factors. Fed. R. Civ. P. 23(e)(1)(B).

Further, the Fourth Circuit has developed "multifactor standards" for assessing whether a class-action settlement is "fair, reasonable, and adequate," often called the *Jiffy Lube* factors, which

17

courts in the Fourth Circuit continue to apply alongside the Rule 23(e)(2) factors. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991); *In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) (quoting Fed. R. Civ. P. 23(e)(2)); *Birks v. Small Cmty. Specialists, L.L.C.*, No. 8:23-CV-00837-BAH, 2024 WL 5344437, at \*4 (D. Md. Dec. 10, 2024).

Here, the Court should grant preliminary approval because the proposed Settlement is fair, reasonable, and adequate. The *Jiffy Lube* factors also weigh in favor of approval.

### 1. The Proposed Class Representatives and Class Counsel Adequately Represented the Class

Rule 23 requires courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Lead counsel has extensive experience in litigating class action cases, has a nationwide complex litigation practice, extensive experience in litigation involving the Employee Retirement Income Security Act including prior ERISA class actions and has dedicated resources and time to resolve this matter. *See* Dkt. No. 28-2 (qualifications of Beasley Allen Law Firm Attorneys and Firm Resume) and Dkt. No. 28-8 (qualifications of Thomas O. Sinclair, Esq.). Proposed Class Representatives and Class Counsel submit that, at final approval, Rule 23(e)(2)(A) will be satisfied because they have zealously represented and pursued the best interests of the proposed Class as evident from the results achieved in the Settlement. The adequate representation requirement is satisfied.

### 2. The Settlement Was Negotiated at Arm's Length by Informed Counsel

A key consideration in determining whether a class-wide settlement is fair, reasonable, and adequate is whether the parties "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158-59. In assessing the procedural fairness of a settlement, courts have generally considered the following *Jiffy Lube* factors: "(1) the posture of the case at

the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [particular] area of . . . class action litigation." *Alloways v. Cruise Web, Inc.*, No. CV CBD-17-2811, 2019 WL 1902813, at *9 (D. Md. Apr. 29, 2019) (quoting *In re Jiffy Lube*, 927 F.2d at 158–59).   This Court has recognized that there is a "strong presumption in favor of finding a settlement fair.*" Durm v. Am. Honda Fin. Corp*., No. CV WDQ-13-223, 2015 WL 6756040, at *4 (D. Md. Nov. 4, 2015) (citations omitted).

Here, Class Counsel reached the Settlement Agreement through arm's-length, good faith negotiations that spanned over two years. While the case "procedurally speaking—is not very advanced, nor has any formal discovery occurred, the parties engaged in a vigorous informal discovery process," which is sufficient to demonstrate the Settlement's procedural fairness. *See Goodlaxson v. Mayor & City Council of Baltimore,* 776 F. Supp. 3d 311, 333 (D. Md. 2025).   In furtherance of their obligations, Class Counsel engaged in confirmatory discovery with Defendants, in which Defendants produced relevant documents and information, and Class Counsel, with the assistance of Plaintiffs' Expert, were able to assess the possible scope and impact of the race-based adjustments.

Moreover, Class Counsel have substantial experience serving as class counsel in a multitude of complex class actions including through successful jury trial, and, as such, were well-positioned to assess the benefits of the proposed Settlement balanced against the strengths and weaknesses of their claims and Defendants' defenses.  Additionally, the Parties retained mediator Hon. Gerald E. Rosen (Ret.) in September 2024, with the first round of mediations occurring in October 2024 and additional mediation sessions continuing until July 11, 2025.  Indeed, "the aid of 'extensive formal mediation' is a 'hallmark[ ] of a non-collusive, arm's-length settlement

19

process.'" *Erny on behalf of India Globalization Cap., Inc. v. MuKunda*, No. CV DKC 18-3698, 2020 WL 3639978 at *2 (D. Md. July 6, 2020) (internal citation omitted).

