# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| **STACEY BAILEY, *et al.*,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN, *et al.*,**<br><br>**Defendants.** | Case No. 1:23-cv-02661-JRR |

# CLASS ACTION SETTLEMENT AGREEMENT

**TABLE OF CONTENTS**


I. RECITALS ..... 6

II. DEFINITIONS ..... 7

1. "Action" ..... 7
2. "Attorneys' Fees, Costs, and Expenses" ..... 7
3. "Class Action Complaint" ..... 8
4. "Class Counsel" ..... 8
5. "Class Representatives" ..... 8
6. "Court" ..... 8
7. "Defendants" ..... 8
8. "Defendants' Expert" ..... 8
9. "Defense Counsel" ..... 8
10. "Determination Letter" ..... 8
11. "Effective Date" ..... 8
12. "Final Approval Order and Judgment" ..... 9
13. "Final Fairness Hearing" or "Final Approval Hearing" ..... 9
14. "Medical Determination" ..... 9
15. "Neutral Physician" ..... 9
16. "Neutral Third" ..... 9
17. "Plaintiffs' Expert" ..... 9
18. "Plans" ..... 9
19. "Preliminary Approval Order" ..... 9
20. "Released Claims". ..... 9
21. "Released Parties" ..... 10
22. "Releasing Parties" ..... 10
23. "Rescoring Protocol" ..... 10
24. "Service Awards" ..... 10
25. "Settlement" ..... 10
26. "Settlement Agreement" ..... 10
27. "Settlement Class" ..... 10

28. "Settlement Class Member" .......... 11
29. "Settlement Relief" .......... 11
III. NO ADMISSION OF LIABILITY .......... 11
IV. NON-FIDUCIARY STATUS AND SCOPE OF DETERMINATIONS .......... 11
V. SETTLEMENT CLASS CERTIFICATION .......... 11
A. Class Certification Solely for Settlement Purposes. .......... 11
B. Appointment of Class Representatives and Class Counsel. .......... 12
VI. SETTLEMENT RELIEF .......... 12
A. The Plans' Continuing Directive Prohibiting the Use of Race-Based Demographic Adjustments. .......... 12
B. Rescoring Protocol and Reconsideration of Impairment Determinations. .......... 12
1. Eligibility for Rescoring Based on Claim History .......... 13
2. Exclusions from Rescoring .......... 13
3. Conversion to Raw Scores. .......... 14
4. Rescoring Excluding Race-Based Demographic Adjustments .......... 15
5. Review of Rescored Data. .......... 15
6. Initial Determination .......... 15
7. Conflicting Conclusions .......... 15
8. Benefit Category Determination .......... 16
9. Classification of T&P Benefits .......... 16
10. No Benefit Redution .......... 16
11. Administrative Adjustments .......... 16
12. Final Determination .......... 17
C. Award of Applicable Benefits and Retroactive Payments. .......... 17
1. Benefit Awards and Ongoing Benefits. .......... 17
2. Retroactive Disability Benefit Payments. .......... 17
3. Interest on Past Due Benefits. .......... 18

4. Payment Timing and Taxes....19

5. 88 Plan – Special Application Right....19

6. Finality of Benefit Determinations ....19

7. Continued Application of Plan Terms ....19

D. Additional Administration Provisions....19

1. Notification of Results to Settlement Class Members....20

2. Administration and Costs ....20

3. Confirmatory Discovery and Data Access ....20

4. Non-Retaliation and Preservation of Rights ....20

VII. RELEASE OF CLAIMS....20

A. Release by Settlement Class....20

B. Scope of Release; Waiver of Unknown Claims....20

C. Release by Class Representatives....21

D. No Release of Future Claims....21

VIII. ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS....21

A. Attorneys' Fees, Costs and Expenses....21

B. Defendants' Right to Oppose....21

C. Basis for Fee Request; Court Determination....21

D. Service Awards to Class Representatives....22

E. No Additional Class Counsel Payments; Plan Coverage of Fees and Expenses of Administering Settlement....22

F. Timing of Fee and Service Award Payments.....22

IX. PRELIMINARY APPROVAL, FINAL APPROVAL AND COURT ORDER ....22

A. Submission of Settlement to Court....22

B. Notice to the Settlement Class Members....22

C. Findings in Preliminary Approval Order....23

D. Motion for Final Approval....23

E. Entry of Final Approval Order and Judgment....23

F. Occurrence of Effective Date. 24
G. Voidance of Settlement if Not Approved. 24
H. No Solicitation of Objections or Exclusions. 24
X. CAFA NOTICE 25
XI. JURISDICTION AND ENFORCEMENT 25
A. Continuing Jurisdiction of the Court. 25
B. Dispute Resolution. 25
XII. MISCELLANEOUS PROVISIONS 25
A. Public Statements and Confidentiality. 25
B. Non-Disparagement. 25
C. Effect of Termination or Non-Approval. 26
D. Modification. 26
E. Integration Clause. 26
F. Binding on Successors 26
G. Applicable Law. 26
H. Execution in Counterparts. 27
I. Voidance of Prior Agreements. 27
J. Authority of Signatories. 27
K. Retention of Exhibits and Records. 27
L. Headings for Convenience Only. 27
M. Severability. 27

## TABLE OF EXHIBITS

- **Sample Decision Notice to Class Member**

This Class Action Settlement Agreement (the "Settlement Agreement") is made and entered into by and among Plaintiffs Stacey Bailey and Eric Curry (together, "Plaintiffs" or "Class Representatives"), on the one hand, and Defendants the NFL Player Disability & Survivor Benefit Plan (the "Disability Plan"), the Disability Board of the NFL Player Disability & Survivor Benefit Plan (the "Disability Board"), the Disability Initial Claims Committee of the NFL Player Disability & Survivor Benefit Plan (the "Disability Initial Claims Committee"), the Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Retirement Plan"), the Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Retirement Board"), The Disability Initial Claims Committee of The Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Retirement Initial Claims Committee"); the 88 Plan (the "88 Plan"), and the 88 Board (the "88 Board") (together, "Defendants"), on the other hand (Plaintiffs and Defendants together, the "Parties").

## I. RECITALS

**WHEREAS,** on September 29, 2023, Plaintiffs, individually and as representatives of a putative class of participants in the Disability Plan, the Retirement Plan, and the 88 Plan (the Disability Plan, the Retirement Plan, and the 88 Plan together, the "Plans"), filed their Class Action Complaint in the United States District Court for the District of Maryland, Case No. 1:23-cv-02661-JRR (the "Action"), Dkt. No. 1. The Class Action Complaint made allegations concerning the application of race-based demographic adjustments in neurocognitive testing associated with evaluating claims for certain benefits under the Plans. Plaintiffs brought claims for breach of fiduciary duty, declaratory judgment, and injunctive relief (Count I), Plan benefits under Section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a) (Count II), and violation of 42 U.S.C. § 1981 (Count III); and

**WHEREAS**, Defendants assert they had no prior knowledge of, nor directed any Neutral Physician to apply, any race-based demographic adjustments to testing, including the demographic adjustments at issue in this Action; and further assert that any such adjustments (to the extent they may have been used) were applied solely in the exercise of individual Neutral Physicians' independent medical judgment; and

**WHEREAS**, by letter dated June 8, 2021, the Plans expressly instructed all Neutral Physicians not to apply any race-based demographic adjustments (to the extent they may have been used), and the Plans maintain that directive through today and will maintain that directive; and

**WHEREAS**, following the filing of the Class Action Complaint, counsel for the Parties began to discuss resolving the Action and have jointly moved for, and obtained from the Court, a stay of the proceedings while the Parties explored the potential for resolution of the Action. Dkt. Nos. 30, 32, 39, 40, 45, 46, 49, 50, 53, 54, 57, 58, 61, 62, 66, 69, 71, and 72.;

**WHEREAS**, following multiple discussions among counsel, the Parties retained a mediator, Hon. Gerald E. Rosen (Ret.). and thereafter engaged in formal mediation sessions on October 2, 2024, October 3, 2024, October 30, 2024, November 1, 2024, March 5, 2025, March 6, 2025, and July 11, 2025, in addition to continuing the periodic informal discussions among counsel; and

**WHEREAS**, Defendants deny any and all allegations of wrongdoing and conduct alleged in this Action and further deny any and all liability for the causes of action asserted in the Action; and

**WHEREAS**, on July 11, 2025, the Parties executed a written term sheet (the "Final Term Sheet") reflecting their agreement to resolve this Action, subject to Court approval; and

**WHEREAS**, the Parties have continued to negotiate the final portions and details of this Settlement Agreement including fees and administrative matters; and

**WHEREAS**, after carefully considering the facts and applicable law and the risks, expense, and uncertainty of continued litigation, and after having engaged in extensive negotiations, the Parties agree that it is in their mutual best interests to resolve the claims in this Action on fair, reasonable, and adequate terms as set forth in this Settlement Agreement with no admission of wrongdoing by any Defendant; and

**WHEREAS**, Plaintiffs and Defendants have independently determined that it is desirable and beneficial for the Action to be fully and finally resolved in the manner and upon the terms and conditions set forth in this Settlement Agreement;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among Plaintiffs, for themselves and on behalf of the other Settlement Class Members for whom they purport to be Class Representatives, and Defendants, by and through their undersigned counsel, that, subject to the approval of the Court, the Action and the Released Claims will be compromised and settled, and judgment is to be entered on the terms and conditions set forth below.

