# EXHIBIT B

| | |
|---|---|
| **IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND BALTIMORE DIVISION**<br><br>**STACEY BAILEY, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN, et al.,**<br><br>Defendants. | **Case No. 1:23-cv-02661-JRR**<br><br>**DECLARATION OF THOMAS O'NEAL SINCLAIR IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

## I. INTRODUCTION AND PURPOSE

1. I am Thomas O'Neal Sinclair, the managing member of Sinclair Law Firm, LLC ("Sinclair Law") in Birmingham, Alabama. I was appointed Co-Lead Class Counsel for the Settlement Class in this action and have been admitted pro hac vice before this Court.

2. I submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the matters stated below, except where I identify a matter as based upon the books and records of Sinclair Law, and I could testify competently to each of them.

3. This declaration addresses my qualifications, the leadership and strategic functions I performed, the work Sinclair Law completed before and after the Complaint was filed, the systems I created to promote efficiency and avoid duplication, the reasonableness of Sinclair Law's hours and rates, the billing judgment I exercised before presenting those hours to the Court, the expenses advanced by Sinclair Law, and the results obtained for the Settlement Class.

4. My principal contribution cannot be measured only by counting pleadings that bear my name or hearings at which I appeared. From the investigation preceding the Complaint through the negotiation of the Settlement and the preparation of this fee application, one of my central responsibilities was to design, direct, test, and continually refine the strategic framework within which this multi-firm litigation proceeded.

5. I describe my own work in this declaration without comparing it to, diminishing, or claiming credit for work performed by any other member of the team. The result was produced by a capable and committed group of lawyers, professionals, experts, staff, and Class Representatives. My purpose is to provide the Court a complete factual record of the work I performed, the judgment I exercised and to attest to the accuracy and authenticity of the billing record and costs report attached hereto pages numbered 1 to 41.

## II. PROFESSIONAL BACKGROUND, LEADERSHIP, AND STRATEGIC EXPERIENCE

6. I first learned principles of leadership and disciplined organization at military boarding school. I later refined those principles while serving in the United States Marine Corps, including service as a noncommissioned officer.

7. The Marine Corps taught me that leadership is not measured by performing every task personally. It requires a clear mission, unity of effort, accountable delegation, reliable lines of communication, disciplined preparation, and the ability to adjust a plan when facts change without losing sight of the objective.

8. Those principles have remained central to my management of complex legal matters. In a large case, the leader's job is to make sure that the right work is performed by the right person, at the right time, in the right sequence, and communicated through a structure that minimizes confusion and unnecessary repetition.

9. After my military service, I attended the University of Alabama and graduated with distinction with a Bachelor of Science in Commerce and Business Administration. I received the University's award for Most Outstanding Undergraduate in Finance and Economics.

10. I worked briefly in the finance industry before attending Cumberland School of Law at Samford University. I received my law degree in 1999 and was admitted to the Alabama Bar in September 1999.

11. During the early years of my legal career, I worked on the corporate and defense side of complex automotive and product-liability litigation, including in-house assignments for automobile manufacturers and a national coordinating-counsel designation for a multinational manufacturer. Within my first year of practice, I was seconded to a large manufacturer and entrusted with managing complex product-liability matters in approximately a dozen states and claims arising from Central and South America and serving as representative for the corporation in Multi-District Litigation proceedings.

12. That work gave me an unusually early opportunity to view litigation from the perspective of sophisticated corporate clients. I learned how institutional clients evaluate risk, demand clear reporting, allocate work among outside counsel, assess strategy, and review legal invoices for necessity, duplication, staffing, and value.

13. In 2002, I founded my own practice and began concentrating on claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA"). By the time of this declaration, I have practiced law for approximately twenty-seven years and have devoted approximately twenty-four years principally to ERISA benefit, fiduciary, pension, insurance, and related litigation.

14. I have personally handled more than one thousand ERISA benefit claims, including administrative claims and appeals, litigation in federal district courts throughout the country, appellate proceedings in multiple circuits, and class and representative matters involving plan-wide relief.

15. My practice is national. I have represented participants and beneficiaries residing in nearly every state and have worked with lawyers, experts, plans, insurers, employers, and fiduciaries across the country.

16. I have been admitted to practice in Alabama; the United States District Courts for the Northern, Middle, and Southern Districts of Alabama; the United States District Court for the Northern District of Florida; the United States District Court for the Eastern District of Tennessee; the

United States Courts of Appeals for the Second, Fifth, Sixth, and Eleventh Circuits; and the Supreme Court of the United States.

17. My ERISA work has included individual disability and life-insurance claims, pension claims, plan-document and claims-procedure disputes, breach-of-fiduciary-duty claims, appellate matters, and complex class litigation. I previously served as class counsel for thousands of ERISA plan participants in *Reyes v. Bakery & Confectionery Union & Industry International Pension Fund*, No. 3:14-cv-05596-JST (N.D. Cal.).

18. I have been invited to teach and present at national programs concerning ERISA claims and litigation. I have presented to practitioners and judges, published articles concerning ERISA benefit claims, and been recognized by members of the bar in my geographic market for plaintiff-side ERISA work.

19. My professional role has not been limited to courtroom advocacy. Throughout my career, corporate decisionmakers, public officials, candidates, political organizations, lawyers, law firms and other professionals have sought my strategic advice concerning complex risk management, sequencing, negotiation, communications, and organizational decision-making.

20. The common element in those engagements is the ability to absorb a large and sometimes disorganized body of information, identify the few issues that will control the outcome, anticipate how other actors are likely to respond, design a coherent sequence of actions, and communicate that plan in a manner that permits a team to execute it. Those same skills were central to my work in this case.

## III. THE COMPLAINT WAS THE PRODUCT OF EXTENSIVE PRE-FILING ANALYSIS

21. The Complaint was filed on September 29, 2023. The filing date is important, but it was not the beginning of the work. By the time the Complaint was filed, I had already spent weeks reviewing materials, identifying the relevant plans and fiduciary bodies, analyzing claim files and prior proceedings, researching ERISA and class theories, identifying likely defenses, considering the

scientific issues, defining the remedy, assigning tasks, and designing a litigation-management system.

22. My first recorded work in the matter occurred on August 31, 2023, when I conferred with W. Daniel Miles regarding a potential case involving disparate cognitive scoring under multiple ERISA-governed, Taft-Hartley benefit plans. That same day, I began reviewing the initial claimant files, plan materials, collective-bargaining materials, and prior litigation documents.

23. From August 31 through September 28, 2023, Sinclair Law recorded more than one hundred hours of pre-filing work. Those hours were incurred before the Complaint appeared on the docket and focused on creating efficiency which has continued to positively impact the case.

24. The work was document-intensive. The materials initially supplied included hundreds of pages of participant claim records, plan documents, collective-bargaining agreements, prior class-settlement materials, neuropsychological testing information, and prior filings involving the Plans and related NFL litigation.

25. By September 17, 2023 - twelve days before filing - I had developed a fifty-one-page confidential work-product document organized into overall strategy, client details, defendants and case structure, task assignments, production sets, plan summaries, plan quotations and annotations, medical issues, and document review.

26. That document was not a retrospective description prepared for a fee petition. It was a contemporaneous working instrument prepared while the case was still being evaluated and designed. It was updated on September 19 and September 20, before filing, and the task-and-strategy system was revised again on October 1 and October 3 as the litigation organization became operational.

| Date | Contemporaneous Development | Significance |
|---|---|---|
| Sept. 17, 2023 | 51-page case strategy, file review, plan analysis, and task framework | Twelve days before Complaint |

| Date | Contemporaneous Development | Significance |
| --- | --- | --- |
| Sept. 19, 2023 | Updated 51-page strategy and plan-analysis document | Expanded defendants, remedies, risks, and assignments |
| Sept. 20, 2023 | 52-page updated strategy and priority-assignment document | Sequenced work before filing, discovery, and dispositive motions |
| Sept. 29, 2023 | Complaint filed | Product of the preceding analysis and preparation |
| Oct. 1, 2023 | 13-page multi-firm task, communication, expert, and billing protocol | Operationalized efficiency systems |
| Oct. 3, 2023 | Updated task and strategy summary | Refined assignments and future discovery plan |

27. The pre-filing analysis identified that the controversy implicated not a single isolated benefit determination, but an interconnected system of plans, committees, boards, claim procedures, benefit classifications, medical decisionmakers, limitations provisions, coordination provisions, and different plan versions applicable during different time periods, all of which were impacted by multiple complex federal statutes.

28. I concluded that any effective complaint had to be built around the authority and duties of the plan fiduciaries and the administrative mechanisms already available under the Plans, rather than simply characterizing each denial as a separate claim for damages.

29. The September 17, 2023, strategy document stated the requested relief in these terms:

> Requested relief: Injunctive remedy demanding the DND and Bell / Rozelle Plans use their existing power to reassess claims and remove any and all cognitive norming standards used to assess claims for benefits and to modify the Plans governing language to include language prohibiting those standards from being used in reassessing the claims.

*Thomas O. Sinclair, Bailey v. NFL: Tasks-File Summary and File Review, updated Sept. 17, 2023, at 3.*

30. That passage reflects the core architecture of the case before the Complaint was filed: identify the bodies with existing authority, obtain a court-enforceable prohibition, require reassessment,

remove race from the methodology, and permit appropriate benefit consequences to follow from the reassessment.

31. The same pre-filing memorandum offered a guide to co-counsel to research prior NFL class-action relief and determine why it had failed to address this issue.

> Need to analyze the former NFL Class action settlement - see if norming was addressed in settlement

*Thomas O. Sinclair, Bailey v. NFL: Tasks-File Summary and File Review, updated Sept. 17, 2023, at 8.*

32. The final aspect of the entry focused on the participants' need moving forward and "retro" as retroactive correction was an identified objective during the initial case analysis. The fundamental problem was not only future use of race; it was the continuing effect of past use on persons whose prior claims had never been rescored or reconsidered.

33. I also set out that the pleading avoid unnecessary rhetoric and focus on the legal conduct that could be remedied. The pre-filing strategy document stated:

> Draft Complaint. Consider allegations mentioned herein and also to avoid arguments on intent, instead focus on discrimination in terms of plan administration: the plans are at present being administered in such a way as to treat one group of plan participants differently than other participants. ERISA doesn't allow that and you don't need intent to remedy it.
>
> The flames will come from the actions described. For example - why ask for removal of the entire board of a plan? Actually - what you want to do is demand them to perform a specific action or series of actions.

*Thomas O. Sinclair, Bailey v. NFL: Tasks-File Summary and File Review, updated Sept. 19, 2023, at 10.*

34. That guide reflected both litigation judgment and settlement judgment. I believed the strongest path was to identify discriminatory administration, connect it to the Plans' own terms and fiduciary obligations, and ask the Court to require specific corrective action. I also believed gratuitously inflammatory pleading would make resolution more difficult without improving the remedy. The focus was and remains on obtaining equal treatment for Plan participants.

35. Before filing, I reviewed and directed analysis concerning the proper identification of defendants and fiduciary bodies; the interaction among the Disability Plan, the Bert Bell/Pete Rozelle Plan, and the 88 Plan; the relationship between neurocognitive, total-and-permanent, line-of-duty, retirement, and medical benefits; plan authority to reconsider claims; exhaustion; prior releases; issue and claim preclusion; applicable limitations periods; different plan versions; governing-law provisions; and the effect of prior NFL settlements.

36. I also conducted research concerning the tests and scoring mechanisms involved, the need to obtain raw scores and scoring methods, possible third-party discovery, the need for consulting and testifying experts, and how individualized medical consequences could be addressed within a class wide injunctive framework.

37. The fact that some proposed theories were refined, narrowed, or not pursued does not make the analysis unnecessary. Screening alternatives, testing vulnerabilities, and discarding less effective approaches are part of competent pre-filing investigation, particularly in a case combining ERISA, civil-rights law, neuropsychology, three interrelated ERISA governed benefit plans, and Rule 23.

38. The Complaint filed on September 29, 2023, therefore represented the result of detailed factual, legal, scientific, procedural, and organizational preparation. The docket reflects a filing on that date; the time records and contemporaneous strategy documents reflect the substantial work required to make that filing responsible and strategically coherent. The present docket reflects that work withstood its greatest tests; time and scrutiny by multiple adverse parties and this Court.

## IV. LEADERSHIP THROUGH SYSTEMS DESIGNED TO CREATE EFFICIENCY

39. From the outset, I expected this matter to involve several law firms, multiple lawyers and staff members, experts, substantial confidential records, a sophisticated defense team, repeated negotiations, and eventual judicial review of counsel's time. I knew that a case of that size could generate unnecessary duplication unless responsibilities and communication channels were deliberately designed.

40. I therefore created a written priority system that separated work required before filing, immediately after filing, before discovery, during discovery, and before dispositive motions. The system identified tasks, assigned responsibility, recorded completion, and was intended to remain a living strategic guide rather than a static checklist.

41. I assigned or recommended primary responsibility for distinct work streams, including plan and CBA review, client-file analysis, prior-settlement and release analysis, class-representative investigation, local-rule compliance, discovery, class certification, expert coordination, protective-order issues, deposition planning, document production, media inquiries, and class-member communications.

42. I also knew this fee proceeding would come. Before meaningful discovery or settlement activity, I urged the team to create billing records capable of surviving later judicial scrutiny. The October 1, 2023, task document stated:

> Schedule quarterly billing submissions to balance workload among counsel. For claims asserted hourly billing records are required. Bill in 1/10 of an hour increment. Avoid block billing. Include costs by firm in submission.
>
> Eventually all billing likely to be put in front of court so finalize as you go.

*Thomas O. Sinclair, Bailey v. NFL: Class Counsel Tasks and Strategy, updated Oct. 1, 2023, at 6.*

43. That guidance was designed to accomplish several things simultaneously: preserve contemporaneous records, discourage reconstruction after the fact, make work allocation visible, identify imbalances early, require costs to be tracked by firm, reduce block billing, and create an auditable record for the Court.

44. I understood that the best fee-defense system was not a polished declaration written years later. It was an efficient operating system adopted before the work accumulated. The current petition is therefore supported by a recordkeeping structure that was consciously designed at the beginning of the case.

45. I also insisted that the plaintiffs' team communicate externally with a single, coordinated voice. The October 1, 2023, task document directed:

> Assign primary contact for defense counsel. All correspondence to defense counsel from one source. Draft letters on issues assigned to be sent to that one contact and directed from there to defense counsel.

*Thomas O. Sinclair, Bailey v. NFL: Class Counsel Tasks and Strategy, updated Oct. 1, 2023, at 6.*

46. The same document required a single coordinating attorney for expert communications and expressly connected that structure to billing control:

> Hire consulting expert and assign ONE class counsel to lead any contact with the expert and control billing.

*Thomas O. Sinclair, Bailey v. NFL: Class Counsel Tasks and Strategy, updated Oct. 1, 2023, at 6.*

47. It likewise directed one point of contact for the Class Representatives and one point of contact for putative and certified class members:

> Assign Class Rep Contact. Make sure Class Reps are at hearings ONE attorney to coordinate all contact with class reps.
>
> Assign putative and (if certification granted) class member contact to one source. Again - all contact to ONE class counsel representative. Hours must be recorded for each contact.

*Thomas O. Sinclair, Bailey v. NFL: Class Counsel Tasks and Strategy, updated Oct. 1, 2023, at 7-8.*

48. Those were not cosmetic organizational preferences. Centralized communication reduces the likelihood of inconsistent positions, duplicative calls, repeated background explanations, conflicting instructions, multiple lawyers contacting the same person, and unnecessary review of parallel correspondence.

49. I also directed use of a shared document platform and a single production coordinator so that lawyers performing assigned tasks could access the current production set rather than maintaining competing and potentially outdated collections.

50. The protective-order planning anticipated that third-party scoring mechanisms, software, raw scores, confidential medical information, and different levels of restricted material might require more than a routine order. Addressing those issues in advance was intended to prevent later delay and emergency motion practice.

51. The task system also contemplated periodic rebalancing of work. Efficiency in a long case is not achieved by freezing assignments on day one; it requires reviewing which lawyer is best positioned to perform the next task and adjusting responsibilities as the case develops.

52. My leadership role did not mean that I personally performed every assignment. To the contrary, the structure was designed to permit co-counsel and staff to perform their respective work with clear responsibility and a shared objective.

53. As the litigation matured, the day-to-day operational handling and task assignment was transitioned to Rebecca Gilliland. Ms. Gilliland had earned the team's confidence, possessed the ability and judgment to manage those responsibilities, and represented the next generation of lawyers capable of carrying complex matters forward. Ms. Gilliland is also a former enlisted Marine. As such her leadership and organizational skills were tested and could be relied on to achieve a favorable outcome.

54. After nearly three decades of leadership in litigation, I believed part of my responsibility was to pass increasing responsibility to capable counsel rather than retain every operational decision personally. That decision was not a withdrawal from the case. It was an allocation of work intended to serve the Class efficiently.

55. My role increasingly concentrated on the strategic issues for which my experience was most useful: overall direction, the interaction of the ERISA plans, settlement architecture, sequencing, major negotiation positions, the relationship between classwide relief and individual benefit consequences, limitations and retroactivity, interest, implementation, review of significant drafts, and the fee structure now presented to the Court.

56. I continued to work behind the day-to-day process, reviewing developments, advising on important decisions, participating in negotiations, refining objectives, and intervening when strategic direction or institutional judgment was required.

57. This structure gave appropriate credit and responsibility to the lawyers doing the daily work while allowing me to devote my time to the matters where my background and strategic experience could add the greatest value. It also reduced the inefficient tendency for every senior lawyer to attend every call, edit every document, or duplicate every operational task.

58. Leadership in a case of this complexity consists in substantial part of creating and maintaining the system in which the legal work is performed. That system required attorney judgment, continuing attention, and adjustment throughout the litigation, even when a particular strategic decision did not produce a separately filed document.

## V. THE STRATEGIC ARCHITECTURE ESTABLISHED AT THE OUTSET

59. The central strategic choice was to frame the requested remedy around a court-enforceable injunction and a systematic reassessment process.

60. The October 1, 2023 strategy document stated the point directly:

> focus on discussion [of the] Injunctive Remedy - …. What flows from that injunction flows is a phrase used to counter the likely defense strategy of trying to focus on benefits or damages….

*Thomas O. Sinclair, Bailey v. NFL: Class Counsel Tasks and Strategy, updated Oct. 1, 2023, at 11.*

61. The phrase "what flows from that injunction flows" captured the distinction I was trying to preserve. The common wrong could be corrected through a uniform, race-neutral reassessment process. Individual benefit consequences could then flow from application of that common process to the participant's existing record and governing Plan terms.

62. That approach was intended to meet both the substantive problem and the procedural challenge. It sought a class wide correction while recognizing that the amount and category of benefits, if

any, would depend upon each participant's medical evidence, application date, Plan version, eligibility, offsets, coordination rules, and rescored results.

63. I focused on the fiduciary bodies' existing authority because the Plans contained mechanisms to interpret and administer the Plans, adopt procedures, reconsider decisions, require examinations, resolve medical issues, and reclassify benefits. That authority supplied a practical means to design relief that the Court could enforce without replacing the plan-administration structure wholesale.

64. The final Settlement's expert-driven Rescoring Protocol reflects that same structural logic. Prior tests are identified and rescored through race-neutral methods, reviewed by the parties' experts, and, where necessary, submitted to a neutral expert. The resulting information is then used within the governing Plan framework.

65. I consistently advocated that the remedy had to be retroactive. A prospective prohibition alone would not address participants whose claims had already been affected and whose reduced or denied benefits continued to cause harm after the use of race was recognized.

66. I advocated that the review reach back to the earliest defensible point and not be confined by the ordinary limitations provisions that Defendants might otherwise assert. The Settlement ultimately reaches neuropsychological testing dating to January 1, 2012, and Defendants agreed not to assert the limitations and damages-limitation defenses addressed in the Settlement against qualifying claims arising from the Protocol.

67. I also insisted that retroactive benefits carry interest. A participant who should have received a benefit years earlier has not received equivalent relief merely by receiving the historic principal amount after years of delay. The Settlement provides six percent per annum interest on qualifying retroactive payments.

68. Interest, retroactivity, and the limitations waiver were therefore not incidental drafting details. They were necessary to make the rescoring process remedial rather than symbolic.

69. I also advocated that no participant's existing award be reduced because of rescoring. A remedial process intended to correct race-based methodology should not expose a participant to loss of benefits already awarded. The Settlement contains that protection.

70. The structure also required independent scientific expertise. Neuropsychological scoring, domains, validity, premorbid estimates, demographic adjustments, and the relation between test results and Plan benefit standards are not matters that lawyers can responsibly resolve by legal argument alone.

71. My work included translating between the legal and scientific components: identifying what information the experts needed, understanding how the medical protocol interacted with Plan terms, ensuring that the process remained administrable, and protecting the legal consequences of the expert work.

72. The case also required coordination of ERISA and 42 U.S.C. section 1981 theories. ERISA supplied plan-administration, fiduciary, benefit, and equitable-remedy concepts; section 1981 addressed discriminatory contractual treatment. The strategic challenge was to use those authorities coherently without allowing one theory to undermine the class structure or remedy available under the other.

