**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| STACEY BAILEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN, *et al.*, <br><br> Defendants. | Case No: 1:23-cv-02661-JRR |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 4

    A.  The Parties Resolved the Case Through A Cooperative Settlement Process. ..................... 4

    B.  The Settlement Provides Individualized Relief to Eligible Settlement Class Members...... 5

    C.  The Settlement Agreement, the Preliminary Approval Order, and the Notice Contemplate a Single Fee Application to Be Resolved at the Final Fairness Hearing. ......................... 5

LEGAL STANDARD........................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

    I.  THE *QUESINBERRY* FACTORS WEIGH HEAVILY AGAINST THE REQUESTED FEE AWARD. ...................................................................................................... 7

        A.  The First Factor Weighs Against the Requested Award Because There Has Been No Finding of Culpability or Bad Faith........................................................................ 8

        B.  The Second Factor Does Not Support the Requested Award Because Defendants' Ability to Pay Cannot Carry the Analysis................................................................. 9

        C.  The Third Factor Does Not Support the Requested Award Because a Fee Award Would Have Little Deterrent Effect.......................................................................... 9

        D.  The Fourth Factor Does Not Support the Requested Award Because This Case Neither Resolves a Significant ERISA Question nor Provides a Readily Measurable Class Benefit. ........................................................................................................ 10

        E.  The Fifth Factor Does Not Support the Requested Award Because the Relative Merits of the Parties' Positions Were Never Adjudicated. ................................................... 11

    II.  ANY REASONABLE FEE WOULD BE FAR LOWER THAN THE AMOUNT REQUESTED. ............................................................................................................... 11

        A.  The *Johnson* Factors Do Not Supply an Independent Basis for the Requested Award............................................................................................................... 12

        B.  The Requested Hourly Rates Far Exceed Prevailing Market Rates. ......................... 13

        C.  The Claimed Hours Are Excessive, Duplicative, and Inadequately Documented. .... 17

    III.  THE COURT SHOULD DENY THE REQUEST TO BIFURCATE THE FEE PROCEEDING AND RESERVE JURISDICTION FOR A SUPPLEMENTAL PETITION........................................................................................................... 25

        A.  The Settlement Agreement, the Preliminary Approval Order, and the Notice Each Provide for a Single Fee Petition to Be Resolved at the Final Fairness Hearing........ 25

        B.  Plaintiffs Are Not Entitled to A Fee Enhancement as A Matter of Law. .................. 26

        C.  Class Counsel Cannot Be Compensated for Settlement Implementation................... 27

    IV.  THE REQUESTED COSTS SHOULD BE REDUCED............................................... 28

V. THE REQUESTED $50,000 SERVICE AWARDS SHOULD BE SUBSTANTIALLY REDUCED...................................................................................................................... 29

CONCLUSION............................................................................................................................ 30

## TABLE OF AUTHORITIES

**Cases**

*Am. Med. Sec., Inc. v. Larsen,*
   31 F. Supp. 2d 502 (D. Md. 1998) ........................................................................................... 6

*Berry v. Schulman,*
   807 F.3d 600 (4th Cir. 2015) ....................................................................... 27, 29, 30

*Blum v. Stenson,*
   465 U.S. 886 (1984)........................................................................... 7, 12, 13, 15

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980).................................................................................................... 27

*Burley v. Baltimore Police Dep't,*
   No. CV SAG-18-1743, 2020 WL 1984906 (D. Md. Apr. 27, 2020).................................. 13, 23

*City of Burlington v. Dague,*
   505 U.S. 557 (1992)........................................................................... 3, 12, 27

*De Paredes v. Zen Nails Studio LLC,*
   134 F.4th 750 (4th Cir. 2025) ........................................................................................... 7

*De Simone v. VSL Pharms., Inc.,*
   No. CV TDC-15-1356, 2018 WL 6680922 (D. Md. Dec. 19, 2018)...................................... 20

*Dorsey v. TGT Consulting, LLC,*
   No. CIV. CCB-10-92, 2014 WL 458999 (D. Md. Feb. 4, 2014)...................................... 18, 21

*EEOC v. Freeman,*
   126 F. Supp. 3d 560 (D. Md. 2015)...................................................................................... 13

*Feinberg v. T. Rowe Price Group, Inc.,*
   610 F. Supp. 3d 758 (D. Md. 2022)...................................................................................... 29

*Galeener v. Source Refrigeration & HVAC, Inc.,*
   No. 3:13-CV-04960-VC, 2015 WL 12977077 (N.D. Cal. Aug. 21, 2015) .............................. 29

*Goodlaxson v. Mayor & City Council of Baltimore,*
   776 F. Supp. 3d 311 (D. Md. 2025)...................................................................................... 27

*Grissom v. The Mills Corp.,*
   549 F.3d 313 (4th Cir. 2008) ........................................................................................ 6, 13

*Hardt v. Reliance Standard Life Ins. Co.*,
  560 U.S. 242 (2010)................................................................................................ 6

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)......................................................................................... *passim*

*Hernandez v. Olney Enters., Inc.*,
  No. CV GLS-25-01528, 2026 WL 290967 (D. Md. Feb. 3, 2026)............................ 14

*In re High-Tech Emp. Antitrust Litig.*,
  No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)................................... 29

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ................................................................................. 26

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ................................................................................. 6

*Ketchum v. Moses*,
  17 P.3d 735 (Cal. 2001) ....................................................................................... 27

*McAdams v. Robinson*,
  26 F.4th 149 (4th Cir. 2022) .......................................................................... 26, 28

*McAfee v. Boczar*,
  No. 3:11CV646, 2012 WL 6623038 (E.D. Va. Dec. 19, 2012)................................ 23

*Montcalm Publ'g Corp. v. Commonwealth of Va.*,
  199 F.3d 168 (4th Cir. 1999) ................................................................................. 7

*Page v. Virginia State Bd. of Elections*,
  No. 3:13-CV-678, 2015 WL 11256614 (E.D. Va. Mar. 11, 2015).......................... 23

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010).......................................................................................... *passim*

*Plyler v. Evatt*,
  902 F.2d 273 (4th Cir. 1990) ............................................................................... 13

*Quesinberry v. Life Ins. Co. of N. Am.*,
  987 F.2d 1017 (4th Cir. 1993) .......................................................................... *passim*

*Rahll & Sons, Inc. v. Everfresh Farms, LLC*,
  No. CV 25-2531-BAH, 2026 WL 1441677 (D. Md. May 22, 2026) ....................... 14

v

*Rum Creek Coal Sales, Inc. v. Caperton*,
   31 F.3d 169 (4th Cir. 1994) ....................................................................... 13, 18, 27

*Spell v. McDaniel*,
   852 F.2d 762 (4th Cir. 1988) ................................................................................. 23

*Trimper v. City of Norfolk, Va.*,
   58 F.3d 68 (4th Cir. 1995) ...................................................................................... 21

*Two Men & A Truck Int'l, Inc. v. A Mover, Inc.*,
   128 F. Supp. 3d 919 (E.D. Va. 2015) ..................................................................... 22

**Statutes**

29 U.S.C. § 1132.................................................................................................... 4, 6

42 U.S.C. § 1981......................................................................................................... 4

42 U.S.C. § 1988.................................................................................................... 6, 8

**Rules**

Fed. R. Civ. P. 23(h)(1)-(2)...................................................................................... 25

**Other Authorities**

Complaint,
   *Henry v. National Football League*,
   No. 2:20-cv-04165 (E.D. Pa. Aug. 25, 2020), ECF No. 1 ....................................... 1, 4

Declaration of Beasley Allen in Support of Motion for Attorney Fees,
   *In re Fisher-Price Rock 'N Play Sleeper Marketing, Sales Practices & Products Liability
   Litigation*,
   No. 1:19-md-02903-GWC (W.D.N.Y. Dec. 5, 2024), ECF No. 360-2 .................................... 15

Declaration of W. D. Miles in Support of Motion for Attorney Fees,
   *Cheng v. Toyota Motor Corp.*,
   No. 1:20-cv-00629-WFK-JRC (E.D.N.Y. Nov. 18, 2022), ECF No. 176-1 ................ 15, 16, 30

