# EXHIBIT B

| IN THE UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF MARYLAND<br>BALTIMORE DIVISION<br><br>**STACEY BAILEY, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN, et al.,**<br><br>Defendants. | **Case No. 1:23-cv-02661-JRR**<br><br>**SUPPLEMENTAL DECLARATION OF THOMAS O'NEAL SINCLAIR IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |
|---|---|

## I. INTRODUCTION AND PURPOSE

1. I am Thomas O'Neal Sinclair, the managing member of Sinclair Law Firm, LLC ("Sinclair Law") in Birmingham, Alabama. I am admitted pro hac vice before this Court and I am licensed to practice before the Alabama Supreme Court, the United States District Courts for the Northern, Middle and Southern Districts of Alabama, the United States District Court for the Northern District of Florida, the United States District Court for Eastern District of Tennessee, the U.S. Courts of Appeal for the Second, Fifth, Sixth and Eleventh Circuits and the United States Supreme Court. I have previously been granted admission *pro hac vice* in Arizona, Arkansas, California, Illinois, Kentucky, Louisiana, Mississippi, New York, North Carolina, Tennessee, and Texas. I have been granted admission *pro hac vice* in this case. I was appointed as Co-Lead Class Counsel for the Settlement Class pursuant to this Court's June 1, 2026 Order Preliminary Approving Settlement in the Action *Bailey, et al. v. The NFL Player Disability & Survivor Benefit Plan, et al,* No. 1:23-cv-02661-JRR (D. Md. filed September 29, 2023). *See* Doc. 82.

2. I previously submitted a declaration in support of plaintiff's motion for attorneys' fees, expenses, and service awards (ECF 88-3) and submit this supplemental declaration in response to Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 92), and to address Defendant's characterization of time entries from Sinclair Law. I have personal knowledge of the matters stated here, except where I refer to Sinclair Law's contemporaneous time and accounting records, and I could testify competently to them.

3. Early in my career, I worked on the corporate and defense side of complex automotive litigation. I was seconded to an automobile manufacturer, managed matters in twelve states and claims from central and South America, and later served as national coordinating council for a multinational manufacturer. That work required me to evaluate outside counsel, allocate work, review legal invoices, and assess necessity, duplication, staffing, and value from the client's side.

4. That experience governed my review of Sinclair Law's request. Before the fee application was filed, I reviewed more than 800 daily entries line by line. I removed more than 85 hours, worth more than $100,000 at the requested rates, including routine ECF notices, administrative and insufficiently clear entries, supervisory time where another lawyer performed the primary work, and data management oversight for which I allowed the primary attorney alone to receive credit. I also applied the district's travel time guidance before submission.

5. After Defendants filed their opposition at ECF92-1, I conducted a second line by line review. I do not believe a fee applicant should defend time merely because it was worked. I therefore withdraw another 7.5 attorney hours devoted primarily to routine notices, mediation logistics, scheduling, time reporting, and status transmissions;.4 for review of service waivers;.6 for contact with the mediator's office, and the February 20, 2026, entry of .7.

6. Those additional reductions totaled 9.2 attorney hours, or more than $13,000 at the requested rates. Sinclair Law's revised request is now 869.4 attorney hours and 36.7 paralegal hours, producing a revised lodestar of $1,315,110.

7. The additional reduction is billing judgment not acceptance of Defendant's categorical method. After removing the housekeeping entries, the remaining dispute concerns whether substantive work should be compensated at all: plan analysis, strategic review by independently appointed Co-Lead Class Counsel, integrated work towards a single product, mediation and settlement work, travel already discounted under Appendix B, and preparation of briefing for the court ordered fee record.
8. The revised 869.4 attorney hours span approximately 150 weeks, an average of about 5.8 hours per week. The time was concentrated around pre filing investigation, planned production, expert work, seven in person multi day mediations, the term sheet, settlement drafting, preliminary approval, and the fee application. It was not generated by routine docket activity.

## II. THE EARLY REMEDIAL FRAMEWORK AND THE WORK REQUIRED TO SECURE IT

9. By September 17, 2023, before the complaint was filed, I had prepared a 51-page strategy and task document. It identified the principal defendants and plans, anticipated defenses, assigned work among counsel, created a communication and billing protocol, and framed the remedy around a court enforceable prohibition and a systematic reassessment process.
10. The pre filing framework and complaint called for race-neutral rescoring of affected tests; reconsideration under the governing plans; retroactive benefits; interest for delayed payment; protection against limitations and damage limitation defenses; preservation of existing awards; and class counsel and expert oversight. It also distinguished the uniform injunctive correction from the individual benefit consequences that would flow from applying that correction to each participant's record.

