Ronald R. Davis Pro Se Objector
1300 S. Church St. # N 10
Jonesboro Ar, 72401
901-304-0202
rondavistn@att.net

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BALTIMORE DIVISION

FILED ENTERED
LOGGED RECEIVED
SEP 14 2026
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

Stacey Bailey, Eric Curry Individually and on behalf Of all other similarly situated

Plaintiffs,

v.

The NFL Player Disability and Survivor Disability Plan, et al;

Defendants.

Case No. 1:23-cv-02661-JRR

Honorable Judge Julie R. Rubin

VALID QUALIFIED SETTLEMENT CLASS MEMBER'S PRO SE PROTECTIVE OBJECTION

# SETTLEMENT CLASS MEMBERS PRO SE PROTECTIVE OBJECTION

## I. INTRODUCTION, STANDING, AND CORE WINDOW DATES

This Protective Objection is formally submitted by the validated Settlement Class Member within the court-approved race-normed medical math rescore registry, a status formally audited and confirmed by Defendants' master legal counsel, the Groom Law Firm. The Settlement Class Member formally accepts, supports, and adopts the corrective terms of the medical math rescore settlement to ensure the permanent removal of discriminatory raced normed scoring metrics.

The record establishes that the Class Member's initial Neurocognitive Benefit track application was officially registered into the Plan's database on **April 9, 2020, see (EXHIBIT A page 1)** governing a true contract baseline anchored to an established **February 1, 2020 Effective Date of Onset (EDO)**. Having earned a valid, un-disputed **1995 credited season**, the file fully satisfied the structural minimums to open and secure the active Neurocognitive track during the settlement's designated historical window.

Crucially, the Plan explicitly acknowledged this open-duration status and waived traditional pension vesting barriers when the Plan issued an individualized written confirmation letter on May 27, 2020 see **(EXHIBIT A page 2) This official correspondence contractually anchored the application inside a pristine contract window governed by the Active 2020 CBA & 2019 Restatement Document Plan Section 6, which exclusively waived the requirements of A and B and limited its neurocognitive benefit structures to the standard Categories C through I see (EXHIBIT A page 3, 2nd sentence) and contained no Article 6 Section 6.6(c) within its regulatory frameworks. see (EXHIBIT A page 4)** Due to the fact that May 27,2020 comes after April 1 ,2020 effective date the Plan cannot claim this was a mistake based on old rules. The board was operating under the live 2020 CBA framework. Under those governing terms, no secondary duration penalties existed for unvested participants, and no administrative mechanism existed to cut short a standard 180-month lifespan. The subsequent **August 2020 Plan Amendments**—which retroactively altered the plan by inserting **Categories I through M** and fabricating **Article 6 Section 6.6(c) of the 2020 Amended Plan** to construct a 12-month unvested cap—were non-existent on the day the **Settlement Class Member** filed. The Plan cannot legally enforce these late-added clauses to short-change a contract window locked under the active **2020 CBA Article 60, Section 8 Contract Text** see **(Exhibit B).**

**Also, Under the Master CBA ARTICLE 60 section 8. it does not mention section 6.6 in the 2020 plan amendments shall be amended. It mentions 6.4, 6.9, 6.10 , but no 6.6 see (EXHIBIT B )**

## II. EXPOSING THE INSEPARABLE LINK: DATA DEFLATION AS THE ADMINISTRATIVE CAP TRIGGER

The Plan's systemic application of discriminatory, race-normed scoring metrics to the Settlement Class Member **April 9, 2020 application** was the direct operational trigger that forced the file into a non-permanent duration bucket.