### 3. The Relief Provided by the Proposed Settlement is Adequate

A court's assessment of whether a proposed settlement is adequate takes into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(c)(i)-(iv). Further, the Fourth Circuit has specified the following *Jiffy Lube* factors for assessing the adequacy of a class settlement:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 526 (4th Cir. 2022). Consideration of these factors further supports preliminary approval, particularly where, as here, Defendants consent to the relief making Settlement Class Members whole for any benefits denied due to medical determinations that were impacted by the use of race-based demographic adjustments.

### a) The Benefits of the Proposed Settlement Outweigh the Costs, Risks, and Delay of Trial and Appeal

*First*, "Rule 23(e)(2)(C)(i), and the first two *Jiffy Lube* adequacy factors focus on the relief provided" in light of the strength of Plaintiff's case and the existence of difficulties of proof or strong defenses.  *Birks v. Small Cmty. Specialists, L.L.C.*, No. 8:23-CV-00837-BAH, 2024 WL 5344437, at *5 (D. Md. Dec. 10, 2024).  Indeed, "[t]he most important factors in this analysis are

20

the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F. 3d 276, 299 (4th Cir. 2019) (citing *Berry*, 807 F.3d at 614-15).

Here, while Plaintiffs maintain they would succeed if the case were to proceed to trial, Defendants dispute the merits and deny liability as to Plaintiffs' claims under both ERISA and Section 1981. The Parties recognize that there is significant uncertainty about the outcome. To prevail, Plaintiffs would need to defeat Defendants' dispositive motion(s), engage in protracted discovery, overcome any statute of limitations defenses as to certain claims, prove the Defendants' knowledge and use race-based adjustments to neuropsychological testing, prevail on a contested motion for class certification and potentially defend an interlocutory appeal under Rule 23(f), successfully oppose summary judgment concerning their ERISA and Section 1981 claims, obtain a verdict following a complex trial involving disputed scientific issues that could last many weeks, if not longer, and successfully defend class certification and the verdict on appeal.

The difficulty of obtaining class certification against these Defendants is not hypothetical. As noted above, this Court recently denied class certification in *Alford*, holding that claims for benefits under the Disability Plan require the kind of "highly individualized assessment" that undermines class treatment. *Alford*, 2026 WL 216349, at *13. Here, although Plaintiffs allege a single practice, Defendants dispute the existence of any such practice, and in addition assert that each Class Member's entitlement to relief would require individualized review of his testing data, medical history, and Plan eligibility, which is the very type of inquiry that makes contested class certification uncertain. Plaintiffs dispute that such an individual assessment or review is dictated because of the single practice alleged in the Complaint but recognize the issue would be disputed and settlement removes the associated risk. The Settlement's Rescoring Protocol addresses this

21

problem by providing a structured, expert-driven process for conducting that review on a class-wide basis in the context of the Parties' Settlement.

Plaintiffs would also face difficulty achieving class-wide relief under 42 U.S.C. § 1981, which requires proof of "purposeful discrimination" and cannot rest on disparate impact alone. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982); *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022); *Pollard v. Wawa Food Mkt.*, 366 F. Supp. 2d 247, 252–53 (E.D. Pa. 2005) (discrimination is purposeful only if the defendant "selected or reaffirmed a particular course of action 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."). Moreover, litigation would inevitably involve a complex battle of experts on questions including whether the use of race-based demographic adjustments in neuropsychological testing constituted discrimination, what effect those adjustments had on individual benefit determinations, and the existence and extent of any resulting damages. A battle of experts on subject matter of this complexity "always adds an element of uncertainty as to the outcome." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 63 (S.D.N.Y. 2003) (citation omitted); *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *5 (E.D.N.Y. 2021).

The Settlement avoids these risks and provides immediate, concrete relief. Promptly after the final approval, the Rescoring Protocol will be implemented and Class Members' neuropsychological testing will be rescored without race-based adjustments. Class Members who are determined to be entitled to a new or higher benefit will receive a lump sum payment of Past Due Benefits Amount plus interest, as described in Sections III.C.4-6 above. Further, under the Settlement, Defendants have waived statute of limitations and damages-limitation defenses, potentially resulting in higher recoveries than Class Members could obtain through individual litigation. Consequently, the Parties and Counsel agree the immediacy and certainty of relief under the Settlement outweigh the substantial risks of continued litigation.