## II. DEFINITIONS

The following terms have the meanings stated below unless specifically provided otherwise. Capitalized terms used in this Settlement Agreement but not defined in this Section shall have the meanings ascribed to them elsewhere in this Settlement Agreement. These definitions are not intended to replace or otherwise supersede the definitions of the same or similar terms to the extent that such terms appear in one or more of the Plans. To the extent the definitions in this Settlement Agreement conflict with the definitions of the same terms in the Plans, the definitions below shall be controlling solely for purposes of this Settlement Agreement, and the definitions of such same or similar terms contained in the Plans shall be controlling for all other purposes.

1. **"Action"** means the lawsuit captioned *Stacey Bailey, et al. v. The NFL Player Disability & Survivor Benefit Plan, et al.*, Case No. 1:23-cv-02661-JRR (D. Md.), including all claims asserted therein.

2. **"Attorneys' Fees, Costs, and Expenses"** means such funds as may be awarded by the Court, if any, to compensate Class Counsel for their fees, costs, and expenses in connection with the Action. Attorneys' Fees, Costs, and Expenses are in addition to any benefits under the

Plans to be provided directly to the Settlement Class Members, if any, and do not reduce or otherwise affect those benefits. Attorneys' Fees, Costs, and Expenses do not include the payment of any Service Awards.

3. **"Class Action Complaint"** means the Class Action Complaint, Dkt. No. 1, filed in this Action in this Court on September 29, 2023.

4. **"Class Counsel"** means Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. and Sinclair Law Firm, LLC.

5. "**Class Representatives"** means Stacey Bailey and Eric Curry, the named Plaintiffs in this Action, who seek to represent the Settlement Class for purposes of this Settlement. The terms "Class Representatives" and "Plaintiffs" are used interchangeably in this Settlement Agreement to refer to Stacey Bailey and Eric Curry.

6. **"Court"** means the United States District Court for the District of Maryland.

7. **"Defendants"** means the Disability Plan, the Disability Board, the Disability Initial Claims Committee, the Retirement Plan, the Retirement Board, the 88 Plan, the 88 Board, and each of their current or former trustees, administrators, committee members, or other fiduciaries or agents, in their official capacities.

8. **"Defendants' Expert"** means Dr. William Garmoe, Ph.D., the neuropsychology expert consultant retained by Defendants in connection with this Action. Dr. Garmoe has been designated as Defendants' Expert for purposes of this Settlement Agreement. In the event of Dr. Garmoe's death or disability, or for other just cause, Defendants may designate a replacement neuropsychology expert consultant upon written notice to Class Counsel. For clarity, nothing in this Settlement Agreement shall affect Dr. Garmoe's contractually assigned duties outside of this Agreement.

9. **"Defense Counsel"** means Groom Law Group, Chartered.

10. **"Determination Letter"** means the written notice to be provided to each Settlement Class Member after the conclusion of the Rescoring Protocol, described herein. A sample form Determination Letter is attached hereto as Exhibit A, and which may be revised as described in section V.D.

11. **"Effective Date"** means the date upon which approval of this Settlement Agreement becomes final and binding, which shall be the date when all of the following conditions have occurred: (i) the Court has entered a Final Approval Order and Judgment approving this Settlement in all material respects under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Action with prejudice; and (ii) either (a) no appeal or petition for review is taken from the Final Approval Order and Judgment within the time allowed for doing so, or (b) if any appeal(s) or petition(s) for review have been taken, they have been finally resolved in a manner that affirms the Final Approval Order and Judgment without material modification and no further judicial review is possible (by expiration of any applicable appeal periods or otherwise). The separately filed Fee Petition and any disposition or appeal of an Order relating to the Fee Petition shall not have any impact on the Effective Date of the Settlement. For clarity, neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

12. **"Final Approval Order and Judgment"** means the final order and judgment to be entered by the Court, following the Final Fairness Hearing, that finally approves the Settlement Agreement, adjudicates the rights of all Settlement Class Members (including the disposition of any objections), and dismisses the Action with prejudice. The Parties shall submit a proposed Final Approval Order and Judgment in a form agreeable to both, to be entered by the Court if the Settlement is finally approved.

13. **"Final Fairness Hearing" or "Final Approval Hearing"** means the hearing to be conducted by the Court, at which time Class Counsel will request final approval of this Settlement Agreement and entry of the Final Approval Order and Judgment, and the Court will determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e).

14. **"Medical Determination"** means a determination made by the Plaintiffs' Expert, the Defendants' Expert, or, if those two Experts do not reach agreement, by the Neutral Third, in accordance with the Rescoring Protocol set forth in this Settlement Agreement, as to whether a Settlement Class Member does or does not meet the applicable medical standard for the benefits in accordance with the Plan terms in effect at the time the application that is subject to rescoring was received. Solely for purposes of this Settlement Agreement, in all instances the Medical Determination made in accordance with this Settlement Agreement shall be deemed to satisfy any Plan requirement that a Plan neutral physician or other physician appointed or requested by the Plan determine medical eligibility for a particular benefit.

15. **"Neutral Physician"** means a physician or a neuropsychologist designated by the Plans to examine Players who submit benefit claims and to report on their medical condition.

16. **"Neutral Third"** means Jason Soble, Ph.D., ABPP, the person agreed-upon by Class Counsel and Defense Counsel to make a Medical Determination for each Settlement Class Member for whom Plaintiffs' Expert and Defendants' Expert do not reach agreement after following the Rescoring Protocol. In the event of Dr. Soble's death or disability, or for other just cause, Class Counsel and Defense Counsel may jointly designate a replacement Neutral Third.

17. **"Plaintiffs' Expert"** means Dr. Malcolm Spica, Ph.D., the neuropsychology expert consultant retained by Plaintiffs in connection with this Action. Dr. Spica has been designated as Plaintiffs' Expert for purposes of this Settlement Agreement. In the event of Dr. Spica's death or disability, or for other just cause, Plaintiffs may designate a replacement neuropsychology expert consultant upon written notice to Defense Counsel. Plaintiffs' Expert and Defendants' Expert are collectively referred to herein as the "Experts."

18. **"Plans"** means, collectively, the employee benefit plans governed by ERISA that are Defendants in this Action – specifically, the Disability Plan, the Retirement Plan, and the 88 Plan.

19. **"Preliminary Approval Order"** means the order of the Court granting preliminary approval of this Settlement Agreement, certifying the Settlement Class solely for settlement purposes, and scheduling a Final Fairness Hearing.

20. **"Released Claims"** means any and all claims, demands, rights, suits, liabilities, obligations, damages, actions, rights of action, and causes of action of every nature and description whatsoever, whether known or unknown, suspected or unsuspected, whether based in law or equity and whether seeking legal or equitable relief, and whether arising under federal, state, local, statutory, common, or foreign law, that the Releasing Parties (as defined below) or any of them ever had, now have, or hereafter can, shall, or may have against the Released Parties (as defined below) that (i) were asserted in the Action, or (ii) that arise out of or relate in any way to the

matters, facts, or occurrences alleged in the Action, including but not limited to any claims arising out of or related to the use of race-based demographic adjustments or consideration of race in any way in neuropsychological or cognitive testing or scoring, or evaluation of claims for benefits under the Plans at any time prior to the Effective Date. The Released Claims include, without limitation, all claims under ERISA (including but not limited to claims for benefits, breach of fiduciary duty, or equitable relief under 29 U.S.C. §1132) and all claims under 42 U.S.C. § 1981 or any other federal or state law prohibiting race discrimination, to the extent such claims arise from or relate to the allegations in this Action. The Released Claims do not include any claims to enforce: (i) the terms of this Settlement Agreement; (ii) any rights or benefits due to Class Members under this Settlement Agreement; or (iii) claims under 29 U.S.C. 1132(g) for Attorneys' Fees, Costs, and Expenses.