73. I anticipated that Defendants would argue that any adjustments resulted from individual clinical judgment, that the Plans did not direct the methodology, that the Class could not be certified, that claims were individualized, that limitations periods barred relief, and that prior releases or administrative proceedings restricted particular participants.

74. The pre-filing work and confirmatory discovery were directed to those expected defenses. We needed to understand which entities had authority, what the Plans required, what the physicians did, what records existed, how class members could be identified, how prior tests could be rescored, and how the results could be translated into benefit reconsideration.

75. Formal discovery was stayed while the parties explored resolution, but the work did not stop. The parties engaged in confirmatory discovery, and Class Counsel reviewed thousands of pages of plan documents, amendments, claim information, participant-level information, and scientific material.

76. The parties also had to develop and test eligibility filters for persons who would not qualify for rescoring for reasons independent of race. Counsel and the expert reviewed randomized information to test whether those filters operated consistently with the Settlement's class definition and remedial purpose.

77. Settlement negotiations included seven multi-day in-person mediation sessions before the Honorable Gerald E. Rosen (Ret.), along with numerous conferences, calls, exchanges, expert consultations, and drafting sessions over nearly three years.

78. My role in the negotiations included maintaining the strategic objectives established before filing, evaluating proposed compromises against the Plan structure, analyzing the effect of proposed language on participants' rights, advocating for the retroactive period, interest, limitations relief, and implementation protections, and helping keep the multi-firm team aligned on the central objectives.

79. A Term Sheet was executed on July 11, 2025. That document did not end the work. It took nearly another year to translate the agreement in principle into a detailed, enforceable Settlement Agreement, Rescoring Protocol, notice program, preliminary-approval papers, proposed orders, and implementation structure.

80. During that period, counsel exchanged approximately forty drafts of the Settlement Agreement, held additional negotiation sessions including expert participation, and prepared numerous drafts of the preliminary-approval memorandum and related filings.

81. Those drafts addressed a fourteen-year class period, three interrelated ERISA plans and their amendments, class eligibility and exclusions, race-neutral rescoring methodology, expert review

and dispute resolution, benefit calculation, retroactivity, interest, limitations, notice, releases, confidentiality, oversight, and Rule 23 approval requirements.

82. I also conceived and proposed the two-stage fee procedure described in the accompanying petition. The present application requests the lodestar for work actually performed through a defined cutoff date, while asking the Court to reserve jurisdiction over future implementation work and any further fee request after the Protocol produces actual results.

83. The reason for that proposal is practical. The value of the structural relief cannot be measured accurately before rescoring determines how many participants receive adjusted scores and entitlements which may flow from the process. A later submission based on actual data is more reliable than a present estimate.

84. The proposed bifurcation also separates work already performed from substantial future work that has not yet occurred. It allows the Court to evaluate present hours and rates on the existing record while preserving accountability for later implementation work.

85. I do not suggest that I alone drafted or accomplished the Settlement. My testimony is that I identified, proposed, or consistently advocated the strategic principles described above, and that those principles became central features of the relief ultimately negotiated by the team.

## VI. COURSE OF THE ACTION AND RESULTS OBTAINED

86. After the Complaint was filed on September 29, 2023, the parties began preliminary settlement discussions. On December 4, 2023, they jointly requested a ninety-day stay and appointment of interim class counsel, and the Court appointed interim class counsel on December 5, 2023.

87. The early stay did not make the matter simple or eliminate the need for litigation preparation. A settlement capable of resolving the claims required Class Counsel to understand the same legal, factual, medical, class, and remedial issues that would have governed contested litigation.

88. The matter involved three ERISA-governed, collectively bargained benefit plans with different histories, decisionmakers, benefit categories, eligibility rules, amendments, offsets, coordination provisions, application deadlines, lookback periods, and reconsideration mechanisms.

89. It also involved a specialized scientific practice embedded within neuropsychological testing. Counsel had to understand enough of the science to identify the problem, work effectively with experts, evaluate proposed solutions, and translate a medical process into an administrable legal remedy.

90. The Settlement covers eligible tests dating to January 1, 2012. It permanently prohibits race-based demographic adjustments, creates a systematic race-neutral rescoring protocol, provides expert review and neutral dispute resolution, protects existing benefit awards, provides retroactive and prospective benefit consequences where warranted, pays six percent annual interest, and waives specified limitations defenses.

| Relief | Settlement Function |
|---|---|
| Permanent prohibition | Court-enforceable bar on race-based demographic adjustments in future Plan administration |
| Rescoring Protocol | Race-neutral rescoring of eligible prior tests with review by Plaintiffs' expert, Defendants' expert, and a neutral expert where needed |
| Retroactive reconsideration | Benefit reconsideration and retroactive payments where rescored results establish entitlement |
| Interest | Six percent per annum on qualifying retroactive payments |
| Limitations protection | Waiver of specified statute-of-limitations and damages-limitation defenses under the Settlement |
| No downward adjustment | Existing benefit awards are not reduced as a result of rescoring |
| Separate fee payment | Fees, expenses, and service awards do not reduce benefits payable to Class Members |

91. In my judgment, the Settlement substantially achieves the central remedial objectives established before the Complaint was filed: stop use of race, identify affected prior claims, rescore the tests,

reconsider resulting benefit determinations, make relief retroactive, compensate delay through interest, prevent limitations defenses from defeating the remedy, and preserve oversight.

92. The result is particularly significant because the monetary consequences are paid separately from attorneys' fees, expenses, and service awards. No Class Member's benefit is reduced to pay counsel.

93. The work is not complete. Implementation will require coordination with experts, monitoring of eligibility determinations, review of disputes and ambiguities, communication with Class Members, oversight of deadlines and payments, consultation with Defendants and the administrator, and, if necessary, further proceedings before the Court.

94. The future work is one reason the Settlement and fee procedure preserve continuing judicial oversight. The same strategic discipline used to build the case will be required to ensure that the injunctive remedy operates as promised.

## VII. SINCLAIR LAW'S TIME RECORDS AND BILLING JUDGMENT

95. Sinclair Law maintains contemporaneous time records in matters handled on hourly, contingent, or fee-shifting bases. My practice is to record work in one-tenth-hour increments with a description of the task performed.

96. The records for this matter were compiled from daily entries maintained in the firm's computerized system. They identify the date, task description, professional, and time recorded. Costs are recorded in the firm's accounting records when paid or allocated to the matter.

97. Before submitting this application, I personally reviewed the time entries line by line. I did not simply take the computerized total and ask the Court to award it.

98. I exercised billing judgment by removing more than 85 hours from the amount presented for Sinclair Law. Those reductions were made to account for the types of judgment a sophisticated paying client would expect on a large, multi-year bill, including entries that could reasonably be viewed as duplicative, administrative, insufficiently clear, or not appropriate to include in a fee

application. This effort included adherence to local rules regarding billing during travel, and billing for routine emails from the court filings being set to 'zero' due to exercise of that billing judgment. Entries which occurred due to a supervisory function were diminished or removed altogether to account for other attorneys' primary management of the task. For example, numerous hours for oversight of the data gathering and management were 'zeroed' out to allow the primary attorney to receive credit for their work without concern for criticism.

99. At the requested rates, the removal of more than eighty-five hours represents more than $100,000 in lodestar that Sinclair Law is not asking the Court to award.

100. My prior work for corporate clients and automobile manufacturers informs that review. I have evaluated outside-counsel work and invoices and negotiated retainer agreements from the client side, and I understand that a large bill should reflect not only time actually spent but professional judgment about what should fairly be charged.

101. I also reviewed travel entries and work performed in connection with the seven in-person mediation sessions. The remaining time reflects required participation in case-critical proceedings and has been retained only after the same billing-judgment review and local rules were applied to all other entries.

102. Purely clerical overhead is not included as compensable legal work. Paralegal time is limited to substantive work that would ordinarily be billed to a client, such as case-record organization, legal and docket research, document management, assistance with class-member communications, and preparation of materials required for litigation and settlement.

103. The time summary through July 15, 2026, after the voluntary reductions described above, is as follows:

| Professional | Role | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Thomas O. Sinclair | Co-Lead Class Counsel / senior ERISA and strategic counsel | 878.6 | $1,500 | $1,317,900 |

| Professional | Role | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Claudette Fowler and Victoria Hall | Paralegals | 36.7 | $300 | $11,010 |
| TOTAL | | | | $1,328,910 |

104. The 36.7 paralegal hours consist of 31.5 hours recorded by Claudette Fowler (over thirty years of experience) and 5.2 hours recorded by Victoria Hall (over a decade of experience). Ms. Fowler and Ms. Hall are extraordinary school-trained paralegals with in excess of 40 years of combined experience not including time spent in collegiate training for their profession. Their work permitted attorneys to remain focused on legal analysis, strategy, negotiation, and drafting.

105. The phase summary below is derived from the same contemporaneous entries. The phase labels are summaries for the Court; they do not replace the detailed descriptions in the underlying time statement. The summary of approximate time within the chart is designed to allow for briefing on that overview as set out below:

| Phase | Attorney Hrs. (approx.) | Paralegal Hrs. (approx.) | Total Hrs. (approx.) |
|---|---|---|---|
| Pre-filing investigation, plan analysis, strategy, and Complaint drafting (Aug. 31-Sept. 28, 2023) | 130 | 10 | 140 |
| Complaint filing, case organization, and early settlement posture (Sept. 29-Dec. 5, 2023) | 90 | 5 | 95 |
| Confirmatory discovery, expert analysis, and mediated negotiations through Term Sheet (Dec. 6, 2023-July 11, 2025) | 400 | 10 | 410 |
| Term Sheet through Settlement Agreement and preliminary-approval filing (July 12, 2025-May 29, 2026) | 275 | 25 | 300 |
| Preliminary approval, class communications, and fee petition (May 30-July 16, 2026) | 30 | 5 | 35 |

106. The 140 hours incurred before filing are reasonable in light of the work described in Sections III and IV above. They include detailed review of the Plans and amendments, claim files, prior

proceedings, scientific and legal research, identification of defendants and remedies, strategy development, task assignment, and Complaint preparation. That the ultimate results so closely approximate that early strategy is testament to the worth of those hours.

107. The largest phase - confirmatory discovery, expert analysis, and negotiations through the Term Sheet - spans approximately nineteen months and includes repeated mediation preparation and attendance, production review, expert consultation, legal analysis, negotiation, and the continuing work required to test whether a class wide remedy could be implemented.

108. The 300 hours between the Term Sheet and the preliminary-approval filing reflect the difficulty of converting a high-level agreement into detailed enforceable documents. The parties' forty plus drafts and issue-specific negotiations were necessary because an ambiguous settlement would shift conflict from the litigation to implementation and place Class Members' relief at risk.

109. The remaining hours are not inflated by the fact that the case resolved before contested class certification, summary judgment, or trial.

110. The comprehensive resolution was possible only because counsel had investigated the claims, prepared for the defenses, understood the evidence, developed an implementable remedy, and negotiated from an informed position.

111. The defense was represented by lawyers with deep institutional and ERISA expertise and immediate access to the Plans, their records, their decisionmakers, and their physicians. Plaintiffs' counsel had to build the factual and legal understanding from outside the institutions whose conduct was challenged.

112. Strategic work can be less visible on the docket than a motion or deposition, but it is not less necessary. Time devoted to deciding what not to plead, what relief to prioritize, how to preserve class treatment, how to sequence negotiations, how to allocate tasks, and how to avoid inconsistent communications materially affected both efficiency and outcome.

113. After the reductions already made, I believe every remaining Sinclair Law hour was reasonably necessary or useful to the prosecution, negotiation, approval, or implementation planning of this action. I therefore request compensation for the full remaining lodestar.

## VIII. REASONABLENESS OF THE REQUESTED HOURLY RATES

114. Sinclair Law seeks a rate of $1,500 per hour for my work and $300 per hour for substantive paralegal work. Those rates are current rates used to value work performed over the life of this contingent matter.

115. My $1,500 rate reflects approximately twenty-seven years of practice, approximately twenty-four years concentrated in ERISA, a national participant-side practice, prior ERISA class experience, appellate work, the complexity of this action, and the senior strategic and leadership functions described in this declaration.

116. In *Reye*s, the United States District Court for the Northern District of California approved my requested rate of $625 an hour for work performed nearly a decade ago. *See Reyes v. Bakery & Confectionery Union & Industry International Pension Fund*, 281 F. Supp. 3d 833, 852-53 (N.D. Cal. 2017). Since then, I have accumulated nearly another decade of ERISA, class, appellate, settlement, and strategic experience.

117. The rate requested here is not a routine local rate for a routine individual benefit claim. This case required senior judgment at the intersection of ERISA, civil-rights law, class procedure, neuropsychology, collectively bargained plan administration, complex settlement drafting, and multi-firm coordination.

118. The current petition provides additional market evidence concerning national ERISA and complex class rates. My declaration supplies the factual foundation concerning my experience, the nature of my work, my actual billing practices, and the reasons specialized national counsel was appropriate.

119. The requested rate does not separately add a contingency multiplier to each hour. It is the lodestar rate for the work performed.

120. The fact that Sinclair Law worked without payment for nearly three years, advanced expenses, and bore the risk of no recovery provides additional context for the burden undertaken but is not hidden within the recorded hours.

121. The $300 paralegal rate reflects experienced substantive support in a national complex matter and remains materially below the attorney rate. Delegating appropriate work to paralegals reduced the total cost compared with having senior counsel perform the same tasks.

## IX. CONTINGENT REPRESENTATION, DELAY, AND PRECLUSION OF OTHER WORK

122. Sinclair Law undertook this matter on a wholly contingent basis pursuant to agreements with the named Plaintiffs. The firm has not received fee income or expense reimbursement from this matter.

123. At the outset, there was no assurance that the Court would certify a class, that Plaintiffs would survive anticipated motions, that Defendants would agree to retroactive relief, that a settlement would be approved, or that any fee would be awarded.

124. The matter required sustained attention over nearly three years, including seven multi-day in-person mediations, repeated expert and counsel conferences, major drafting periods, and time-sensitive negotiations. Those demands necessarily limited the firm's ability to accept or devote equivalent attention to other matters.

125. Delay in payment is real. Sinclair Law has carried hundreds of hours of uncompensated professional time and unreimbursed expenses while continuing to operate the firm and serve other clients.

126. The risk and delay also make the billing-judgment reductions significant. The removed time was actually worked and financed by the firm, but I nevertheless excluded more than eighty five hours

because I concluded that the Court should evaluate a conservative, client-reviewed request rather than every hour that could arguably be included.

## X. EXPENSES ADVANCED BY SINCLAIR LAW

127. Sinclair Law's regularly maintained accounting records reflect an unreimbursed Bailey matter expense balance of $24,556.61 through the date of the supplied accounting record case-expense summary attached hereto.

128. Those expenses were advanced by Sinclair Law and have not been reimbursed. They were incurred to investigate, prosecute, mediate, negotiate, document, and seek approval of the Settlement.

129. The expenses include case-specific out-of-pocket items of the kind ordinarily charged to a client in complex litigation, including mediation-related expenses, expert and professional expenses, travel associated with the seven in-person mediations and other case-required proceedings, filing and service expenses, research or records expenses, document handling, and related case-specific charges.

130. Sinclair Law does not seek reimbursement for ordinary law-firm overhead. The requested expenses are limited to items allocated to this matter in the firm's books and records.

131. The attached record accurately reflects Sinclair Law billing records which contain appropriate receipts for each expense entry:

132. In my judgment, the expenses were reasonable and necessary in relation to the complexity, duration, and results of the action. The seven in-person mediation sessions alone required repeated travel and logistical expenditures that would not have been incurred absent this case.

## XI. THE PRESENT REQUEST AND FUTURE IMPLEMENTATION WORK

133. The current time summary includes work through July 15, 2026. It does not include work that has been and continues to be performed after that cutoff in connection with final approval, objections

or appeals, class communications, implementation disputes, expert review, monitoring of rescoring, benefit calculations, payment questions, or enforcement.

134. I proposed that the fee request be addressed in stages because the current lodestar and the future implementation record answer different questions. The current lodestar compensates work already performed; a later record can document future hours and the actual economic results flowing from the injunction.

135. The Rescoring Protocol will determine the number of participants whose tests are rescored, which in turn will identify the number who qualify for a new or increased benefit, the amount of retroactive benefits, and the amount of interest. The impacts of the injunctive remedy cannot responsibly be stated before the medical and administrative process occurs.

136. I therefore support an award of the current lodestar at final approval and an express reservation of jurisdiction over reasonable future implementation fees and any further fee application permitted by the Settlement, notice, governing law, and the Court's orders.

137. That approach does not require the Court to speculate today. It permits present work to be evaluated on a complete time record and later work or value to be evaluated on actual evidence.

138. Because fees and expenses are paid separately from Class benefits, the requested award does not diminish the benefits generated by rescoring or any retroactive payment to a Class Member.

## XII. CLASS REPRESENTATIVES AND SERVICE AWARDS

139. Stacey Bailey and Eric Curry did not serve as names on a caption only. They supplied information and records, assisted counsel in understanding their claims and the operation of the Plans, remained available for consultation, participated in the settlement process, and accepted the public and personal responsibilities associated with serving as named plaintiffs in litigation involving the NFL benefit system and allegations of race discrimination.

140. They were prepared to continue through class certification, discovery, deposition, and trial if resolution had not been achieved. Their willingness to serve gave the Class a vehicle through which to seek the retroactive correction that the Plans had not undertaken voluntarily.

141. I support the requested service awards because of the responsibilities, time, reputational exposure, and benefit to the Class associated with their service, and because the awards will be paid separately rather than deducted from Class relief.

## XIII. CONCLUSION

142. This was an unusually complex case requiring the integration of ERISA plan administration, civil-rights law, Rule 23, neuropsychology, multiple plan documents and amendments, participant-level records, expert methodology, and a detailed implementation process.

143. The work began before the Complaint was filed. The contemporaneous September 2023 strategy documents show that the principal remedial structure, expected defenses, plan relationships, discovery targets, task assignments, and efficiency systems were being analyzed and designed before September 29, 2023.

144. The litigation then followed a disciplined course of confirmatory discovery, expert analysis, seven multi-day mediation sessions, extensive negotiation, a Term Sheet, nearly another year of drafting and implementation design, preliminary approval, and preparation for final approval.

145. I personally audited Sinclair Law's records and removed more than eighty five hours before presenting the request. The remaining 878.6 attorney hours and 36.7 paralegal hours reflect work that I believe was reasonably necessary to obtain and protect the relief achieved.

146. For the reasons stated above, I respectfully request that the Court approve Sinclair Law's hourly rates, find its hours and expenses reasonable, award its lodestar of $1,328,910 and expenses of $24,556.61 through the stated cutoff, and preserve jurisdiction as appropriate for future implementation work and any supplemental application authorized by law and the Court's orders.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 20, 2026.