Declaration of James B. Eubank Concerning Attorneys' Fees and Expenses,
   *In re Vanguard Chester Funds Litigation*,
   No. 2:22-cv-955-JFM (E.D. Pa. Dec. 2, 2025), ECF No. 204-5 ............................................ 15

Exhibit A to Supplement to Notice of Motion and Motion,
*In re ZF-TRW Airbag Control Units Products Liability Litigation*,
No. 2:19-ml-02905-JAK-MRW (C.D. Cal. July 19, 2023), ECF No. 750-2............................ 15

Explanation and Order,
*In re National Football League Players' Concussion Injury Litigation*,
No. 2:12-md-02323-AB (E.D. Pa. July 15, 2025), ECF No. 12481 ............................ 17, 18, 26

Joint Declaration in Support of Motion for Attorney Fees,
*White v. FCA USA LLC*,
No. 4:21-cv-11696-SDK-DRG (E.D. Mich. June 13, 2025), ECF No. 75-2............................ 15

Motion for Attorney Fees,
*White v. FCA USA LLC*,
No. 4:21-cv-11696-SDK-DRG (E.D. Mich. June 13, 2025), ECF No. 75 .............................. 15

Opinion*,*
*In re National Football League Players' Concussion Injury Litigation*,
No. 24-1910 (3d Cir. Nov. 12, 2024), ECF No. 52 .................................................................. 24

Order,
*Siqueiros v. General Motors LLC,*
No. 3:16-cv-07244 (N.D. Cal. Oct. 8, 2025), ECF No. 735 .................................................... 29

Settlement Implementation Determination,
*In re National Football League Players' Concussion Injury Litigation*,
No. 2:12-md-02323-AB (E.D. Pa. Feb. 29, 2024), ECF No. 12377......................................... 24

**INTRODUCTION**

This case was resolved through a cooperative settlement process before any adversarial litigation occurred.  Plaintiffs filed a Complaint asserting allegations that had previously been raised in *In re National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323 (E.D. Pa.) and related actions[1] (together, the "Concussion Litigation").  ECF No. 1.  Approximately two months later, the parties jointly moved to stay the action so they could pursue settlement discussions.  ECF No. 30.  The case therefore never presented a novel ERISA issue for judicial resolution, a significant unresolved question of law, or a complex factual record requiring extensive litigation.

From the outset, Defendants expressed their commitment to reach an early resolution and agreed to terms that substantially narrowed any potential dispute: they waived any statute-of-limitations defense and the Plans' damages-limitation provisions, agreed to pay interest at the Plans' six percent rate (which exceeds the statutory rate), and clarified that they never directed Neutral Physicians to apply race-based demographic adjustments and that any such adjustments ceased in June 2021.  As a result, despite Defendants' view that Plaintiffs' claims were not suitable for class treatment, there was no contested class-certification litigation, no merits discovery, no depositions, no expert disclosures, no dispositive motions, and no trial.  Instead, the litigation consisted primarily of mediation, confirmatory discovery requested by Plaintiffs and produced by Defendants, periodic joint status reports, and settlement negotiations culminating in the Settlement Agreement and the joint motion for preliminary approval.

Against that background and the absence of any adversarial litigation, Plaintiffs now seek $3,787,550 in attorneys' fees and $253,421.69 in costs, together with service awards of $50,000

---

[1] *See, e.g., Henry v. National Football League*, No. 2:20-cv-04165 (E.D. Pa. Aug. 25, 2020), ECF No. 1.

for each of the two class representatives, for a total request of $4,140,971.69 (the "Fee Petition").

*See* Proposed Order, ECF No. 88-6; Settlement Agreement, ECF No. 79-3, § VIII.C.  Plaintiffs

also request that the Court "bifurcate the fee award," retain jurisdiction over anticipated future fee

requests for "500 hours or more" of work, and reserve the possibility of a later enhancement after

the rescoring process is substantially complete.  Pls.' Mem., ECF No. 88-1, pp. 28, 32-34, 37.

Whether to award any fee at all rests in the Court's discretion, and the burden of justifying

a fee lies with the Plaintiffs.

The Court's discretion in awarding fees is guided by five factors: the opposing parties'

culpability or bad faith; their ability to satisfy an award; whether an award would deter others

acting under similar circumstances; whether the movants sought to benefit all plan participants or

resolve a significant legal question regarding ERISA itself; and the relative merits of the parties'

positions.  *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993) (en banc).

Here, those factors weigh strongly against the requested fee award.  There has been no finding of

culpability or bad faith, no adjudication on the merits, and no resolution of a significant ERISA

issue.  The deterrence rationale is limited because, as Plaintiffs themselves acknowledge, the

challenged practice, which was limited to certain Neutral Physicians, ceased more than two years

before suit was filed, and any fee award would be paid from Plan assets, which diminishes any

deterrent effect.  *See id.* at 1030, n.12.  Nor does the Settlement provide the type of substantial,

readily quantifiable recovery that sometimes supports a significant fee award; by design, it creates

no common fund and its value turns on an individualized rescoring process whose claim-by-claim

determinations have yet to occur.  At most, Defendants' ability to satisfy an award weighs in

Plaintiffs' favor.  Standing alone, that factor cannot justify the requested award.  *Id.*

Nor does the Settlement's relief justify the amount requested.  The Settlement's prohibition

2

on race-based adjustments simply confirms a practice limited to certain Neutral Physicians that the Plans ended in June 2021, more than two years before the Complaint was filed, and its core new relief—the individualized rescoring process for eligible Settlement Class Members and payment of any resulting retroactive benefits—is what Defendants committed to provide from the outset of this case. The Settlement's remaining terms reflect the Plans' cooperative posture rather than the fruits of adversarial litigation. And, while Class Counsel negotiated in earnest, those negotiations did not require the staffing or hours reflected in the Fee Petition.

A reasonable fee is determined by the lodestar of reasonable hours multiplied by a reasonable rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The request here fails on both sides of that equation. The requested rates of up to $1,600 per hour far exceed prevailing market rates in this District, the rates Class Counsel have recently represented to other federal courts as their customary rates, and the market benchmarks in Class Counsel's own evidence. The claimed hours are likewise unreasonable. Plaintiffs seek compensation for approximately 3,003 hours across twenty-two timekeepers at four firms. ECF No. 88-2 at p. 79. Those hours are inflated by duplicative staffing, vague and block-billed entries, clerical work billed at attorney rates, undiscounted travel time, and substantial time preparing counsel's own fee application. In addition, the request to bifurcate fees, reserve jurisdiction over future fee petitions, and seek a later enhancement is inconsistent with the Settlement Agreement, the Preliminary Approval Order, and the Notice approved by the Court, and it conflicts with the settled rule barring contingency enhancements under federal fee-shifting statutes. *See City of Burlington v. Dague*, 505 U.S. 557, 567 (1992). The requested $50,000 service awards are likewise many times larger than awards commonly approved in this Circuit and cannot be reconciled with the limited litigation activity this cooperative resolution required.

For these reasons, the Court should substantially reduce the requested fees, costs, and service awards and resolve those requests once and for all at the Final Fairness Hearing, as contemplated by the Settlement Agreement, the Preliminary Approval Order, and the Notice.

## FACTUAL BACKGROUND

### A.    The Parties Resolved the Case Through A Cooperative Settlement Process.

Plaintiffs filed this action on September 29, 2023.  ECF No. 1.  The Complaint closely tracks similar allegations raised in the Concussion Litigation and includes claims for declaratory and injunctive relief (Count I), violation of ERISA § 502(a), 29 U.S.C. § 1132(a) (Count II), and violation of 42 U.S.C. § 1981 (Count III).  *Id*.; *Henry,* No. 2:20-cv-04165 (E.D. Pa.), ECF No. 1.

On December 4, 2023, the parties jointly moved to stay the action to pursue settlement discussions, and the Court granted that motion the following day while appointing interim Class Counsel.  ECF Nos. 30, 31, 32.