11. The settlement now before the court substantially follows that architecture. It prohibits race-based adjustments, requires an expert driven rescoring protocol, provides reconsideration and retroactive benefits with 6% interest where the rescoring changes entitlement, waives specific limitation defenses, protects existing awards, and preserves oversight.

12. The fact that the basic architecture existed before suit does not make the later work repetitive. Defendants produced a 1339-page historical plan set; counsel and experts tested data and eligibility filters; the parties participated in seven in person multi day mediations; a term sheet was executed on July 12, 2025; and approximately 40 settlement drafts were exchanged while the term sheet was converted into an enforceable settlement agreement, rescoring protocol, notice program, proposed orders, and implementation structure.

13. If the pre-filing remedial framework had been agreed to by the defendants and operational at the outset, much of that later work would not have been necessary. It was not yet agreed to or operational. The subsequent plan analysis, expert work, negotiation, and drafting were how the framework became the settlement now before the court.

**III. MY ASSIGNED ROLE AND THE SUCCESSIVE PLAN ANALYSES**

14. My Appointment as Co-Lead Class counsel imposed an independent responsibility to the settlement class. I was not an associate within Beasley Allen. As described more fully in the supplemental declaration of W. Daniel Miles, III, the core team divided work by function: Mr. Miles provided overall class leadership; Rebecca Gilliland managed day-to-day operations and principal drafting; Leon Hampton focused on Section 1981; and I focused on ERISA, the historical and existing plan terms, remedial structures, application of a uniform class wide injunctive remedy and subsequent implementation.

15. As the case matured, I transitioned routine task coordination to Ms. Gilliland while retaining responsibility for plan interpretation, overall strategy, settlement architecture, major negotiation positions, the interaction among limitations, retroactivity, offsets, interest and benefit calculations, review of significant drafts, and implementation planning. Defendants' comparison of my hours with Ms. Gilliland's treats complimentary responsibilities as interchangeable.

16. Defendants characterize 85.5 hours as repeated plan review. The plan materials were instead consulted at successive stages to answer different questions and create different products. Often these reviews were the result of positions taken by the Defendants.

17. Before filing, the task was to determine whether viable ERISA and Section 1981 claims existed, identify the proper fiduciary bodies and plans, anticipate defenses, define a class, and design a remedy. After Defendants produced the historical plans in January and February 2024, the task was to verify the pre filing materials which guided my drafting of the complaint, identify amendments and changes, determine whether the complaint required revision, and create a benefits chart for confirmatory discovery and negotiation.

18. During expert work and mediation in 2024 and 2025, the task changed to determining how relief could operate across historical plan versions. I analyzed eligibility, offsets, benefit coordination, interest, administrative authority, trust restrictions, medical determination language, exclusions, and limitations in response to concrete remedial proposals.

19. After the July 2025 term sheet, the task was to map which historical plan and benefit provisions would govern an original claim, new determinations, retroactive payments, and offsets. I delegated inventories, indexes and basic outlines to paralegals at $300 per hour so I could concentrate on legal consequences.

20. During drafting of the settlement agreement and rescoring protocol, I tested successive language against differing historical definitions, eligibility provisions, benefit structures, offsets, limitations and administrative provisions. That work produced an 82-page memoranda containing Bates numbered citations to key plan provisions across the fourteen-year history and comparing the key terms across historical plan terms and amendments.

21. The outputs were therefore different: the pre-filing strategy and complaint; a production verified benefits chart; negotiation analyses; an implementation map and index notebooks; and the 82-page settlement memoranda. An error in that work could have reduced or delayed benefits for an individual class member.

**IV. THE REMAINING CHALLENGED ENTRIES**

22. After my additional reductions, the challenged communication entries consist of 10.7 hours of substantive communications within my assigned responsibilities and 8.6 hours of cross-firm review spread over 34 entries across nearly three years. They concerned settlement positions, productions, expert conclusions, proposed protocols, plan benefit and offset issues, mediation submissions, settlement language, preliminary approval papers, class member identification, and implementation. My review addressed the plans, ERISA, remedy or implementation consequences; It was not passive receipt.