The Plan administrators committed a flagrant breach of fiduciary duty by allowing plan physicians to apply the Heaton Norming Scale based on demographic variables to the **valid neuropsychological test scores of said Settlement Class Member. see (Exhibit C).** This racial profiling artificially compressed the Settlement Class Member raw metrics, hiding the true clinical severity of cognitive decline and deflated the profile from its true Moderate tier down into a lesser, baseline Mild category. The Plan administrators never treated the Settlement Class Member file as a living clinical medical case; they treated it as a pre-programmed data-dump. The Plan holds zero legal authority to argue that its administrative vesting determinations exist in a separate vacuum from the medical data fraud targeted by this Settlement. In operational reality, **the medical defraudment enforced by the Plan's physicians and the administrative timeline theft executed by the Plan's database clerks are an interlocking, inseparable transaction.**

## The Standard Rule: 180 Months for Both

Under the standard, open-window rules of the Neurocognitive Disability Benefit framework, an approved claim receives monthly cash distributions for up to **180 months (15 years)**. The only operational difference between the two tiers is the monthly cash payout rate itself:

- **Moderate Tier:** Pays a higher baseline rate per month.
- **Mild Tier:** Pays a lower baseline floor rate per month.
- **The Shared Lifespan:** Both tiers are contractually designed to run for the exact same maximum **180-month lifespan** under standard conditions.

## How the "Unvested" Tag Triggers the Cutoff

Because they couldn't use a generic "Mild" status to shorten the Class Member timeline, they had to manufacture a brand-new administrative restriction. This is where the Settlement Class Member single **1995 credited rookie season** and their **August 2020 administrative amendments** come into play.

They used the **August 2020 amendments** to write a targeted exception into the rate books: they declared that if a player is tagged as **"Non-Vested,"** their Mild timeline is stripped of its standard lifespan and slammed with a **12-month cap.**

To execute this, they needed an interlocking, two-part strategy:

1. **The Medical Deflation:** They forced the physicians to apply the **race-normed Heaton curve** to the testing data to artificially deflate the severe **11 sub-7th percentile scores** into the Mild bucket
2. **The Administrative Clamp:** Once the Class Member file was routed into the Mild bucket on paper, the backend database clerks fired the trap. They used the Class Member "Non-Vested" status to trigger the retroactive August rules and clamp the 12-month cap onto the Class Member folder, wiping out the remaining **168 months** of the Class Member contractual lifespan.

The Plan mandated that its evaluating physicians apply the fraudulent, race-normed Heaton curve to the Class Member's raw neurocognitive testing results. The Plan's clerks then utilized that deflated medical output as the explicit gateway to trigger their administrative duration trap. Because the master plan rate books contain absolutely no provision allowing a 12-month cap to be clamped onto a moderate diagnosis, the Class Member's single 1995 credited rookie season was contractually powerless to limit his benefit lifespan on its own. By deliberately remaining blind, they executed their 12-month cutoff using the false pretext of not being vested, all while ignoring actual, advanced cognitive decline. In operational reality, this medical data deflation was executed for the sole purpose of routing the file into the lower bucket, creating the false pretext necessary to fire their retroactive August 2020 amendments. **The medical fraud was the vehicle used to execute the administrative theft."**

## III. THE MANDATORY "AS IF" DATA ALIGNMENT AND RECENT JUDICIAL PRECEDENT

On January 28, 2026, this Court issued a landmark memorandum opinion denying the NFL Plan's motions for summary judgment in the parallel *Alford v. NFL Player Disability Plan* litigation (Case No. 1:23-cv-00358-JRR). This order established a clear path to hold the Plan

accountable for structural abuses and breaches of fiduciary duty. To completely execute the Court's injunctive mandate regarding racial profiling, the settlement's **"as if" clause** must be applied to correctly realign the Class Member file's administrative bucket location.

The settlement explicitly commands that once a **valid race-neutral rescore** is confirmed, the Plan must assign the appropriate benefits **"as if the medical determination was made at the time of application."** Rerunning the raw scoring grids neutrally completely removes the Heaton compression curve and upgrades the Settlement Class Member file to its true **Moderate Impairment** classification.