22

*Second*, "Rule 23(e)(2)(C)(i) and *Jiffy Lube* adequacy factor three require the Court to consider the likely duration and expense of continued litigation." *Birks*, 2024 WL 5344437, at *5. Given that this case has not advanced to formal discovery while the Parties diligently negotiated the Settlement, "a resolution would be years away should the case proceed." *Goodlaxson*, 776 F. Supp. 3d at 334. Moreover, the expense resulting from further ligation would be substantial given the number of potential class members and length of time involved, which would result in voluminous discovery and many fact and expert depositions.

*Third*, while it is a *Jiffy Lube* factor, "a defendant['s] ability to withstand a greater judgment standing alone, does not suggest that the settlement is unfair." *Lewis v. Precision Concepts Grp. LLC*, No. 1:18CV64, 2021 WL 7185505, at *4 (M.D.N.C. Mar. 23, 2021) (internal citation omitted); *see also Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 769 (D. Md. 2022) ("[A]lthough Defendants' solvency is not contested, it does not weigh against approval of the proposed settlement").

### b) The Convenience and Well-Designed Administration of the Settlement Relief Supports Preliminary Approval

In considering a preliminary approval motion, the Court must evaluate "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the benefit determination and distribution process is well-tailored for the convenience and benefit of Class Members.

Under the Rescoring Protocol, Class Members' previous scores used by the Plans in making benefit award determinations will be converted to raw scores, rescored without using race as a consideration, and then reviewed by one or more independent neuropsychology experts. SA, §§ VI.B.3-7. The expert review process, including the roles of Plaintiffs' Expert, Defendants' Expert, and the Neutral Third, is described in detail in Section III.C.2 above. This method of calculating

23

and administering each Class Member's impairment is fair and reasonable and is intended to remove any potential impact of race-based adjustments from the benefit award determinations made by the Plans.

**c)  The Attorneys' Fees, Costs, and Expenses Award and the Class Representative Service Awards**

The Parties have not reached an agreement on Plaintiffs' intended application for Attorneys' Fees, Costs, and Expenses or Class Representative Service Awards.  Class Counsel will separately petition the Court for an award of Attorneys' Fees, Costs, and Expenses and Service Awards for the proposed Class Representatives.  *See* Section III.E, *supra*.

**d)  The Agreements Made in Connection with the Proposed Settlement Are Typical and Support Preliminary Approval**

The substantive terms of the Settlement are set forth in the Settlement Agreement, and a sample Determination Letter to be sent to Settlement Class Members following completion of the Rescoring Protocol and benefit eligibility review is attached as an exhibit to the Settlement Agreement.  No other agreement between the Parties exists other than the Settlement Agreement.

**4.  The Proposed Relief Treats Settlement Class Members Fairly Relative to One Another**

The final element for consideration under Rule 23(e)(2)(D) is whether the proposed settlement treats Settlement Class Members equitably in relation to one another.  As described above, this is an equitable relief Settlement in which all Settlement Class Members are treated the same.  All Settlement Class Members are entitled to a review of their prior claims and, for those who meet the agreed-upon eligibility criteria, a rescoring of prior neuropsychological tests and reconsideration of benefit denials.  In addition, Class Members will receive retroactive payment for the benefits newly awarded, if any, with 6% per annum interest.  Accordingly, no Class Member will receive benefits from the Settlement that they are not entitled to and no Class Member will

24

receive benefits at the expense of another Class Member. Moreover, the Class Members who were denied greater benefits, or denied for a longer period, shall receive a higher amount because of the interest, which is a fair and equitable distribution. Ultimately, each eligible Class Member will have race-based adjustments removed from their pre-Settlement benefit determinations and, should the removal result in entitlement to benefits, will receive 100% of what they would have received had race-based adjustments never been applied, plus 6% per annum interest, with no limitation on damages or statute of limitations applied. Furthermore, the Class Representatives are treated the same as all other Class Members under the Settlement.