21. **"Released Parties"** means Defendants and each of their past, present, and future parent entities, subsidiaries, affiliates, predecessors, and successors, and in the case of all such entities, their trustees, administrators, fiduciaries, committees (including the Disability Board, the Disability Initial Claims Committee, the Retirement Board, and the 88 Board), general partners, limited partners, members, benefit plans, insurers or reinsurers, and all of their current and former officers, directors, employees, agents, attorneys, advisors, consultants, plan sponsors, and representatives, in their representative capacities. For purposes of this Settlement Agreement, Released Parties also specifically includes the National Football League, the NFL Players Association, all contributing employers to the Plans, and any third-party vendor or consultant involved in administering or interpreting the neuropsychological testing of Plan participants (including any physicians or neuropsychologists engaged as Neutral Physicians by the Plans, Plaintiffs' Expert, Defendants' Expert, and the Neutral Third identified, herein), together with their respective professional entities, employees, agents, and contractors.

22. **"Releasing Parties"** means the Class Representatives and all Settlement Class Members, on behalf of themselves and their respective heirs, executors, administrators, trustees, estates, predecessors, successors, assigns, beneficiaries, and anyone claiming by or through them. Releasing Parties also includes any other person or entity (such as a spouse, family member, or trust) who has or had any cause of action derivatively through any Settlement Class Member, to the extent their claim is based on the Settlement Class Member's injury or rights (in which case such claims are likewise released by this Settlement).

23. **"Rescoring Protocol"** means the neuropsychological test rescoring process being applied to Settlement Class Members' prior claims as part of the Settlement.

24. **"Service Awards"** means monetary awards that Class Counsel may seek for the Class Representatives to be paid separate and apart from (*i.e*., in addition to) any benefits provided to the Settlement Class under this Settlement, subject to Court approval.

25. **"Settlement"** means the resolution of the Action under the terms set forth in this Settlement Agreement and the exhibits attached thereto.

26. **"Settlement Agreement"** means this Settlement Agreement and the exhibits attached hereto, as well as any and all subsequent amendments and any exhibits to such amendments.

27. **"Settlement Class"** means all persons (other than white, non-Hispanic persons) who (i) are participants in any of the Plans; (ii) applied for 88 Plan benefits, Total and Permanent ("T&P") disability benefits, Line of Duty ("LOD") disability benefits, and/or Neurocognitive ("NC") benefits under one or more of the Plans from January 1, 2012 to the present; (iii) underwent

neuropsychological testing with that benefits application; and (iv) had their neuropsychological test scores adjusted using (non-white) race-based demographic adjustments. Settlement Class membership shall be determined by the Plans using the Plans' records, subject to reasonable verification by Class Counsel during confirmatory discovery.

28. **"Settlement Class Member"** means any person who falls within the definition of the Settlement Class.

29. **"Settlement Relief"** means the relief provided to the Settlement Class under this Settlement Agreement.

## III. NO ADMISSION OF LIABILITY

Defendants enter into this Settlement Agreement without in any way admitting any fault, liability, or wrongdoing. Defendants specifically deny any such fault, liability, or wrongdoing. The Parties agree that this Settlement Agreement, and any and all negotiations, statements, documents, and/or proceedings in connection with this Settlement, shall not be construed or deemed to be evidence of an admission or concession on the part of any Defendant of any liability or wrongdoing, or of the truth of any of the allegations in the Action. This Settlement Agreement is a compromise of disputed claims and shall not be used or admissible in any proceeding for any purpose other than to enforce the terms of the Settlement or defend against any claims released herein. The provisions of Federal Rule of Evidence 408 (and any analogous state law provisions) shall apply to this Settlement and all related communications. If the Settlement is not approved or otherwise does not become final, all negotiations and discussions regarding it shall be inadmissible in the Action and elsewhere and shall not be used against any Party.

## IV. NON-FIDUCIARY STATUS AND SCOPE OF DETERMINATIONS

The Plaintiffs' Expert, the Defendants' Expert, and the Neutral Third are not, and shall not be deemed, fiduciaries of any of the Plans for any purpose on account of this Settlement Agreement. Their role shall be limited to providing independent Medical Determinations pursuant to the Rescoring Protocol. Such Medical Determinations shall be strictly medical in nature and shall not constitute, nor be construed as, a decision to award, deny, or otherwise affect the Settlement Class Members' entitlement to benefits under the Plans.

## V. SETTLEMENT CLASS CERTIFICATION

### A. Class Certification Solely for Settlement Purposes.

Solely for purposes of effectuating this Settlement, the Parties agree to certification of the Settlement Class defined in Section II above. The Class Representatives will seek, and Defendants will not oppose, an order certifying the Settlement Class under Rule 23(b)(2) of the Federal Rules of Civil Procedure in connection with the Court's consideration of this Settlement. The certification of the Settlement Class shall be for settlement purposes only, and Defendants' agreement to class certification as part of this Settlement shall not be construed as an admission or acknowledgment of the appropriateness of any class for litigation purposes in this Action or in any other claims or actions against any of the Plans. If, for any reason, this Settlement Agreement is not finally approved or is terminated, any certification of the Settlement Class shall be null and void, and the Parties shall return to their positions before execution of this Settlement Agreement,

without prejudice to any arguments or positions that any Party may have asserted or could have asserted in opposition to or in support of class certification in the Action. The Court's approval or denial of any petition for Attorneys' Fees, Costs, and Expenses or for any Service Award shall not affect the validity or enforceability of this Settlement Agreement.

**B. Appointment of Class Representatives and Class Counsel.**

For settlement purposes, the Parties agree that the Class Representatives shall be appointed by the Court to represent the Settlement Class, and that Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. and Sinclair Law Firm, LLC shall be appointed as Class Counsel for the Settlement Class pursuant to Rule 23(g).

## VI. SETTLEMENT RELIEF

In consideration for the dismissal of the Action with prejudice and for the release of the Released Claims, subject to Court approval, Defendants agree to provide the following relief to the Settlement Class:

**A. The Plans' Continuing Directive Prohibiting the Use of Race-Based Demographic Adjustments.**

Effective June 8, 2021, the Plans directed any and all Neutral Physicians performing neuropsychological testing in connection with claims for benefits under the Plans to cease using race-based demographic adjustments in scoring or interpreting such tests (to the extent they may have been used). Defendants intended, and continue to intend and agree, that this prohibition is permanent, remains in effect, and applies to all current and future claims for benefits under the Plans, as well as to the re-evaluation of past claims pursuant to this Settlement Agreement.

**B. Rescoring Protocol and Reconsideration of Impairment Determinations.**

Defendants agree to review, rescore, and reassess, in accordance with the Rescoring Protocol, Settlement Class Members' neuropsychological testing data from tests previously administered by a Neutral Physician, excluding race-based demographic adjustments, as set forth in this Section VI.B. The purpose is to remove any impact of race-based demographic adjustments by reassessing Neutral Physician findings made in connection with prior claims for benefits under the Plans to make a Medical Determination as to whether a Settlement Class Member met the applicable standard for benefits in accordance with the Plan terms but for the use of any race-based demographic adjustments.

1. **Eligibility for Rescoring Based on Claim History:** For purposes of this Settlement Agreement, rescoring and reassessment shall apply to any prior claims for benefits under the Plans for NC benefits, T&P benefits, LOD benefits, or 88 benefit Plan eligibility based on dementia that meet all of the following criteria:

(a) the claim was submitted on or after January 1, 2012;

(b) the claim was either denied or, if approved at any benefit level lower than the maximum for which the player applied, it was –

(i) an application for NC benefits that was approved for "mild" NC benefits, but denied for "moderate" NC benefits; or

(ii) a combined application for NC and LOD benefits that was approved for "mild" or "moderate" NC benefits, but denied for higher-paying LOD benefits; or

(iii) a combined application for NC and LOD benefits that was approved for LOD benefits, but denied for higher-paying "mild" or "moderate" NC benefits; or

(iv) a combined application for NC and T&P benefits that was approved for NC benefits (at any level), but was denied for higher-paying T&P benefits; or

(v) a combined application for NC, LOD, and T&P benefits that was approved for NC benefits (at any level) and/or LOD benefits, but denied for higher-paying T&P benefits;

(c) the denial, or partial denial (as described in subsections (b)(i)-(b)(v) above), was based on valid neuropsychological testing by a Neutral Physician that included race-based demographic adjustments; and

(d) the claim is not otherwise excluded under section 2 below.