Thomas O'Neal Sinclair

| Date | Description | Attorney | Attorney Time | Paralegal | Paralegal Time |
|---|---|---|---|---|---|
| 8/31/2023 | Phone conference with D. Miles regarding potential case involving NFL benefit plans; full briefing on possible disparities in scoring minority player cognitive scores and possible means to address the treatment in the context of multiple ERISA governed Taft Hartley plans. | TOS | 1.7 | | |
| 8/31/2023 | Receipt and review of emails with co-counsel regarding initial packages of materials and scheduling. | TOS | 0.4 | | |
| 8/31/2023 | Receipt and review initial package of materials from referring attorney and attorneys at Beasley Allen regarding possible race norming in ERISA governed benefit plan and claims file materials on claimant Bailey of approximately 170 pages. | TOS | 2.7 | | |
| 8/31/2023 | Review and analysis of second claim package for Curry claimant regarding analysis for potential claims involving race norming additional hundreds of pages of materials. | TOS | 2.1 | | |
| 8/31/2023 | Receipt and review and analysis of production set from referring attorney to include purported plan documents, Union agreements, and prior case filings from concussion case touching on allegations of race norming in administration of plans. | TOS | 4.1 | | |
| 9/1/2023 | Continue review and analysis of initial package of materials from referring attorney to include additional plan documents, Union agreements claims documents, and prior case filings from concussion case from referring attorney and attorneys at Beasley Allen regarding possible race norming in ERISA governed benefit plan regarding beginning creating initial to-do list to further investigate allegations (total review many hundreds of pages). | TOS | 4.5 | | |
| 9/1/2023 | Begin drafting initial investigation to-do list regarding allegations of race norming (.6); office conference with paralegal regarding research instructions to include pulling plan documents where publicly available with focus on any prior plan amendments and ultimate goal to create index of complete plan history of all NFL plans (.5) . | TOS | 1.1 | | |
| 9/1/2023 | Office conference with T. Sinclair regarding research for initial file intake in preparation for upcoming call scheduled next week to provide assessment to co-counsel and emails on same. | | | CF | 0.5 |
| 9/1/2023 | Research and pull reports on recent Pacer filings involving the NFL plans; create case chart for T. Sinclair review regarding search for plan documents. | | | CF | 1.2 |
| 9/1/2023 | Emails with co-counsel to set up Zoom meeting and provide my preliminary report on viability and initial recommendations. | TOS | 0.2 | | |
| 9/5/2023 | Prepare for first case meeting with co-counsel; prepare to provide initial assessment; review materials to date including possible class representatives claim records. | TOS | 1.6 | | |
| 9/5/2023 | Create research to-do list regarding race norming in plan benefit decisions to include pulling all available case law with a focus on CTA4 and historical plan documents regarding governing terms at time of violation(s). | TOS | 0.7 | | |
| 9/5/2023 | Review case chart and pull possible matches for NFL plan documents from last three cases. | TOS | 1.5 | | |

| | | | | | |
|---|---|---|---|---|---|
| 9/5/2023 | Receipt and review emails with R. Gilliland regarding Henry v. NFL case and possibly seeking full ERISA record on claims for assessment of potential case. | TOS | 0.3 | | |
| 9/5/2023 | Phone conference with R. Gilliland to discuss the history of race norming and my initial thoughts on a research plan to include questions involving plan terms and possible defenses to claims. | TOS | 1.2 | | |
| 9/6/2023 | Westlaw research regarding race norming in cognitive benefit claims, specifically case law on topic of plan document terms permitting the same and possible defense to claims for adjustment and removal of race based scoring adjustments, review and analysis of prior cases involving ERISA benefit discrimination, focus on CTA4. | TOS | 3.4 | | |
| 9/7/2023 | Review all materials provided including claims packages, appeals, parts of ERISA record and public documents on use of race norming all being provided for call preparation. | TOS | 2.3 | | |
| 9/7/2023 | Receipt and review emails from R. Gilliland regarding packages of additional materials related to initial class representative prospects and for upcoming conference call with all co-counsel (.3) and review of additional materials related to each of the class representatives and their prior testing along with basic materials related to evidence of class wide use of norming and follow-up calls with R. Gilliland regarding adjustments to initial theories (1.4). | TOS | 1.7 | | |
| 9/8/2023 | Initial case call with all co-counsel. | TOS | 0.9 | | |
| 9/8/2023 | Pacer research regarding all available plan documents in cases involving NFL plans. | TOS | 1.4 | | |
| 9/8/2023 | Email from R. Gilliland regarding Heaton norms research she was conducting (.1) and review of materials on Heaton norms and use in cognitive testing(.6) | TOS | 0.7 | | |
| 9/8/2023 | Review draft complaint provided by R. Gilliland regarding possible edits (1.4) and follow-up calls with R. Gilliland regarding rewrite of entire complaint (.7). | TOS | 2.1 | | |
| 9/8/2023 | Meeting with T. Sinclair regarding next steps of research into governing plan documents, pull plan documents from Pacer and internet searches for his review and drafting new complaint. | | | CF | 3.1 |
| 9/9/2023 | Review all filed NFL plan documents pulled as part of research into cause of actions regarding drafting new complaint. | TOS | 6.9 | | |
| 9/9/2023 | Multiple telephone conferences with all co-counsel regarding initial allegations for new complaint. | TOS | 1.1 | | |
| 9/9/2023 | Continue drafting new complaint adding focus on injunctive remedy option. | TOS | 2.6 | | |
| 9/10/2023 | Pull and review and analysis of all publicly available NFL Players Association documents to include benefits book, all available Summary Plan Descriptions and retirement plan summaries and disability Summary Plan Descriptions regarding checking for conformity to Taft Hartley requirements and avoidance of conflict with stated terms within multiple labor agreements between the Union and the NFL. | TOS | 3.7 | | |

| | | | | | |
|---|---|---|---|---|---|
| 9/11/2023 | Revise and edit draft complaint specifically focusing on injunctive remedy class action; edits to class definition to cover all participants; edits to sections on relief and claims being asserted (6.4) and multiple telephone conferences with R. Gilliland regarding changes to complaint and findings on Union side of claims (.7). | TOS | 7.1 | | |
| 9/11/2023 | Emails with all co-counsel regarding draft complaint and revisions/edits on same. | TOS | 0.5 | | |
| 9/13/2023 | Review and analysis of various plans terms and draft basic summary of plan benefits for T. Sinclair review (1.2); edits to draft complaint; highlighting plans term references for T. Sinclair to finalize (.6). | | | CF | 1.8 |
| 9/14/2023 | Continue review and analysis of case law concerning discriminatory conduct in administration of plan benefits, finding precedent for injunctive remedy and optional benefits to class members and problems with needing to use prior plan terms to avoid misalignment of plan benefits (3.7) and emails and telephone conference with R. Gilliland regarding adjustments to class action complaint based on case law and research (1.1). | TOS | 4.8 | | |
| 9/15/2023 | Emails with all co-counsel regarding NFL class action complaint edits and changes to requested relief, likely injunctive remedy. | TOS | 0.3 | | |
| 9/16/2023 | Draft global strategy document for co-counsel to guide regarding case strategy based on research to date and ability to seek injunctive remedy to fix prior conduct, theme of case, and addressing source of conduct and options for strategical guiding the plans into resolution. | TOS | 2.6 | | |
| 9/16/2023 | Draft document (50+) for co-counsel strategy and to-do list with assignments addressing the need to create efficiency in case management; multiple telephone conferences with R. Gilliland regarding breakdown on theme and assignments, her taking role of primary point of contact and avoidance of multiple voices potentially creating different interpretations. | TOS | 4.4 | | |
| 9/16/2023 | Revisions to complaint regarding case law research findings on ERISA injunctive relief class, class definition and all aspects of revised draft complaint to circulate to co-counsel. | TOS | 1.4 | | |
| 9/17/2023 | Pull additional versions of Plan documents for cross-check on governing plans terms down through the years and understanding changes to plans through complete rewrites and amendments starting with D&N Plan of 2017 106 pages regarding finalizing draft complaint. | TOS | 1.7 | | |
| 9/17/2023 | Continue task of historical plan documents with 2019 D&N Plan 194 pages regarding finalizing draft complaint. | TOS | 1.4 | | |
| 9/17/2023 | Continue task of historical plan documents with 2020 D&N Plan approximately 80 pages checking for changes. | TOS | 0.8 | | |
| 9/17/2023 | Finalize initial co-counsel summary of tasks and assignments and overall strategy document for non-ERISA lawyers to understand narrow focus of relief and available remedies from injunctive relief class. | TOS | 2.6 | | |
| 9/17/2023 | Finalize draft complaint. | TOS | 3.5 | | |
| 9/17/2023 | Email to all co-counsel regarding initial package for review with to-do list, strategy, and draft complaint. | TOS | 0.2 | | |

| | | | | | |
|---|---|---|---|---|---|
| 9/18/2023 | Research online for NFL Players Collective Bargaining Agreements; pull Pacer cases and case law research into effect of collective bargaining on ERISA benefit claims. | TOS | 2.9 | | |
| 9/18/2023 | Review and analysis of 2006-2012, 2013-2020 and 2020 to present collective bargaining agreements for potential conflicts addressing likely defense that source of conduct is medical side not plan side and discussions with R. Gilliland on same. | TOS | 1.7 | | |
| 9/19/2023 | Receipt and review emails with R. Gilliland regarding initial package of documents and ShareFile links. | TOS | 0.3 | | |
| 9/19/2023 | Emails with all co-counsel to schedule initial call to discuss assignments and my draft complaint. | TOS | 0.4 | | |
| 9/19/2023 | Telephone conference with R. Gilliland regarding role assignments. | TOS | 0.3 | | |
| 9/20/2023 | Phone conference with all co-counsel regarding draft complaint and draft strategy and to-do list naming R. Gilliland to head assignments and be responsible for coordination moving forward regarding efficiency measures. | TOS | 1.1 | | |
| 9/20/2023 | Revise strategy and to-do list based on assignments and feedback during call. | TOS | 0.8 | | |
| 9/20/2023 | Emails with co-counsel regarding strategy and to-do list with new master to-do and strategy documents. | TOS | 0.3 | | |
| 9/21/2023 | Phone conference with co-counsel regarding draft complaint. | TOS | 1 | | |
| 9/21/2023 | Revise and edit draft complaint after phone conference discussion. | TOS | 0.4 | | |
| 9/25/2023 | Pull form 5500s for all 2020 and 2021 filings under the 88 Plan, Bell Rozelle Plan, DND Plan, Pension and Annuity plans, Survivor and Disability Benefit Plan and Upshaw Health benefit plan for T. Sinclair review. | | | CF | 0.8 |
| 9/25/2023 | Review form 5500s, meeting with staff about next steps for research into various benefit packages impacted by allegations. | TOS | 0.7 | | |
| 9/25/2023 | Meeting with T. Sinclair regarding next steps to find all available governing plan documents. | | | CF | 0.4 |
| 9/25/2023 | Emails with co-counsel and further revisions to complaint based on my findings on plan terms research and additional injunctive remedy benefit. | TOS | 1.7 | | |
| 9/25/2023 | Receipt and review of task reports on research conducted on task list regarding further strategy changes and edits containing possible management issues on R 26 terminology; research and analysis and further edits regarding CTA4 precedent. | TOS | 4.1 | | |
| 9/25/2023 | Final revisions to complaint specifically on the sections on history, injunctive remedy, and claims; email to all co-counsel turning over editorial control. | TOS | 5.4 | | |
| 9/26/2023 | Pull available copies of and review and analysis of 88 Plan regarding determining if available benefits impacted by adjusted cognitive scoring and outline key terms for possible inclusions in class claims. | TOS | 1.8 | | |
| 9/26/2023 | Pull copies of and review and analysis of Bert Rozell Plan documents including all amendments and changes to the Plan up to present 2021 Plan document approximately 240 pages in total regarding revisions to complaint and historical analysis of potential impact of race adjustments to cognitive testing. | TOS | 1.7 | | |

| | | | | | |
|---|---|---|---|---|---|
| 9/26/2023 | Review and edits to make on those benefit claims after review of the 88 Plan documents. | TOS | 0.9 | | |
| 9/26/2023 | Emails with R. Gilliland on 88 Plan overlap. | TOS | 0.4 | | |
| 9/26/2023 | Pull case filings in Alford case to confirm no overlap, review complaint and make sure no cross allegations. | TOS | 2.2 | | |
| 9/26/2023 | Research pleadings previously filed by NFL plans to cross-check their standard motion practice and filing motions to dismiss, address those arguments with edits to complaint. | TOS | 1.7 | | |
| 9/27/2023 | Review and analysis of all prior Plan documents, every plan involved in claims, and all prior benefit packages; prepare outline for use in establishing benefits available at various times and changes to plan terms; review 755 pages of Plan documents pulled by staff regarding final edits before filing and cross-check for errors in allegations. | TOS | 6.2 | | |
| 9/27/2023 | Notes for further edits to complaint filing regarding different Plan terms and outline for possible solutions in past due benefits should claims be successful. | TOS | 1.4 | | |
| 9/27/2023 | Emails with co-counsel regarding further edits to make to draft complaint on 1981 claims. | TOS | 0.8 | | |
| 9/28/2023 | Review local rules in Maryland District Court for T. Sinclair review and make edits to comply on draft complaint. | | | CF | 0.6 |
| 9/28/2023 | Revise and format Class-Action Complaint, pull case law citations for final review by T. Sinclair. | | | VH | 1.30 |
| 9/28/2023 | Phone conference with co-counsel regarding edits to complaint. | TOS | 0.3 | | |
| 9/28/2023 | Phone conference with R. Gilliland regarding final edits to complaint. | TOS | 0.7 | | |
| 9/28/2023 | Final edits to class action complaint before turning over to local counsel; review and cross-check local rules; pull and review any prior rulings on class actions and ERISA cases from court in Maryland. | TOS | 2.4 | | |
| 9/29/2023 | Receipt and review of filed Complaint and Summonses (ECF 1). | TOS | 0.1 | | |
| 9/29/2023 | Receipt and review of text notice regarding case reassigned to Judge Julie Rebecca Rubin. | TOS | 0.1 | | |
| 9/30/2023 | Receipt and review litigation analytics reports on judge and court (.5) and pull prior class action rulings from court regarding analysis of prior class action issues regarding class certification in injunctive remedy setting(.9) | TOS | 1.4 | | |
| 9/30/2023 | Review and analysis of Wooten v. NFL complaint from MDL and motion to amend the CTE class settlement agreement and original settlement agreement. | TOS | 2.8 | | |
| 10/2/2023 | Receipt and review emails between D. Miles to C. Seeger circulating the Complaint filed regarding race norming and that the cases do not overlap. | TOS | 0.1 | | |
| 10/2/2023 | Receipt and review of court notice of summonses issued (ECF 2)(.1) | TOS | 0 | | |
| 10/3/2023 | Email from co-counsel regarding pro hac vice form and rules. | TOS | 0.1 | | |
| 10/3/2023 | Prepare for and attend first joint co-counsel meeting; review and be prepared to discuss all of the tasks set out within the prior circulated task list; revised and circulated the same with assignments based on R. Gilliland directions. | TOS | 1.2 | | |
| 10/10/2023 | Receipt and review of Leon H. Hampton's Motion to Appear *Pro Hac Vice* for Plaintiffs (ECF 3). | TOS | 0 | | |

| | | | | | |
|---|---|---|---|---|---|
| 10/10/2023 | Receipt and review of Paul E. Evan's Motion to Appear *Pro Hac Vice* for Plaintiffs (ECF 4). | TOS | 0 | | |
| 10/10/2023 | Receipt and review of Rebecca D. Gilliland's Motion to Appear *Pro Hac Vice* for Plaintiffs (ECF 5). | TOS | 0 | | |
| 10/10/2023 | Receipt and review of W. Daniel "Dee" Miles Motion to Appear *Pro Hac Vice* for Plaintiffs (ECF 6). | TOS | 0 | | |
| 10/10/2023 | Receipt and review of Vicki Trammell Cuthbert's Motion to Appear *Pro Hac Vice* for Plaintiffs (ECF 7). | TOS | 0 | | |
| 10/10/2023 | Receipt and review of Motion to Appear *Pro Hac Vice* filed by co-counsel on my behalf for Plaintiffs (ECF 8). | TOS | 0 | | |
| 10/11/2023 | Research and review various publications regarding the use of race norming and alternatives in order to create a list of potential experts both for consulting and testifying experts. | TOS | 0.8 | | |
| 10/11/2023 | Emails with co-counsel regarding tasks assignments, experts and T&E protocols. | TOS | 0.7 | | |
| 10/12/2023 | Phone call with R. Gilliland regarding update and potential settlement strategy. | TOS | 1 | | |
| 10/12/2023 | Office conference with T. Sinclair; research to find additional plan documents and insurance plan terms if available. | | | CF | 0.80 |
| 10/13/2023 | Research online various websites for NFL Player Insurance Plan document. | | | CF | 0.70 |
| 10/16/2023 | Review plans and co-counsel tasks; prepare for meeting of co-counsel tomorrow in Montgomery. | TOS | 1.7 | | |
| 10/17/2023 | Travel from Birmingham to Montgomery. | TOS | 1.2 | | |
| 10/17/2023 | Conference with co-counsel regarding case strategy, relatedness of plan benefits, scope of class, likely defenses to claims, motion practice, timing, task lists and new tasks to be assigned. | TOS | 6.5 | | |
| 10/17/2023 | Travel from Montgomery to Birmingham. | TOS | 1.5 | | |
| 10/18/2023 | Receipt and review of Order granting ECF 3; Motion to Appear by Leon H. Hampton (ECF 9). | TOS | 0 | | |
| 10/18/2023 | Receipt and review of Order granting ECF 4; Motion to Appear by Paul W. Evans (ECF 10). | TOS | 0 | | |
| 10/18/2023 | Receipt and review of Order granting ECF 5; Motion to Appear by Rebecca D. Gilliland (ECF 11). | TOS | 0 | | |
| 10/18/2023 | Receipt and review of Order granting ECF 6; Motion to Appear by W. Daniel "Dee" Miles, III (ECF 12). | TOS | 0 | | |
| 10/18/2023 | Receipt and review of Order granting ECF 7; Motion to Appear by Vicki Trammell Cuthbert (ECF 13). | TOS | 0 | | |
| 10/18/2023 | Receipt and review of Order granting ECF 8; Motion to Appear by Thomas O. Sinclair (ECF 14). | TOS | 0 | | |
| 10/19/2023 | Receipt and review of eight (8) waivers of service (ECF 15-22). | TOS | 0.4 | | |
| 10/25/2023 | Receipt and review of two (2) waivers of service (ECF 23-24). | TOS | 0.1 | | |
| 10/26/2023 | Emails with co-counsel regarding motion for interim class leadership. | TOS | 0.3 | | |
| 10/27/2023 | Draft and edit Affidavit on Class Experience regarding filing for preliminary class counsel approval; emails with co-counsel on same. | TOS | 1.4 | | |
| 11/1/2023 | Receipt and review of Alison D. Hawthorne's Motion to Appear *Pro Hac Vice* for Plaintiffs (ECF 25). | TOS | 0 | | |
| 11/9/2023 | Receipt and review of Order granting ECF 25; Motion to Appear by Alison D. Hawthorne for Plaintiffs (ECF 26). | TOS | 0 | | |

| | | | | | |
|---|---|---|---|---|---|
| 11/17/2023 | Phone conference with NFL counsel and co-counsel regarding scheduling of preliminary scheduling meeting. | TOS | 0.6 | | |
| 11/17/2023 | Office conference with staff regarding briefing on case, tasks to be assigned, and initial meeting scheduling and preparation. | TOS | 0.5 | | |
| 11/19/2023 | Prepare for meeting with counsel regarding the plans with review of co-counsel to-do list; review, revise and edit draft memo on plans related benefits; begin researching alternatives for models to remove race norming bias. | TOS | 2.8 | | |
| 11/20/2023 | Emails with co-counsel regarding case overview. | TOS | 0.2 | | |
| 11/28/2023 | Email from R. Gilliland regarding leadership application. | TOS | 0.1 | | |
| 11/29/2023 | Edits and circulate joint motion to stay pending mediation. | TOS | 0.2 | | |
| 11/29/2023 | Receipt and review Memorandum in Support of Motion to appoint interim class counsel; revisions to the same. | TOS | 1.2 | | |
| 11/29/2023 | Final edits and revisions to Affidavit in Support of Interim Motion for Appointment. | TOS | 0.6 | | |
| 11/29/2023 | Multiple emails with co-counsel and opposing counsel regarding upcoming parties planning meeting. | TOS | 0.5 | | |
| 11/29/2023 | Receipt and review of Edward Joseph Meehan's Notice of Appearance for Defendants (ECF 27). | TOS | 0 | | |
| 11/30/2023 | Receipt and review of Plaintiffs' Motion to Appoint Interim Class Counsel (ECF 28). | TOS | 0 | | |
| 12/1/2023 | Review meeting notes; review emails on agenda topics; review co- counsel task list; and draft updated agenda with all topics regarding upcoming meetings. | TOS | 2.7 | | |
| 12/1/2023 | Continue to revise and edit co-counsel meeting notes and update co-counsel agenda and adjustments to tasks and strategy document to create efficiency. | TOS | 1.8 | | |
| 12/1/2023 | Prepare for trip to DC and review the entire file to include all plan documents. | TOS | 4.2 | | |
| 12/2/2023 | Multiple phone conferences with R. Gilliland regarding strategy for initial meeting and case planning, ability to shift into injunctive remedy descriptions on adjustments to existing claims. | TOS | 1.2 | | |
| 12/2/2023 | Review to-do list and set out tasks for review in preparation for discussions with NFL. | TOS | 3.1 | | |
| 12/3/2023 | Continued preparation for meeting in DC. | TOS | 3.4 | | |
| 12/3/2023 | Travel from Birmingham to DC, review binders with prior litigation files from cases involving plans in order to prepare for arguments from defense counsel in meeting arising from key plans terms such as time, exhaustion, other exclusions | TOS | 7.2 | | |
| 12/3/2023 | Co-counsel meeting prior to scheduling conference with plan attorneys regarding agenda for upcoming meeting. | TOS | 2.5 | | |
| 12/4/2023 | Review entire file; research Plans; and begin drafting outline for co-counsel on Plan relationships regarding coordination of benefits. | TOS | 1.4 | | |
| 12/4/2023 | Begin drafting co-counsel reporting and expenses requirements; review and analysis of prior court order and review of Judicial Center guidelines on class action management. | TOS | 1.1 | | |
| 12/4/2023 | Revisions to agenda regarding court procedural issues, motion practice, scheduling meeting heading, discovery practice, and parties' planning report. | TOS | 0.5 | | |
| 12/4/2023 | Meeting with co-counsel and final preparation for scheduling conference with defense counsel. | TOS | 0.8 | | |