The litigation never progressed beyond the settlement track, nor did it need to.  Defendants made clear from the earliest discussions, and reaffirmed throughout the parties' negotiations, that the Plans were committed to resolving Plaintiffs' claims.  The parties participated in seven mediation sessions before the Honorable Gerald E. Rosen (Ret.), Defendants produced limited confirmatory discovery, and also prepared and filed periodic joint status reports and motions to extend the stay while the parties negotiated a resolution.  The parties' negotiations culminated in a jointly drafted Final Term Sheet executed on July 11, 2025, a jointly drafted Settlement Agreement executed on May 29, 2026, and jointly drafted preliminary approval papers filed on May 29, 2026, including the Joint Motion for Preliminary Approval, proposed Notice, and proposed Preliminary Approval Order.  ECF Nos. 79, 83.  The Court entered the Preliminary Approval Order on June 1, 2026 and approved the proposed Notice.  ECF No. 82.

**B.    The Settlement Provides Individualized Relief to Eligible Settlement Class Members.**

The Settlement incorporates the Plans' existing and continuing prohibition on the use of race-based demographic adjustments in neuropsychological testing. Settlement Agreement, ECF No. 79-3, § VI.A. It also provides for the Rescoring Protocol, under which certain prior claims may be rescored using a race-neutral methodology if they satisfy the Settlement's eligibility requirements. *Id.,* § VI.B. Any award of additional benefits depends on the outcome of that individualized rescoring process and the application of the governing Plan terms. *Id.,* §§ VI.B, VI.C. For Settlement Class Members who are ultimately determined to qualify for benefits they previously did not receive, or to qualify for a higher level of benefits than previously awarded, the Settlement provides for payment of any applicable retroactive benefits together with six percent simple interest. *Id.* §§ VI.C.2-3. The Settlement also provides that benefit determinations reached by the Plans through this process are final and binding. *Id.,* § VI.C.6.

Any attorneys' fees, costs, expenses, and service awards are separate from the individualized relief available to Settlement Class Members, do not reduce any benefits awarded under the Settlement, and remain subject to Defendants' express reservation of "all rights to oppose" such requests, in whole or in part. *Id.,* §§ II.2, VIII.B, VIII.D; Preliminary Approval Order, ECF No. 82, ¶ 9.

**C.    The Settlement Agreement, the Preliminary Approval Order, and the Notice Contemplate a Single Fee Application to Be Resolved at the Final Fairness Hearing.**

The Settlement Agreement provides that the Fee Petition will be addressed contemporaneously with final approval. Settlement Agreement, §§ VIII.A, VIII.C-E. The Preliminary Approval Order established a July 21, 2026 deadline for the Fee Petition and provides that the Final Fairness Hearing, currently scheduled for October 20, 2026, will determine "whether,

5

and in what amount," fees and service awards should be awarded, with objections due twenty-one

days before the hearing.  Preliminary Approval Order, ECF No. 82, ¶¶ 7-9; ECF No. 86.  The

Notice advised absent class members of the same procedure.  Notice, ECF No. 83, §§ III.C-D, IV.

Neither the Settlement Agreement, the Preliminary Approval Order, nor the Notice provides for a

second fee application, a supplemental fee petition, or a later request for an enhancement following

final approval.

## LEGAL STANDARD

A fee award is discretionary, not automatic.  *See* 29 U.S.C. § 1132(g)(1); 42 U.S.C. §

1988(b).  Although a claimant in an ERISA action who achieves "some degree of success on the

merits" is eligible to seek attorneys' fees, eligibility alone does not create a presumption that fees

should be awarded.  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 244-45 (2010); *Am.*

*Med. Sec., Inc. v. Larsen*, 31 F. Supp. 2d 502, 507 (D. Md. 1998).  Rather, the Court must exercise

its discretion in light of the five factors identified in *Quesinberry,* which serve as "general

guidelines" rather than a rigid test.  987 F.2d at 1029.

In determining what fee is reasonable, the lodestar provides the presumptive measure of a

reasonable fee and is calculated by multiplying the reasonable hours expended by a reasonable

hourly rate.  *Hensley,* 461 U.S. at 433; *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52

(2010).  The fee applicant bears the burden of establishing both the reasonableness of its requested

rates and the reasonableness of the hours claimed.  *Grissom v. The Mills Corp.*, 549 F.3d 313, 321

(4th Cir. 2008); *Hensley*, 461 U.S. at 437.

In determining a reasonable lodestar, courts in the Fourth Circuit consider the factors

identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974),

including the time and labor required, the novelty and difficulty of the issues, the customary fee

for similar work in the community, and awards in comparable cases. Many of those considerations, however, are already incorporated into the lodestar calculation and may not be counted twice. *Perdue*, 559 U.S. at 553; *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984).

Reasonable hourly rates are determined based on the "prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. "[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate." *Montcalm Publ'g Corp. v. Commonwealth of Va.*, 199 F.3d 168, 173 (4th Cir. 1999).

Local Rule 109.2 and Appendix B to the Local Rules likewise inform the Court's analysis. Appendix B requires fee requests to be adequately supported and provides guidance regarding billing practices, compensable time, and reasonable hourly rates. *See* App. B. In determining prevailing market rates, the Court may consider a variety of evidence, including lawyer affidavits, fee awards in similar cases, surveys, fee matrices, and its own knowledge. *De Paredes v. Zen Nails Studio LLC*, 134 F.4th 750, 754 (4th Cir. 2025).

## ARGUMENT

**I.    THE *QUESINBERRY* FACTORS WEIGH HEAVILY AGAINST THE REQUESTED FEE AWARD.**

Plaintiffs contend that all five *Quesinberry* factors favor an award of attorneys' fees and costs. Pls.' Mem., pp. 18-20. The record supports the opposite conclusion: four of the five *Quesinberry* factors weigh against the requested award. The remaining factor—Defendants' ability to satisfy an award—is not disputed, but it cannot carry the analysis by itself, particularly where any award would be paid from Plan assets. *See Quesinberry*, 987 F.2d at 1030, n.12.

Nor would reduction or denial of the Fee Petition affect the Settlement. The Settlement Agreement expressly provides that "[t]he failure of the Court to approve Plaintiffs' Fee Petition, or approval by the Court of a lesser amount than requested, shall not affect the other terms of the

Settlement."   Settlement Agreement, ECF No. 79-3, § VIII.C; *see also* Preliminary Approval Order, ECF No. 82, ¶ 7.  The Court therefore may evaluate the Fee Petition independently and award only those fees, costs, and service awards that are justified by the governing standards and supported by the record.

Plaintiffs' alternative reliance on 42 U.S.C. § 1988 does not alter this analysis.  Even under § 1988, the Court retains discretion to determine a reasonable fee, and the same facts that weigh against a fee award under *Quesinberry* strongly counsel against the extraordinary award requested here.  Pls.' Mem., p. 28.

### A.    The First Factor Weighs Against the Requested Award Because There Has Been No Finding of Culpability or Bad Faith.

Plaintiffs may argue that they achieved "some degree of success on the merits" because the Settlement provided relief that, in their view, would not have occurred absent this lawsuit.  *See* Pls.' Mem., pp. 17-20.  Even assuming that threshold requirement is satisfied, it does not answer the first *Quesinberry* factor.  The question here is not whether the litigation produced a result, but whether Defendants acted with culpability or bad faith.  As set forth in the Motion for Preliminary Approval, Defendants deny liability, ECF No. 79-1, p. 29, and the Settlement expressly provides that it is not an admission of wrongdoing.  *See* Settlement Agreement, ECF No. 79-3, Recitals.

Plaintiffs argue that the Plans knew race-based demographic adjustments had affected prior claims and failed to remedy those claims after directing that such adjustments no longer be used prospectively.  Pls.' Mem., pp. 8-9, 18.  But the Settlement reflects Defendants' position that they neither directed Neutral Physicians to apply race-based demographic adjustments nor had prior knowledge that such adjustments were being used, and that any such adjustments (to the extent they may have been used) were applied solely in the exercise of certain individual Neutral Physicians' independent medical judgment.  *See* Settlement Agreement, Recitals.  Nor has it been

established that any Settlement Class Member's benefit determination was actually affected by such adjustments. A settlement reached without any finding of liability and accompanied by an express denial of wrongdoing does not establish culpability or bad faith.

### B. The Second Factor Does Not Support the Requested Award Because Defendants' Ability to Pay Cannot Carry the Analysis.