23. Defendants also challenged 38 integrated entries totaling 93.5 hours because the narrative mentions more than one step. Most describe connected work towards one objective: reviewing source material and reporting the conclusion, revising a draft and communicating the revision, or testing plan and expert material in preparation for mediation at which it would be used. For example, the September 16, 2023, entry combined drafting the strategy document with conferring about the assignments it created, and the July 9, 2025, entry recorded preparation for one mediation by testing the proposed term sheet against the interdependent plan and remedial issues to be resolved there.

24. The remaining 3.7 paralegal hours are challenged as clerical or substantive. The paralegal revised the class action complaint and pulled its authorities for my final review and later revised and edited the operative term sheet. Formatting was part of each entry, but the work product was a substantive litigation document and avoided attorney time.

25. The date specific data entries challenged as vague concerns different productions and follow-up decisions. For example, on May 4, 2026, I reviewed one spreadsheet of approximately 1400 lines in a separate production of more than 1200 lines of post directive data; later entries addressed specific exclusions, filters, and further class spreadsheet review. Similar issue labels reflected a consistent taxonomy applied to distinct data, not repeated billing for the same work.

26. The seven challenged travel entries comply with Appendix B. Four Birmingham to Montgomery legs were under two hours and were billed at actual time. For the longer travel, I billed the first two hours at full rate and 1/2 of the balance; 6.4 actual hours became 4.2 billed hours; 4.3 became 3.2; And 5.1 became 3.6. The entries reflect 21.4 actual traveled hours reduced to 16.6 billed hours.

27. Of the 55.3 hours Defendant's place in the fee application category, 6.4 were incurred in July 2025 at the mediator’s direction while the parties addressed fee and monitoring structures as part of the settlement. The remaining 48.9 hours include analysis of the statutory fee framework, reviewing the various entries and reconciling time by phase and professional investment to create summaries and charts for the court’s review, confirming expenses, and preparing a 146 numbered paragraph declaration explaining the strategic work not apparent from the docket. That was not a matter of totaling a spreadsheet.

28. Defendants rely on the $625 hourly rate approved by court order in R*eyes v. Bakery and Confectionery Union & Industry International Pension Fund* in 2017 for work dating from 2015. I previously disclosed that award to this Court because it involved an ERISA class action in which I served a lead counsel involving an injunctive remedy impacting more than 100,000 pensioners. It was the full rate requested for work performed more than a decade before this application; it was not a determination that my reasonable rate would remain fixed. I have since accumulated a decade of ERISA, class, appellate, settlement and strategic experience.

29. The $1500 rate is offered as a current lodestar rate for specialized work, not as a multiplier or contingency premium. The factual basis includes approximately 27 years of practice, with 24 years devoted principally to ERISA benefit, fiduciary, pension, insurance, and related litigation; a national practice; prior lead class counsel and appellate experience; independent Co Lead Class Counsel responsibility in this action; plan analysis across a 14 year class; and the integration of ERISA, civil rights law, and neuropsychological evidence. The $300 paralegal rate permitted substantive work to be delegated at one fifth of my requested rate.

30. Sinclair Law's request ends on July 15, 2026. It excludes the work required to analyze and respond to Defendants' 75-page billing exhibit, prepare this declaration and the reply, address amended notice, proceed through final approval, later monitor rescoring, benefit calculations, payment and enforcement. The current request therefore does not include the additional fee litigation generated by the opposition or any implementation work after the cutoff.

31. I also worked directly with Stacy Bailey and Eric Curry. They provided sensitive claim, medical, and cognitive information; helped counsel understand plan administration and the effects of race-based scoring; reviewed the allegations and relief; participated in consultations and mediation; and remained available for certification, discovery, deposition, and trial. Their names and experiences became publicly associated with allegations of racial discrimination involving cognitive testing and benefit eligibility, and they continue to have responsibilities through approval and implementation.

## VI. CONCLUSION

32. Defendants' categories do not account for the objective, work product, assigned responsibility, or litigation stage reflected by a short billing narrative. I have again removed time that I would not insist a corporate client pay. The remaining time reflects the work required to convert a pre-filling remedial design into an enforceable, plan specific settlement.

33. I respectfully request an award based on Sinclair Law's revised lodestar of $1,315,110, consisting of 869.4 attorney hours at $1500 per hour and 36.7 paralegal hours at $300 per hour, together with the expenses otherwise supported in the record.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 18, 2026.

Thomas O'Neal Sinclair