This corrected data alignment legally forces the file back into the April 2020 contract lane. This structural correction places the Class Member file directly in the window where the **2020 Collective Bargaining Agreement (ARTICLE 60 section 8(e) ) had officially eliminated the vesting requirement for the Neurocognitive track entirely (effective April 1, 2020)** see **(EXHIBIT B)** Because the Class Member applied **eight days** *after* that elimination took effect, the Plan holds zero legal authority to attach a "non-vested" data tag to the profile or bar the Class Member from the permanent, un-capped rate books.

Furthermore, the permanent electronic file contains an individualized **May 27, 2020 written confirmation letter from the Plan- see (Exhibit A)** which directly correlates to the **2019 Restatement Plan** explicitly waiving vesting and duration barriers. Under federal **Equitable Estoppel** guidelines, the Plan is legally barred from changing its narrative to apply a short administrative cutoff to an account it explicitly promised carried a long term duration track.

## IV. CONCLUSION AND EXPLICIT JUDICIAL RELIEF DEMANDED

For the reasons stated above, the Class Member objects to any benefit distribution that separates said Class Member's medical data rescore from his contract bucket location. To fully cure the data-driven injury, the Settlement Class Member pray this Court enforces a remedy that mirrors the Settlement Class Member's active 2020 contract window.

**For the reasons set forth above, the Class Member objects to any benefit distribution that separates said Class Member medical data rescore from his contract bucket location. The Settlement Class Member respectfully requests that this Court apply the law righteously and enforce the settlement's master corrections as a single, unified transaction.** Having established that the initial neurocognitive application was locked into an open contract window on **April 9, 2020** —under a framework where traditional pension vesting barriers were legally non-existent—the Plan is contractually and statutorily barred under ***Central Laborers' Pension Fund v. Heinz*** from enforcing subsequent, backend text modifications to short-change an valid approved file.

To protect the integrity of the active **2019 Restatement Document Plan**, the **2020 CBA Article 60, Section 8 Contract Text (Exhibit B)** and the **Plan Coordinator's written waiver (Exhibit**

**A)**, the Settlement Class Member explicitly request that this Court enter a formal Judicial Order compelling the Plan to execute the following relief:

- **1. Backdate the Corrected Moderate Tier Medical Status:** Compel the Plan to backdate the Class Member's upgraded Moderate level Neurocognitive impairment level straight to the initial, contractually protected **April 9, 2020 window.**
- **2. Permanently Delete the Fabricated Cap:** Order the permanent removal of the backend **August 2020 administrative amendments**, declaring the retroactive **Categories I through M** and the fabricated **Section 6.6(c)** completely inapplicable to this folder].
- **3. Restore the Full Contractual Timeline Retroactively:** Compel the Plan to immediately and retroactively process and execute the unreduced, standard **168-month timeline** remaining on the Class Member's foundational benefit lifespan.
- **4. Enforce the Mandatory Compounding Interest Penalty:** Order the Plan to calculate and distribute the full timeline stacked with the mandatory **6% compounding interest penalty**, backdated completely to the true **February 1, 2020 effective date of onset (EOD).**

**The Plan cannot and should not be allowed to legally split this file into isolated medical and administrative tracks to execute an artificial database trap. The medical data deflation was the explicit vehicle used to execute the administrative timeline theft. Equity, Estoppel and federal ERISA require that the plan be held strictly to the governing open-duration terms active during the April 9, 2020 application window. see (EXHIBIT A)**

*Respectfully Submitted,*

Dated: 9-11-26 By: Ronald Davis

Ronald R.Davis
1300 S.Church St. # N10
Jonesboro Ar. 72401
901-304-0202

ALI TRAN
Notary Public - Arkansas
Craighead County
Commission # 12719226
My Commission Expires Jun 12, 2032

State of AR County of Craighead
Subscribed and sworn to (or affirmed) before me on this 11th day of September, 2026 by Ronald Davis proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.
Notary Signature