### 5.    The Settlement is Reasonable

Although not expressly a factor in Rule 23(e)(2), courts in the Fourth Circuit have generally assessed reasonableness. *See, e.g.*, *Goodlaxson*, 776 F. Supp. 3d at 335; *Feinberg*, 610 F. Supp. 3d at 769. Reasonableness "at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *Id.* The Court need not "decide the merits of the case nor substitute its judgment of what the case might be worth for that of class counsel," but "must at least satisfy itself that the class settlement is within the 'ballpark' of reasonableness." *Feinberg*, 610 F. Supp. 3d at 769 (quoting *McAdams v. Robinson*, 26 F.4th 149, 160 (4th Cir. 2022)).

Here, the relief secured in the Settlement is equal to or exceeds what Class Members could recover in litigation. The Parties have agreed to an injunctive remedy directing the Plans to implement race-neutral rescoring, which is a recovery equal to what Plaintiffs could obtain after trial and appeal on their ERISA claim. Also, the Rescoring Protocol applies even to Class Members whose individual ERISA claims may be barred by the statute of limitations and/or a damages limitation within the Plans. These concessions, described in Sections III.C.5-6 above, go beyond what would be recovered at trial. Weighed against the risks, costs and delays of continued

litigation and eventual appeals explained above, the proposed Settlement is well within the range of possible judicial approval.  Moreover, the § 1981 claim faces substantial obstacles, as discussed above. In any event, the relief agreed to by the Defendants in the Settlement goes well beyond what the court might order in connection with the claims made in the Complaint.

## V.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL FOR THE PROPOSED SETTLEMENT CLASS PURSUANT TO RULE 23(g)

Rule 23(g) provides that "a court that certifies a class must appoint class counsel" taking into consideration their experience, knowledge, resources, and work on the case.  Proposed Class Counsel are W. Daniel "Dee" Miles, III of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. and Thomas O. Sinclair of Sinclair Law Firm, LLC, and Rebecca D. Gilliland and Leon J. Hampton, also of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. Counsel have been recognized by both federal and state courts as being highly skilled and experienced in complex litigation, including successfully leading a multitude of consumer class actions and Attorney General litigation concerning fraud, ERISA, misrepresentation and unfair practices, and racial discrimination and bias litigation, to include successfully trying class actions to jury verdict. *See* Joint Decl., attached hereto as Exhibit C.  Here, proposed Class Counsel investigated potential claims upon being contacted by aggrieved Plan participants and beneficiaries, negotiated the proposed Settlement, and obtained valuable relief for all proposed Class Members. Plaintiffs respectfully submit proposed Class Counsel satisfy the adequacy requirements of Rule 23(g) and should be appointed Class Counsel.

## VI.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND SCHEDULE A FINAL FAIRNESS HEARING

### A.    The Parties' Proposed Notice Satisfies Rule 23(e)(1)

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" the proposed Settlement.  Fed. R. Civ. P. 23(e)(1)(B).  The

26

Court should approve the Parties' proposed notice, attached hereto as Exhibit D.  Within thirty (30) days of entry of an Order by the Court preliminarily approving the Settlement, Defendants shall cause a copy of the notice to be mailed by first-class United States mail, postage prepaid, to all Settlement Class Members who can be identified with reasonable effort.

In addition to the notice, once the Rescoring Protocol is completed, Defendants will provide each of the Settlement Class Members who are subject to the Rescoring Protocol with a Determination Letter notifying the Class Member of the outcome of the re-evaluation and, where applicable, any entitlement to Past Due Benefits Amount and any corresponding change to going-forward benefits.  Payments of Past Due Benefits Amount, plus interest, will be issued by check mailed to the Settlement Class Member's last known address no later than 90 days after the decision from the Rescoring Protocol.  SA, § VI.C.4.

### B.  The Court Should Set Settlement Deadlines and Schedule a Final Fairness Hearing

The Parties respectfully request that the Court set deadlines for briefing of the motion for final approval of the Settlement and of Plaintiffs' intended motion for Attorneys' Fees, Costs, Expenses and Class Representative Service Awards, and schedule a Final Fairness Hearing.