2. **Exclusions from Rescoring:** Claims for benefits (and their associated neuropsychological evaluations) that do not meet all of the above criteria shall not be subject to rescoring or reassessment. In addition, neuropsychological testing will not be rescored or reassessed under this Rescoring Protocol if –

(a) the neuropsychological testing occurred in connection with a claim for T&P benefits that was approved in any of the four available categories; or

(b) the neuropsychological testing occurred in connection with a claim that was denied for reasons other than that the Settlement Class Member did not meet the medical standard for the benefit based on a Neutral Physician's evaluation that included the use of race-based demographic adjustments. Such denial reasons are delineated in the Plans, and include, without limitation, that the Settlement Class Member failed to meet applicable administrative requirements (such as that the Player failed to attend a scheduled examination with a Neutral Physician, for example), or the claim was subject to a Plan exclusion (such as failed validity testing or having an impairment that was caused by substance abuse or a psychiatric condition, both of which preclude an award of NC benefits, for example); or

(c) in cases where a Settlement Class Member has undergone repeated neuropsychological testing with a Neutral Physician, a contemporaneous or subsequent examination without race-based demographic adjustments found that the Settlement Class Member did not have a neurocognitive impairment that would qualify him for a Plan benefit or an increased Plan benefit, as the case may be. This includes, for example, (1) claims initially denied on the basis of neuropsychological testing involving race-based demographic adjustments that were denied on appeal based on additional neuropsychological testing without race-based demographic adjustments; or (2) a later application by the same Player that includes neuropsychological testing without race-based demographic adjustments, and that testing showed the Settlement Class Member did not have a neurocognitive impairment that would have qualified him for a Plan benefit or an increased Plan benefit with the original application.

(d) When a Settlement Class Member applied for a combination of NC, T&P, and/or LOD benefits at the same time, the provisions of Article 7 of the Disability Plan will determine whether a particular claim is subject to rescoring. For example, if a Settlement Class Member applied for T&P and NC benefits at the same time, and he was awarded T&P, his NC claim will not be subject to rescoring. If a Settlement Class Member applied for T&P and LOD benefits at the same time, and he was awarded T&P, his LOD claim will not be subject to rescoring.

3. **Conversion to Raw Scores:** For the claims subject to Rescoring, all available neuropsychological testing data from the Settlement Class Member's prior Neutral Physician evaluations that included race-based demographic adjustments will be converted to their original raw test scores, thereby removing all prior such demographic adjustments under the Wechsler Adult Intelligence Scale ("WAIS"), the Wechsler Memory Scale ("WMS"), and the Boston Naming Test ("BNT"), which are the only neuropsychological tests understood to have the possibility of race-based demographic adjustments subject to rescoring under this Settlement Agreement. The result will be the "Raw Scores."

4. **Rescoring Excluding Race-Based Demographic Adjustments:** Raw Scores will be adjusted and rescored with no race-based demographic adjustments. The result will be the "Rescored Data."

5. **Review of Rescored Data:** The Experts will review the Rescored Data and reassess whether the data support a Medical Determination that the Settlement Class Member meets the applicable medical standard for Plan benefits or an increase in Plan benefits that he applied for. The Experts will reassess only those cognitive domains (as identified by the examining Neutral Physician) for which rescored data are available. When conducting a reassessment, the Experts may, as appropriate, also consider other documentary evidence in the contemporaneous administrative record, such as Neutral Physician reports and medical records submitted by the Settlement Class Member at the time of the application or appeal, as applicable. This review and reassessment will be conducted for the sole purpose of making Medical Determinations under this Settlement Agreement.

6. **Initial Determination:** Following review of the Rescored Data, the Plaintiffs' Expert will make a Medical Determination whether the Settlement Class Member meets the medical requirements for a benefit previously denied or for a higher level of benefit than was previously awarded. If the Plaintiffs' Expert concludes that the Settlement Class Member meets such medical requirements, the Plaintiffs' Expert shall complete a report, in a format agreed to by the Parties, summarizing the basis for his or her Medical Determination, and shall provide it to Defendants' Expert. Defendants' Expert will then review each such claim, including the Plaintiff's Expert's summary form, and make an independent Medical Determination. If both Experts agree, their joint Medical Determination shall be final and binding for purposes of the medical impairment finding, meaning that Settlement Class Members shall have no right to further appeal or challenge that Medical Determination. The Experts may confer in an attempt to reach consensus in this process. For the avoidance of doubt, where the Plaintiff's Expert determines that a Settlement Class Member does not meet the medical requirements for a benefit previously denied or for a higher level of benefit than was previously awarded, that Medical Determination shall be final and binding for the purposes of the medical impairment finding, and the Settlement Class Member shall have no right to further appeal or challenge that Medical Determination.

7. **Conflicting Conclusions:** If Plaintiffs' Expert and Defendants' Expert reach conflicting conclusions regarding the Initial Determinations and they cannot reach a joint Medical Determination pursuant to the process set forth above, then each Expert shall submit the completed report summarizing the basis for his or her Medical Determination, to the Neutral Third. The Neutral Third shall review the Rescored Data, any other information reviewed and/or relied upon by either Expert, the Experts' summary forms, and, at the Neutral Third's discretion, may confer with the Experts. The Neutral Third may not consider any information or documents not reviewed or relied on by the Experts. Class counsel and counsel for the Defendants shall be copied on all correspondence and communication with the Neutral Third, including an invitation to observe any conferral, should any occur. The Neutral Third shall cast a deciding third vote, confirmed in writing in a format agreed to by the Parties, to select the Medical Determination made by either Plaintiff's Expert or Defendants' Expert. The Neutral Third's Medical Determination shall be final and binding for purposes of the medical impairment finding, meaning that Settlement Class Members shall have no right to further appeal, challenge, or seek judicial review of that Medical Determination.

8. **Benefit Category Determination:** The Retirement Board, the Disability Board, or the 88 Board (or their designees), as applicable, shall apply the Medical Determination to the governing Plan terms to determine whether the Settlement Class Member qualifies for new benefits or for a higher level of benefits than was previously awarded. As an example, if a Settlement Class Member has applied for NC benefits, and the final and binding Medical Determination described in 6 and 7 above is that the Settlement Class Member has a mild neurocognitive impairment, the applicable Board will award NC benefits in the mild category, assuming the evaluation was properly rescored and reviewed under the Rescoring Protocol. For the avoidance of doubt, and solely for

purposes of the Settlement Agreement, the Medical Determination made by the Experts or the Neutral Third in the Rescoring Protocol will be deemed to satisfy, to the extent necessary, any requirement of a Plan that a Neutral Physician must find a Player disabled before he becomes eligible to receive a benefit.

9. **Classification of T&P Benefits:** If a Settlement Class Member has applied for T&P benefits, and the final and binding Medical Determination results in a finding of total and permanent disability within the meaning of the Plans, the Retirement Board or the Disability Board (or their designees), as applicable, shall determine the appropriate category of T&P benefits under the applicable provisions of the Plan in effect at the time of the application or appeal.

10. **No Benefit Reduction:** No Settlement Class Member shall have a pre-existing award of benefits reduced as a result of this rescoring and re-evaluation. Nothing in this Settlement Agreement shall preclude the Retirement Board, the Disability Board, or the 88 Board, as applicable, from conducting continuation reviews or other periodic reviews of benefit eligibility in accordance with the terms of the governing Plan documents. For the avoidance of doubt, in the event a continuation review pursuant to the Plans results in a determination that a Settlement Class Member no longer qualifies for benefits under the terms of the Plans, the discontinuation of benefits shall not be a violation of this Settlement Agreement.

11. **Administrative Adjustments:** The Parties agree to cooperate in good faith to make administrative adjustments as necessary to carry out the intent of this Settlement, provided that such adjustments (i) are consistent with the requirement that no race-based demographic adjustments shall be applied, and (ii) do not reduce any Settlement Class Member's existing benefits (except that clerical or ministerial errors may be corrected, subject to the Settlement Class Members ability to challenge any new clerical or ministerial errors as otherwise permitted by the Plans). For the avoidance of doubt, this paragraph does not limit or affect the Boards' authority to conduct continuation or other periodic reviews of benefit eligibility as provided in paragraph VI(C)(1) and under the governing Plan documents.