| | | | | | |
|---|---|---|---|---|---|
| 12/4/2023 | Scheduling conference and discussion of key issues with defense counsel. | TOS | 5.5 | | |
| 12/4/2023 | Meeting with co-counsel regarding preparation for continued scheduling conference. | TOS | 1 | | |
| 12/4/2023 | Research regarding demographic norming used in new standard. | TOS | 1.2 | | |
| 12/4/2023 | Receipt and review of Defendants' Notice regarding Non-Objection to interim counsel (ECF 29). | TOS | 0.1 | | |
| 12/4/2023 | Receipt and review of Joint Motion to Stay (ECF 30). | TOS | 0 | | |
| 12/5/2023 | Continued conference with all counsel. | TOS | 3.2 | | |
| 12/5/2023 | Meeting with co-lead counsel regarding case strategy moving forward, tasks, assignments, sampling, and next moves in providing relief to class and Defendants' response at initial scheduling conference. | TOS | 1.8 | | |
| 12/5/2023 | Travel from DC to Birmingham (2 hours full and half remainder)(6.4) | TOS | 4.2 | | |
| 12/5/2023 | Receipt and review of Order granting ECF 28 appointing D. Miles and T. Sinclair interim class counsel for Plaintiffs (ECF 31). | TOS | 0.1 | | |
| 12/5/2023 | Receipt and review of Order granting ECF 30 administratively staying the case (ECF 32). | TOS | 0.1 | | |
| 12/14/2023 | Continue long term task of creating benefits chart across all plans using notes from plan document reviews. | TOS | 2.9 | | |
| 12/20/2023 | Receipt and review of Mark C. Nielsen's Notice of Appearance for Defendants (ECF 33). | TOS | 0 | | |
| 12/20/2023 | Edits to parties proposed protective order, review emails on same and edits and finalize. | TOS | 1.2 | | |
| 12/28/2023 | Receipt and review of the Parties' Joint Motion for Protective Order (ECF 34). | TOS | 0 | | |
| 12/28/2023 | Receipt and review of Stipulated Protective Order (ECF 35). | TOS | 0 | | |
| 12/28/2023 | Receipt and review of the Parties' 1st Joint Status Report (ECF 36). | TOS | 0 | | |
| 1/4/2024 | Receipt and review of letter from defense counsel regarding initial document production of plans and historical plans and amendments Bates numbered Bailey_PD_0000001-0001339. | TOS | 0.1 | | |
| 1/4/2024 | Review Defendants' production of NFL Player Supplemental Disability Plan document amended and restated April 1, 2001. | TOS | 0.8 | | |
| 1/4/2024 | Review Defendants' production of 88 Plan document as of October 1, 2010. | TOS | 0.6 | | |
| 1/4/2024 | Review and analysis of Defendants' production of the Bell Rozelle NFL Player Retirement Plan as of August 2011. | TOS | 1.8 | | |
| 1/4/2024 | Review and analysis of Defendants' production of the Bell Rozelle Plan document as of April 2012. | TOS | 1.1 | | |
| 1/6/2024 | Review and analysis of Defendants' production of the 2011 version of the 88 Plan document from defense and examine possible reimbursement claims. | TOS | 0.9 | | |
| 1/6/2024 | Review and analysis of Defendants' production of the 2011 version of the NFL Player Supplemental Disability and Neurocognitive Benefit Plan regarding key historical document before changes to most recent version of plan. | TOS | 1.5 | | |
| 1/6/2024 | Review and analysis of Defendants' production of the 2014 version of the Bell Rozelle Plan. | TOS | 1.6 | | |
| 1/6/2024 | Review and analysis of Defendants' production of the 2015 version of the 88 Plan. | TOS | 0.4 | | |

| | | | | | |
|---|---|---|---|---|---|
| 1/6/2024 | Review and analysis of Defendants' production of the 2014 version of the Bell Rozell Plan. | TOS | 0.4 | | |
| 1/6/2024 | Review and analysis of D&N Plan version 2014. | TOS | 1.1 | | |
| 1/8/2024 | Review, analysis and notes on 2017 Disability and Neurocognitive Benefit Plan produced by Defendants. | TOS | 1.3 | | |
| 1/8/2024 | Review and outline 2017 version of 88 Plan produced by Defendants. | TOS | 0.3 | | |
| 1/8/2024 | Review, analysis and outline of 2017 and 2020 versions of Bell Rozelle Plan, 2019 D&N Plan, and the 2020 version of the 88 Plan all produced by Defendants. | TOS | 2.8 | | |
| 1/22/2024 | Review and analysis of key document provided by Defendants, the NFL Player Neurocognitive & Death Benefit Plan amended and restated April 1, 2020 and create summary of key benefit provisions of same. | TOS | 2.7 | | |
| 1/22/2024 | Complete review of Defendants' document production with review and analysis of the Bell Rozell 2021 Plan, 2021 Disability and Survivor Benefit Plan, 2023 88 Plan, and all amendments to plan documents, create chart of changes if any to key provisions regarding preparation for injunctive relief adjustments and defenses to claims. | TOS | 3.6 | | |
| 2/1/2024 | Edits to parties joint status report and prepare for finalize draft to defense counsel. | TOS | 0.2 | | |
| 2/2/2024 | Receipt and review of the Parties' 2nd Joint Status Report (ECF 37). | TOS | 0 | | |
| 2/6/2024 | Phone conference with Plan counsel and co-counsel. | TOS | 0.5 | | |
| 2/6/2024 | Phone call with all co-counsel regarding next steps and initial response from plan counsel. | TOS | 0.4 | | |
| 2/17/2024 | Receipt and review of Defendants' Confidential Settlement Communication. | TOS | 0.6 | | |
| 2/26/2024 | Receipt and review of multiple emails regarding Defendants' production to Plaintiffs' counsel; review correspondence from Defendants regarding production filters. | TOS | 1.4 | | |
| 2/26/2024 | Multiple phone call with co-counsel regarding next steps. | TOS | 1.2 | | |
| 2/26/2024 | Phone conference with R. Gilliland regarding next steps and adjustments to initial strategy document and duties assigned for class certification issues regarding injunctive remedy class issue. | TOS | 0.9 | | |
| 2/27/2024 | Continue review of NFL Plans' document production Bailey_PD_0000001-0001339 consisting of the plans at issue, review for accuracy of prior plan documents searches and language to confirm no further revisions to complaint required, edits to chart of benefits for further use by co-counsel. | TOS | 4.1 | | |
| 2/29/2024 | Phone call with all co-counsel; prepare for and attend meeting to discuss all topics including manner of reconsidering denied claims. | TOS | 1.1 | | |
| 3/1/2024 | Edits and review proposed joint status report. | TOS | 0.2 | | |
| 3/1/2024 | Receipt and review of the Parties' 3rd Joint Status Report (ECF 38). | TOS | 0 | | |
| 3/8/2024 | Emails with co-counsel and updates on meetings and proposed stay of deadlines. | TOS | 0.3 | | |
| 3/10/2024 | Receipt and review of the Parties' 4th Joint Status Report and Motion for Stay (ECF 39). | TOS | 0 | | |
| 3/11/2024 | Receipt and review of Order granting 39 (ECF 40). | TOS | 0.1 | | |

| | | | | | |
|---|---|---|---|---|---|
| 3/21/2024 | Phone call with R. Gilliland regarding broad brush settlement structure discussions and subsequent team meeting. | TOS | 0.9 | | |
| 3/21/2024 | Phone conference with all co-counsel to cover all resolution discussions regarding administrative remedies and damages. | TOS | 2 | | |
| 3/23/2024 | Prepare for meeting with plan attorneys, review file, prepare to explain how we would propose removing discriminatory norming in plan administration, review team summaries of various issues, be prepared to discuss all issues in case from class certification to discovery and possible resolution. | TOS | 4.9 | | |
| 3/24/2024 | Travel from Birmingham to DC, review and analysis of cognitive testing protocols, prior plan directions and expert documentation on possible solutions | TOS | 5.4 | | |
| 3/24/2024 | Meeting with expert and co-counsel. | TOS | 1.5 | | |
| 3/25/2024 | Meetings with co-counsel, experts, plan attorneys regarding all issues in case and possible resolution scenarios. | TOS | 5 | | |
| 3/26/2024 | Travel from DC to Birmingham (2 hours full and half remainder)(4.3) | TOS | 3.2 | | |
| 4/4/2024 | Prepare for and attend conference with expert regarding proposal for administration of class claims. | TOS | 1.3 | | |
| 4/4/2024 | Review proposed report to court on status and emails on same. | TOS | 0.2 | | |
| 4/10/2024 | Receipt and review of the Parties 5th Joint Status Report (ECF 42). | TOS | 0 | | |
| 4/27/2024 | Review, analysis and edits of proposed structure for resolution. | TOS | 0.7 | | |
| 4/27/2024 | Review meeting notes with co-counsel; begin creating checklist for resolution structure. | TOS | 0.8 | | |
| 4/27/2024 | Analysis of injunctive remedy classes and approved relief for ERISA benefit claims and case law approving same with focus on CTA4. | TOS | 2.4 | | |
| 4/27/2024 | Final notes on mechanism for resolution of class wide claims both in terms of the injunctive remedy under ERISA and for the 1981 claims. | TOS | 0.9 | | |
| 4/28/2024 | Phone conference with R. Gilliland regarding proposal on injunctive remedy class and edits to protocol on implementation to create uniform application of all governing plan terms. | TOS | 1.4 | | |
| 4/29/2024 | Receipt and review of memorandum from R. Gilliland regarding proposed protocol for resolution. | TOS | 0.4 | | |
| 4/30/2024 | Receipt and review of email from Dr. Spica regarding sample data transformations. | TOS | 0.3 | | |
| 5/1/2024 | Review and analysis of proposed methodology of managing data and claims in reprocessing from expert viewpoint. | TOS | 1.5 | | |
| 5/1/2024 | Phone conference with expert regarding initial results and review of initial data set production from NFL (1.8) and phone conference with R. Gilliland regarding impact of application of protocol to plan terms (.6). | TOS | 2.4 | | |
| 5/1/2024 | Receipt and review of email from R. Gilliland to all co-counsel regarding NCD benefits and T&P and absent data points. | TOS | 0.1 | | |
| 5/1/2024 | Receipt and review email from R. Gilliland regarding providing data set in Excel format. | TOS | 0.1 | | |
| 5/10/2024 | Receipt and review of the Parties' 6th Joint Status Report (ECF 43). | TOS | 0 | | |

| | | | | | |
|---|---|---|---|---|---|
| 5/24/2024 | Phone conference with co-counsel regarding response from opposing counsel on our proposed outline. | TOS | 0.7 | | |
| 6/6/2024 | Phone conference with co-counsel regarding feedback on our proposal and discussion on class certification and 1981 subclass claims. | TOS | 0.8 | | |
| 6/6/2024 | Receipt and review of email from defense attorney regarding next status report. | TOS | 0.1 | | |
| 6/6/2024 | Receipt and review of email from defense attorney responding to R. Gilliland's email regarding Plaintiffs' settlement proposal and responding to certain data points. | TOS | 0.2 | | |
| 6/7/2024 | Receipt and review of the Parties' 7th Joint Status Report and Motion for Stay (ECF 45). | TOS | 0 | | |
| 6/10/2024 | Email from R. Gilliland regarding formal T&E protocol and providing time and expenses. | TOS | 0.1 | | |
| 6/10/2024 | Phone call with R. Gilliland regarding status and response to NFL. | TOS | 0.5 | | |
| 6/10/2024 | Receipt and review of Order granting ECF 45; case stayed through and including September 9, 2024 (ECF 46). | TOS | 0.1 | | |
| 6/18/2024 | Receipt and review of emails between R. Gilliland and defense attorney regarding his client's approval on Defendants' response. | TOS | 0.1 | | |
| 6/20/2024 | Emails from R. Gilliland and L. Hampton regarding an article on contractual standing in section 1981 cases. | TOS | 0.4 | | |
| 6/24/2024 | Review and analysis of case law on 1981 claims in class settings and ways in which courts have approved resolution of the claims regarding determining window, if any, of time where 1981 claims could survive (2.7) and meeting with consultant attorney regarding application of 1981 in ERISA context (1.0) and telephone conference with R. Gilliland on findings (.9). | TOS | 4.6 | | |
| 7/2/2024 | Phone call with R. Gilliland regarding research and drafting assignment on 1981 and ERISA interaction, methodology on management of claims (1.1) and analysis of case law where both claims asserted and manner of courts addressing 1981 in class context (3.2). | TOS | 4.3 | | |
| 7/2/2024 | Conference with R. Gilliland regarding findings from research assignment and proposal to address both through increase in benefits. | TOS | 2.1 | | |
| 7/3/2024 | Phone call with defense counsel regarding scheduling and next steps. | TOS | 0.6 | | |
| 7/3/2024 | Receipt and review of email from E. Meehan regarding response to Plaintiffs' proposed protocol for resolution, election to not accept the class action settlement proposal, and openness to resolve Plaintiffs' claims individually. | TOS | 0.2 | | |
| 7/3/2024 | Receipt and review of email from R. Gilliland regarding phone call with defense attorney addressing defense response to proposal and need for a scheduled call to address the 1981 claim. | TOS | 0.1 | | |
| 7/3/2024 | Conference with R. Gilliland regarding response to plans initial realization that readjustment and implementation of injunctive relief was only feasible resolution and proposed response from our side and assignment of drafting initial response. | TOS | 0.6 | | |

| | | | | | |
|---|---|---|---|---|---|
| 7/9/2024 | Receipt and review of email from R. Gilliland regarding T&P Plan and NCD Plan continuation of benefits review; review portions regarding the same within the Plan. | TOS | 0.4 | | |
| 7/9/2024 | Receipt and review of the Parties' 8th Joint Status Report (ECF 47). | TOS | 0 | | |
| 7/16/2024 | Review and analysis of case law on contacting putative class members and pathway to complying with plan terms while resolving adjustments to scores. | TOS | 1.3 | | |
| 7/16/2024 | Review and analysis of Department of Labor regulations in the context of the Plan's proposal for unilateral review of all claims and possible step-by-step resolution that would comply with DOL regulations and injunctive relief requirements regarding confirming possible path to resolution in ERISA context. | TOS | 5.4 | | |
| 7/19/2024 | Review and analysis of plan terms, modification of charts for T. Sinclair use in response to communications with co-counsel regarding T. Sinclair guide on pathways to resolution. | | | VH | 1.40 |
| 7/19/2024 | Research into unilateral plan revisions to existing claims, review case law on plan authority for same, regarding Plan threat to unilaterally determine new scores without oversight, threat to exclude certain claims and rescoring according to their own path. | TOS | 4.4 | | |
| 7/19/2024 | Review, revise and edit response on Plan's proposal to engage in unilateral claims administration and provide same to R. Gilliland. | TOS | 1.5 | | |
| 7/22/2024 | Review and respond to multiple emails with R. Gilliland circulating draft response to Defendants' proposal. | TOS | 0.4 | | |
| 7/26/2024 | Receipt and review email from co-counsel regarding labor statistics and clinical algorithms. | TOS | 0.3 | | |
| 7/30/2024 | Phone conference with R. Gilliland regarding response to NFL edits. | TOS | 0.5 | | |
| 7/30/2024 | Receipt and respond to email from R. Gilliland regarding analysis continuation of benefits review. | TOS | 0.1 | | |
| 7/31/2024 | Receipt and review email from R. Gilliland requesting proposed edits to the enclosed draft reply to the NFL's response. | TOS | 0.3 | | |
| 8/1/2024 | Conference with D. Miles regarding need to bring in mediator and options for mediators with ERISA experience. | TOS | 0.6 | | |
| 8/1/2024 | Receipt and review of proposed reply to Defendants' response and edits to same; email to co-counsel with same. | TOS | 2.4 | | |
| 8/1/2024 | Receipt and review of further edits by D. Miles to the draft reply to response on settlement discussions and response to same, analysis of changes to plan terms by unilateral action. | TOS | 0.8 | | |
| 8/1/2024 | Receipt and review to email from R. Gilliland enclosing edits to the draft reply to the NFL's response. | TOS | 0.2 | | |
| 8/1/2024 | Response to co-counsel in email accepting R. Gilliland's edits and including one more change to the draft. | TOS | 0.2 | | |
| 8/1/2024 | Receipt and review email from D. Miles approving co-counsel's edit. | TOS | 0.1 | | |
| 8/2/2024 | Phone conference with co-counsel and with defense counsel regarding need for mediator involvement and review final version of reply. | TOS | 1.3 | | |
| 8/2/2024 | Receipt and review email from P. Evans to E. Meehan enclosing reply regarding proposed protocol. | TOS | 0.3 | | |

| | | | | | |
|---|---|---|---|---|---|
| 8/8/2024 | Receipt and review updated draft status report to court; email approving draft with counsel regarding same. | TOS | 0.2 | | |
| 8/8/2024 | Receipt and review of email enclosing updated edits to draft status report from E. Meehan. | TOS | 0.2 | | |
| 8/9/2024 | Receipt and review of the Parties' 9th Joint Status Report (ECF 48). | TOS | 0 | | |
| 8/15/2024 | Phone conference with R. Gilliland regarding offsets for past due benefits issue raised in meetings, review and analysis of various plan terms at issue over more than a decade of amendments and proposed response on same. | TOS | 0.8 | | |
| 8/16/2024 | Receipt and review email from R. Gilliland to B. Cuthbert regarding a potential new client and applying for early pension. | TOS | 0.1 | | |
| 8/29/2024 | Phone conference with D. Miles and R. Gilliland regarding defense's response and crafting solutions; receipt and review email to co-counsel regarding same. | TOS | 0.5 | | |
| 9/9/2024 | Receipt and review email from R. Gilliland regarding call with E. Meehan wherein defense counsel believes class settlement is in the best interest of his clients and discuss possible mediation in September. | TOS | 0.1 | | |
| 9/9/2024 | Receipt and review email from Judge Rosen to all counsel confirming mediation, dinner and location details. | TOS | 0.1 | | |
| 9/9/2024 | Receipt and review of the Parties 10th Joint Status Report and Motion for Stay (ECF 49). | TOS | 0 | | |
| 9/10/2024 | Receipt and review of Order granting ECF 49; case stayed through and including December 9, 2024 (ECF50). | TOS | 0.1 | | |
| 9/13/2024 | Review and analysis of how to damage would result form re adjustments calculations; phone call with co-counsel on same regarding upcoming mediation prep. | TOS | 1.2 | | |
| 9/13/2024 | Receipt and review email from D. Miles identifying Plaintiffs, Plaintiffs' counsel, Defendants and lodestar fee tracking. | TOS | 0.2 | | |
| 9/13/2024 | Receipt and review email from JAMS requesting information to open new JAMS file. | TOS | 0.1 | | |
| 9/13/2024 | Receipt and review email from R. Gilliland regarding draft mediation statement. | TOS | 0.2 | | |
| 9/13/2024 | Receipt and review email from Judge Rosen to all counsel requesting hard copies of mediation statements and format. | TOS | 0.1 | | |
| 9/19/2024 | Receipt and review email from JAMS requesting contact information for all counsel and fee split clarification. | TOS | 0.1 | | |
| 9/19/2024 | Receipt and review email from D. Miles to JAMS. | TOS | 0.1 | | |
| 9/19/2024 | Email to JAMS providing contact information. | TOS | 0.1 | | |
| 9/20/2024 | Receipt and review email from D. Miles to JAMS regarding mediation attendance on behalf of the Plaintiffs. | TOS | 0.1 | | |
| 9/20/2024 | Receipt and review email from E. Meehan to JAMS on who will attend mediation on behalf of the Defendants. | TOS | 0.1 | | |
| 9/23/2024 | Receipt and review email from JAMS confirming mediation dates, times, location and the necessary signatures on Engagement Agreement; requests regarding mediation statements; and regarding payment of mediation fees. | TOS | 0.1 | | |
| 9/23/2024 | Receipt and review D. Miles email correspondence with JAMS regarding the 50/50 split of Judge Rosen's fee. | TOS | 0.1 | | |
| 9/24/2024 | Receipt and review email enclosing updated draft engagement agreement from JAMS. | TOS | 0.1 | | |