Defendants do not dispute their ability to satisfy an award. But the ability to pay is merely a threshold consideration; it says nothing about whether fees should be awarded or what amount would be reasonable. If it did, any fee request against a well-funded employee benefit plan would be presumptively reasonable regardless of the circumstances. Indeed, *Quesinberry* affirmed the denial of fees even though the defendant's ability to satisfy an award was undisputed. 987 F.2d at 1030.

Moreover, the assets at issue here are Plan assets from which any retroactive benefits awarded under the Settlement must be paid, the same assets that fund Settlement administration, and the same assets used to satisfy the Plans' obligations to other participants and beneficiaries. Accordingly, the fact that the Plans could satisfy a fee award is not a reason to impose one. *See Quesinberry*, 987 F.2d at 1030, n.12.

### C. The Third Factor Does Not Support the Requested Award Because a Fee Award Would Have Little Deterrent Effect.

The deterrence rationale is weak for three independent reasons.

*First*, the challenged practice ceased before this litigation began. The Plans directed that race-based demographic adjustments not be used in June 2021 and have maintained that directive since then. *See* Settlement Agreement, ECF No. 79-3, Recitals.

*Second*, Plaintiffs contend that a fee award would deter ERISA fiduciaries from failing to undertake retroactive remediation after discovering allegedly discriminatory practices. Pls.'

Mem., p. 19.  That theory rests on the unproven premise that a plan's reliance on independent physicians, and on what was then an accepted practice in their medical community, itself constitutes discrimination.  No court has so found, and the premise is tenuous at best.  It is more tenuous still because, under the circumstances here, a multimillion-dollar fee award would have little deterrent effect, as it would be paid with Plan assets and would reduce assets otherwise available to fund Plan obligations.  *See Quesinberry*, 987 F.2d at 1030, n.12 ("Where the fee award would be paid out of the plan assets, … the deterrent effect … would also be diminished").

*Third*, Defendants agreed to pay any awarded fees separately, so that no fee reduces Settlement Class Members' recoveries.  *See* Settlement Agreement, § II.2.  A windfall award would discourage future defendants from agreeing to such class-protective terms and push settlements toward common-fund structures in which the class bears the cost of its own counsel.

### D. The Fourth Factor Does Not Support the Requested Award Because This Case Neither Resolves a Significant ERISA Question nor Provides a Readily Measurable Class Benefit.

Plaintiffs contend that this litigation benefits all Plan participants and resolves important questions concerning the interaction between ERISA and federal anti-discrimination law.  Pls.' Mem., pp. 19-20.  But this case did not resolve a significant ERISA issue as no dispositive issue was briefed, argued, or decided, and the Settlement does not establish precedent or answer an unresolved legal question.

Nor does the Settlement provide a readily measurable class-wide benefit.  Defendants agreed to class certification for settlement purposes only, while maintaining that no litigation class could have been certified, as each Settlement Class Member's entitlement to benefits turns on individualized determinations under the Plans' terms, not common proof.  The Settlement creates no common fund and its principal relief is an individualized rescoring process whose value

depends on claim-by-claim determinations that have not yet occurred and cannot presently be measured.

Plaintiffs characterize the Settlement as producing "complete success," "comprehensive" relief, and "exceptional" results. Pls.' Mem., pp. 11, 26, 32. At the same time, they acknowledge that the ultimate value of the Settlement cannot presently be quantified. *Id.*, pp. 32-34. Those positions are difficult to reconcile: a settlement whose value cannot yet be measured cannot support the assertion that "exceptional" results have been achieved or justify the extraordinary fee request presented here.

> ### E. The Fifth Factor Does Not Support the Requested Award Because the Relative Merits of the Parties' Positions Were Never Adjudicated.

Plaintiffs argue that Defendants' willingness to settle demonstrates the strength of Plaintiffs' position, asserting that "Defendants did not settle because Plaintiffs' case lacked merit." Pls.' Mem., p. 20. But settlement reflects compromise, not adjudication. If settlement alone established the superiority of the movant's position, this factor would favor fees whenever a case settles.

The disputes between the parties were resolved through negotiation rather than litigation, largely based on Defendants' ongoing commitment to ensuring no race-based adjustments were used in benefit determinations. Because the Court never assessed the merits of the parties' competing legal and factual positions, the record does not support a finding that Plaintiffs' position was superior to Defendants' position.

## II. ANY REASONABLE FEE WOULD BE FAR LOWER THAN THE AMOUNT REQUESTED.

Whatever weight the Court assigns the *Quesinberry* factors, the amount sought cannot be sustained. The lodestar remains the presumptive measure of a reasonable fee. *Hensley*, 461 U.S.

at 433; *Perdue*, 559 U.S. at 551-52.  The request here fails at every step, and each defect discussed below independently requires substantial reductions.

> ### A.    The *Johnson* Factors Do Not Supply an Independent Basis for the Requested Award.

Plaintiffs devote substantial attention to the twelve *Johnson* factors.  Pls.' Mem., pp. 20-28.  But many of the factors on which they rely are already subsumed in the lodestar and therefore cannot justify additional compensation.  *Blum*, 465 U.S. at 898-900; *Perdue*, 559 U.S. at 553.

In particular, the purported novelty and difficulty of the case, counsel's skill and experience, and the results obtained ordinarily are reflected in the reasonable hourly rate and the reasonable hours expended, *Blum*, 465 U.S. at 898-900, *Perdue*, 559 U.S. at 553, and provide no basis for inflating the fee request beyond what the lodestar reasonably supports.  Moreover, with respect to novelty, Plaintiffs cite the scientific debate about race-norming dating back to 2009 and acknowledge the overlap between this Action and issues previously litigated in the Concussion Litigation.  Pls.' Mem., p. 23; Compl., ¶¶ 87-90.  Nor can Plaintiffs rely on the results obtained to justify a premium.  Those results were achieved through the Plans' cooperation and voluntary commitments rather than through adversarial litigation, and, as discussed above, their value remains unquantifiable because the rescoring process has not yet occurred.

With respect to preclusion of other employment, Class Counsel identify no matter declined, no client turned away, and no specific work foregone because of this litigation.  Pls.' Mem., p. 25.  Likewise, their assertion that the case was "undesirable" is unsupported.  *Id.* at p. 27.

Finally, Plaintiffs' assertion that contingency representation merits enhanced compensation, Pls.' Mem., p. 25, is contrary to settled Supreme Court precedent.  *Dague*, 505 U.S. at 567.

B.      The Requested Hourly Rates Far Exceed Prevailing Market Rates.

Class Counsel seek rates of up to $1,600 per hour for Mr. Miles and $1,500 per hour for Mr. Sinclair, with other principals seeking rates ranging from $950 to $1,400, paralegals at $300, and law clerks at $250.  ECF No. 88-2, p. 79. The requested rates are contradicted by every objective benchmark in the record, including this District's fee guidance, Class Counsel's own recent sworn rate representations in other federal cases, Class Counsel's own market survey, and rates approved in comparable litigation.

(1) *Class Counsel Bear the Burden of Establishing the Prevailing Market Rate and Have Not Carried It.*

A reasonable hourly rate is "the prevailing market rate in the relevant community," *Blum*, 465 U.S. at 895, measured in the first instance by the forum, *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994).  The fee applicant bears the burden of producing "satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Grissom*, 549 F.3d at 321.  Ordinarily, that requires "affidavits of local lawyers familiar with the type of work involved, the relevant community, and the skills of the fee applicants." *EEOC v. Freeman*, 126 F. Supp. 3d 560, 575 (D. Md. 2015). Counsel's own assertions regarding their customary rates are not enough.  *See Burley v. Baltimore Police Dep't*, No. CV SAG-18-1743, 2020 WL 1984906, at *4 (D. Md. Apr. 27, 2020) (citing *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).

Class Counsel have not submitted the type of evidence required to satisfy that burden. They offer no affidavits from Maryland practitioners familiar with the relevant market, no evidence that paying clients actually paid the requested rates, and no Maryland decision approving comparable rates for comparable work.  Instead, they rely principally on their own declarations regarding the rates they believe they should receive. Nor have they identified a single decision

13

from this District approving hourly rates of up to $1,600 for ERISA class action litigation.

> ### (2) The Requested Rates Far Exceed the Rates Considered Reasonable in This District.