# ADDENDUM A: STATUTORY MEMORANDUM ON THE INAPPLICABILITY OF RETROACTIVE ADMINISTRATIVE AMENDMENTS UNDER ERISA § 204(g) AND *CENTRAL LABORERS' PENSION FUND V. HEINZ*, 541 U.S. 739 (2004)

1. **The Protected Contract Window:** On **April 9, 2020**, the Settlement Class Member formally registered his initial Neurocognitive Benefit claim inside the plan's electronic registry. This application was filed under the active, governing terms of the **2020 Collective Bargaining Agreement (CBA) Article 60 section 8** which explicitly *eliminated* all benefit vesting requirements for the neurocognitive track effective **April 1, 2020.** The Class Member's claim was contractually anchored in a window where "unvested" duration barriers were legally dead. The Plan Coordinator explicitly confirmed this open-duration status to the Class Member in writing via an individualized written confirmation on **May 27, 2020** see **(EXHIBIT A)**

2. **The Retroactive Overreach:** The Plan Trustees subsequently drafted internal administrative amendments in **August 2020** that sought to restrict unvested Mild neurocognitive timelines to exactly 12 months. Crucially, the Trustees explicitly backdated these amendments to be retroactively effective as of April 1, 2020. The Plan's backend database clerks then retroactively applied these August guidelines backward in time to clamp an automated 12-month duration cutoff onto the Class Member's active, approved file.

3. **The Statutory Shield Under ERISA § 204(g) (29 U.S.C. § 1054(g)):** Under federal employee benefits law, **ERISA Section 204(g) (29 U.S.C. § 1054(g))**, commonly known as the **Anti-Cutback Rule**, a plan administrator is strictly prohibited from adopting retroactive amendments that decrease, eliminate, or restrict an accrued benefit or a protected tracking mechanism that a participant has already qualified for under an approved claim. The statutory text dictates that the accrued benefit of a participant under a plan may not be decreased by an amendment of the plan. The plan holds zero authority to use a subsequent calendar manipulation to strip a class member of a contract right that was already active, approved, and operational on the day he filed.

4. **The Supreme Court Mandate Against Retroactive Conditions:** The United States Supreme Court's unanimous ruling in ***Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004),** firmly dictates that a plan administrator cannot use subsequent plan amendments to retroactively place harsher, disqualifying conditions on benefits that a participant has already qualified for. The Supreme Court established that changing terms retroactively to strip away valuable lifespans earned under an earlier window constitutes a prohibited reduction of accrued benefits under ERISA Section 204(g) (29 U.S.C. § 1054(g)).

5. **The Heaton Race-Normed Facilitation Machine:** In direct violation of the *Heinz* mandate, the Plan did not merely apply a retroactive rule; they actively utilized a fraudulent, race-normed demographic curve to facilitate the reduction. On **April 9, 2020,** the Settlement Class Member filed an which was subsequently **approved claim** backed by **raw neuropsychological grids** detailing **11 severe raw scores falling below the 7%tile.** To force this advanced cognitive deficit into a position where it could be stripped of its value, the Plan processed the data through the Heaton Scale. Because this formula operated on the discriminatory assumption that Black players started with a lower baseline of cognitive ability, the software artificially inflated the Class Member's final percentiles on paper—compressing a true **Moderate level impairment** down into a lower **Mild tier.**

6. **The Interlocking Gateway Violation:** This intentional medical data deflation was executed for the express purpose of facilitating the retroactive administrative trap. By using the Heaton curve to misroute the Class Member's active, approved file into the lower Mild category, the Plan's backend database clerks created the structural opening necessary to apply the **August 2020 administrative amendments.** They retroactively backdated those August text modifications to April 1, 2020, to slap a brand-new, disqualifying condition—the 12-month non-vested duration cap—onto a file that was contractually protected on the day it was filed. They used the Heaton curve to weaken the medical profile, and then used the retroactive calendar date to clip the cash flow pipe.