### VII.    THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION PENDING FINAL APPROVAL OF THE PROPOSED SETTLEMENT

The Parties jointly seek entry of an order preliminarily enjoining all Settlement Class Members from filing, prosecuting, or maintaining any action in federal or state court that asserts any of the Released Claims as defined in the Settlement Agreement.  SA, §§ II.20, VII.  This relief is necessary to preserve the Court's continuing jurisdiction over the Settlement, SA, §§ XI.A, XI.B, and to ensure that the comprehensive remedy provided by the Rescoring Protocol is not undermined by parallel proceedings during the period between preliminary and final approval. Pursuant to the "necessary in aid of" exception to the Anti-Injunction Act, 28 U.S.C. § 2283, and

the All Writs Act, 28 U.S.C. § 1651(a), this Court may issue injunctions to protect its jurisdiction over a pending class action settlement. *See In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F. 2d 328, 337 (2d Cir. 1985) (parallel proceedings can "'seriously impair the federal court's flexibility and authority' to approve settlements").

Here, the Settlement Agreement provides for a broad release of all claims arising from or relating to the use of race-based demographic adjustments in neuropsychological testing under the Plans. SA, §§ II.20, VII. The Final Approval Order will permanently bar the Releasing Parties from asserting any Released Claims. SA, § IX.E.4. A preliminary injunction is warranted to preserve th*e status quo* and protect the Court's ability to enter the Final Approval Order. *See In re Baldwin-United Corp.*, 770 F. 2d at 338.

## VIII.   CONCLUSION

For all the above-stated reasons, the Parties respectfully request that the joint motion be granted and the Court enter an order: (a) preliminarily approving the proposed Settlement; (b) preliminarily certifying the proposed Class for settlement purposes only; (c) appointing the proposed Class Representatives as Class Representatives; (d) appointing the proposed Class Counsel as Class Counsel; (e) approving the proposed notice attached as Exhibit D to this motion and directing that it be mailed to the Settlement Class Members (f) setting a date and procedures for the Final Fairness Hearing and setting related deadlines; and (g) preliminarily enjoining all Settlement Class Members from filing, prosecuting, or maintaining any action that asserts any of the Released Claims as defined in the Settlement Agreement.

Respectfully submitted this 29th day of May, 2026.

| | |
|---|---|
| */s/ Christopher T. Nace* | */s/ Edward J. Meehan* |
| Christopher T. Nace (16442) | Edward J. Meehan (04775) |
| **NACE LAW GROUP** | Mark C. Nielsen (30913) |
| 1025 Thomas Jefferson Street, NW, Suite 810 | Jovana Vujovic (*pro hac vice pending*) |
| Washington, D.C. 20007 | **GROOM LAW GROUP, CHARTERED** |
| Telephone: 202-463-1999 | 1701 Pennsylvania Ave. N.W., Suite 1200 |
| Facsimile: 202-223-6824 | Washington, D.C. 20006 |
| ctnace@nacelawgroup.com | Telephone: 202-857-0620 |
| | emeehan@groom.com |
| W. Daniel "Dee" Miles, III (*pro hac vice)* | mnielsen@groom.com |
| Leon H. Hampton, Jr. (*pro hac vice*) | jvujovic@groom.com |
| Paul W. Evans (*pro hac vice*) | (signed and submitted by Christopher T. Nace |
| **BEASLEY, ALLEN, CROW, METHVIN,** | with permission of Mr. Meehan) |
| **PORTIS & MILES, P.C.** | |
| 218 Commerce Street | ***Counsel for Defendants*** |
| Montgomery, AL 36104 | |
| Telephone: 334-269-2343 | |
| Dee.Miles@BeasleyAllen.com | |
| Leon.Hampton@BeasleyAllen.com | |
| Paul.Evans@BeasleyAllen.com | |
| | |
| Rebecca Gilliland (*pro hac vice*) | |
| **BEASLEY, ALLEN, CROW, METHVIN,** | |
| **PORTIS & MILES, P.C.** | |
| 301 St. Louis Street | |
| Mobile, AL 36602 | |
| Telephone: 251-308-1515 | |
| Rebecca.Gilliland@BeasleyAllen.com | |
| | |
| Thomas O. Sinclair (*pro hac vice*) | |
| **SINCLAIR LAW FIRM, LLC** | |
| 2140 11th Ave S, Suite 212 | |
| Birmingham, AL 35205 | |
| Telephone: 205-868-0818 | |
| tsinclair@sinclairlawfirm.com | |
| | |
| ***Counsel for Plaintiffs*** | |