12. **Final Determination:** Each Settlement Class Member's Medical Determination and benefit entitlement, if any, shall be determined through the above process using only records possessed by the Plan at the time of the Neutral Physician examination, subject to the Rescoring Protocol, Rescored Data, and the Experts' summaries contemplated by this Settlement Agreement. For each Settlement Class Member, this process, once completed, shall constitute a full and final determination of the individual's qualification for the benefits claimed in their prior application, resolving all issues raised by the Class Action Complaint. Nothing in this Settlement Agreement shall limit any Settlement Class Member's right to submit a new or different claim for benefits under the governing Plan terms, nor shall anything herein modify the terms of the Plans themselves.

## C. Award of Applicable Benefits and Retroactive Payments.

1. **Benefit Awards and Ongoing Benefits.** As a result of the above Medical Determination, each Settlement Class Member whose neuropsychological testing is rescored will either (a) be determined to qualify for one or more of the benefits they had sought or qualify at a higher level of benefits than previously qualified or (b) be determined to remain at their current benefit level (or continue to receive no benefits, if none were previously awarded) under the rescored evaluation. Reclassification shall apply only to the specific benefits for which the Settlement Class Members originally applied. For every Settlement Class Member who is found, through the Settlement re-review process, to meet the requirements for a benefit that he was previously denied or for a higher level of benefit than he was previously awarded, the Retirement Board or the Disability Board, as applicable, shall reclassify that Settlement Class Member into the proper benefit category in accordance with the Medical Determinations and the governing Plan terms, and shall provide the benefits associated with that category according to the Plan(s) as in effect at the time of the initial application and as amended from time to time. Such benefits will remain subject to all applicable Plan provisions, including offsets such as qualified domestic relations orders, federal tax levies, and federal criminal garnishments. For the avoidance of doubt, any Settlement Class Member who is awarded benefits or reclassified to a higher level of benefits through this process shall remain subject to continuation reviews or other periodic evaluations of benefit eligibility in accordance with the governing Plan documents. In the event a continuation review pursuant to the Plans results in a determination that a Settlement Class Member no longer qualifies for benefits under the terms of the Plans, the discontinuation of benefits shall not be a violation of this Settlement Agreement. Effective as of a date specified by the Settlement (as detailed below), any Settlement Class Member who is awarded benefits or reclassified to a higher level of benefits through this process will be treated as if he had been awarded that benefit under the Plan(s) at the time of his initial application.

2. **Retroactive Disability Benefit Payments.** With respect to any Settlement Class Member who is determined to qualify for benefits they had sought but did not receive, or to qualify at a higher level of benefits than previously qualified, in addition to being placed into a new benefit category prospectively, each such qualifying Settlement Class Member shall receive a lump-sum payment in the amount of the benefits they would have been receiving during the period when their claim was previously denied or paid at a lower benefit level. For the avoidance of doubt, any prospective benefits awarded under this Settlement shall be paid in accordance with the governing Plan terms in effect at the time of payment, including all applicable offsets. The amount of this retroactive payment for each eligible Settlement Class Member shall be calculated as follows:

a) The Plans will determine the monthly (or applicable periodic) benefit amount that the Settlement Class Member would have received had the Settlement Class Member originally been approved for benefits, or approved for the higher benefit level, at the time of his initial application. This determination will be made in accordance with the Plans' terms then in effect and as amended from time to time and the Settlement Class Member's circumstances at that time

(age, years since retirement, etc.), such that it accurately reflects the benefit that would have been paid.

b) The Plans will then calculate the total of such benefits from a start date of two months prior to the Settlement Class Member's original application date for the benefit in question, through the earlier of either a) the effective date of benefit award or reclassification under this Settlement, or b) the date on which that benefit would have been exhausted under the Plans' terms then in effect and as amended from time to time. This total amount shall be referred to as the "Back Benefits Amount." If the Settlement Class Member had multiple relevant application dates (*e.g.*, initially applied for LOD on one date and later for T&P), the calculation will be done separately for each benefit, as appropriate.

c) From this total Back Benefits Amount, the Plans may deduct any disability benefits actually paid to the Settlement Class Member for the overlapping time period to ensure no double recovery of benefits already received, while still giving the Settlement Class Member the full incremental amount they did not receive.

d) The net result of the above calculation is the Settlement Class Member's retroactive benefit award (the "Past Due Benefits Amount"). The Plans shall pay each such Settlement Class Member, in accordance with the Plans, their individual Past Due Benefits Amount in a lump sum, subject to all applicable offsets, except that the Plans will honor all applicable qualified domestic relations orders, federal tax levies and liens, and criminal garnishments in effect on the date of the retroactive benefit award.

3. **Interest on Past Due Benefits.** In addition to the Past Due Benefits Amount described above, each Settlement Class Member who is entitled to a Past Due Benefits Amount will receive simple interest on that amount at the rate of 6% (six percent) per annum. Interest shall be calculated from the month when each withheld benefit payment would have been made (had the Settlement Class Member originally been approved at the level determined through the Rescoring Protocol) up to the month of payment under this Agreement. This interest payment shall be included in the lump-sum distribution to each eligible Settlement Class Member, separately itemized.

4. **Payment Timing and Taxes.** The Plans shall make the retroactive lump-sum payments (including interest) to all eligible Settlement Class Members as soon as administratively feasible after the Effective Date. All such payments will be issued no later than 90 days after the decision by the Retirement Board or a Disability Board that a benefit is owed, on a per Settlement Class Member basis, by check mailed to the Settlement Class Member's last known address. Any required tax withholdings or reporting on these payments shall be handled in accordance with the Plans' normal procedures. The Settlement Class Members will be solely responsible for any tax obligations resulting from the payments they receive under this Settlement.

5. **88 Plan – Special Application Right.** If, during the Rescoring Protocol review, it is determined by the Experts that a Settlement Class Member's rescored cognitive data, together with any other relevant information in the contemporaneous administrative record, indicates a diagnosis of dementia or an award of NC benefits that would make him eligible for benefits pursuant to the 88 Plan, that Settlement Class Member shall be notified of their potential eligibility and given the opportunity to apply for 88 Plan reimbursements within 12 months of the date of the Determination Letter. Such applications will be subject to the rules of 88 Plan in effect at the time of the application subject to the Rescoring Protocol and as amended from time to time, subject to the following exclusion: where such Settlement Class Member has already been eligible to submit reimbursement claims incurred in any period of time, he shall be ineligible to submit reimbursement claims for such period pursuant to this Agreement. In all other respects, the 88 Plan application and disputes process shall apply, including the submission of substantiating evidence for reimbursement claims. Any 88 Plan benefits awarded pursuant to this Section shall begin as of the date permitted in the Plan terms in effect at the time of the application subject to rescoring and as amended from time to time.

6. **Finality of Benefit Determinations.** The benefit determinations reached by the Plans for each Settlement Class Member through the process above (including any reclassification and any award or denial of Past Due Benefits Amount) shall be final, binding, non-appealable to any Board, and not subject to judicial review in any Court. Settlement Class Members shall have no right to further review, appeal, or challenge (whether through the Plans' administrative claims process or in court) of the outcome of their claim under this Settlement's special review process, except that Settlement Class Members retain the right to enforce the terms of this Settlement Agreement. For the avoidance of doubt, the finality of benefit determinations described in this paragraph shall be read together with, and supplemented by, the release provisions set forth in Section VII.

7. **Continued Application of Plan Terms.** Nothing in this Settlement Agreement shall affect the application of the Plans' benefit provisions to a Settlement Class Member who is reclassified and awarded benefits except as specifically set forth in this Settlement Agreement. Settlement Class Members awarded benefits as a result of this Settlement remain subject to any periodic re-evaluation under Plan rules (without the application of race-based demographic adjustments) to determine continued eligibility, and may apply for future or different benefits pursuant to the terms of any Plan, subject to those applications being evaluated without race-based demographic adjustments. Settlement Class Members that are determined not to qualify for a particular benefit pursuant to this Settlement Agreement may submit a new application for benefits in accordance with the applicable Plan terms.

## D. Additional Administration Provisions.

1. **Notification of Results to Settlement Class Members.** Defendants shall provide each Settlement Class Member with a written notification ("Determination Letter") of the outcome of the re-evaluation of their claim and, to the extent applicable, entitlement to and award of any Past Due Benefits Amount. A sample form of such notice is attached

as Exhibit A ("Sample Determination Letter"). The content of individual Determination Letters may be tailored to the individual's circumstances. Class Counsel will be contemporaneously provided with the Determination Letters.