| | | | | | |
|---|---|---|---|---|---|
| 9/24/2024 | Receipt and review of email from P. Evans to JAMS circulating Plaintiffs' signed engagement agreement for mediation. | TOS | 0.1 | | |
| 9/25/2024 | Receipt and review email from JAMS to all counsel setting up the pre-mediation teleconference for September 27 at 12pm EST and enclosing call details. | TOS | 0.1 | | |
| 9/26/2024 | Review and analysis of email from R. Gilliland to co-counsel enclosing both versions of the mediation statements and relaying Judge Rosen's instructions for a larger maximum 30-page statement to be exchanged with Defendants and a smaller confidential statement just for him, noting the statement includes large inserts from prior reports regarding injunctive remedy and ERISA term requirements. | TOS | 1.4 | | |
| 9/27/2024 | Email to R. Gilliland giving signature approval for mediation statement. | TOS | 0.1 | | |
| 9/28/2024 | Multiple emails regarding mediation statements with co-counsel and mediator and further edits to confidential mediation statement. | TOS | 0.4 | | |
| 9/28/2024 | Receipt and review mediation statements (confidential and non-confidential) and further edits to same. | TOS | 2.1 | | |
| 9/28/2024 | Receipt and review emails with JAMS and all counsel regarding upcoming mediation schedule. | TOS | 0.1 | | |
| 9/29/2024 | Receipt and review email from R. Gilliland to Judge Rosen enclosing non-confidential mediation statement and exhibits. | TOS | 0.1 | | |
| 9/29/2024 | Receipt and review emails between R. Gilliland to Judge Rosen enclosing confidential mediation statement and exhibits. | TOS | 0.1 | | |
| 9/30/2024 | Receipt and review email from E. Meehan to Judge Rosen enclosing Defendants' Confidential Mediation Statement and exhibits. | TOS | 0.7 | | |
| 9/30/2024 | Phone conference with co-counsel regarding the mechanics of getting the NFL to discuss its plan terms and procedures; further discussions regarding the mechanics of those procedural changes and how to set up the rescoring structure concerning past claims. | TOS | 1.1 | | |
| 10/1/2024 | Review Parties' Mediation Statements and prior position statements regarding preparing for mediation. | TOS | 2.4 | | |
| 10/1/2024 | Travel from Birmingham to DC for mediation, continued preparation for mediation during travel, review plan summaries, prior cases referring to use of race norming and 1981 case law | TOS | 5.7 | | |
| 10/1/2024 | Meeting with opposing counsel, mediator, Judge Rosen, and co-counsel to prepare for upcoming mediation. | TOS | 3 | | |
| 10/1/2024 | Email from JAMS regarding participation via Zoom. | TOS | 0.1 | | |
| 10/1/2024 | Email from JAMS to confirm only Plaintiffs will have remote participants. | TOS | 0.1 | | |
| 10/2/2024 | Prepare for and attend mediation with Judge Rosen. | TOS | 9.5 | | |
| 10/2/2024 | Post-mediation meeting with clients. | TOS | 3.1 | | |
| 10/2/2024 | Meeting with Plaintiffs' expert. | TOS | 0.2 | | |
| 10/3/2024 | Prepare for and attend second day of mediation with Judge Rosen. | TOS | 8.2 | | |
| 10/3/2024 | Post-mediation meeting with mediator and then with clients. | TOS | 2.8 | | |
| 10/4/2024 | Return travel from DC to Birmingham, create summary of respective positions and next steps | TOS | 6.5 | | |

| | | | | | |
|---|---|---|---|---|---|
| 10/4/2024 | Review and respond to multiple emails between JAMS and all counsel providing potential future dates and scheduling for two more days of mediation. | TOS | 0.3 | | |
| 10/7/2024 | Receipt and review email from R. Gilliland enclosing Judge Rosen's law review article. | TOS | 0.2 | | |
| 10/7/2024 | Review and analysis of case law cited and updated case law on same. | TOS | 1.2 | | |
| 10/7/2024 | Review and analysis of mediators article on injunctive relief classes which result in damages being paid and class actions and hybrid model actions. | TOS | 1.7 | | |
| 10/7/2024 | Telephone conference with R. Gilliland regarding whether original injunctive relief class theory has precedent that would cause b3 issues to arise, discussion and initial analysis on mediators questions and prior article. | TOS | 0.9 | | |
| 10/7/2024 | Receipt and review email from R. Gilliland regarding Rule 23 issues and responses with details on research with follow-up calls on same. | TOS | 0.8 | | |
| 10/7/2024 | Receipt and review email from D. Miles to all counsel proposing mediation continuance around 10/31. | TOS | 0.1 | | |
| 10/8/2024 | Review and receipt of multiple emails between JAMS and all counsel providing potential future dates (11/1 and 11/4 or 10/30 and 11/1) and confirming two more days of mediation on 10/30 and 11/1. | TOS | 0.3 | | |
| 10/10/2024 | Receipt and review confirmation email regarding upcoming mediation session with Judge Rosen on 10/30 and 11/1 and deadlines for any supplemental confidential mediation statements and for payment. | TOS | 0.1 | | |
| 10/10/2024 | Analysis of edits to position statement and conference with R. Gilliland on same. | TOS | 0.2 | | |
| 10/10/2024 | Receipt and review of the Parties' 11th Joint Status Report (ECF 51). | TOS | 0 | | |
| 10/10/2024 | Receipt and respond to emails with R. Gilliland scheduling an in-person pre-mediation conference in Montgomery on 10/21. | TOS | 0.2 | | |
| 10/11/2024 | Receipt and review of email from R. Gilliland attaching rough draft task list requested by Judge Rosen. | TOS | 0.1 | | |
| 10/14/2024 | Receipt and review of emails between Judge Rosen and co-counsel regarding draft re-cap memo progress and any remaining potential settlement issues. | TOS | 0.2 | | |
| 10/15/2024 | Receipt and review of draft mediation status task list from R. Gilliland regarding mediator's requests for revision (.8); phone conference with R. Gilliland regarding same and emails from defense counsel and co counsel regarding defendants punch list for mediation discussions (.4) | TOS | 1.2 | | |
| 10/18/2024 | Receipt and respond to emails with R. Gilliland confirming pre-mediation in person conference on 10/21. | TOS | 0.1 | | |
| 10/21/2024 | Travel from Birmingham to Montgomery. | TOS | 1.4 | | |
| 10/21/2024 | Co-counsel meeting and strategy session on terms required to resolve class claims. | TOS | 4.5 | | |
| 10/21/2024 | Travel from Montgomery to Birmingham. | TOS | 1.5 | | |
| 10/28/2024 | Phone conference with co-counsel and expert regarding additional discussion on procedure for rescoring. | TOS | 1 | | |
| 10/28/2024 | Review file and prepare for mediation continuance scheduled for 10/31 and 11/1 in DC. | TOS | 2.4 | | |

| | | | | | |
|---|---|---|---|---|---|
| 10/28/2024 | Review Confidential Memorandum regarding mediation status from the parties and analysis and edits to same | TOS | 0.6 | | |
| 10/29/2024 | Prepare for upcoming mediation continuance; review draft summaries on Plans, notes on expert review, and potential outline of administrative procedures for consideration. | TOS | 4.5 | | |
| 10/29/2024 | Travel from Birmingham to DC for mediation and continued preparation for mediation | TOS | 5.2 | | |
| 10/29/2024 | Prepare for and attend conference with expert and co-counsel. | TOS | 2.1 | | |
| 10/29/2024 | Receipt and review email from R. Gilliland to Judge Rosen attaching mediation statement | TOS | 0.1 | | |
| 10/30/2024 | Mediation with Judge Rosen. | TOS | 9.8 | | |
| 10/30/2024 | Meeting with co-counsel regarding issues to be addressed the next mediation day. | TOS | 1.7 | | |
| 10/31/2024 | Review and analysis of case law on ability to create fund within plans for settlement administration and trust limitations; Westlaw research on same for prior precedent and prepare report for co counsel | TOS | 2.7 | | |
| 10/31/2024 | Analysis of selection criteria using educational norming patterns and research on usage and fairness issues within other pensions and plans. | TOS | 0.8 | | |
| 10/31/2024 | Meeting with R. Gilliland regarding findings on ERISA governed benefit plans use of norming patterns in benefit determinations, concerns about exhaustion and statute of limitations, use of special qualified trust fund for settlement administration. | TOS | 1.2 | | |
| 10/31/2024 | Receipt and respond to emails with case paralegal regarding case expense; review of prior plan terminology and analysis for original plan terms conflicting with possible method for resolution. | TOS | 0.4 | | |
| 11/1/2024 | Mediation with Judge Rosen. | TOS | 6.5 | | |
| 11/1/2024 | Receipt and review of email from R. Gilliland enclosing draft email to be provided to defense attorney about items to discuss to move forward with resolution; response to the same. | TOS | 0.2 | | |
| 11/1/2024 | Review and analysis of case law governing special qualified trust, use of personalized demographic information in plan administration, bypassing plan terms on statute of limitations and conflict with other claims, use of 1981 claim to expand other claims in prior cases. | TOS | 1.8 | | |
| 11/2/2024 | Travel from DC to Birmingham (2 hours full and half remainder)(5.1) | TOS | 3.6 | | |
| 11/4/2024 | Receipt and review of email from R. Gilliland to co-counsel regarding my suggested edits to draft email to be sent to defense attorney; attached domains and underlying tests from Dr. Spica. | TOS | 0.1 | | |
| 11/4/2024 | Respond to email with co-counsel regarding the Plans' concerns about rescoring impacting the Plans' administration moving forward and labeling it as "Proposed Domain Grouping for Settlement Discussion." | TOS | 0.4 | | |
| 11/4/2024 | Receipt and review of email response from R. Gilliland regarding domains and tests and 3 JPRFs in DC. | TOS | 0.3 | | |

| | | | | | |
|---|---|---|---|---|---|
| 11/4/2024 | Respond to email with co-counsel regarding Defendants' focus on domain grouping and having reasonable basis under the arbitrary and capricious standard of review of ERISA claims denials. | TOS | 0.7 | | |
| 11/4/2024 | Receipt and review of email response from R. Gilliland regarding testing; response to the same regarding potential adjustment in the event of a re-grouping. | TOS | 0.3 | | |
| 11/4/2024 | Receipt and review of email from R. Gilliland regarding Dr. Spica's approval of their domains; response to same regarding testing and domain. | TOS | 0.2 | | |
| 11/4/2024 | Receipt and review of email from R. Gilliland regarding Dr. Spica's approval of the current domains with tests and disapproval of the CTE version. | TOS | 0.1 | | |
| 11/4/2024 | Receipt and review of email from R. Gilliland to all counsel regarding resolution items needed to move forward. | TOS | 0.4 | | |
| 11/4/2024 | Receipt and review of email from R. Gilliland to co-counsel running new numbers based upon the rates calculated | TOS | 0.1 | | |
| 11/4/2024 | Multiple phone calls with R. Gilliland on the domains and testing criteria, the experts feedback how to resolve the disparity in treatment without causing further disparity, how to cleanse discrimination without creating further discrimination in an ERISA benefit plan, domains impacted and possible scenarios for readjustment of prior scores. | TOS | 1.5 | | |
| 11/12/2024 | Receipt and review of the Parties 12th Joint Status Report (ECF 52). | TOS | 0 | | |
| 11/13/2024 | Phone conference with co-counsel regarding rescoring results and next steps. | TOS | 0.6 | | |
| 11/15/2024 | Receipt and review of email from defense attorney to all counsel requesting approval to present areas of agreement or proposals to the Boards. | TOS | 0.1 | | |
| 11/15/2024 | Receipt and review of R. Gilliland's response email to defense attorney regarding rescoring process. | TOS | 0.1 | | |
| 11/21/2024 | Receipt and review of response revisions from L. Hampton regarding the class definition and players who did not receive the benefit of the full demographic adjustments; response to the same. | TOS | 0.2 | | |
| 11/21/2024 | Receipt and review of email from R. Gilliland to defense attorney agreeing that their email reflects current status. | TOS | 0.1 | | |
| 12/9/2024 | Receipt and review the Parties 13th Joint Status Report and Motion for Stay (ECF 53). | TOS | 0 | | |
| 12/11/2024 | Receipt and review of Order granting ECF 53; case administratively stayed through and including March 20, 2025 (ECF 54). | TOS | 0.1 | | |
| 12/14/2024 | Receipt and analysis of email from M. Junk to all counsel and Judge Rosen in response to raised questions/issues. | TOS | 0.3 | | |
| 12/14/2024 | Receipt and review of email from Judge Rosen requesting update on to-do punch list of things to do. | TOS | 0.1 | | |
| 12/14/2024 | Conference with R. Gilliland regarding mediators next steps and how to address the remaining items for our mediation to do list. | TOS | 0.7 | | |
| 12/17/2024 | Receipt and review of email from R. Gilliland to all counsel and Judge Rosen regarding additional information and/or clarification regarding various issues. | TOS | 0.2 | | |
| 12/17/2024 | Receipt of email from E. Meehan to Judge Rosen requesting alternative dates for mediation available in February 2025. | TOS | 0.1 | | |

| | | | | | |
|---|---|---|---|---|---|
| 1/2/2025 | Receipt of email from defense attorney following up on meeting in February. | TOS | 0.1 | | |
| 1/4/2025 | Receipt and review of email from Judge Rosen regarding possible mediation scheduling mid-February and requesting a phone conference with all prior to next session. | TOS | 0.1 | | |
| 1/4/2025 | Receipt and review of email from D. Miles to all counsel regarding call availability with Judge Rosen; Judge Rosen. | TOS | 0.1 | | |
| 1/4/2025 | Receipt and review of email from Judge Rosen confirming availability on Tuesday for the pre-mediation phone conference; receipt of confirmation from D. Miles and R. Gilliland. | TOS | 0.1 | | |
| 1/6/2025 | Receipt and review of email from JAMS confirming the teleconference on 01/07 at 1pm EST. | TOS | 0.1 | | |
| 1/6/2025 | Receipt and response to multiple emails with JAMS and co-counsel regarding scheduling next sessions and steps towards resolution. | TOS | 0.4 | | |
| 1/6/2025 | Receipt and review of email from R. Gilliland regarding missing data previously requested from Defendants. | TOS | 0.1 | | |
| 1/7/2025 | Phone conference with mediator regarding next steps. | TOS | 0.3 | | |
| 1/10/2025 | Receipt and review of the Parties' 14th Joint Status Report (ECF 55), draft notes and compile next steps. | TOS | 0.3 | | |
| 1/10/2025 | Receipt and review of email from defense counsel to Judge Rosen enclosing the Fourteenth Joint Status Report filed in District Court. | TOS | 0.1 | | |
| 2/5/2025 | Receipt and review of email from D. Miles regarding scheduling conflict due to unavailability for the 2/27 mediation and requesting other dates. | TOS | 0.1 | | |
| 2/5/2025 | Receipt and review of multiple emails from all counsel and Judge Rosen regarding alternative mediation dates. | TOS | 0.2 | | |
| 2/6/2025 | Receipt and review of further emails regarding mediation rescheduling. | TOS | 0.1 | | |
| 2/7/2025 | Emails between counsel and JAMS to attempt to reschedule mediation. | TOS | 0.1 | | |
| 2/10/2025 | Phone call with R. Gilliland regarding next steps and tasks for settlement talks rescheduled to March. | TOS | 0.3 | | |
| 2/10/2025 | Receipt and review of the Parties' 15th Joint Status Report (ECF 56). | TOS | 0 | | |
| 2/11/2025 | Receipt and review of multiple emails with all counsel and Judge Rosen confirming the rescheduled mediation to be set for 3/5 and 3/6 and that any supplemental statements are due by 2/27. | TOS | 0.2 | | |
| 2/13/2025 | Review and receipt of emails with all counsel and Judge Rosen confirming mediation location to be held at the offices of the Groom Law Group. | TOS | 0.1 | | |
| 2/13/2025 | Phone call with R. Gilliland regarding upcoming mediation and task list. | TOS | 0.3 | | |
| 2/15/2025 | Receipt and review of emails between counsel regarding draft term sheet identifying areas of consensus and open issues. | TOS | 0.1 | | |
| 2/16/2025 | Receipt and analysis of term sheet from Defendants. | TOS | 0.4 | | |
| 2/17/2025 | Phone conference with all co-counsel on terms sheet. | TOS | 1.4 | | |
| 2/17/2025 | Revisions to draft term sheet (.4); call with co-counsel on same (.4). | TOS | 0.8 | | |

| | | | | | |
|---|---|---|---|---|---|
| 2/17/2025 | Draft Excel spreadsheet with various interest rate scenarios for past due benefit claims regarding finding method to account for Trust limitations and governing plan document limitations while also accounting for nature of Complaint and claims therein, how to compensate by adjustment of plan terms without violating ERISA, review and analysis of case law in research file on scope of injunctive remedy in ERISA cases where injunctive 'lifts' otherwise restrictive terms. | TOS | 2.4 | | |
| 2/17/2025 | Phone conference with co-counsel regarding issues with 1981 claims and add-ons from ERISA settlement terms. | TOS | 0.9 | | |
| 2/17/2025 | Receipt and analysis of R. Gilliland's redlined edits to draft term sheet. | TOS | 0.2 | | |
| 2/17/2025 | Revisions to draft term sheet and forward to R. Gilliland. | TOS | 0.3 | | |
| 2/18/2025 | Multiple phone calls with R. Gilliland to discuss possible class wide relief and solutions to addressing lifting conflicting plan terms through the course of the plan and multiple revisions (across all plans) as well as reports on negotiations and collective bargaining agreement reports, trying to avoid creating conflict while resolving conflict. | TOS | 1.4 | | |
| 2/19/2025 | Receipt and review of multiple emails with co-counsel scheduling a call to discuss forward facing reports on resolution, perception concerns and 1981 mixed with ERISA claims. | TOS | 0.1 | | |
| 2/20/2025 | Finalize presentation to co-counsel on possible plan to settle, prepare Excel chart on numbers, gather all research, prepare to report on findings of how we can resolve in global fashion all the pending claims through the use of an injunctive remedy including the 1981 claims and ERISA claims while expanding the scope of relief that would flow from the injunctions, print and highlight case law from research folder to answer questions and prepare slideshow | TOS | 2.4 | | |
| 2/20/2025 | Presentation to co-counsel on possible means to resolve all pending claims by expanding scope of original injunctive remedy using the b2 route. | TOS | 1.8 | | |
| 2/21/2025 | Receipt and review of email from defense attorney with attached SPSS data file provided by Dr. Garmoe containing a full set of neuropsychological testing for all evaluations conducted between 2012 through 7/31/2021. | TOS | 0.2 | | |
| 2/21/2025 | Receipt and review of new document production from Defendants, run new calculations based on percentages regarding scope of injunction concerns. | TOS | 0.7 | | |
| 2/21/2025 | Conference call regarding rescheduling mediation with all counsel. | TOS | 0.2 | | |
| 2/24/2025 | Receipt and analysis of multiple emails between all counsel regarding edits to working draft term sheet for potential next stage of discussions. | TOS | 0.4 | | |
| 2/24/2025 | Receipt and review of R. Gilliland email to Judge Rosen copying all counsel enclosing the working draft of the current status. | TOS | 0.1 | | |
| 2/25/2025 | Phone conference with R. Gilliland regarding procedural decision-making in settlement terms, timing issues and b2 concerns. | TOS | 1.1 | | |
| 2/25/2025 | Communications with co-counsel regarding timekeeping functions and next week agenda. | TOS | 0.4 | | |

| | | | | | |
|---|---|---|---|---|---|
| 2/26/2025 | Multiple phone conferences with R. Gilliland regarding data issues from production set and scope of injunctive remedy. | TOS | 0.6 | | |
| 2/28/2025 | Receipt and analysis of data and email from R. Gilliland to co-counsel providing calculations for actual damages for each category regarding practical effect of injunctive remedy. | TOS | 0.2 | | |
| 3/3/2025 | Review chart summarizing plan documents regarding checking on conflict with possible solution on expending the scope of the injunctive remedy and drating new sections on conflicting terms between versions of the plans on interest on past due benefits, statute of limitation arguments, review data sets and prepare for next round of mediation and briefing to co counsel. | TOS | 4.3 | | |
| 3/3/2025 | Receipt and respond to multiple emails from R. Gilliland including the formulas regarding interest rate calculations not calculated from WNL to moderate of those who also applied for T&P. | TOS | 0.8 | | |
| 3/3/2025 | Multiple phone calls with R. Gilliland on mediation tasks and interest rate sheets. | TOS | 0.8 | | |
| 3/4/2025 | Review and analysis of Scotus pending litigation on standing regarding damage only and Thole ruling regarding class definition regarding mediators questions and feedback. | TOS | 2.4 | | |
| 3/4/2025 | Travel from Birmingham to DC for next round of mediation, continued review of key cases on b2 injunction scope and class relief, prepare for mediation | TOS | 6.2 | | |
| 3/5/2025 | Prepare for and attend meeting with co-counsel regarding mediation preparation present findings on research. | TOS | 1.5 | | |
| 3/5/2025 | Attend mediation. | TOS | 7.5 | | |
| 3/5/2025 | Attend co-counsel post-mediation meeting. | TOS | 1.5 | | |
| 3/5/2025 | Review and analysis of other class action against plans regarding judge and defense attorneys' commentary on allegations concerning race norming, pull pacer report and pleadings in case, summarize in report to R. Gilliland my findings | TOS | 1.4 | | |
| 3/6/2025 | Attend mediation and co-counsel meetings. | TOS | 8.7 | | |
| 3/6/2025 | Email to R. Gilliland with cite to In re Medstar ERISA Litigation. | TOS | 0.1 | | |
| 3/6/2025 | Receipt and analysis of email and current draft from R. Gilliland enclosing current working draft term sheet. | TOS | 0.2 | | |
| 3/7/2025 | Travel from DC to Birmingham, create summary of position statements offered in mediation, next steps for co counsel | TOS | 6.5 | | |
| 3/7/2025 | Multiple phone conferences with R. Gilliland regarding next steps, term sheet edits, confirmatory discovery and monitoring of possible injunctive remedy. | TOS | 0.9 | | |
| 3/7/2025 | Receipt and review emails between R. Gilliland and defense attorney regarding the draft term sheet to include Plaintiffs' obligation to perform confirmatory discovery. | TOS | 0.2 | | |
| 3/10/2025 | Receipt and review multiple emails with counsel regarding Joint Status Report and mediation outcome with clients; review and analysis of circulated drafts of Joint Status Report and Motion for Additional Stay for approval to be filed. | TOS | 0.7 | | |
| 3/10/2025 | Receipt and review the Parties 16th Joint Status Report and Motion for Stay (ECF 57). | TOS | 0 | | |
| 3/11/2025 | Receipt and review of Order granting ECF 57; case stayed through and including June 10, 2025 (ECF 58). | TOS | 0.1 | | |