The District of Maryland's Local Rules provide a useful benchmark for evaluating the reasonableness of requested hourly rates. *See* D. Md. Local Rules, App. B. Although Appendix B is not dispositive, courts in this District routinely consult it when determining whether requested rates reflect the prevailing market for comparable legal services. *See, e.g.*, *Rahll & Sons, Inc. v. Everfresh Farms, LLC*, No. CV 25-2531-BAH, 2026 WL 1441677, at *8 (D. Md. May 22, 2026); *Hernandez v. Olney Enters., Inc.*, No. CV GLS-25-01528, 2026 WL 290967, at *4 (D. Md. Feb. 3, 2026).

Class Counsel's requested rates ranging from $950 to $1,600 per hour substantially exceed the rates contemplated by this Court's fee guidance, even for attorneys with the highest levels of experience. *See* App. B and the Fitzpatrick Matrix. The disparity is especially difficult to justify given the procedural history of this case. The record does not reflect the type of exceptionally complex litigation that would warrant rates so far above the norms recognized in this District.[2]

> ### (3) The Requested Rates Exceed the Rates Class Counsel Recently Represented as Reasonable in Other Courts.

The rates Class Counsel seek here substantially exceed the rates these same attorneys recently represented under oath were their customary or reasonable rates in other litigation. *See*

---

[2] Applying the most recent published Fitzpatrick Matrix rates (2025), based on each attorney's years of experience measured from law school graduation, *see* Ex. 2 (Westlaw attorney profiles reflecting each timekeeper's year of law school graduation), and reducing those rates by twenty percent to reflect the differences between the Washington, D.C. and Maryland legal markets, *see* D. Md. Local Rules, App. B, ¶ 3, yields the following maximum reasonable hourly rates for each of the timekeepers listed in the Fee Petition: W. D. Miles (1989 graduate) —$746; Golston (1998) — $724; Sinclair (1999) — $718; Nace (2003) — $694; Hawthorne (2010) — $636; Gilliland (2012) — $614; Hampton (2013) — $603; L. Miles (2015) — $578; Minder (2015) — $578; Evans (2017) — $553; paralegals and law clerks — $204.

*Blum*, 465 U.S. at 895.

Most recently, in *In re Vanguard Chester Funds Litigation*, No. 2:22-cv-955-JFM (E.D. Pa. Dec. 2, 2025), ECF No. 204-5 at p. 3, Beasley Allen represented that Mr. Miles' hourly rate was $1,100, Ms. Gilliland's and Ms. Hawthorne's was $850, and paralegal rates did not exceed $225.

The firm's prior submissions are consistent. In *Cheng v. Toyota Motor Corp.*, No. 1:20-cv-00629-WFK-JRC (E.D.N.Y. Nov. 18, 2022), ECF No. 176-1 at pp. 10-11, Mr. Miles and Ms. Gilliland represented their standard hourly rates as $1,100 and $750, respectively, describing those rates as the firm's "usual and customary lodestar rates." Likewise, in *In re Fisher-Price Rock 'N Play Sleeper Marketing, Sales Practices & Products Liability Litigation*, No. 1:19-md-02903-GWC (W.D.N.Y. Dec. 5, 2024), ECF No. 360-2 at p. 14, Mr. Miles represented a 2024 hourly rate of $1,100 as his standard rate and $975 as his reduced rate, Ms. Hawthorne represented an hourly rate of $850 as her standard rate and $750 as her reduced rate, and paralegal rates were represented as $225 standard and $175 reduced. Similarly, in *In re ZF-TRW Airbag Control Units Products Liability Litigation*, No. 2:19-ml-02905-JAK-MRW (C.D. Cal. July 19, 2023), ECF No. 750-2 at pp. 2, 5, 10, 15, 19, Mr. Miles represented a 2023 hourly rate of $1,100 as his standard rate and $895 as his reduced rate. In addition, in *White v. FCA USA LLC*, No. 4:21-cv-11696-SDK-DRG (E.D. Mich. June 13, 2025), ECF No. 75 at p. 10, ECF No. 75-2 at p. 9, Beasley Allen represented that its aggregate lodestar rate in 2025 was $876.47 per hour, and Beasley Allen and co-counsel sought an award of attorneys' fees, costs, and expenses in the total combined sum of $1,750,000 across multiple firms.

Mr. Sinclair's submission likewise undermines the rates sought here. His declaration acknowledges that the last hourly rate awarded to him in an ERISA class action was $625. Sinclair

15

Decl., ECF No. 88-3, p. 23.

Class Counsel offer no meaningful explanation for the significantly higher rates they seek here. The discrepancy is particularly striking because the matters in which these lower rates were represented involved substantially more litigation than occurred here. For example, *Cheng* involved approximately 655,000 documents in discovery, and *Rock 'N Play* involved years of litigation, extensive discovery, depositions, expert work, and trial preparation. If substantially lower rates were represented as reasonable in significantly more demanding litigation, Class Counsel have not shown why dramatically higher rates are warranted here.

*(4) Class Counsel's Own Market Evidence Does Not Support the Rates They Seek.*

Class Counsel's own market evidence—the 2025 Real Rate Report attached as Exhibit D to their Fee Petition—undermines rather than supports their requested rates.

For ERISA work, the specialty Class Counsel invoke to justify premium rates, the Report reflects a national third-quartile partner rate of $1,002. Pls.' Mem., p. 31; ECF No. 88-5, p. 45. For litigation partners in Baltimore, the relevant forum, the Report reflects a median rate of $595 and a third-quartile rate of $760. ECF No. 88-5, p. 13. Those figures fall well below the rates sought here. *See* ECF No. 88-2, p. 79.

Rather than rely on the ERISA and Baltimore benchmarks reflected in the survey, Class Counsel turn to Washington, D.C. practice area data. *See* Pls.' Mem., p. 31. But even that comparison is problematic. The figures they attribute to the Washington, D.C. Employment and Labor category (third-quartile hourly rate of $1,068 and the mean of $903) do not appear in that category at all. Instead, those figures correspond to the Report's Environmental practice area data. ECF No. 88-5, p. 153. That apparent misreading substantially weakens their interpretation of the survey.

16

Indeed, whether one looks to the Report's ERISA benchmarks, its Baltimore benchmarks, or even the Washington, D.C. figures cited by Plaintiffs, the survey consistently reflects rates materially below those sought by Class Counsel. Their own market evidence therefore fails to support their extraordinary fee request.

> *(5) Rates Approved in the Concussion Litigation Further Demonstrate That the Requested Rates Are Excessive.*

The rates sought here are also significantly higher than the rates approved in the NFL Concussion Litigation. In July 2025, the court approved compensation for "common benefit settlement implementation work performed, and expenses incurred, with respect to the development and presentation of the Norming Agreement that was approved …, as well as implementation work thereafter." *In re National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323-AB (E.D. Pa. July 15, 2025), ECF No. 12481 at p. 1. The approved rates were $758.35 for partners, $692.50 for counsel and of-counsel attorneys, $486.67 for associates, $537.50 for contract attorneys, and $260.00 for paralegals. *Id.*, p. 4.

The significance of the Concussion Litigation is not that it establishes the appropriate rates here, but that it represents a point of reference at the high end of the spectrum. The comparison is apt because Plaintiffs' Complaint largely tracks the allegations first raised in the Concussion Litigation, and the Settlement here essentially mirrors the relief obtained there with respect to race-based demographic adjustments. Even there, the approved rates and lodestar amount were substantially lower than those requested by Class Counsel. They offer no explanation why they should be compensated substantially more for doing less and achieving materially the same result.

**C.    The Claimed Hours Are Excessive, Duplicative, and Inadequately Documented.**

A fee applicant must exercise billing judgment and exclude hours that are "excessive,

redundant, or otherwise unnecessary," and the court must do the same. *Hensley*, 461 U.S. at 434, 437. That obligation carries particular force where counsel seek rates at or above the top of the prevailing market; counsel charging such rates are expected "to have worked efficiently, in a manner that reflects their substantial experience." *Dorsey v. TGT Consulting, LLC*, No. CIV. CCB-10-92, 2014 WL 458999, at *3 (D. Md. Feb. 4, 2014).