7. **The Complete Preclusion of the Cap:** Under the binding precedent of *Heinz*, this combined medical and administrative manipulation is a flagrant statutory breach. The Plan cannot use a fraudulent demographic curve to facilitate a retroactive reduction that shrinks the lifetime value of an approved claim. The Settlement's master **"as if" clause** commands the audit panel to strip the Heaton curves away and calculate the corrected **Moderate level upgrade** *as if* it were done on April 9, 2020. Because that true status lands in a window protected by the active 2019 Restatement Plan/ CBA and completely immunized from retroactive adjustments by *Heinz*, the 12-month cap is legally invalid. Whether Mild or Moderate the Plan is compelled to honor the unreduced **180-month timeline** and pay the mandatory **6% compounding interest penalty** back to the true **February 1, 2020 onset date.**

# AFFIDAVIT AND SWORN DECLARATION OF SETTLEMENT CLASS MEMBER : Ronald R. Davis

I Ronald R. Davis declare under penalty of perjury pursuant to **28 U.S.C. § 1746** that the following statements are true, accurate, and correct to the best of my personal knowledge, information, and belief:

First, I want to give all honor , praise and glory to my **LORD AND SAVIOUR JESUS CHRIST**, and thank **HIM** for this opportunity to stand before this honorable Court today. Thank you, Your Honor, the court officers, class counsel, and defense counsel. During the 1995 NFL preseason of my rookie contract year, I suffered a devastating, high-velocity collision directed entirely to the crown of my head. The impact was so violently severe that my neck physically popped completely out of my spine, in a manner resembling a displaced knee or finger joint. This catastrophic structural trauma could easily have resulted in permanent quadriplegia but by the grace of **YAHWEH**, my cervical spine miraculously popped back in. I vaguely remember laying completely motionless on the field, looking straight up in a state of shock, wondering what had just happened. While I demonstrated the resilience to play through some of that game and the entire duration of my 1995 rookie season, my physical and neurological health has never been the same since that specific impact. Imagine having to primarily sleep on your back for the last 30 years and when you rotate your neck it sounds like gears being changed on a 10 speed bicycle.**( BUT GOD)** is faithful.

This violent collision serves as the direct, undeniable medical catalyst for my neurocognitive decline and the severe multi-domain collapse.This historical, and permanent injury was documented by the Atlanta Falcons medical staff and over a decade ago in my NFL workers comp **Agreed Independent Complex Neurological Examination.** This mutually selected ( by the nfl and workers comp ) neurological specialist explicitly certified that I was **Permanent and Stationary (P&S) within one year of my last play in professional football, reported an affirmative finding on the (CDR) Clinical Dementia Rating Scale ,and locked in structural work restrictions precluding heavy work, very repetitive flexion and extension of both my cervical spine and my right elbow. see ( EXHIBIT D)**

I commend this Court on the monumental progress achieved through the *Bailey* settlement. Stripping the race-normed Heaton curves off my file is an act of long-awaited medical justice. However, because this is a non opt out class action settlement staying silent means my contact lifespan could be stripped away behind closed doors without any future recourse. I have had the opportunity to speak with Mrs. Gilliland, Mr. Katz and Mr. Sinclair, all three super nice and all three super professional but neither had a complete answer on the subject of recovery; and maybe I just completely misunderstood and if so I ask their forgiveness; *Bailey* may remedy this and if so I ask this Court forgiveness. **So, I pray this Honorable Court will allow the law to be guided by *Heinz*, 541 U.S. 739 (2004) and Grace and Truth rule through the Court.** In truth, I see *Bailey* and *Alford* not as adversaries—they actually complement each other perfectly. They work together like building a huge bridge from both sides of a river.The *Bailey* side of the bridge corrects the fraudulent medical data. The *Alford* side of the bridge corrects the systemic administrative abuses and timeline cutoffs.