2. **Administration and Costs.** The Plans shall administer this Settlement, including identifying Settlement Class Members whose claims are eligible for rescoring under Section VI.B.1 and not excluded under Section VI.B.2, with the exception of any necessary monitoring of the Rescoring Protocol by Class Counsel. The costs and fees of settlement administration shall be borne by the Plans and shall not reduce, impact, or come out of any benefits or payments to Settlement Class Members. Defendants may, at their discretion, use Plan assets or Plan administrative accounts to pay for the costs of settlement administration to the extent permitted by law.

3. **Confirmatory Discovery and Data Access.** The Parties have engaged in confirmatory discovery regarding the proposed settlement, such as identifying potential Class Members, implementing the Rescoring Protocol, and calculating Past Due Benefits Amounts. To the extent necessary, Defendants agree to provide reasonable additional such discovery to allow Class Counsel to confirm the accuracy and sufficiency of the Settlement's implementation plan. All such confirmatory discovery is confidential and subject to the existing Protective Order (ECF No. 35) in this Action.

4. **Non-Retaliation and Preservation of Rights.** Defendants agree that no Settlement Class Member shall be subject to any retaliation, adverse action, or reduction of any other benefits because of their inclusion in this Settlement Class or their receipt of or change in benefits through this Settlement (except to any extent applicable under normal Plan review for changes in condition).

## VII. <u>RELEASE OF CLAIMS</u>

**A. Release by Settlement Class.** Upon the Effective Date, each of the Releasing Parties fully release and forever discharge each of the Released Parties from any and all of the Released Claims, as defined in Section II (the "Release"). The Releasing Parties agree not to sue or assert any of the Released Claims against any of the Released Parties in any forum, including via any currently pending litigation in any court, and agree to be forever barred from doing so, whether on their own behalf or on behalf of any other person. This Release is given regardless of whether any Settlement Class Member actually receives a benefit or payment under this Settlement; every Settlement Class Member is bound by the Release. The Parties intend that this Release be interpreted broadly to extinguish any and all claims that were brought, or could have been brought, arising from or relating to the matters alleged in the Action.

**B. Scope of Release; Waiver of Unknown Claims.** The Release set forth above covers both known and Unknown Claims arising from or related to the allegations within the Class Action Complaint. "Unknown Claims" means any and all Released Claims arising from or related to the allegations within the Class Action Complaint that any Releasing Party does not know or suspect to exist in his favor at the time of the release. The Class Representatives, on behalf of the Settlement Class, expressly acknowledge that they have consulted with counsel and understand the significance of this waiver of Unknown Claims and waiver of rights under California Civil

Code §1542 (and similar state or federal laws), which provides: *"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, that if known by him or her would have materially affected his or her settlement with the debtor or released party."* To the extent applicable, the Settlement Class, through the Class Representatives, expressly waives any protection of §1542 and any similar law.

**C. Release by Class Representatives.** In addition to the Release, which binds the Class Representatives regardless of whether any Service Award is awarded by the Court, the Class Representatives, as a condition of this Settlement and in consideration of any Service Awards awarded by the Court, shall each sign a separate General Release (which may be attached as an exhibit to the Final Approval motion) confirming that, as of the Effective Date, they individually release and discharge the Released Parties from any and all claims of any kind that they could personally assert against Defendants up to the date of execution, whether arising from or related to the Action or not, excepting only claims to enforce the Settlement. This broader general release by the Class Representatives includes a waiver of unknown claims and a covenant not to sue. It is understood that this additional release applies only to the Class Representatives in their individual capacity (not the absent Settlement Class Members). The Class Representatives, in their individual capacity, expressly acknowledge that they have consulted with counsel and understand the significance of this waiver of unknown claims and waiver of rights under California Civil Code §1542 (and similar state or federal laws), which provides: *"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, that if known by him or her would have materially affected his or her settlement with the debtor or released party."* To the extent applicable, the Class Representatives expressly waive any protection of §1542 and any similar law. The Class Representatives understand and acknowledge the significance of these waivers.

**D. No Release of Future Claims.** The Released Claims do not include any claim arising from facts or events occurring after the Effective Date.

## VIII. <u>ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS</u>

**A. Attorneys' Fees, Costs and Expenses.** Class Counsel will apply to the Court for an award of Attorneys' Fees, Costs, and Expenses incurred in connection with the Action in a timely manner so that the Court may address it contemporaneously with the Final Approval.

**B. Defendants' Right to Oppose.** Defendants reserve all rights to oppose any application by Class Counsel for Attorneys' Fees, Costs, and Expenses, including Plaintiffs' Expert's fees, in whole or in part.

**C. Basis for Fee Request; Court Determination.** In their application for an award of Attorneys' Fees, Costs, and Expenses (the "Fee Petition"), Class Counsel will provide the Court with information supporting their requested fees and costs, including timesheets of the work performed, the hours and rates for each timekeeper, and the outcomes achieved for the Class. The

failure of the Court to approve Plaintiffs' Fee Petition, or approval by the Court of a lesser amount than requested, shall not affect the other terms of the Settlement.

**D. Service Awards to Class Representatives.** Class Counsel may request as part of the Fee Petition that the Court approve a Service Award for each of the Class Representatives, to be paid by the Plans (separate from and in addition to any applicable Settlement Class Member relief) if approved. Defendants reserve all rights to oppose any application by Class Counsel for Service Awards to Class Representative in whole or in part. The Service Awards, if approved, shall be paid by the Plans to Class Counsel (for distribution to the Class Representatives) at the same time as the Fee Award. Payment is contingent on the Class Representatives providing the Plans with any required tax information (such awards may be reported as 1099 income with all tax consequences being the responsibility of the Class Representatives). The failure of the Court to approve Service Awards, or approval of a lesser amount than requested, shall not affect the other terms of the Settlement. If approved, each Class Representative agrees to accept the Service Award in full satisfaction of any personal claims for compensation for their efforts in the Action and agrees to be bound by the additional release of claims in their individual capacity.

**E. No Additional Class Counsel Payments; Plan Coverage of Fees and Expenses of Administering Settlement.** Each Party shall bear its own attorneys' fees and expenses except as explicitly provided in this Section or as awarded by the Court. The Plans shall pay the reasonable fees and expenses of implementing the Settlement, including reasonable Plaintiffs' Expert, Defendants' Expert, and Neutral Third fees and expenses, not to exceed $500 per hour for each Expert and the Neutral Third (exclusive of administrative fees and charges of the expert search firm that the Parties worked with to identify and retain the Neutral Third), unless otherwise agreed to in writing by the Parties. Such fees and expenses will not be separately charged to or deducted from any Settlement Class Member benefits awarded as a result of the Settlement.

**F. Timing of Fee and Service Award Payments.** No Attorneys' Fees, Costs, and Expenses and/or Service Awards shall be paid by the Plans until the later of (i) the Effective Date and (ii) the date on which the Court's order awarding any such Attorneys' Fees, Costs, and Expenses and/or Service Awards becomes final and non-appealable.

## IX. PRELIMINARY APPROVAL, FINAL APPROVAL AND COURT ORDER

**A. Submission of Settlement to Court.** Within 15 days of full execution of this Settlement Agreement, Class Counsel shall file a motion with the Court seeking preliminary approval of the Settlement and of the certification of the Settlement Class for purposes of settlement (the "Motion for Preliminary Approval"). The Motion for Preliminary Approval shall request entry of a proposed Preliminary Approval Order and shall attach a proposed notice to the Settlement Class Members as an exhibit. The Parties shall use their best efforts to obtain entry of the Preliminary Approval Order.

**B. Notice to the Settlement Class Members.** The Parties shall jointly submit a proposed notice to the Settlement Class Members for the Court's approval as an exhibit to the Motion for Preliminary Approval. Within thirty (30) days of entry of the Preliminary Approval Order, Defendants shall cause a copy of the notice to be mailed by first-class United States mail, postage prepaid, to all Settlement Class Members who can be identified with reasonable effort.

Any Settlement Class Member wishing to object to the Settlement shall be required to file written objections with the Court, and serve copies on Class Counsel and Defense Counsel, no later than twenty-one (21) calendar days before the Final Fairness Hearing. The costs of notice shall be borne by the Plans and shall not reduce, impact, or come out of any benefits or payments to Settlement Class Members.