| | | | | | |
|---|---|---|---|---|---|
| 3/11/2025 | Phone conference with co-counsel regarding assignment of tasks on drafting settlement documents and class certification briefing. | TOS | 0.5 | | |
| 3/16/2025 | Receipt and review email from E. Meehan to R. Gilliland regarding his client's approval of the term sheet. | TOS | 0.1 | | |
| 3/17/2025 | Emails with co-counsel regarding scheduling a teleconference with the clients for a status update. | TOS | 0.3 | | |
| 3/18/2025 | Emails with co-counsel regarding suggested teleconference availability; confirmed my availability for Friday. | TOS | 0.1 | | |
| 3/19/2025 | Receipt and review emails with co-counsel rescheduling teleconference due to the client's doctor's appointment. | TOS | 0.1 | | |
| 3/21/2025 | Prepare for and attend phone conference with class representatives. | TOS | 0.5 | | |
| 4/9/2025 | Receipt and review of the Parties' 17th Joint Status Report (ECF 59). | TOS | 0 | | |
| 4/9/2025 | Review all plan documents for procedural questions and issues regarding prepare to draft settlement agreement for internal review purposes. | TOS | 2.1 | | |
| 4/9/2025 | Review class Complaint for issues regarding class definition and injunctive remedy question, review case law on terms governing certification and approval regarding preparing to draft settlement agreement. | TOS | 1.8 | | |
| 4/9/2025 | Multiple conferences with R. Gilliland on all terms to be included in the draft settlement agreement. | TOS | 1.9 | | |
| 4/10/2025 | Continued review and analysis of case law on injunctive remedies and resolution of claims for class members. | TOS | 1.4 | | |
| 4/10/2025 | Begin drafting settlement agreement draft using current term sheet draft. | TOS | 4.5 | | |
| 4/11/2025 | Continue drafting class action settlement agreement. | TOS | 5.3 | | |
| 4/13/2025 | Finalize and edits to internal review only draft settlement agreement 44 pages and edits to same before sending for review by co-counsel. | TOS | 3.2 | | |
| 4/14/2025 | Conference with R. Gilliland on draft settlement agreement. | TOS | 1.4 | | |
| 4/14/2025 | Emails with R. Gilliland regarding draft settlement agreement. | TOS | 0.2 | | |
| 4/16/2025 | Emails from R. Gilliland regarding update on her status call with defense attorney; question including a neutral third in the review of all claims alongside Dr. Garmoe and Dr. Spica and conference with R. Gilliland on same. | TOS | 0.8 | | |
| 4/17/2025 | Analysis of Plan's proposal to add in another third party expert in the original decision-making; review draft document on settlement terms; email explaining position on same. | TOS | 0.9 | | |
| 4/17/2025 | Receipt and review emails with R. Gilliland regarding the draft settlement agreement. | TOS | 0.1 | | |
| 4/29/2025 | Emails with co-counsel regarding use of neutral third and administrative remedy procedure and phone call with R. Gilliland. | TOS | 1.2 | | |
| 4/29/2025 | Email from R. Gilliland to co-counsel regarding call with the defense attorney on a two-level review. | TOS | 0.1 | | |
| 4/29/2025 | Email to co-counsel regarding setting criteria for selection of the third or having a retired judge overseeing the process and monitoring progress. | TOS | 0.2 | | |
| 4/29/2025 | Emails with D. Miles suggesting we get Dr. Spica's advice for a third-level review; R. Gilliland will email Dr. Spica. | TOS | 0.1 | | |

| | | | | | |
|---|---|---|---|---|---|
| 4/29/2025 | Emails with L. Hampton regarding using Expert Institute to find Dr. Spica and potentially using them again if Dr. Spica has no suggestions, regarding seeking suitable neutral third. | TOS | 0.1 | | |
| 5/12/2025 | Receipt and review of the Parties' 18th Joint Status Report (ECF 60). | TOS | 0 | | |
| 6/5/2025 | Phone conference with all counsel regarding next steps and mediation, draft terms sheet, assigned task to re-review CTE settlement. | TOS | 0.7 | | |
| 6/5/2025 | Review and analysis of CTE settlement methodology, per counsels suggestion, consider how terminology and usage could be used in this case where suitable to deal with dual parties on Board craft report to R. Gilliland on same after review of hundreds of pages of pleadings and objections in that prior action. | TOS | 4.9 | | |
| 6/6/2025 | Conference with R. Gilliland regarding findings and possible terminology from CTE settlement. | TOS | 1.1 | | |
| 6/6/2025 | Emails with R. Gilliland regarding Defendants' edits and changes to draft term sheet, next tasks for settlement agreement draft and confirmatory discovery. | TOS | 0.2 | | |
| 6/9/2025 | Email from R. Gilliland regarding time report. | TOS | 0.1 | | |
| 6/10/2025 | Pull CTE settlement terms and review for procedural questions and terms on re-reviews in implementation of injunctive remedy. | TOS | 1.4 | | |
| 6/10/2025 | Receipt and review of the Parties' 19th Joint Status Report and Motion for Stay (ECF 61). | TOS | 0 | | |
| 6/11/2025 | Receipt and review of Order granting ECF 61; case stayed through and including September 8, 2025. (ECF 62). | TOS | 0.1 | | |
| 6/11/2025 | Phone call with R. Gilliland to discuss status and next steps . | TOS | 0.4 | | |
| 6/11/2025 | Emails with co-counsel re mediation for July. | TOS | 0.2 | | |
| 6/16/2025 | Conference call with all counsel regarding next steps in crafting term sheets and key terms, to-dos for all counsel regarding experts and their procedures. | TOS | 1.4 | | |
| 6/16/2025 | Emails with R. Gilliland regarding comments made by defense counsel on proposed neutral third and exclusions for term sheets, proposed third by our teams and research into same and possible prior roles causing conflicts. | TOS | 0.7 | | |
| 6/23/2025 | Conference call with all counsel regarding further discussions on draft term sheets, questions on discovery and procedures for rescoring. | TOS | 0.5 | | |
| 6/24/2025 | Receipt and review email from R. Gilliland regarding outline of rescoring sample from Dr. Spica. | TOS | 0.1 | | |
| 6/24/2025 | Review and analysis of data set from Spica regarding rescored 10 sample players (no names) to provide defense counsel an outline protocol proposal for re-scoring. | TOS | 0.4 | | |
| 6/24/2025 | Receipt and review email providing rescoring sample to defense counsel. | TOS | 0.1 | | |
| 6/27/2025 | Receipt and in depth review of edits and comments made to draft term sheet by defense counsel including edits on exclusions and on protocols and sections on process and procedure and objective determinations. | TOS | 0.7 | | |
| 6/27/2025 | Conference with R Gilliand regarding defendants edits. | TOS | 0.4 | | |
| 6/27/2025 | Emails with R. Gilliland regarding Defendants' edits and changes to draft term sheet. | TOS | 0.3 | | |

| | | | | | |
|---|---|---|---|---|---|
| 6/30/2025 | Phone conference with R. Gilliland regarding mediation in two weeks and procedural questions regarding remaining issues and protocols for certification. | TOS | 1.3 | | |
| 6/30/2025 | Phone call with all counsel regarding continuing terms sheet edits and samples and feedback on samples. | TOS | 0.2 | | |
| 6/30/2025 | Edits to term sheet with additional changes on procedures and exclusions and Defendants' changes and discussions with R. Gilliland regarding administrative procedures under ERISA and possible dual track on review. | TOS | 0.6 | | |
| 6/30/2025 | Email from D. Miles regarding mediation statement and mediator's request. | TOS | 0.1 | | |
| 7/1/2025 | Email from R. Gilliland regarding exclusions being crafted into the draft term sheet and need to cross-check against various plan terms. | TOS | 0.2 | | |
| 7/1/2025 | Beginning review of all plans within Defendants' production sets searching out terms used in defining exclusions based on substance abuse and psychiatric conditions regarding cross-checking term sheets. exclusions and methodology used by plan physician in screening, relying mostly on chart of terms and terminology across all revisions of all plans. | TOS | 2.4 | | |
| 7/2/2025 | Continue review of all plan terms on all plans regarding defendants use of exclusions to define class. | TOS | 1.2 | | |
| 7/1/2025 | Receive and review emails from R. Gilliland regarding next week mediation position statement and possible outcomes once term sheet is complete, projections, emails back to R. Gilliland on same and possible adjustments to term sheets. | TOS | 0.6 | | |
| 7/1/2025 | Analysis of edits and comments on most recent term sheet in advance of mediation, review draft settlement agreement and emails with R. Gilliland on same. | TOS | 0.6 | | |
| 7/1/2025 | Receipt and analysis of defense counsel's edits to term sheet. | TOS | 0.4 | | |
| 7/1/2025 | Review and analysis of mediation notes from all mediations regarding revisions to term sheet, review all file notes on essential terms for inclusion in term sheet, review draft settlement agreement, cross-check for terms. | TOS | 1.4 | | |
| 7/1/2025 | Draft new term sheet outline with essential terms from prior drafts. | TOS | 1.6 | | |
| 7/1/2025 | Draft timeline of events for inclusion in draft term sheet, office conference with paralegal regarding next steps for draft term sheet, directions on performing cross-checks on timelines of events. | TOS | 0.6 | | |
| 7/1/2025 | Review the prior settlement adjustments and pleadings and court orders due to race norming, examine for changes needed in this draft term sheet to account for concerns raised by the court and parties in that case. | TOS | 2.8 | | |
| 7/1/2025 | Review and revise term sheet to include all terms necessary, include edits from prior review of prior case court adjustments, revisions to timeline of events, cross-check timelines, pass to paralegal for second eye review. | TOS | 1.7 | | |
| 7/2/2025 | Emails with R. Gilliland regarding adjustments to terms sheet and prior court orders on removal of race-based adjustments and class notices on same. | TOS | 0.4 | | |
| 7/2/2025 | Review and analysis of Alford class certification motion, highlighting the bleeding over from their original complaint, email with R. Gilliland | TOS | 1.4 | | |

| | | | | | |
|---|---|---|---|---|---|
| 7/2/2025 | Review and analysis of hearing transcript from Alford regarding plaintiffs in that case now trying to incorporate the norming issue into their case and emails with co-counsel on same. | TOS | 0.9 | | |
| 7/2/2025 | Finalize draft term sheet and emails with co-counsel on same. | TOS | 1.2 | | |
| 7/2/2025 | Revise, edit and format current working draft of settlement term sheet. | | | VH | 2.40 |
| 7/3/2025 | Receipt and review of emails from co-counsel regarding upcoming mediation. | TOS | 0.2 | | |
| 7/3/2025 | Emails with R. Gilliland and edits to spreadsheets with entries: upcoming mediation. | TOS | 0.6 | | |
| 7/4/2025 | Review all plan histories, prepare for discussions of potential staggered relief and offsets, review all summaries of plans and amendments. | TOS | 2.3 | | |
| 7/4/2025 | Review entire file and prepare for mediation next week, review task sheet for remaining to do items assigned and prepare outline for terms of negotiation. | TOS | 3.5 | | |
| 7/6/2025 | Review case law and precedent on injunctive relief class settlements and methods for implementing terms in term sheet, draft outline of key case law in CTA4 regarding prepare for mediation. | TOS | 3.4 | | |
| 7/6/2025 | Research and analysis of current case law on payment of costs and class counsel in context of ERISA-governed benefit plans where class counsel compensation is being paid outside of benefits to class members (no common fund type fees but multipliers are otherwise included) regarding prepare for next mediation pursuant to mediators instructions to be able to discuss wrapping up entire case following class certification and rescoring protocols being implemented regarding prepare for mediation. | TOS | 2.4 | | |
| 7/7/2025 | Receipt, review and analysis of final version of term sheet approved for circulation prior to mediation this week. | TOS | 0.4 | | |
| 7/7/2025 | Phone conference with R. Gilliland regarding class certification and preliminary approval, next tasks to be assigned. | TOS | 0.9 | | |
| 7/8/2025 | Phone conference with R. Gilliland regarding mediation statement and proposal for fee structure to provide to mediator. | TOS | 0.6 | | |
| 7/8/2025 | Receipt and review and edits to mediation statement. | TOS | 0.3 | | |
| 7/8/2025 | Phone conference with R. Gilliland regarding mediation statement edits and structure of proposal regarding value of relief from injunctive remedy. | TOS | 1.3 | | |
| 7/8/2025 | Receipt and review of emails with final version of mediation statement and emails with co-counsel on same. | TOS | 0.4 | | |
| 7/8/2025 | Emails with co-counsel regarding draft mediation statement and upcoming mediation. | TOS | 0.6 | | |
| 7/9/2025 | Emails with co-counsel regarding mediation statement and terms sheet edits for finalization. | TOS | 0.4 | | |
| 7/9/2025 | Edits to mediation statement and phone conference with R. Gilliland regarding changes to reflect single multiplier status. | TOS | 0.5 | | |
| 7/9/2025 | Emails with mediator regarding updated mediation statement. | TOS | 0.2 | | |

| | | | | | |
|---|---|---|---|---|---|
| 7/9/2025 | Review term sheet last draft and begin preparing for mediation starting tomorrow with meeting with counsel and mediator, review plan terms regarding issue of adjustments to benefits, review issues with plan limits on benefits, adjustments with other benefit plans including SSA benefits, review case law and prepare for all issues that could arise, prepare for discussion on b2 and hybrid issues, class definition concerns and implementation of injunctive relief. | TOS | 6.4 | | |
| 7/10/2025 | Travel from Birmingham to DC, continue to prepare for prepare for next round of mediation, multiple emails calls with co-counsel and meetings in DC with co counsel. | TOS | 9.2 | | |
| 7/11/2025 | Attend mediation. | TOS | 8.5 | | |
| 7/11/2025 | Meetings with co-counsel regarding next steps and class certification, assignments and tasks to be completed next week. | TOS | 3.1 | | |
| 7/12/2025 | Travel from DC to Birmingham, create summary of next steps to resolution regarding mediators recommendations | TOS | 5.8 | | |
| 7/14/2025 | Receipt and review of mediator's proposal on settlement of remaining issues. | TOS | 0.2 | | |
| 7/14/2025 | Emails with co-counsel on next steps and filing today. | TOS | 0.2 | | |
| 7/14/2025 | Receipt and review of update to court for filing today, emails on suggested edits with co-counsel. | TOS | 0.2 | | |
| 7/16/2025 | Emails regarding Dr. Spica scheduling and data set for test sample, emails with co-counsel regarding fee awards in other cases regarding prior class fee petition. | TOS | 0.7 | | |
| 7/17/2025 | Begin reviewing entire case file for all plan documents available to create chart of key benefits, pull copies of all plans available and list for summarizing basic plan content for expansion by T. Sinclair. | | | CF | 1.20 |
| 7/17/2025 | Review 4/1/2001 NFL Player Supplemental Disability Plan and draft basic outline of key provisions. | | | CF | 0.30 |
| 7/17/2025 | Review 4/1/2007 Bert Bell/Pete Rozelle NFL Player Retirement Plan and draft basic outline of key provisions. | | | CF | 0.60 |
| 7/17/2025 | Review 10/1/2010 88 Plan and draft basic outline of key provisions. | | | CF | 0.50 |
| 7/17/2025 | Review 7/1/2011 88 Plan and draft basic outline of key provisions. | | | CF | 0.50 |
| 7/17/2025 | Review 8/1/2011 Bert Bell/Pete Rozelle NFL Player Retirement Plan and draft basic outline of key provisions. | | | CF | 0.60 |
| 7/17/2025 | Review 9/1/2011 NFL Player Supplemental Disability & Neurocognitive Benefit Plan and draft basic outline of key provisions. | | | CF | 0.60 |
| 7/17/2025 | Review 4/1/2012 Bert Bell/Pete Rozelle NFL Player Retirement Plan and draft basic outline of key provisions. | | | CF | 0.40 |
| 7/17/2025 | Review 4/1/2014 88 Plan and draft basic outline of key provisions. | | | CF | 0.30 |
| 7/17/2025 | Review 4/1/2014 Bert Bell/Pete Rozelle NFL Player Retirement Plan and draft basic outline of key provisions. | | | CF | 0.40 |
| 7/17/2025 | Review 4/1/2014 NFL Player Disability & Neurocognitive Benefit Plan and draft basic outline of key provisions. | | | CF | 0.60 |
| 7/18/2025 | Review 4/1/2017 88 Plan and draft basic outline of key provisions. | | | CF | 0.30 |
| 7/18/2025 | Review 4/1/2017 Bert Bell/Pete Rozelle NFL Player Retirement Plan and draft outline of basic plan terms. | | | CF | 0.40 |

| | | | | | |
|---|---|---|---|---|---|
| 7/18/2025 | Review 4/1/2017 NFL Player Disability & Neurocognitive Benefit Plan and draft basic outline of key provisions. | | | CF | 0.50 |
| 7/18/2025 | Review 4/1/2019 NFL Player Disability & Neurocognitive Benefit Plan. | | | CF | 0.60 |
| 7/18/2025 | Review 4/1/2020 88 Plan and draft basic outline of key provisions. | | | CF | 0.30 |
| 7/18/2025 | Review 4/1/2020 Bert Bell/Pete Rozelle NFL Player Retirement Plan and draft basic outline of key provisions. | | | CF | 0.40 |
| 7/18/2025 | Review 4/1/2020 NFL Player Disability, Neurocognitive & Death Benefit Plan and draft basic outline of key provisions. | | | CF | 0.40 |
| 7/18/2025 | Review 4/1/2021 Bert Bell/Pete Rozelle NFL Player Retirement Plan and draft basic outline of key provisions. | | | CF | 0.20 |
| 7/18/2025 | Review 4/1/2021 NFL Player Disability, Neurocognitive & Death Benefit Plan and draft basic outline of key provisions. | | | CF | 0.30 |
| 7/18/2025 | Review 4/1/2021 NFL Player Disability & Survivor Benefit Plan First Amendment and draft basic outline of key provisions. | | | CF | 0.10 |
| 7/18/2025 | Review 4/1/2021 NFL Player Disability & Survivor Benefit Plan Second Amendment and draft basic outline of key provisions. | | | CF | 0.10 |
| 7/18/2025 | Review 4/1/2022 NFL Player Disability & Survivor Benefit Plan Third Amendment and draft basic outline of key provisions. | | | CF | 0.10 |
| 7/18/2025 | Review 4/1/2022 NFL Player Disability & Survivor Benefit Plan Fourth Amendment and draft basic outline of key provisions. | | | CF | 0.10 |
| 7/18/2025 | Review 4/1/2022 NFL Player Disability & Survivor Benefit Plan Fifth Amendment and draft basic outline of key provisions. | | | CF | 0.10 |
| 7/18/2025 | Review 2/18/2023 NFL Player Disability & Survivor Benefit Plan Sixth Amendment and draft basic outline of key provisions. | | | CF | 0.10 |
| 7/18/2025 | Review 4/1/2022 NFL Player Disability & Survivor Benefit Plan Seventh Amendment and draft basic outline of key provisions. | | | CF | 0.10 |
| 7/18/2025 | Review 2/13/2023 Bert Bell/Pete Rozelle NFL Player Retirement Plan First Amendment and draft basic outline of key provisions. | | | CF | 0.10 |
| 7/18/2025 | Review 4/1/2023 88 Plan and draft basic outline of key provisions. | | | CF | 0.20 |
| 7/18/2025 | Review 4/1/2023 NFL Player Disability & Survivor Benefit Plan Eighth Amendment and draft basic outline of key provisions. | | | CF | 0.10 |
| 7/18/2025 | Review 4/1/2023 NFL Player Disability & Survivor Benefit Plan Ninth Amendment and draft basic outline of key provisions. | | | CF | 0.10 |
| 7/18/2025 | Review 8/1/2023 Bert Bell/Pete Rozelle NFL Player Retirement Plan Second Amendment. | | | CF | 0.10 |
| 7/18/2025 | Prepare notebooks on all plans and include chronology of edits/amendments for TS use in injunctive remedy awards. | | | CF | 1.40 |
| 7/18/2025 | Emails to and from mediator regarding rejection of mediator proposal and emails with co-counsel on same. | TOS | 0.4 | | |
| 7/21/2025 | Search Pacer for In regarding National Football League Players' Concussion Injury Litigation; download class counsel fee petitions and Court's Orders regarding same. | | | CF | 1.40 |