Measured against that standard, Class Counsel's itemized records cannot support the lodestar claimed. Nothing in the Fee Petition indicates that Beasley Allen exercised any billing judgment before submitting its records, such as writing off time and removing duplicative entries. *Hensley*, 461 U.S. at 434. Moreover, while Mr. Sinclair attests that he removed "more than 85 hours" as an exercise of billing judgment, ECF No. 88-3 ¶ 98, his surviving records still contain approximately 237 hours and $325,000 in the very categories he claims to have culled, including duplicative review, insufficiently clear and block-billed entries, clerical work, and full-rate travel. Ex. 1(H)-(J), (L)-(O). Altogether, Exhibit 1 to this brief identifies 1,362 individual time entries, totaling 1,164.1 hours and $1,359,515 in claimed lodestar, that are duplicative, excessive, vague, clerical, or otherwise not properly chargeable to Defendants. Those totals must also be judged against what this litigation actually required, because reasonable hours are a function of the demands of the case, and this case, which was resolved cooperatively without contested motions or discovery, required little. *Rum Creek*, 31 F.3d at 175. This case was stayed for settlement shortly after filing and was resolved through mediation and confirmatory discovery, yet the fee lodestar in the amount of $3,787,550 for 3,003.2 hours of work is presented as though the case demanded the staffing and hours of a fully litigated class action. *Cf. In re National Football League Players' Concussion Injury Litigation*, ECF No. 12481 at p. 4 (holding that "Seeger Weiss is entitled to payment for 1,272.90 hours of work [over a four-year period] by partners, 350 hours

18

of work by counsel, and 19 hours of work by paralegals for a total of $1,212,618.72 in fees").

Defendants do not question that Class Counsel engaged in the settlement negotiations in earnest, and the negotiation and mediation work that produced the Settlement is the core of any compensable effort. But earnest engagement does not mean that every hour billed along the way was reasonably necessary. The parties reached agreement in principle on the material terms of the Settlement in the Final Term Sheet executed on July 11, 2025. The parties deferred any negotiation over attorneys' fees until after those material terms were fixed. A single mediation session was thereafter devoted to fees, and, as this Opposition demonstrates, it produced no agreement. The remainder of the more than ten months that followed was devoted to memorializing the Settlement terms through joint preparation of the Settlement Agreement and the preliminary approval papers. Work of that character is necessarily limited in scope, and the hours billed after the Final Term Sheet should be scrutinized accordingly.

### (1) The Same Communications Were Billed Many Times Over, Within and Across Firms.

Much of the excess billing traces to staffing choices rather than the demands of the case. On 156 separate occasions, three or more Beasley Allen timekeepers billed to receive, read, review, or respond to the same communication on the same date, such as an email from defense counsel, a filed order, or a joint status report. Those clusters comprise 179.2 hours and $207,725 in claimed lodestar. Ex. 1(B-1). Thirty-seven additional clusters, comprising 191.1 hours and $238,415, reflect three or more attorneys billing for the same substantive review, editing, commenting, or revision task. Ex. 1(B-2). Moreover, in thirty-five instances, Mr. Sinclair billed separately, at $1,500 per hour, to review the very communications for which multiple Beasley Allen timekeepers had already billed, adding another 9.0 hours and $13,500. Ex. 1(I).

One example illustrates the problem. On October 18, 2023, five Beasley Allen timekeepers

19

each billed 0.5 hours because they "[r]eceived and reviewed OC waiver of services on defendants." The next day, the same five timekeepers each billed 0.8 hours to "[r]eceive notices of waivers of service from court for defendants," and Mr. Sinclair billed another 0.4 hours at $1,500 per hour to review the same eight waivers. ECF No. 88-2, p. 19; ECF No. 88-3, p. 34.  In total, it took six senior lawyers, 6.9 hours, and $8,400 to register that service had been waived.

The composition of the team compounds the problem.  Every attorney who billed time at Beasley Allen and Sinclair Law is a partner-level lawyer commanding rates of $950 to $1,600 per hour; neither firm staffed a single associate or counsel, whose lower rates would ordinarily absorb the routine review, drafting, and correspondence work billed here at premium partner rates.

The staffing also conflicts with Class Counsel's own description of the case team.  Mr. Miles declares that the work "has been concentrated among three Beasley Allen attorneys," Miles Decl. ¶ 4, and the memorandum describes "four primary attorneys" from two firms, Pls.' Mem., p. 21.  Yet the lodestar seeks six-figure amounts for two Beasley Allen principals outside that asserted core group, Ms. Hawthorne ($209,520) and Mr. Evans ($161,025), plus additional lawyers and paralegals.  ECF No. 88-2, pp. 8, 79.  By comparison, Class Counsel themselves describe Defendants' entire team as five lawyers.  Pls.' Mem., p. 21.  Also, although Mr. Sinclair states that he transitioned "day-to-day operational handling" to Ms. Gilliland, he billed more hours than she did: 878.6 to 772.4.  ECF No. 88-3, pp. 12, 68; ECF No. 88-2, p. 79.

Reduction for overstaffing is squarely within the Court's discretion, *see Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 76-77 (4th Cir. 1995), and courts in this District have reduced fees for comparable duplication.  *See, e.g., De Simone v. VSL Pharms., Inc.*, No. CV TDC-15-1356, 2018 WL 6680922, at *5 (D. Md. Dec. 19, 2018) ("As De Simone rightly points out, VSL's attorneys frequently duplicated work by having multiple partners review a document. In other instances,

20

VSL's attorneys performed work that could have been performed at a lower hourly rate by a paralegal or law clerk.").

### (2) The Same Plan Materials Were Reviewed and Analyzed Repeatedly.

Exhibit 1(M) identifies successive rounds in which Mr. Sinclair and his paralegals reviewed, charted, indexed, mapped, summarized, and re-analyzed substantially the same universe of Plan documents, including Sinclair Law's initial pre-filing review in September 2023; renewed charting and mapping in late 2023 and early 2024; a July 2025 paralegal project re-reviewing and re-charting each Plan version and amendment that Mr. Sinclair had already reviewed and charted; and an eighty-two page memorandum on the same key Plan terms drafted in 2026. Those entries total 85.5 hours and $102,330. Ex. 1(M); ECF No. 88-3, pp. 36-37, 53-55, 57-58, 60.

Defendants do not dispute that counsel had to understand the Plans. But an attorney commanding $1,500 per hour is presumed to master the material efficiently the first time, not to bill for reviewing and mapping the same documents in round after round for more than two years. *Dorsey*, 2014 WL 458999, at *3.

### (3) Block Billing and Vague Entries Prevent Meaningful Review.

Substantial portions of the time records also prevent meaningful review of what was done and how long each task reasonably took. Fifty-five Beasley Allen entries, totaling 112.9 hours and $78,340, combine multiple distinct activities in a single undifferentiated charge. Ex. 1(A). Forty-six additional Beasley Allen entries, totaling 37.6 hours and $40,135, provide no meaningful subject or purpose at all, offering only generic descriptions such as "Conference call," "Teleconference," and "Expert research." Ex. 1(G). The Sinclair records compound the problem with thirty-eight block-billed entries totaling 93.5 hours and $140,250. Ex. 1(L).

Where counsel's own records are inadequate to permit meaningful review, the

consequences fall on the applicant who created the records, not on the party asked to pay for them. *Hensley*, 461 U.S. at 433, 437.

### (4) Clerical and Administrative Work Should Be Disallowed Entirely.

One hundred twenty Beasley Allen entries, totaling 19.2 hours and $7,935, bill clerical and administrative work at professional rates, including downloading and saving filed orders, calendaring deadlines, booking hotel rooms, and similar overhead tasks. Ex. 1(C). In addition, five Sinclair Law entries, totaling 4.3 hours and $2,010, bill the same kind of work, including formatting documents, transmitting contact information, and conveying signature approvals, at attorney and paralegal rates. Ex. 1(N).

Because "purely clerical tasks are ordinarily a part of a law office's overhead (which is covered in the hourly rate), they should not be compensated for at all," even if billed at a lower "paralegal rate." *Two Men & A Truck Int'l, Inc. v. A Mover, Inc.*, 128 F. Supp. 3d 919, 929 (E.D. Va. 2015) (collecting cases). Accordingly, these entries should be disallowed in full.