If this Court allows the Plan to use a global release clause to fix my medical scores in a silo, while quietly enforcing a retroactive 12-month administrative cap behind closed doors based on an automated "unvested" database tag, the bridge collapses in the center and players fall through the cracks. **I pray this Court finishes building this bridge.** Do not let the fine print of a medical settlement lock our timeline lifespans closed. I beseech this Court to apply the law righteously and compel the Plan to backdate my corrected impairment level straight to my ACTIVE initial April 9th 2020 window, see **( EXHIBIT A)** permanently delete the fabricated 12-month non vested cap, and order the Plan to execute the full retroactive 168-month timeline whether Mild or Moderate level stacked with the mandatory 6% compounding interest to not only protect myself but generations of former players.

**May the LORD JESUS CHRIST of all Grace and Truth Bless you ALL. Thank you Your Honor - Amen**

*Respectfully Submitted,*

Ronald Davis

Executed on this 11 day of Sept, 2026.

ALI TRAN
Notary Public - Arkansas
Craighead County
Commission # 12719226
My Commission Expires Jun 12, 2032

*Pro Se* Settlement Class Member

Ronald R.Davis
1300 S. Church St. # N10
Jonesboro Ar, 72401
901-304-0202
rondavistn@att.net

State of AR County of Craighead
Subscribed and sworn to (or affirmed) before me on this 11th day of September, 20 26 by Ronald Davis proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.
Notary Signature

## CERTIFICATE OF SERVICE

I hereby certify that on this 11 day of September, 2026, a true and correct copy of the foregoing Class Member's Protective Objection, along with **Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E,** was served upon the following parties via **United States Postal Service Certified Mail, Return Receipt Requested,** addressed as follows:

**W. Daniel Miles III**
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
218 Commerce Street
Montgomery, AL 36104

**Rebecca Gilliland**
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
301 Saint Louis Street
Mobile, AL 36602

**Thomas O. Sinclair**
Sinclair Law Firm, LLC
P.O. Box 59627
Birmingham, AL 35259

**Edward J. Meehan**
Groom Law Group, Chartered
1701 Pennsylvania Avenue, Northwest
Suite 1200
Washington, DC 20006

Dated: September 11, 2026

By: Ronald Davis

ALI TRAN
Notary Public - Arkansas
Craighead County
Commission # 12719226
My Commission Expires Jun 12, 2032

Ronald R. Davis
1300 S.Church St. # N 10
Jonesboro AR, 72401
901-304-0202
rondavistn@att.net

State of AR County of Craighead
Subscribed and sworn to (or affirmed) before me on this 11th day of September, 2026 by Ronald Davis proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.
Notary Signature

# INDEX OF EXHIBITS

| EXHIBIT | DOCUMENT DESCRIPTION & ADMINISTRATIVE VALUE |
|---|---|

A. PLAN ADMINISTRATIVE OFFICIAL CORRESPONDENCE (MAY 27,2020) Written Waiver Confirming Active Application Window Standing: Page 2 under EXHIBIT A 6.1 Eligibility 2nd sentence

B. 2020 NFL COLLECTIVE BARGAINING AGREEMENT (CBA)Article 60, Section 8 Extended Neurocognitive Track Text

C. NFL DISABILITY BENEFITS PROGRAM VALID QUALIFIED NEUROPSYCHOLOGICAL EVALUATION APPENDIX A Certified Clinical Psychometric Table multi-domain 11 raw scoresSub-7%tile

D. UNIFIED HISTORICAL IMPAIRMENT & FEDERAL DISABILITY RECORD; ATLANTA FALCONS NFL WORKERS'COMP AGREED NEUROLOGICAL IME,ORTHOPEDIC QME EXAMS Certified +60% WPI Affirmative Finding Clinical Dementia Rating Scale (CDR) SSI Disability 12Q-functional report 2026 review exemption

E. OFFICIAL NFL CONCUSSION SETTLEMENT Certified Valid Qualifying Level 2 Moderate Impairment Diagnosis