**C. Findings in Preliminary Approval Order.** The proposed Preliminary Approval Order will include provisions that: (i) preliminarily approve the Settlement Agreement as fair, reasonable, and adequate; (ii) certify the Settlement Class under Rules 23(b)(2), for settlement purposes only; (iii) appoint the Class Representatives and Class Counsel for Settlement purposes; (iv) approve the proposed notice to the Settlement Class Members and direct that it be mailed in accordance with Section IX.B above; (v) schedule the Final Fairness Hearing; (vi) impose a stay of all non-Settlement-related proceedings in the Action pending final approval; and (vii) preliminarily enjoin all Settlement Class Members from filing, prosecuting, or maintaining any action in federal or state court that asserts any of the Released Claims pending the Court's final determination of whether the Settlement should be approved, including proceedings asserting Released Claims on behalf of putative class members in other pending actions.

**D. Motion for Final Approval.** No later than fourteen (14) days prior to the Final Fairness Hearing (or by the deadline set by the Court), Class Counsel shall file a Motion for Final Approval of the Settlement. The Parties shall use their best efforts to obtain entry of the Final Approval Order and Judgment.

**E. Entry of Final Approval Order and Judgment.** At or following the Final Fairness Hearing, and upon the Court's finding that the Settlement is fair, reasonable, and adequate, the Parties shall request that the Court enter a Final Approval Order and Judgment which shall, among other things:

1. Approve the Settlement Agreement and adjudge the terms thereof to be fair, reasonable, and adequate to the Settlement Class Members, pursuant to Rule 23(e);

2. Confirm the certification of the Settlement Class for purposes of the Settlement;

3. Dismiss the Action on the merits and with prejudice, without fees or costs to any party except as provided in this Settlement Agreement or the Court's order on Attorneys' Fees and Costs;

4. Incorporate the releases set forth in Section VII of this Settlement Agreement, and forever discharge the Released Parties from the Released Claims as provided herein, and permanently bar and enjoin the Releasing Parties from asserting any of the Released Claims thereafter;

5. Authorize and direct the Parties to implement the terms of the Settlement Agreement, including the Rescoring Protocol, pursuant to the deadlines and procedures set forth herein;

6. Reserve the Court's continuing jurisdiction over the Settlement Agreement, including resolution of any disputes that may arise regarding the Settlement Agreement (as provided for in Section XI below);

7. Address the application for Attorneys' Fees, Costs, and Expenses, and Service Awards, as the Court sees fit, consistent with the terms of this Settlement Agreement (the Court's rulings on fees and Service Awards shall be embodied in the Final Order or a separate order, but in either event, the substance of the Settlement is not conditioned on any particular award of fees or Service Awards); and

8. Contain such other findings and provisions as the Parties may reasonably request and the Court deems it just and proper to effectuate the Settlement.

Upon entry of the Final Approval Order and Judgment, the Settlement Agreement shall be deemed approved pursuant to Rule 23(e), and the Parties shall remain bound by and shall perform their obligations under the Settlement Agreement in accordance with its terms.

**F. Occurrence of Effective Date.** Upon entry of the Final Approval Order and Judgment, the Parties shall await the occurrence of the Effective Date as defined in Section II. If there are no objectors and no appeals, the Effective Date will likely occur 30-days after entry of the judgment (when the time for appeal expires). If an appeal or other post-judgment motion is filed, the Effective Date will be deferred until final resolution of any such proceedings in favor of upholding the Settlement. Defendants shall provide notice to Class Counsel when the Effective Date has occurred.

**G. Voidance of Settlement if Not Approved.** If the Court refuses to approve any material term of this Settlement, including certification of the Settlement Class as provided in Section V, or if such approval is reversed or vacated on appeal, or if the Court refuses to enter or materially alters the Final Approval Order and Judgment, or if the Effective Date does not occur for any reason, then the Settlement Agreement shall be null and void and of no force and effect, unless the Parties mutually agree in writing to proceed with some modified form of the settlement, subject to Court approval; provided, however, that any Court ruling concerning Attorneys' Fees, Costs, and Expenses or Service Awards shall not constitute a material term for purposes of this paragraph and shall not affect the validity or enforceability of the Settlement Agreement or the Final Approval Order and Judgment. In such event, the Settlement Agreement shall be terminated, as defined herein as "Effect of Termination or Non-Approval."

**H. No Solicitation of Objections or Exclusions.** The Parties agree to use their best efforts to carry out the terms of this Settlement and to secure the Court's approval. Neither Party nor their counsel will solicit or encourage any Settlement Class Member to object to the Settlement or to appeal the Final Approval Order. To the contrary, Class Counsel will inform any Settlement Class Member who inquires that the Settlement is in the best interest of the Class in Class Counsel's view. Defendants and their counsel will similarly refrain from soliciting objections (except that communications by Plan personnel with Settlement Class Members in the ordinary

course that may occur, but are not intended to undermine the Settlement, shall not be a violation; and Defendants may respond accurately to any inquiries).

## X. CAFA NOTICE

No later than ten (10) calendar days after the filing of the motion for preliminary approval of the Settlement, Defendants shall serve notices pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711–1715 ("CAFA") on the Attorney General of the United States, the Secretary of the Department of Labor, and the attorneys general of all states in which Settlement Class Members reside, as specified by 28 U.S.C. § 1715 and shall provide copies of the same to Class Counsel.

## XI. JURISDICTION AND ENFORCEMENT

**A. Continuing Jurisdiction of the Court**. The Court shall retain continuing jurisdiction to enforce the terms of the Settlement Agreement. The Final Approval Order and Judgment will incorporate this provision.

**B. Dispute Resolution**. If either Party believes that the other Party has violated any provision of this Settlement Agreement, before taking any action through the Court, that Party shall provide the other Party written notice of the alleged violation and a reasonable opportunity of not less than fifteen (15) days to cure the violation or otherwise resolve the issue. The Parties (through counsel) shall meet and confer in good faith regarding any dispute before seeking Court intervention. In the event Court intervention is needed, the prevailing party in any enforcement action may seek, and the Court may in its discretion award, appropriate relief including specific performance, injunctive relief, and reasonable attorneys' fees and expenses for enforcing the Settlement Agreement. Nothing in this Section XI.B shall authorize the Court to review, amend, vacate, or otherwise modify any Medical Determination made pursuant to this Agreement.

## XII. MISCELLANEOUS PROVISIONS

**A. Public Statements and Confidentiality.** Prior to the filing of the motion for preliminary approval, the Parties and their counsel shall keep strictly confidential, and shall not disclose to any third party, the terms and conditions of this Settlement Agreement. Plaintiffs further agree to maintain the confidentiality of all documents and other discovery materials produced by Defendants in this matter. After the motion for preliminary approval has been filed, the Parties and their counsel may make public statements regarding the Settlement, provided that, before issuing any press release or other public statement concerning the Settlement, each Party shall provide the other with a copy of the proposed statement and a reasonable opportunity to review and comment, to the extent reasonably possible.

**B. Non-Disparagement.** Class Counsel and Plaintiffs agree not to disparage Defendants, Defense Counsel, or the Released Parties regarding any issues addressed in the Action or the Settlement. Likewise, Defendants and Defense Counsel agree not to disparage Plaintiffs or Class Counsel regarding any issues addressed in the Action or the Settlement. Nothing in this

provision shall prevent Class Counsel from communicating with Settlement Class Members or responding to their inquiries, or from making factual statements in court filings.

**C. Effect of Termination or Non-Approval.** If the Settlement is not approved by the Court or does not become final for any reason, then this Settlement Agreement shall be null and void and of no force or effect. In such event, none of the terms of this Settlement Agreement shall be admissible in any trial or otherwise used for any purpose in the Action or any other proceeding. The Parties shall be restored to their respective positions as of immediately prior to execution of this Settlement Agreement. Any order or judgment entered by the Court in furtherance of this Settlement Agreement shall likewise be treated as void if final approval is not achieved. If the Settlement is voided or vacated, the Settlement (including any briefs or communications about the Settlement) shall not be used by any person against any Party in any later proceedings, and any judgment or orders will be reversed. The Parties will in good faith negotiate a new scheduling order for the Action to proceed, as necessary.

**D. Modification.** This Settlement Agreement (including its exhibits, which are material parts hereof) may not be changed, altered, or modified, except in writing and signed by all Parties and approved by the Court. After entry of the Final Approval Order, the Parties may by written agreement effect minor modifications to the implementation of the Settlement without further Court approval, provided that such modifications are consistent with the Court's Final Approval Order and do not materially diminish the rights or benefits of Settlement Class Members. Any material modifications must be approved by the Court.