| | | | | | |
|---|---|---|---|---|---|
| 7/21/2025 | Email with co-counsel regarding scheduling a call with Dr. Spica. | TOS | 0.1 | | |
| 7/21/2025 | Review fee petitions and orders in regarding Concussion Litigation regarding mediators direction to now address methodology for monitoring and fees in tasks beyond approval. | TOS | 1.5 | | |
| 7/23/2025 | Receipt and review paralegals basic outline of plan documents, meetings with same to create next step in chart or map of benefits back through plan versions to confirm benefit payments if awards made. | TOS | 0.8 | | |
| 7/23/2025 | Meeting with T. Sinclair regarding creation of chart to summarize all plan benefits (.7); begin comparing plans and names of the plans as they were renamed through the years and start chart of basic summary of different plans for T. Sinclair review (3.2). | | | CF | 3.90 |
| 7/24/2025 | Review all plans and amendments; create indexes for all plans including any amendments and finalize summary for T. Sinclair review. | | | CF | 4.20 |
| 7/25/2025 | Phone conference with R. Gilliland regarding email task on settlement filing, motion, Dr. Spica comments on rescoring and recent calls with defense attorneys. | TOS | 0.4 | | |
| 7/25/2025 | Emails on neutral third selection criteria. | TOS | 0.3 | | |
| 7/31/2025 | Prepare for call with opposing and co-counsel on protocols to be used in rescoring. | TOS | 0.4 | | |
| 7/31/2025 | Phone conference with Michael Junk, Alvaro, Ed. R. Gilliland, Dr. Spica, Dr. Garmoe and L. Hampton regarding expert protocols. | TOS | 1.9 | | |
| 7/31/2025 | Phone call with R. Gilliland, L. Hampton and Dr. Spica regarding next steps and Plans' response. | TOS | 0.4 | | |
| 8/3/2025 | First pass drafting memo in support of approval of settlement, multiple telephone conferences with R. Gilliland regarding draft memo and changes edits to account for injunctive remedy. | TOS | 4.5 | | |
| 8/4/2025 | Further telephone conference with R. Gilliland regarding further edits and changes to account for particular relief and future petitions for fees and creating 43 pages draft with key terms | TOS | 3.1 | | |
| 8/7/2025 | Receipt and review edits to original draft settlement agreement, review edits from R. Gilliland, and further edits to deal with injunctive remedy issues. | TOS | 2.7 | | |
| 8/7/2025 | Email from defense counsel and next reporting steps to court. | TOS | 0.1 | | |
| 8/8/2025 | Analysis and further edits to memorandum in support of motion to approve settlement agreement (.9) and telephone conference with R. Gilliland regarding neutral third (.4). | TOS | 1.3 | | |
| 8/12/2025 | Receipt and analysis of expert questionnaires and CV's regarding selection of neutral third along with online research into papers written by 2 of the proposed experts and emails with co-counsel on same. | TOS | 1.4 | | |
| 8/12/2025 | Telephone conference with expert source and defense attorneys regarding neutral third. | TOS | 0.2 | | |
| 8/19/2025 | Emails with co-counsel regarding scheduling for neutral third interviews with co-counsel and Dr. Spica. | TOS | 0.2 | | |
| 8/19/2025 | Prepare for interview of Dr Soble- pull internet research on his prior publications, review and analysis and second review of his CV regarding possible neutral third. | TOS | 0.8 | | |

| | | | | | |
|---|---|---|---|---|---|
| 8/19/2025 | Interview of Dr Soble. | TOS | 0.7 | | |
| 8/19/2025 | Multiple calls and Zoom meetings with co-counsel regarding revelation of prior use of norms and experience of Dr Soble and how it impacts our case. | TOS | 0.9 | | |
| 8/28/2025 | Receipt and review additional possible neutral third for evaluations, emails with co-counsel on same. | TOS | 0.4 | | |
| 9/25/2025 | Telephone conference with co-counsel R. Gilliland regarding next steps and Plans response to draft settlement agreement and proposal to move for certification of class. | TOS | 0.5 | | |
| 9/26/2025 | Telephone conference with R. Gilliland regarding plans attorneys response and edits to draft. | TOS | 0.3 | | |
| 10/3/2025 | Emails with co-counsel and expert selection company regarding selection of neutral third Dr. Soble. | TOS | 0.4 | | |
| 10/8/2025 | Emails and texts with co-counsel re timing of next steps and awaiting changes to draft settlement agreement and expert issues. | TOS | 0.4 | | |
| 10/9/2025 | Receipt and analysis of edits to report to court, emails on same with all counsel. | TOS | 0.3 | | |
| 10/9/2025 | Receipt and analysis and initial review of changes to draft settlement agreement, emails with co-counsel on same. | TOS | 1.9 | | |
| 10/10/2025 | Continue review of draft agreement changes and begin in depth review of edits to draft settlement agreement, making edits. | TOS | 2.1 | | |
| 10/11/2025 | Continue review of draft edits of defense counsel, continue in depth review of many changes to draft provided, pull original and begin direct comparison. | TOS | 3.5 | | |
| 10/13/2025 | Draft electronic comparison of changes made to draft settlement agreement, highlighting for co-counsel the defense attorney changes and email same to co-counsel. | TOS | 0.3 | | |
| 10/13/2025 | Prepare for co-counsel meeting and draft outline of changes to highlight. | TOS | 0.7 | | |
| 10/13/2025 | Phone conference with co-counsel regarding defense attorney changes to settlement agreement draft- assigned lead to draft outline and circulate for co-counsel. | TOS | 0.5 | | |
| 10/14/2025 | Prepare outline of final term sheet, review all notes from mediations, and prior term sheet versions regarding addressing the major changes / edits to the settlement agreement draft. | TOS | 2.7 | | |
| 10/14/2025 | Review all versions of draft settlement agreement we prepared in April, tracking various terms and comparing to the final version we sent over to the defense attorneys in August regarding review and analysis of changes to the settlement agreement proposed by defense attorneys. | TOS | 3.5 | | |
| 10/15/2025 | Continue full review of redlined compare document we drafted due to no redlining of changes provided by defendants, circulate same to co-counsel and then begin hand review of version to circulate to all co-counsel. | TOS | 2.8 | | |
| 10/15/2025 | Finalize key edits for consideration, try and minimize to major disputes such as discovery terms and who makes findings on benefit levels and emails with co-counsel circulating same for discussion next Monday during our teams meeting. | TOS | 1.6 | | |
| 10/17/2025 | Telephone conference with R. Gilliland regarding my edits and notes on draft settlement agreement changes. | TOS | 0.9 | | |

| | | | | | |
|---|---|---|---|---|---|
| 10/19/2025 | Review prior plans regarding edits to settlement agreement and proposals from the defense attorneys, regarding medical determinations and benefit determinations and emails from co-counsel regarding changes to account for rescoring protocols. | TOS | 2.1 | | |
| 10/20/2025 | Telephone conference with co-counsel regarding reviewing and debating all changes and settlement agreement, debating medical vs benefit determinations, timings of claims rescoring, prepare the reports and timing to the court, costs and applications following the rescoring. | TOS | 1.8 | | |
| 10/23/2025 | Telephone conference with potential 3rd party neuropsychologist. | TOS | 0.5 | | |
| 10/26/2025 | Review and analysis of case law on three tiered approach regarding trying to find a way to not give final approval to process until we have results, pull prior drafts of the settlement agreement and craft tiered approach for consideration, craft timeline of events with edits from prior revisions, email with co-counsel. | TOS | 3.7 | | |
| 10/26/2025 | Explore ways to avoid final approval foreclosing the challenges to defendants new decision claims, get into details on how we can approach the process to get immediate results then use those to challenge- create outline for same. | TOS | 1.8 | | |
| 10/27/2025 | Emails on new court order and review order on other cases regarding class certification issues in our case. | TOS | 0.7 | | |
| 10/27/2025 | Emails to co-counsel with proposed solutions to problem of no experience and new data in claims. | TOS | 0.3 | | |
| 10/27/2025 | Telephone calls with R. Gilliland regarding my proposed solutions and the procedure involved in proceeding with test cases to set precedent while conducting discovery. | TOS | 1.2 | | |
| 10/30/2025 | Joint all counsel call to cover all edits to the Settlement Agreement covering edits from all counsel. | TOS | 1.9 | | |
| 11/3/2025 | Receive assignment of task to check all plan documents for definitional structures for terms being adopted in draft settlement agreement, regarding medical and benefits criteria, examine all plan documents and all plans terms including the amendments to present, use of charts with key terms for cross reference and begin highlighting examples of problems with fixing terms at certain times. | TOS | 2.8 | | |
| 11/5/2025 | Meeting with R. Gilliland regarding report on plan terms and examples of differing terms and definitions across multiple plan revisions. | TOS | 1.3 | | |
| 11/7/2025 | Emails on retention of neutral third Dr Sobel- agreed to by all parties, emails with expert service and review filings of update to be filed with court. | TOS | 0.4 | | |
| 11/7/2025 | Email from R. Gilliland regarding discussion on medical criteria earlier in the week and scope of rescoring tests to be reviewed with email in response. | TOS | 0.3 | | |
| 11/12/2025 | Receipt and review third party neutral expert contract with GLG and emails with R. Gilliland on same. | TOS | 0.4 | | |
| 11/12/2025 | Telephone call with R. Gilliland regarding expert retention agreement. | TOS | 0.5 | | |
| 11/14/2025 | Receipt and in depth review and analysis of edits and comments on settlement agreement regarding scope of review concerns and making sure we can increase chances of players obtaining maximum benefits of rescoring. | TOS | 2.4 | | |

| | | | | | |
|---|---|---|---|---|---|
| 11/19/2025 | Emails with co-counsel on revisions from Defense attorneys. | TOS | 0.3 | | |
| 11/20/2025 | Telephone conference with R. Gilliland regarding my view of the edits made and possible responses to maximize players benefit from rescoring protocol. | TOS | 0.2 | | |
| 11/20/2025 | Draft memo to R. Gilliland on most recent edits and our possible responses. | TOS | 1.4 | | |
| 11/21/2025 | Review R. Gilliland edits to settlement agreement addressing plan documents and changes to settlement agreement, compare changes to plan documents and changes to plans definitions of medical determination in last 3 versions of plans. | TOS | 2.1 | | |
| 11/24/2025 | Team conference with R. Gilliland, D. Miles and L Hampton regarding proposed changes to settlement agreement. | TOS | 1.2 | | |
| 11/24/2025 | Review, revise and edits to settlement agreement drafts for next round of edits with emails to co-counsel for next round with defendants. | TOS | 1.7 | | |
| 12/5/2025 | Telephone call with R. Gilliland, regarding next rounds of edits to settlement agreement. | TOS | 0.3 | | |
| 12/15/2025 | Additional round of edits to current version of settlement agreement and email with R. Gilliland for inclusion in version being circulated to defense counsel. | TOS | 2.4 | | |
| 12/15/2025 | Receipt and review of confirmatory discovery regarding looking for reasons to make further edits, double checking reasons for exclusions with plan documents at different versions and times and email on same. | TOS | 1.3 | | |
| 12/16/2025 | Emails with R. Gilliland regarding use of exclusions in data sets from confirmatory discovery. | TOS | 0.8 | | |
| 12/16/2025 | Telephone conference with R. Gilliland regarding use of exclusions and work arounds for validity exclusion. | TOS | 0.3 | | |
| 12/17/2025 | Review and analysis of final version of neutral third retention agreement and emails with co-counsel on same. | TOS | 0.6 | | |
| 12/23/2025 | Telephone conference with co-counsel regarding timing of various positions on final approval motion and preparing memo on same, assignments for approval motion to class counsel. | TOS | 0.8 | | |
| 12/23/2025 | Emails with defense and co-counsel regarding needs for additional discovery and questions about production. | TOS | 0.4 | | |
| 12/26/2025 | Receipt and review emails from defense attorneys regarding new edits to settlement agreement, review comment in question regarding use of 2025 date and draft email response to question posed by the co-counsel coordinating our response, table remainder of agreement for review tomorrow. | TOS | 0.8 | | |
| 12/27/2025 | Address issues raised by defendants proposal to use a standardized set of benefit language and yet use differing versions of benefit payments, review and summarize all versions of the various plans for comparison and informing our side on debate, problems with b2 injunction using their proposal. Pulling examples of different terms in various plan years and prepare for discussion with co-counsel on need to use governing plans terms at time of original claim. | TOS | 5.1 | | |
| 12/29/2025 | Prepare for call today, review and notes on changes and debates on various issues within the settlement agreement. | TOS | 0.8 | | |
| 12/29/2025 | Emails and texts with co-counsel regarding topics for debate. | TOS | 0.2 | | |

| | | | | | |
|---|---|---|---|---|---|
| 12/29/2025 | All counsel telephone conference with additional reviews and edits and debate on all topics within the settlement agreement, debates on procedure going forward and on timing. | TOS | 1.9 | | |
| 1/7/2026 | Receipt and review emails from co-counsel regarding issue with certification and proposed edits to preliminary approval draft. | TOS | 0.2 | | |
| 1/15/2026 | All counsel call regarding edits and proposed changes to settlement agreement (1.0) with follow-up call with R. Gilliland on problems with proposals from DA (.5). | TOS | 1.5 | | |
| 1/7/2026 | Receipt and review edits to draft Motion for Preliminary Approval from Demet Basar regarding changes to account for b2 concerns and further edits and emails on same. | TOS | 0.6 | | |
| 1/21/2026 | Conference with R Gilliland on the status of my edits to preliminary approval memorandum | TOS | 0.2 | | |
| 1/22/2026 | Emails with R. Gilliland and receipt and review confirmatory discovery initial responses regarding use of exclusions and numbers to data adjustments(.3), review initial wording in documents on data exclusions, and review and analysis of exclusions across all plans and all years in order to update R. Gilliland on next steps by consulting draft charts on plans (.8). | TOS | 1.1 | | |
| 1/23/2026 | Receipt and review changes to preliminary approval motion, multiple rounds of emails regarding defense counsels requests for draft and emails and telephone conferences with R. Gilliland on my assignment regarding clarification of issues around ERISA injunctive remedy and catalyst theory debate being created in drafts from defense counsel. | TOS | 1.4 | | |
| 1/23/2026 | Email from defense attorneys regarding follow-up to our all counsel call on January 15 and proposed adjustments to definitions of medical determination proposing to use definitional structure in various plans to include fixing definitions at varying plan times and terms, i.e. lawsuit filed date or prior to CBA dates. | TOS | 0.3 | | |
| 1/23/2026 | Final edits to draft changes addressing proposals from DA, multiple emails with R. Gilliland and co-counsel to include defense attorney regarding next round of edits. | TOS | 0.7 | | |
| 1/24/2026 | Begin drafting summary for R. Gilliland regarding use of definitions from varying plan years and loss of benefits and how that creates problems with injunctive remedy, pull all key plan terms and where definitions not set forth separate, draft summary on same. | TOS | 3.2 | | |
| 1/27/2026 | Email with R. Gilliland regarding my assignment and due date, need to speed up process and response. | TOS | 0.2 | | |
| 1/28/2026 | Emails with co-counsel regarding defense attorneys request for update on briefing, draft email with options, prepare memo for circulation and email to co-counsel for approval. | TOS | 0.8 | | |
| 1/28/2026 | Final review and analysis with emails circulating draft motion for preliminary approval (.3); approval of expert rates and retention of neutral third re; final round of objections to same (.4). | TOS | 0.7 | | |

| | | | | | |
|---|---|---|---|---|---|
| 2/2/2026 | Receive new assignment, create comparison chart containing all key plan terms and provisions with pin cites to each provision based on bates numbering system to help guide negotiation moving forward on settlement terms, begin by pulling prior prefatory work done in file and begin reviewing 88 plan first flagging all key terms in every available revision then drafting that section of the memorandum to include eligibility, limitations, retroactivity and benefit coordination | TOS | 2.4 | | |
| 2/4/26 | Emails with team on neutral third retention and terms. | TOS | 0.1 | | |
| 2/5/2026 | Receive new revisions from defense counsel, review, analyze, and revise Settlement Agreement and latest version of memorandum. | TOS | 1.7 | | |
| 2/6/2026 | Review and analyze class certification authority and related rulings; evaluate implications for Rule 23(b)(1)/(b)(2) settlement certification, individualized-benefit issues, commonality, typicality, adequacy, and preliminary approval strategy. | TOS | 1.2 | | |
| 2/7/2026 | Continue drafting fifty plus page memorandum for co counsel on all key terms in plans, begin drafting key provisions from disability plan versions and draft bates numbered comparisons of elegibility and medical determination structures | TOS | 3.4 | | |
| 2/8/2026 | Receipt, review and edits to defense counsel edits to draft settlement agreement, notes for call discussion and emails on same with defense counsel and co-counsel. | TOS | 0.9 | | |
| 2/10/2026 | Video conference on recent term sheet changes and proposed edits to the draft settlement agreement with co-counsel. | TOS | 1.1 | | |
| 2/10/2026 | Review and analyze case communications and litigation strategy concerning settlement posture, unresolved issues, procedural requirements, and next steps with co-counsel. | TOS | 0.6 | | |
| 2/10/2026 | Review, analyze, and revise settlement agreement; prepare comments and strategy for co-counsel and defense communications. | TOS | 0.6 | | |
| 2/12/2026 | Analyze class notice and participant communication issues concerning rescored data language. | TOS | 0.6 | | |
| 2/12/2026 | Analyze race-neutral rescoring and expert protocol issues concerning rescored data language; evaluate raw-score conversion, removal of race-based demographic adjustments, clean-claim and exclusion criteria, subsequent testing issues, medical determination process, neutral expert structure, and consistency with settlement relief and plan benefit standards for edits to settlement agreement memo | TOS | 0.9 | | |
| 2/13/2026 | Review and analyze case communications and litigation strategy, evaluate settlement posture, unresolved issues, procedural requirements, and next steps with co-counsel and emails on same. | TOS | 0.4 | | |
| 2/14/2026 | Final revisions and edits in assignment to draft memorandum on key terms, finish drafting 82 page summary of key terms in all plans and all revisions and amendment by tackling the last plan, the pension, prepare for distribution to co counsel with final edits on all sections highlighting the need to assess past due claims based on plan terms at the time of the original denial | TOS | 3.7 | | |

| | | | | | |
|---|---|---|---|---|---|
| 2/15/2026 | Emails with co counsel distributing the eighty two page memorandum on key plan terms and analysis with edits to current version of settlement documents | TOS | 0.8 | | |
| 2/17/2026 | Review and analyze and edits to class action settlement agreement detailing the plan terms issue and medical determination definition issue offset and waiver issue and one time pending rule from my review of plan terms summaries we created and email details to co-counsel. | TOS | 2.9 | | |
| 2/17/2026 | Telephone conference with co-counsel attorneys regarding usage of different terms and different plan amendments in response to the defense attorneys changes. | TOS | 1 | | |
| 2/18/2026 | Review and analyze confirmatory discovery and class data issues; evaluate production filters, class-member identification, exclusion criteria, post-directive evaluations, data completeness, and need for verification to support settlement implementation. | TOS | 1.3 | | |
| 2/18/2026 | Review and begin drafting memo to R. Gilliland for negotiation purposes on key elements remaining to be resolved in draft settlement agreement, finalize draft and twelve topics and email same to team. | TOS | 1 | | |
| 2/20/2026 | Analyze monitoring and retained jurisdiction provisions to structure and dcoument the proposed class settlement | TOS | 1.9 | | |
| 2/20/2026 | Prepare for and participate in case strategy, mediation, or client/counsel communications concerning court order, unresolved drafting issues, negotiation strategy, procedural requirements, and next steps with co-counsel. | TOS | 0.7 | | |
| 2/21/2026 | Begin revisions to memorandum in support, review and analysis of b1 class certification as possible means to resolve should b2 not move forward, use of alternative pleading and drafting same into current draft. | TOS | 2 | | |
| 2/22/2026 | Continue revisions to memo in support regarding problems with perception of b3 focus when using the wrong language to express the impact of the injunction, multiple rounds of edits to change briefing. | TOS | 3.4 | | |
| 2/22/2026 | Research and analysis of case law in CTA 4 and others on use of b1 and add in case citations and quotes in section on b2 and b1. | TOS | 1.8 | | |
| 2/22/2026 | Finals edits to memorandum in support of motion for approval, class certification and arguments on use of injunctive remedy. | TOS | 2.1 | | |
| 2/22/2026 | Emails with R. Gilliland regarding passing off editorial control and new arguments on class certification and the use of ERISA based class certification and injunctive relief precedent. | TOS | 0.3 | | |
| 2/23/2026 | Final round of edits to memorandum in support of motion for approval and multiple emails regarding adding in support for the b1 class argument and blending in injunction to feasibility of class treatment. | TOS | 4.3 | | |
| 2/23/2026 | Emails with co-counsel and final review of team's edits, approval for circulation to defense counsel. (.3) and review and analysis of emails from defense attorneys regarding the sampling size, objecting to fifty percent and discussions with co counsel on sample size (.3) | TOS | 0.6 | | |