### (5) Travel Time Should Be Discounted.

Forty-four Beasley Allen entries bill 271.3 hours and $335,005 for travel with no substantive work described, Ex. 1(D), and seven Sinclair Law entries add 16.6 hours and $24,900, Ex. 1(J), for a combined 287.9 hours and $359,905.

Mr. Sinclair supplied the governing methodology himself: on three travel return legs, he billed "2 hours full and half remainder," ECF No. 88-3, pp. 36, 38, 44, which is a formula consistent with this District's guidance. D. Md. Local Rules App. B, ¶ 2. What Class Counsel deemed reasonable for those three travel entries should be applied consistently to every non-working travel entry from both firms, and the $359,905 in full-rate travel fees reduced accordingly.

*(6) Time Spent Preparing the Fee Petition Should Be Reduced.*

Class Counsel also seek substantial compensation for preparing the Fee Petition. Beasley Allen claims 53.5 hours and $42,185, Ex. 1(E), and Sinclair Law adds 55.3 hours and $81,270, Ex. 1(K), for a total of 108.8 hours and $123,455.

Such time is compensable, if at all, only in significantly reduced measure. *See, e.g., Spell v. McDaniel*, 852 F.2d 762, 770 (4th Cir. 1988) (noting that 64.6 hours to prepare a fee petition was "simply incredible"); *Burley,* 2020 WL 1984906, at *3 ("[F]ee petitions involve no intricate issues of law, and require little legal skill to effectively craft"). To the extent any fees are awarded for the preparation of the Fee Petition, the Court should award a single flat sum of no more than $10,000, covering all firms. *See, e.g., McAfee v. Boczar*, No. 3:11CV646, 2012 WL 6623038, at *3 (E.D. Va. Dec. 19, 2012) (awarding $10,000); *Page v. Virginia State Bd. of Elections,* No. 3:13-CV-678, 2015 WL 11256614, at *12 (E.D. Va. Mar. 11, 2015) (awarding $10,000 and reducing it to $8,000 for block billing).

*(7) The Cuthbert Firm's and Nace Law Group's Requested Fees Should Be Disallowed in Full.*

The Fee Petition seeks $131,670 for the Cuthbert Firm: 126 hours for Byron Cuthbert and 12.6 hours for Vicki Trammel Cuthbert, both at $950 per hour, supported by no declaration from either timekeeper, no time records, and no narrative describing a single task performed. ECF No. 88-2, p. 79. To the extent Class Counsel's records reveal the firm's role at all, they show that the Cuthberts referred the named Plaintiffs to Class Counsel in 2023 and thereafter received periodic case updates. ECF No. 88-2, pp. 14, 18, 24. The applicant bears the burden of documenting the hours claimed, *Hensley*, 461 U.S. at 437, and here there is no such supporting documentation.

In addition, the Special Masters in the Concussion Litigation found that Byron Cuthbert & Associates, LLC "engaged in a pattern of continuous questionable behavior that has had a material

23

negative impact on the Settlement Program," and suspended processing of that firm's clients' claims. *In re National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323-AB (E.D. Pa. Feb. 29, 2024), ECF No. 12377 at pp. 3-5, *aff'd In re National Football League Players' Concussion Injury Litigation*, No. 24-1910 (3d Cir. Nov. 12, 2024), ECF No. 52. Yet Plaintiffs' memorandum does not acknowledge the firm's history, explain its role, or attempt to justify its fee. A six-figure award to that firm, based on no records at all, cannot be squared with the Court's obligation to scrutinize the fee request. Accordingly, the $131,670 sought for the Cuthbert Firm should be disallowed in its entirety.

In addition, the $35,250 sought for Nace Law Group should be disallowed for lack of documentation. Mr. Nace's declaration provides only an aggregate figure of forty-seven hours at $750 per hour, ECF No. 88-4, p. 3, unaccompanied by any itemized time records identifying a single task, date, or activity, contrary to Local Rule 109.2.b and Appendix B, which require fee requests to be supported by detailed time records. Accordingly, the $35,250 sought for Nace Law Group should be disallowed in full unless properly documented.

### (8) The Deficiencies That Pervade the Remaining Hours Warrant A Fifty Percent Across-The-Board Reduction.

The deficiencies discussed above are not confined to the entries identified in Exhibit 1. Duplicative review, partner-only staffing, and block billing run through the time records as a whole. Where inadequate documentation and duplication pervade a fee submission, the Court need not attempt line-by-line analysis; it "may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Therefore, after disallowing the entries listed in Exhibit 1, substituting a $10,000 flat award for the Fee Petition preparation time, and disallowing the Cuthbert Firm's fee request, the Court should reduce the remaining hours by fifty percent and compensate the hours that survive at rates consistent with the Fitzpatrick Matrix incorporated in Appendix B, adjusted to the Maryland

24

market.  The resulting fee would reflect what this case actually required: a matter stayed for settlement two months after filing and resolved without a single contested motion.

### III.    THE COURT SHOULD DENY THE REQUEST TO BIFURCATE THE FEE PROCEEDING AND RESERVE JURISDICTION FOR A SUPPLEMENTAL PETITION.

Plaintiffs ask the Court to "bifurcate the fee award" – *i.e.*, to award their lodestar now and to reserve jurisdiction for a supplemental petition, upon substantial completion of the Rescoring Protocol, seeking both compensation for future hours and an enhancement "whether in the form of a lodestar multiplier or a percentage of the recovery delivered to the class."  Pls.' Mem., pp. 16, 33-34, 37.  Their request should be denied outright.[3]

### A.    The Settlement Agreement, the Preliminary Approval Order, and the Notice Each Provide for a Single Fee Petition to Be Resolved at the Final Fairness Hearing.

The structure Plaintiffs now ask the Court to abandon is the one they negotiated.  As set forth above, the Settlement Agreement, the Preliminary Approval Order, and the Notice each provide for a single fee application, filed by July 21, 2026 and resolved at the Final Fairness Hearing, with objections due twenty-one days before the hearing.  *See supra* Factual Background § C.  Plaintiffs negotiated for and obtained a single, contemporaneous fee proceeding, this Court ordered one, and Settlement Class Members were notified accordingly.  Notice, §§ III.C, IV.  Having secured preliminary approval on that structure, Plaintiffs offer no reason it should now be revised in their favor.

In addition, Rule 23(h) requires notice of a fee motion "directed to class members in a reasonable manner" and gives class members the right to object.  Fed. R. Civ. P. 23(h)(1)-(2).  The

---

[3] Defendants reserve all rights to oppose, in whole or in part, any supplemental or future request for fees, costs, or expenses, whether styled as a fee petition, enhancement, or otherwise.  *See* Settlement Agreement, ECF No. 79-3, § VIII.B.

mechanism this Court established is tied to a single hearing: objections are due twenty-one days before the Final Fairness Hearing, and a member who does not timely object "shall be deemed to have waived" any objection.  Preliminary Approval Order, ¶ 8. A reservation permitting Class Counsel to return for an additional, unspecified sum would expose Settlement Class Members to a materially larger fee without a further opportunity to be heard.  *Cf. In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-95 (9th Cir. 2010) (Rule 23(h) requires that class members have an adequate opportunity to review and oppose class counsel's fee motion).  The case cited by the Plaintiffs on this point, *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022), is inapposite because it involved a common-fund settlement and an award from that fund at final approval; *McAdam*s does not authorize a reservation of jurisdiction for a fee petition filed after final approval and after the objection period has closed.

The Concussion Litigation, from which Plaintiffs' allegations are borrowed, illustrates the difference.  Periodic applications for settlement implementation fees are possible there because the court approved a common benefit fund from which attorneys are compensated, and awards from that fund rest on the court's continuing equitable supervision.  *See In re National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323-AB (E.D. Pa.), ECF No. 12481 at pp. 1-2.  Nothing of the kind exists here. The parties provided for a single Fee Petition, the Notice disclosed a single fee application, and any fees are payable by the Plans under fee-shifting principles, not drawn from a court-administered common fund.