**E. Integration Clause.** This Settlement Agreement, including all attached exhibits, contains the entire agreement between the Parties relating to the Settlement of the Action, and supersedes all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written, concerning the Settlement. No rights under this Settlement Agreement may be waived except in writing. The Parties acknowledge that no other promises, agreements, or conditions exist other than those set forth in this Settlement Agreement and its exhibits.

**F. Binding on Successors.** This Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties. Without limiting the generality of the foregoing: (a) this Settlement Agreement shall be binding upon any successor trustees or administrators of the Plans; and (b) in the event of any merger or consolidation of the Plans into another plan, the terms of this Settlement Agreement shall continue to apply to the participants of the successor plan who are Settlement Class Members, and the successor plan shall be obligated to provide the benefits described herein, subject to the terms of the plan as it is amended from time to time. Class Counsel may include appropriate language in the Final Order to ensure such obligations run with the Plans.

**G. Applicable Law.** This Settlement Agreement is governed by and shall be interpreted according to the laws of the United States, including federal common law and, where applicable, the laws of the State of Maryland without regard to its conflict of law principles. Any dispute arising out of or relating to this Settlement Agreement shall be resolved exclusively in the

United States District Court for the District of Maryland, which shall retain jurisdiction as noted above.

**H. Execution in Counterparts.** This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures may occur in person or be exchanged by fax or email (PDF), and such signatures shall be deemed as valid as originals. The date of execution shall be the latest date upon which any party signs the Settlement Agreement. The Parties agree to be bound by each other's electronically transmitted signatures.

**I. Voidance of Prior Agreements.** This Settlement Agreement supersedes any prior agreements between the Parties related to settlement. In the event of any conflict between this Settlement Agreement and any prior term sheet or memorandum of understanding, this Settlement Agreement shall control. However, if necessary to show the history of negotiations, the Parties may refer to the existence of earlier drafts or the term sheets.

**J. Authority of Signatories.** Each person executing this Settlement Agreement on behalf of any Party hereto represents that such person has the authority to sign and bind that Party. Each of the Class Representatives has authorized Class Counsel to enter into this Agreement on their behalf. By signing below, each Party and counsel warrant that they have read this Settlement Agreement and understand and consent to all its terms.

**K. Retention of Exhibits and Records.** Class Counsel and Defense Counsel shall maintain copies of all important documents and correspondence in this case, including a master list of Settlement Class Members and their rescoring and benefit determination outcomes, for a period of at least five (5) years from the Effective Date, in case such records are needed to enforce or effectuate the Settlement or respond to inquiries. The Parties agree to reasonably cooperate with each other in responding to any inquiries or issues regarding Settlement implementation even after the case is closed, consistent with their ethical and legal obligations.

**L. Headings for Convenience Only.** The headings in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of the Settlement Agreement. All references to section numbers refer to sections of this Settlement Agreement, unless otherwise noted.

**M. Severability.** The provisions of this Settlement Agreement are not severable except as stated herein. However, if any provision of this Settlement Agreement is held to be invalid, void, or unenforceable for any reason by a court of competent jurisdiction (before or after the Final Approval Order), the Parties shall negotiate in good faith to modify the Agreement to effectuate the original intent of the Parties as closely as possible. If a mutually agreeable modification cannot be reached and the invalid provision is material, the entire Agreement may be rendered null and void at the option of either Party, unless the Court, upon motion of a Party, rules that the provision is not material and that the Settlement may proceed without it.

****

SIGNATURES PAGES FOLLOW

IN WITNESS WHEREOF, the Parties hereto, by and through their duly authorized representatives, have executed this Class Action Settlement Agreement as of the dates indicated below.

**For the Class Representatives and the Settlement Class:**

May 29, 2026

Stacey Bailey, Class Representative Date
(Signed by W. Daniel "Dee" Miles, III with the express permission of Stacey Bailey)

May 29, 2026

Eric Curry, Class Representative Date
(Signed by W. Daniel "Dee" Miles, III with the express permission of Eric Curry)

**Approved as to form and content by Co-Lead Class Counsel for Plaintiffs Stacey Bailey and Eric Curry:**

May 29, 2026

W. Daniel "Dee" Miles, III Date
Beasley, Allen, Crow, Methvin,
Portis & Miles, P.C.

Thomas O. Sinclair

Thomas O. Sinclair Date
Sinclair Law Firm LLC

**For Defendants The NFL Player Disability & Survivor Benefit Plan, The Disability Board of the NFL Player Disability & Survivor Benefit Plan, The Disability Initial Claims Committee of the NFL Player Disability & Survivor Benefit Plan, The Bert Bell/Pete Rozelle NFL Player Retirement Plan, The Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan, The Disability Initial Claims Committee of the Bert Bell/Pete Rozelle NFL Player Retirement Plan, The 88 Plan and The 88 Board:**

[INSERT] Date

**Approved as to form and content by Counsel for Defendants The NFL Player Disability & Survivor Benefit Plan, The Disability Board of the NFL Player Disability & Survivor Benefit Plan, The Disability Initial Claims Committee of the NFL Player Disability & Survivor Benefit Plan, The Bert Bell/Pete Rozelle NFL Player Retirement Plan, The Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan, The Disability Initial Claims Committee of the Bert Bell/Pete Rozelle NFL Player Retirement Plan, The 88 Plan and The 88 Board:**

[INSERT] Date

Eric Curry, Class Representative Date

**Approved as to form and content by Co-Lead Class Counsel for Plaintiffs Stacey Bailey and Eric Curry:**

W. Daniel "Dee" Miles, III
Beasley, Allen, Crow, Methvin,
Portis & Miles, P.C.

Date

Thomas O. Sinclair
Sinclair Law Firm LLC

Date

**For Defendants The NFL Player Disability & Survivor Benefit Plan, The Disability Board of the NFL Player Disability & Survivor Benefit Plan, The Disability Initial Claims Committee of the NFL Player Disability & Survivor Benefit Plan, The Bert Bell/Pete Rozelle NFL Player Retirement Plan, The Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan, The Disability Initial Claims Committee of the Bert Bell/Pete Rozelle NFL Player Retirement Plan, The 88 Plan and The 88 Board:**

*Alvaro Anillo* May 29, 2026

Alvaro Anillo
Groom Law Group, Chartered

Date

**Approved as to form and content by Counsel for Defendants The NFL Player Disability & Survivor Benefit Plan, The Disability Board of the NFL Player Disability & Survivor Benefit Plan, The Disability Initial Claims Committee of the NFL Player Disability & Survivor Benefit Plan, The Bert Bell/Pete Rozelle NFL Player Retirement Plan, The Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan, The Disability Initial Claims Committee of the Bert Bell/Pete Rozelle NFL Player Retirement Plan, The 88 Plan and The 88 Board:**

*Alvaro Anillo* May 29, 2026

______________________________ ______________________________

Alvaro Anillo Date
Groom Law Group, Chartered

**EXHIBITS:**

- **Exhibit A:** Sample Decision Notice to Settlement Class Member (Post-Rescoring Outcome Letter)

**Exhibit A – Sample Decision Notice to Class Member**

[Your Name]
[Your Address]
[City, State ZIP Code]
[Date]

Re: Re-Evaluation of Your Disability Benefits Claim

Dear [Class Member Name],
We are writing to inform you of the outcome of the court-approved re-evaluation of your disability benefits claim under the NFL Player Disability and Retirement Plans. As you may be aware, the Plans agreed to re-assess certain prior benefit claims that may have been affected by the use of race-based demographic adjustments in neuropsychological testing.

As a result of the neuropsychological test rescoring excluding race-based demographic adjustments, and the expert review of such re-scored test data, it has been determined that:
[ ] Your application for [Mild / Moderate Neurocognitive / Line of Duty / Total and Permanent Disability] benefits remains denied.
[ ] The approval of your claim in the [Mild / Moderate Neurocognitive / Line of Duty / Total and Permanent Disability] category of benefits remains unchanged.
[ ] You have been approved for [Mild / Moderate Neurocognitive / Line of Duty / Total and Permanent Disability] benefits.
[ ] [If approved] You will begin receiving monthly benefits of $[amount], starting on [date].
[ ] [If approved], You are entitled to a lump-sum payment of $[amount], which includes retroactive benefits and interest, for the period [date] to [date].

This determination is final and binding under the class action settlement. If you have questions, please contact Class Counsel at the phone number or website listed below.

Sincerely,
[Plan Administrator Name]
NFL Disability Plan Administration
For questions, please contact:
[Class Counsel Contact Info]
[Settlement Website URL]
[Toll-Free Number]