| | | | | | |
|---|---|---|---|---|---|
| 2/24/2026 | Receipt and review multiple emails regarding defendants most recent round of edits and problems with linking governing plan terms at time of claim to administrative procedures in this case. | TOS | 0.4 | | |
| 2/24/2026 | Receive assignment and begin edits to most recent round of edits from defense attorneys, focus on linking governing plan terms at time of original claim to this administration and linking injunctive remedy to result per our briefing on the motion and email to co-counsel. | TOS | 2.1 | | |
| 2/25/2026 | Analyze plan documents and historical plan terms; compare eligibility language, offsets, retroactivity, limitation provisions, medical authority, and administrative discretion to support settlement terms | TOS | 0.9 | | |
| 2/25/2026 | Final edits to settlement agreement draft and emails with co-counsel regarding final changes before circulation. | TOS | 0.8 | | |
| 2/26/2026 | Review and analyze confirmatory discovery and class data issues; evaluate production filters, class-member identification, exclusion criteria, post-directive evaluations, data completeness, and need for verification to support settlement implementation. | TOS | 0.4 | | |
| 3/1/2026 | Review and analyze case communications and litigation strategy and prepare to draft Q&A for basic outline to class members and begin drafting same. | TOS | 1.4 | | |
| 3/2/2026 | Emails with R. Gilliland regarding her question on operative NC benefit plan and amendments (.3),review plan in question, draft emails on same regarding effect of amendments (.7); discussions of post 2020 amendments to all plans, effect of concussion settlement on negotiations with plans and need to use injunctive remedy in discussion talks later today with R. Gilliland (.8). | TOS | 1.8 | | |
| 3/2/2026 | Telephone conference with defense counsel regarding edits to draft settlement agreement and changes to agree with the use of plan documents in effect at time of claim (.7) and call with R. Gilliland regarding next steps and edits (.2). | TOS | 0.9 | | |
| 3/3/2026 | Edits to class settlement materials reinforcing injunctive relief and b1/b2 aspects | TOS | 3.4 | | |
| 3/4/2026 | Conference with R Gilliland to discuss my edits to preliminary approval memorandum | TOS | 0.7 | | |
| 3/5/2026 | Review, analyze, and revise preliminary approval and class certification materials to account for court's retained jurisdiction to oversee implementation in light of monitoring duties moving forward and likely objections to same. | TOS | 0.9 | | |
| 3/5/2026 | Emails with co-counsel and review and analysis of what is hopefully the final edits to the settlement documents to be filed with the court and emails with defense counsel on same. | TOS | 2.3 | | |
| 3/5/2026 | Telephonic hearing with Court regarding update on status and following deadlines. | TOS | 0.3 | | |
| 3/6/2026 | Review, analyze, and revise preliminary approval and class certification materials concerning memorandum in support of motion from defense counsel. | TOS | 1.1 | | |
| 3/6/2026 | Receive additional changes and urgent request for additional edits by today deadline, analysis and edits to memorandum in support of motion for preliminary approval, handwritten changes to speed response, scan and emails with co counsel with all my notes in fifty eight total pages | TOS | 3.4 | | |

| | | | | | |
|---|---|---|---|---|---|
| 3/10/2026 | Emails concerning client approval and follow-up calls on final terms. | TOS | 0.3 | | |
| 3/14/2026 | Review, analyze, and revise Settlement Agreement materials from defense attorneys regarding emails from defense attorneys providing further changes (.8) and emails with co-counsel on same (.3) noting that it appears our last edits were deleted | TOS | 1.1 | | |
| 3/19/2026 | Emails with co-counsel regarding edits to settlement documents and filings due with court, possible third law firm involved and lack of our prior edits being included in this version, awaiting editorial control to clean up. | TOS | 0.4 | | |
| 3/19/2026 | Email from R. Gilliland regarding her edits to settlement documents. | TOS | 0.1 | | |
| 3/19/2026 | Review and begin editing on memo in support and defendants latest edits which appear to be missing all of our prior edits | TOS | 3.7 | | |
| 3/20/2026 | Research and analysis of case law from CTA4 on catalyst factors to consider and causation issues raised by defense edits to preliminary approval memo and analysis of effect on settlement language and courts preserved oversight | TOS | 1.6 | | |
| 3/20/2026 | Draft memo to co-counsel outlining most recent edits and highlighting factors from research for continued reference | TOS | 1.1 | | |
| 3/22/2026 | Final edits to memo edits from defense counsel and emails with co-counsel on same. | TOS | 0.8 | | |
| 3/25/2026 | Review and analyze class certification authority and related rulings concerning new amendments in Alford case and new motion to certify, pull Alford pleadings, review docket to find basis for new pleading and class certification. | TOS | 2.6 | | |
| 3/25/2026 | Emails with co-counsel regarding Alford plaintiffs now amending their complaint and filings | TOS | 0.5 | | |
| 3/26/2026 | Telephone conference with class representatives and co-counsel regarding current status, settlement terms and next steps including other pending action. | TOS | 0.8 | | |
| 3/31/2026 | Review and analysis of Defendants 3/27/26 edits to settlement agreement, multiple emails with co-counsel regarding deletion of confirmatory discovery and additional concerns about scope of expert and neutral review. | TOS | 1.4 | | |
| 4/3/2026 | Telephone conference with R. Gilliland regarding prior problems with version control; T. Sinclair to take over and get done over Easter weekend. | TOS | 0.4 | | |
| 4/5/2026 | Edits to current version of memorandum of law in support and email edits and comments to co-counsel. | TOS | 3.7 | | |
| 4/7/2026 | Emails with co-counsel and final edits to most recent drafts of settlement documents and pleadings. | TOS | 0.4 | | |
| 4/14/2026 | Receipt and review email from DA with further revisions to draft memorandum in support and emails with co-counsel on same. | TOS | 0.3 | | |
| 4/15/2026 | Review, revise and edits to draft memo in support addressing competing issues on position statements and other editorial changes and comments made by defense counsel and emails with co-counsel on next round of edits and turning over editorial control. | TOS | 1.6 | | |
| 4/21/2026 | Receipt and review emails from R. Gilliland regarding her edits and final comments, email to team regarding need for final meeting and return to DA this week. | TOS | 0.5 | | |
| 4/21/2026 | Receipt and review L Hampton edits and emails on same. | TOS | 0.3 | | |

| | | | | | |
|---|---|---|---|---|---|
| 4/22/2026 | Telephone conference with R. Gilliland regarding changes to the draft memo and problems with competing positions and representations on triggers for settlement. | TOS | 0.3 | | |
| 4/24/2026 | Conference with R Gilliland on timing issues for pending approval brief to defense attroneys | TOS | 0.3 | | |
| 4/30/2026 | Receipt review and analysis of most recent round of defendants edits to draft settlement agreement and draft preliminary approval memo combined totaling some 60 pages. | TOS | 1.1 | | |
| 5/4/2026 | Review and analyze confirmatory discovery and class data issues; evaluate production filters, class-member identification, exclusion criteria, post-directive evaluations, data completeness, and need for verification to support settlement implementation with close to 1400 lines in excel spreadsheets, notes for further review and queries, follow-up with R. Gilliland on exclusions being applied. | TOS | 2.6 | | |
| 5/4/2026 | Email from D. Miles with additional post directive confirmatory data and analysis of same for class data issues; evaluate production filters, class-member identification, exclusion criteria, post-directive evaluations, data completeness, and need for verification to support settlement implementation in compliance with plan terms (1200 plus lines in excel spreadsheet format). | TOS | 1.4 | | |
| 5/4/2026 | Emails communications with co-counsel and defense attorney. | TOS | 0.4 | | |
| 5/4/2026 | Telephone conference with co-counsel regarding providing defense counsel with sampling requests now for confirmatory discovery process. | TOS | 0.5 | | |
| 5/5/2026 | Review and analyze confirmatory discovery and class data issues concerning Bailey along with L Hampton and staff regarding exclusions and production filters, class-member identification, exclusion criteria, post-directive evaluations, data completeness. | TOS | 1.4 | | |
| 5/7/2026 | Review and analyze confirmatory discovery and class data issues concerning class Spreadsheet; evaluate production filters, class-member identification, exclusion criteria, post-directive evaluations, data completeness, and need for verification to support settlement implementation. | TOS | 1 | | |
| 5/7/2026 | Email from R. Gilliland regarding analysis of new spreadsheet with over 2000 lines of data and follow-up email to defense counsel regarding sampling (1.4) and email response from defense counsel on same (.2). | TOS | 1.6 | | |
| 5/8/2026 | Review, analyze, and revise preliminary approval and class certification materials concerning Bailey draft PA Memo; emails with co-counsel regarding newest edits from defense counsel and request to tackle immediately. | TOS | 1.5 | | |
| 5/12/2026 | Emails from defense counsel and emails with co-counsel regarding preliminary approval and class certification materials from defense counsel with new edits and emails with co-counsel on same. | TOS | 0.5 | | |
| 5/12/2026 | Receipt and review new pleadings from defense attorneys regarding notice issue and order regarding also considering effects on b1/2/3 issues, review and analysis of case law on same and prepare for conference call with co-counsel. | TOS | 1.1 | | |

| | | | | | |
|---|---|---|---|---|---|
| 5/13/2026 | Telephone conference with co-counsel regarding changes and notice issues from defense attorneys. | TOS | 0.8 | | |
| 5/13/2026 | Receipt and review D. Miles edits to notice- review and further edits and email to co-counsel on same. | TOS | 0.7 | | |
| 5/15/2026 | Emails with R. Gilliland regarding feedback from our expert on most recent data sets, pull up and review to double check and emails form defense counsel with additional production. | TOS | 0.8 | | |
| 5/18/2026 | Emails with co-counsel and defense counsel additional sampling production and review and analysis of same. | TOS | 0.4 | | |
| 5/21/2026 | Email from defense counsel with additional edits to draft notice, draft settlement agreement and draft approval memorandum, analysis of all and emails with co-counsel on same. | TOS | 1.6 | | |
| 5/21/2026 | Telephone conference with co-counsel regarding subsequent clean claims issue and filings with class notices in mind. | TOS | 1 | | |
| 5/22/2026 | Provide co-counsel with detail analysis on last rounds of edits to all three documents. | TOS | 2.6 | | |
| 5/22/2026 | Review and analyze class certification authority and related rulings concerning Bailey; evaluate implications for Rule 23(b)(1)/(b)(2) settlement certification, individualized-benefit issues, commonality, typicality, adequacy, and preliminary approval strategy regarding new round of edits and concerns over b1 class issues. | TOS | 1.7 | | |
| 5/26/2026 | Continued review and analysis of three settlement pleadings and email / circulate to all co-counsel edits and notes. | TOS | 1.8 | | |
| 5/26/2026 | Receipt and review of emails from defense attorneys and co-counsel regarding defendants production of 4 separate documents with edits and needing immediate review by noon tomorrow for filing this week(.5) and start review of seven page class notice for final review prior to filing (.6). | TOS | 1.1 | | |
| 5/27/2026 | Review final versions of documents received last night from defense counsel: proposed order eight page draft for filing review and notes for team call (.3); thirty three page settlement agreement (using compare to prior version and confirming no substantive changes (.4); and final memorandum of law and joint motion seeking preliminary approval and certification - twenty nine pages- final review before greenlighting filing (1.2). | TOS | 1.9 | | |
| 5/27/2026 | Emails with co-counsel regarding final review and edits before giving approval for filing all pleadings and settlement agreement. | TOS | 0.4 | | |
| 5/27/2026 | Draft firm resume sections and personal resumes sections for joint declaration. | TOS | 0.4 | | |
| 5/27/2026 | Telephone conference with R. Gilliland regarding pleadings sent over for review from defense counsel last night and edits and joint declaration. | TOS | 0.4 | | |
| 5/27/2026 | Review and edits to the joint declaration in support to be signed by plaintiff class counsel and emails from and with co-counsel on pleadings to be filed, emails with clients on posture and filings this week. | TOS | 1.2 | | |

| | | | | | |
|---|---|---|---|---|---|
| 5/29/2026 | Review, analyze, and revise Settlement Agreement materials concerning signatures on SA; evaluate class definition, release language, rescoring protocol, medical determination process, benefit reclassification, retroactive payment, interest, offsets, 88 Plan provisions, finality, and implementation mechanics; prepare comments and strategy for co-counsel and defense communications. | TOS | 1.1 | | |
| 5/29/2026 | Receipt and review defendants changes to the draft motion for preliminary approval and email to R. Gilliland on same. | TOS | 0.4 | | |
| 5/29/2026 | Final check per defense attorney request for final pre check before filing of the 33 page memorandum in support of approval of settlement and edits to R. Gilliland and emails with all counsel regarding filings. | TOS | 1.6 | | |
| 6/1/2026 | Emails concerning public facing comments on settlement and emails with co-counsel on responses to participants contact. | TOS | 0.8 | | |
| 6/1/2026 | Receipt and review court order on preliminary approval and multiple emails with co-counsel on next steps and task assignments and emails with clients. | TOS | 0.9 | | |
| 6/2/2026 | Emails amongst counsel regarding public facing statements regarding settlement and multiple calls and emails with co-counsel regarding same. | TOS | 1.2 | | |
| 6/3/2026 | Review, analyze, and revise preliminary approval and class certification materials concerning regarding Bailey draft PA Memo; evaluate Rule 23(b)(1)/(b)(2) settlement-class presentation, fairness factors, injunctive relief narrative, notice/fairness-hearing procedures, preliminary injunction language, CAFA issues, and filing strategy. | TOS | 4 | | |
| 6/4/2026 | Remail inquiry from third party counsel regarding requesting update on settlement posture and requesting call, emails with co-counsel and scheduling same. | TOS | 0.4 | | |
| 6/5/2026 | Analyze class notice and participant communication issues concerning coordination of class communications and review of draft CAFA notice. | TOS | 0.8 | | |
| 6/9/2026 | Emails and scheduling third party query on settlement filings. | TOS | 0.4 | | |
| 6/10/2026 | Emails with and telephone conference with John Lorentz regarding clients with claims being impacted by settlement. | TOS | 0.5 | | |
| 7/6/2026 | Receipt and review emails form R. Gilliland regarding next steps for seeking final approval, timeline of events and next pleading to be filed (fee petition) (.4); receipt and review email on draft letter to class members calling firms, edits to same and email to R. Gilliland and team on need to hear out any objections (.2). | TOS | 0.6 | | |
| 7/1/2026 | Beginning research and analysis of case law on fees and class actions, research for assigned task of creating fee memo re: class counsel fee and costs petition due pursuant to court order, drafting summary of procedural posture for reference, research and drafting of memo section on use of rule 54 to preserve jurisdiction of fee petition for court re: recommendation of bifurcation | TOS | 3.7 | | |
| 7/2/2026 | Review and analysis of Rule 23 and case law on fee awards where blended fees are available regarding this case and the use of two statutes to seek fee awards | TOS | 2.4 | | |
| 7/2/2026 | Review and analysis of Quesinberry v. Life Insurance Co. of North America, regarding factors to be considered and drafting sections on the factors we should address | TOS | 1.2 | | |

| | | | | | |
|---|---|---|---|---|---|
| 7/6/2026 | Review and analysis of the Plyler case for support of the bifurcation process and strengthening the court awarding lodestar now with later fees and enhancement address after implementation and include citation to Harwood(1.8) and telephone conference with co counsel on same | TOS | 2.3 | | |
| 7/6/2026 | Draft sections on work required to monitor the injunctions implementation this necessitating holding open further fee awards and include analysis of Berry case and Perdue and use of cross check to recovery | TOS | 2.6 | | |
| 7/7/2026 | Draft section on authority to reserve jurisdiction and ancillary jurisdiction section and draft section on anticipated defense arguments against methodology being proposed including citation to Jenkins, Gelis, Perdue, Berry, Plyler | TOS | 1.4 | | |
| 7/8/2026 | Draft section on recommended procedure and my assessment of recovery windows including charts on likely outcomes with 5 options | TOS | 1.2 | | |
| 7/9/2026 | Finalize memo on fees and final summary | TOS | 2.6 | | |
| 7/9/2026 | Conference with potential settlement class member concerning prior plan claims, settlement notice, rescoring process, and prepare contact report to co counsel | TOS | 0.5 | | |
| 7/9/2026 | Conference with potential settlement class member concerning prior plan claims, settlement notice, rescoring process, and prepare contact report to co counsel | | | VH | 0.10 |
| 7/9/2026 | Receipt and review class member list, updated guide for responding and communication regarding phone calls, office conference with VH on same and guide to responding to contacts. | TOS | 0.4 | | |
| 7/9/2026 | Emails with defense attorneys regarding specific queries on confirmatory data due to player contact and calls | TOS | 0.2 | | |
| 7/9/2026 | Phone call with class member regarding questions regarding correspondence and rescoring process. | TOS | 0.8 | | |
| 7/10/2026 | Drafting TOS declaration in support of fees, pulling initial case research, begin drafting sections on efforts to manage and create efficiencies, drafting sections on activities and hourly breakdown, sections on pre filing chronology, billing judgment and 2023 strategy memorandum | TOS | 6.7 | | |
| 7/12/2026 | Continue drafting Sinclair declaration in support, drafting charts for summary of relief and hours tables, reconcile time entires by litigation phase and case strategy, breaking apart hours billed into sections to account for work performed | TOS | 8.2 | | |
| 7/13/2026 | Edits to current version of fee declaration, currently over 150 numbered paragraphs totaling 26 pages, review and analysis of case law from fees memorandum and insure conformity with same | TOS | 5.4 | | |
| 7/13/2026 | Conference with potential settlement class member concerning prior plan claims, settlement notice, rescoring process, and prepare contact report to co counsel | TOS | 0.7 | | |
| 7/13/2026 | Conference with potential settlement class member concerning prior plan claims, settlement notice, rescoring process, and prepare contact report to co counsel | TOS | 0.4 | | |
| 7/13/2026 | Emails with co counsel on fee petaton drafts and declarations (.6) and emails with defense counsel on confirmatory discovery questions (.2) | TOS | 0.8 | | |

| | | | | | |
|---|---|---|---|---|---|
| 7/14/2026 | Telephone conference with R. Gilliland regarding the fee petition due next week, possible edits and arguments to make on the lodestar, ERISA fee statute and Rule 23 fees, CTA4 case law on same and supporting declarations. | TOS | 0.6 | | |
| 7/14/2026 | Review and analysis of initial draft of memorandum in support of fees from R Gilliland | TOS | 3.2 | | |
| 7/14/2026 | Review case law in R Gilliland memo, pull cases from fee memo and edits to fee memo to comply with CTA4 research | TOS | 2.6 | | |
| 7/15/2026 | Initial edits to plaintiffs memorandum in support, review and analysis of Jenkins, Plyler, Gelis, Quesinberry, Harwood and Rule 54 case law and research from prior memoranda regarding need to conform current version of draft to strategic plan for bifurcation of fee award | TOS | 1.9 | | |
| 7/15/2026 | Second round of edits, these handwritten for ease of reference, to memo from R Gilliand for fee petition, insert sections on catalyst theory and call with R Gilliland and emails on same | TOS | 2.1 | | |
| | | | | | |
| | as of July 15, 2026 | | | | |
| | Attorney Time at $1,500 per hour | 878.6 | | | |
| | $1,317,900.00 | | | | |
| | | | | | |
| | Paralegal Time at $300 per hour | 36.7 | | | |
| | $11,010.00 | | | | |
| | | | | | |
| | Total Sinclair Law | | | | |
| | $1,328,910.00 | | | | |

| Hotel | Copies/Fax | Airfare | Federal Express and Postage | Electronic Research | Meals and Event Catering | Travel | Expert Fees | Citrix ShareFile | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| $103.00 | $1.95 | $740.81 | $18.70 | $15.13 | $15.93 | $36.00 | $34.74 | $101.00 | |
| $1,748.04 | $11.70 | $171.00 | | $286.61 | $71.78 | $24.00 | | | |
| $1,114.61 | $314.85 | $732.20 | | $275.35 | $9.35 | $38.00 | | | |
| $1,465.82 | $23.40 | $819.96 | | $268.20 | $915.20 | $45.00 | | | |
| $2,389.28 | | $221.79 | | | $1,830.40 | $8.50 | | | |
| $1,863.45 | | $484.57 | | | $909.45 | $61.66 | | | |
| $1,207.10 | | $125.10 | | | $54.12 | $83.22 | | | |
| $828.55 | | $1,011.06 | | | $169.95 | $65.86 | | | |
| $828.55 | | $101.71 | | | $202.95 | $40.54 | | | |
| | | $1,111.36 | | | $11.60 | $19.60 | | | |
| | | | | | $13.34 | $6.00 | | | |
| | | | | | $26.81 | $73.81 | | | |
| | | | | | $299.90 | $15.13 | | | |
| | | | | | $164.75 | $36.00 | | | |
| | | | | | $402.47 | $71.04 | | | |
| | | | | | | $62.44 | | | |
| | | | | | | $34.00 | | | |
| | | | | | | $50.58 | | | |
| | | | | | | $102.18 | | | |
| | | | | | | $89.90 | | | |
| | | | | | | $75.56 | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| $11,548.40 | $351.90 | $5,519.56 | $18.70 | $845.29 | $5,098.00 | $1,039.02 | $34.74 | $101.00 | **$24,556.61** |