**B.    Plaintiffs Are Not Entitled to A Fee Enhancement as A Matter of Law.**

Plaintiffs argue that "[a] contingency-based fee is entitled to an enhancement over pure lodestar to reflect the risk of nonpayment assumed by counsel," and that enhancement is "the market price of risk that Class Counsel assumed when they filed this case."  Pls.' Mem., pp. 25-

26

26.  But, as discussed above, "enhancement for contingency is not permitted under the fee-shifting statutes," *Dague*, 505 U.S. at 567, including § 1988 and ERISA § 502(g)(1).  *See also Perdue*, 559 U.S. at 546 ("[T]here is a strong presumption that the lodestar is sufficient").

The authorities cited by the Plaintiffs on this point are inapposite.  *Ketchum v. Moses*, 17 P.3d 735 (Cal. 2001), construes California's fee statute, and neither *Rum Creek* nor *Goodlaxson v. Mayor & City Council of Baltimore*, 776 F. Supp. 3d 311 (D. Md. 2025), involved a fee contingency enhancement under a federal fee-shifting statute.

Nor is a "percentage of the recovery" available.  The percentage method stems from the common-fund doctrine, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), and here there is no fund.  Rather, fees are paid by the Plans "separate from and in addition to" class relief, Settlement Agreement, §§ II.2, VIII.D.  Moreover, a "percentage of the recovery" presupposes a quantified recovery that Class Counsel concede does not yet exist.  Miles Decl. ¶ 7.

Finally, even if an enhancement were available, none could be justified here.  Multipliers in Rule 23(b)(2) settlements in this Circuit have been reserved for settlements affecting hundreds of millions of people, *see, e.g., Berry v. Schulman*, 807 F.3d 600, 617-18 (4th Cir. 2015), and the litigation history described above refutes any claim of exceptional circumstances.  *See supra* Background § A.

## C.    Class Counsel Cannot Be Compensated for Settlement Implementation.

As for the anticipated "500 hours or more" of future work, Pls.' Mem., pp. 28, 32, the Settlement Agreement provides that Class Counsel cannot be compensated for Settlement implementation.  Specifically, under Section VI.D.2, the Plans bear the costs of Settlement administration, "*with the exception of any necessary monitoring of the Rescoring Protocol by Class Counsel.*"  Settlement Agreement, § VI.D.2 (emphasis added).  Therefore, Class Counsel

27

Settlement monitoring is expressly carved out of what the Plans agreed to fund and is not properly the subject of the Fee Petition.

## IV.    THE REQUESTED COSTS SHOULD BE REDUCED.

A prevailing party may recover documented out-of-pocket expenses that were reasonably and necessarily incurred. *McAdams*, 26 F.4th at 162. Plaintiffs seek to recover $253,421.69 in costs, but three categories of costs should be reduced or disallowed.

*First*, of the $140,354.61 reported as "Expert Expenses," $89,139.60 was paid to Spica Psychology, PLLC, Plaintiffs' retained expert. Miles Decl. ¶ 30; ECF No. 88-2, pp. 54-77. However, nothing in the record says what Dr. Spica did, when he did it, or what he charged to do it. Measured against the $500-per-hour benchmark the parties fixed for Dr. Spica's Settlement implementation-phase work, Settlement Agreement, § VIII.E, the $89,139.60 charge implies roughly 178 hours. The Spica Psychology, PLLC charge should be disallowed absent itemized invoices demonstrating the hours actually worked and a rate consistent with the $500-per-hour benchmark.

*Second*, the records show that Beasley Allen paid airfare, hotels, and ground transportation not only for the two class representatives but for their spouses, who are not parties to this action, in the amount of approximately $8,705. ECF No. 88-2, pp. 57, 71-72.

*Third*, the request includes $4,500 in "anticipated" Final Fairness Hearing costs that have not been incurred and cannot be awarded now. Miles Decl. ¶ 34.

Accordingly, of the $253,421.69 requested, no more than $151,077.09 is presently awardable. The spousal travel and unincurred items should be struck, and the charge for Dr. Spica's services to date should be disallowed unless and until it is properly documented.

## V.    THE REQUESTED $50,000 SERVICE AWARDS SHOULD BE SUBSTANTIALLY REDUCED.

Class Counsel seek $50,000 for each of the two class representatives.  Pls.' Mem., p. 37. Service awards must be proportionate to the representative's actual contribution.  *Berry*, 807 F.3d at 613.  The alleged contribution here consisted of providing information, consulting with counsel, and attending a single mediation session for which travel was fully reimbursed.  Pls.' Mem., p. 36; ECF No. 88-2, ¶¶ 38, 40, and p. 32.

Plaintiffs' own authorities do not support the service awards they seek here.  *See* Pls.' Mem., pp. 35-37.  *Berry*, the controlling Fourth Circuit authority they themselves invoke, approved a $5,000 service award per representative in a case that benefitted 200 million consumers and resulted "in a significant shift from the currently accepted industry practices … in the protection of customer information provided to debt collectors."  807 F.3d at 604-08.  Similarly, *Siqueiros v. General Motors LLC,* No. 3:16-cv-07244 (N.D. Cal. Oct. 8, 2025), ECF No. 735, approved $30,000 (which is still well below what is sought here) in a $150 million common-fund settlement in which class representatives "assisted in the prosecution of this case, participated in discovery, were deposed, and testified at trial;" *Galeener v. Source Refrigeration & HVAC, Inc.*, No. 3:13-CV-04960-VC, 2015 WL 12977077, at *2 (N.D. Cal. Aug. 21, 2015), approved $5,000 to $27,000 in a $10 million common-fund settlement; and *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *6 (N.D. Cal. Sept. 2, 2015) involved a "megafund" class recovery of hundreds of millions of dollars.  In this District, *Feinberg v. T. Rowe Price Group, Inc.*, 610 F. Supp. 3d 758, 774 (D. Md. 2022) involved service awards of $10,000 to $15,000 per representative in a $7 million common-fund ERISA settlement reached after five years of litigation in which the class representatives were involved in "producing documents, answering interrogatories, traveling to and sitting for lengthy depositions taken by aggressive defense

29

counsel, and attending the motion to dismiss hearing and settlement conference."

Class Counsel's own practice confirms that the service award request here is an outlier. In *Cheng* and *FCA*, Beasley Allen sought service awards of $2,500 and $3,000 per class representative, respectively. *See Cheng*, No. 1:20-cv-00629, ECF No. 176-1, pp. 15-16; *FCA*, No. 4:21-cv-11696, ECF No. 80. Class Counsel do not explain why the representatives here, in a settlement whose value cannot yet be measured, merit sixteen to twenty times the amounts Class Counsel themselves proposed in cases that produced concrete, quantified recoveries for the class.

Consistent with *Berry* and with Class Counsel's own practice, any service award should not exceed $2,500 per representative.

## CONCLUSION

Plaintiffs bear the burden of justifying every dollar they seek, and they have not carried it. Any fee awarded should be a reasonable one, resolved once and for all at the Final Fairness Hearing. The Court should: (1) reduce Class Counsel's hourly rates to rates consistent with the Fitzpatrick Matrix, adjusted downward to reflect the District of Maryland market; (2) disallow the entries catalogued in Exhibit 1 (with the Fee Petition preparation entries replaced by a flat award of $10,000), apply the non-working-travel discount, and apply a fifty percent across-the-board reduction to the remaining hours; (3) disallow the Cuthbert Firm's and Nace Law Group's fees in their entirety; (4) deny the request to bifurcate the fee proceeding and to reserve jurisdiction for any supplemental petition, future hours, or enhancement; (5) limit any award of costs to $151,077.09, striking the spousal travel and unincurred items and disallowing the undocumented Dr. Spica charge; and (6) limit any service award to $2,500 per representative.

Dated: August 4, 2026

Respectfully submitted,

*/s/Edward J. Meehan*
Edward J. Meehan
Mark C. Nielsen
Jovana Vujovic (*pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave. N.W., Suite 1200
Washington, D.C. 20006
Tel. (202) 857-0620
emeehan@groom.com
mnielsen@groom.com
jvujovic@groom.com

*Attorneys for Defendants*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2026, I filed a copy of the foregoing document using the

Court's ECF/CM system, which will automatically send notice of such filing to all counsel of

record in this matter.


<div align="center" style="text-align:right">

*/s/Edward J. Meehan*
Edward J. Meehan

</div>