# EXHIBIT D

**AGREED NATIONAL FOOTBALL LEAGUE / ATLANTA FALCONS WORKERS' COMPENSATION - INDEPENDENT COMPLEX NEUROLOGICAL EXAM, QUALIFIED MEDICAL EVALUATION (QME), AND SOCIAL SECURITY ADMINISTRATION RECORD TRACKS (CERTIFIED EXTRACTS)**

---

HISTORICAL DISABILITY & FUNCTIONAL CAPACITY MATRICES REGISTERED:

---

* **5% WHOLE PERSON IMPAIRMENT (WPI) - NEUROLOGICAL LOSS: AGREED NEUROLOGICAL MEDICAL EVALUATION NFL WORKERS' COMPENSATION**

* CERTIFIES AN AFFIRMATIVE FINDING ON THE CDR (CLINICAL DEMENTIA RATING) SCALE (under discussions and recomm: paragraph. 2)

* FORMALLY SPECIFIES CLINICAL STATUS AS PERMANENT & STATIONARY (P&S)WITHIN ONE YEAR OF HIS LAST YEAR IN PRO FOOTBALL

* VALIDATED WORK RESTRICTIONS: PRECLUDING FROM VERY REPETITIVE FLEXION OF THE CERVICAL SPINE AND RIGHT ELBOW

* **10% WHOLE PERSON IMPAIRMENT (WPI) - AGREED ORTHOPEDIC EVALUATION PERMANENT CERVICAL SPINE PATHOLOGY**

* STIPULATES MAXIMUM MEDICAL IMPROVEMENT (MMI) ACHIEVED THREE (3) MONTHS IMMEDIATELY FOLLOWING DISCONTINUATION OF PROFESSIONAL ACTIVITIES (work restrictions PRECLUDING HEAVY WORK)

* DOCUMENTED COMBINED WHOLE PERSON IMPAIRMENT (WPI) OVER 60%

* INCORPORATES 2018 SOCIAL SECURITY ADMINISTRATION (SSI)CERTIFIED DISABILITY DETERMINATION AND COMPREHENSIVE 12-Q FUNCTIONAL REPORT

---

EVIDENTIARY STATUS: UNIFIED HISTORICAL CLINICAL ARCHIVE PROVING RECOGNITION OF PERMANENT COGNITIVE & PHYSICAL INJURIES

---

"Notice: Full historical clinical, workers' compensation, and federal agency files abridged to preserve judicial economy and brevity; complete certified original records remain fully available upon direct request of the court."

NEUROLOGY
DIPLOMATE, AMERICAN BOARD OF PSYCHIATRY & NEUROLOGY
EMG & EEG

LAWRENCE M. RICHMAN, M.D., INC.
8635 W. THIRD STREET
SUITE 855 W
LOS ANGELES, CALIFORNIA 90048

TEL. (310) 855-1622
FAX (310) 652-7285

EXHIBIT
B

The Honorable Presiding Judge
Workers Compensation Appeals Board
Los Angeles County, California

RE: DAVIS, RONALD
EMPL: Atlantic Falcons
CLAIM NO: [redacted]
DATE OF INJURY: CT 7/02/95-12/28/95; 9/10/95
DATE OF EXAMINATION: 9/18/13

**COMPLEX NEUROLOGIC CONSULTATION**
**AGREED MEDICAL EXAMINATION**

Dear Honorable Presiding Judge:

Thank you for your request of a Complex Neurologic Consultation/Agreed Medical Examination on Ronald Davis, a 42-year-old right handed male and prior professional football player/defensive back who presents today for examination regarding complaints that he reports occurred during his course of play in professional sports.

The following history, physical examination, electrodiagnostic testing, and review of medical records were performed by myself. This report qualifies as an ML104 for the following reasons:

1. Multiple issues addressed
2. Causation AOE/COE addressed
3. Apportionment addressed
4. Time spent with patient face-to-face: 1.5 hours
5. Medical literature research: 1 hour
6. Review of records (1 inch): 2 hours
7. Report preparation time: 2.5 hours
8. Editing time: 1 hour

TOTAL TIME SPENT BY THIS PHYSICIAN IN ORDER TO SUBMIT THIS REPORT: 8 HOURS

RECEIVED
OCT 15 2013
Leviton, Diaz & Ginocchio, Inc

12. 03/20/00, ECG, [NAME OF FACILITY NOT INDICATED], J.D. GRAY, M.D., [SPECIALIZATION NOT INDICATED]. The study revealed undetermined rhythm and nonspecific ST and T wave abnormality.

13. 03/21/00, LABORATORY REPORT, BELLIN HEALTH. The chemistry panel revealed elevated total bilirubin, gamma gtp-ggt, cholesterol level, and LDL. The CBC with differential revealed elevated monocytes.

14. 08/28/00, CORRESPONDENCE, SUPER BOWL CHAMPIONS, R. WOLF. Mr. Davis had been terminated from the reserve/suspended list of Green Bay Packers on 08/25/00. He was now a free agent.

15. 12/14/12, WORKERS' COMPENSATION CLAIM FORM. The claimant stated that he sustained injuries to multiple body parts including but not limited to orthopedic, such as head, neck, spine, hips, upper and lower extremities, as well as neurologic and internal injuries. [prior injuries, employer, and insurance carrier are not indicated].

16. 12/14/12, WORKERS' COMPENSATION CLAIM FORM. The claimant allegedly injured his neck and left knee on 09/10/95. [prior injuries, employer, and insurance carrier are not indicated].

17. 12/14/12, APPLICATION FOR ADJUDICATION OF CLAIM. The applicant was employed by Atlanta Falcons as a professional athlete. He claimed that he injured his neck and knee on 09/10/95 as a result of stress and strain of his occupation while playing against the San Francisco 49ers. The insurance carrier was Travelers Dallas. [prior injuries not indicated]

<u>CLINICAL IMPRESSION:</u>

1. History of cerebral concussion while playing for the University of Tennessee, non-industrial.

2. History of multiple cerebral concussions while playing for the Atlanta Falcons, industrial.

3. Cervical sprain/strain, industrial.

4. Cervicogenic headaches, industrial.

5. History of marijuana abuse, non-industrial.

6. Very slight posttraumatic head syndrome, in part industrial and in part non-industrial.

7. Ulnar neuropathy of the right elbow of indeterminate etiology.

8. Slight sleep disturbance with normal Epworth Sleepiness Scale score.

## DISCUSSION AND RECOMMENDATIONS:

This is a 42-year-old right handed male and prior professional football player who reports having sustained multiple blows to the head with mild cerebral concussions occurring in both college and professional football while playing for the Atlanta Falcons. At no time was he rendered fully unconscious rather dazed and/or confused. He was reportedly taken off the field on two or three occasions while playing professional football with the Falcons. He does not report any significant head injury while playing for other teams. He had since been involved in residential real estate as a real estate in 2012. He has worked in building maintenance for the United States Postal Service through the present.

The patient reports cervical spine pain, which I will defer to the Agreed Medical Examiner in orthopedics. He reports difficulty with memory and responds affirmatively to the Clinical Dementia Rating Scale. His medical history was complicated by the use of marijuana which is known to alter cognition, as described in the following literature.

Medical literature does support that usage of cannabis can cause memory loss while being used and on a long-term basis there is also loss of cognition and memory due to marijuana usage as well even when not being used. This has been reported by the American Academy of Neurology, Neurology Today, 12/16/10, Volume 10(24); p. 7, by K. Samson, M.D. as well as an article published in Drug and Alcohol Dependence, 8/01/10, Volume 110(3) by L. Horwood. Both articles refer to a greater impact of cannabis through the late teen years; however, other references refer to even later onset having a similar impact to a lesser degree. With respect to older individuals this has been addressed in the British Journal of Addiction, 1991, Volume 86, page 249-252, as well as other publications.

The patient reports intermittent headaches described as a 5 as well as an array of musculoskeletal symptoms. He reports being suspended from playing professional football for two years, which would appear to be related to substance abuse.

He reports impaired sleep due to anxiety and depression, however he scores 3 out of 24 on the Epworth Sleepiness Scale which is in the normal range.

On today's examination the patient shows diminished sensation of the ulnar digits bilaterally, however electrodiagnostic testing is only confirmatory on the right for ulnar entrapment involving the ulnar sensory nerve. The etiology of the patient's entrapment neuropathy should be addressed by the Agreed Medical Examiner in orthopedics.

Multiple medical records were submitted for review dating back to 4/1995. There was reference to the patient having undergone left knee reconstruction in 9/1990 as well as subluxation of the right shoulder in 10/1990. Other records reviewed primarily addressed the patient's orthopedic injuries. Records in 8/1995 referred to the patient having a cervical sprain/strain. There was reference to a lumbar injury from a motor vehicle accident in a report of Dr. Smith dated 7/22/96. Correspondence from the National Football League dated 7/23/96 referred to the patient being suspended for substance abuse. He tested positive for marijuana on 4/29/96. The medical records do not make reference to any significant head injury.

In my opinion, the patient has reached Maximum Medical Improvement and is permanent and stationary.

If one were to use the Permanent Disability Rating Schedule, in my opinion, the patient would have been permanent and stationary within one year of his last year of play in professional football.

<u>Objective Factors for Disability</u>:

1. One cerebral concussion while playing college football.
2. Approximately four or five cerebral concussions while playing for the Atlanta Falcons.
3. Occasional and very slight posttraumatic head syndrome.
4. Abnormal nerve study showing ulnar neuropathy of the right ulnar sensory nerve.

Subjective Factors for Disability:

In my opinion, the patient is experiencing occasional intermittent and slight to moderate headaches. In my opinion, he is experiencing to frequent numbness of the ulnar two digits on the right.

Work Restrictions:

For the patient's headaches he should be precluded from very repetitive flexion and extension of the cervical spine. The patient is precluded from very repetitive flexion and extension of the right elbow.

Future Medical Care:

The patient would benefit with medication such as Fioricet for headaches. He is not a surgical candidate for the right ulnar nerve.

Apportionment:

In my opinion, on the basis of causation taking into consideration Labor Code Section 4663, there is 30% apportionment of the patient's posttraumatic head syndrome to both his college football concussion and use of marijuana.

Vocational Rehabilitation:

The patient is not a candidate for vocational rehabilitation.

If one were to use the AMA Guides, 5th Edition, in my opinion, the patient would have reached Maximum Medical Improvement by one year after leaving professional football. For posttraumatic head syndrome, in my opinion, the patient qualifies for 4% whole person impairment. For his headache complaints, in my opinion, the patient qualifies for 1.5% whole person impairment, which rounds out to 2%. For his sleep disturbance, in my opinion, the patient qualifies for 4% whole person impairment. For the patient's ulnar neuropathy, this will be deferred to the Agreed Medical Examiner in orthopedics.

According to page 308 of the AMA Guides, 5th Edition, an examiner can use either Table 13-4 or 13-6, not both, and whichever rates higher is assessed using the Guides. In this matter, I will use Table 13-6. Five percent combines with 2% to

equal 7% whole person impairment. Thirty percent apportionment to non-industrial factors equals 3% whole person impairment for posttraumatic head syndrome. Three percent combines with 2% to equal 5% whole person impairment. The patient's final whole person impairment from a neurological perspective is 5%.

The same work restrictions apply.

<u>DECLARATION:</u>

I declare under penalty of perjury that the information contained in this report, and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to the information I have received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe to be true. This declaration is dated October 8, 2013 in Los Angeles County, California.

I declare that the medical records were personally reviewed by Lawrence Richman, M.D. They were then placed in chronological order, collated and/or summarized for transcription by Maria Paula Olivia Mariano, Graduate of BS Pharmacy. The collation of records was supervised by Gene Eduardo Romulo B. Quintero, M.D.

I further declare under penalty of perjury that I have not violated Labor Code Section 139.3 of the California Labor Code, in that I have not offered, delivered, received or accepted any rebate, refund, commission, preference, patronage, dividend, discount or other consideration, whether in the form of money or otherwise, as compensation or inducement for any referenced examination or evaluation. The contents of this report and bill are true and correct to the best of my knowledge.

Sincerely,

LAWRENCE M. RICHMAN, M.D.
Diplomate (Neurology), American Board of Psychiatry and Neurology
Diplomate, American Board of Electrodiagnostic Medicine
Fellow, American Association of Neuromuscular and Electrodiagnostic Medicine

Los Angeles Orthopaedic Institute
A MEDICAL GROUP

COPY

COPY

EXHIBIT D

September 19, 2013

Travelers Insurance
Post Office Box 660281
Dallas, Texas 75266

Attn: Perry Hood, Claims Adjuster

## ORTHOPAEDIC QUALIFIED EVALUATION REPORT

RE: DAVIS, RONALD
EMP: ATLANTA FALCONS
D/I: CT 07/2/1995-12/28/1995
CL#: [redacted]
D/E: SEPTEMBER 19, 2013

## SOURCES OF ALL FACTS

The following is a summary on Ronald Davis, who I saw in orthopedic consultation on September 19, 2013 in my capacity as a Qualified Medical Examiner in my Sherman Oaks office.

## HISTORY OF PRESENT COMPLAINTS

Mr. Davis is a 42 year old male who presents with neck, bilateral shoulder, bilateral elbow, bilateral hand and wrist, bilateral hip, mid and low back, bilateral knee, and bilateral foot and ankle pain. The patient states that he began his football career in high school in Tennessee as a wide receiver and defensive back. He ended his high school football career in 1990, and had no specific significant injuries during that time.

## DIAGNOSES

My overall diagnoses regarding this work-related injury are as follows:

1. Cervical spine strain with residual degenerative disc disease at the C4-C5 and C5-C6 levels.

2. Bilateral shoulder strains.

3. Bilateral elbow strains.

4. Bilateral hand and wrist strains.

5. .Thoracolumbar spine strain.

6. .Bilateral hip strains.

7. Right knee strain.

8. Status post left knee anterior cruciate ligament tear with reconstruction and subsequent second arthroscopy with meniscectomy, resulting in residual 1+ anterior instability of the knee.

9. Bilateral ankle strains.

## DISABILITY STATUS

This patient has reached maximum medical improvement and can be made permanent and stationary.

## WORK RESTRICTIONS

The patient does require work restrictions. With regard to his left knee, he should be precluded from kneeling, squatting, and climbing. He also has restrictions with regard to his cervical spine, precluding him from repetitive motions of the cervical spine.

## FUTURE MEDICAL TREATMENT

The patient does require a provision for future medical care for his left knee, allowing him to see an orthopedic surgeon in the event of an exacerbation of his complaints. No surgery is anticipated for this patient. He does not require a provision for future medical care for any other body parts in that he can take over-the-counter medications as needed.

## PERMANENT IMPAIRMENT

Mr. Davis can be rated per the AMA Guidelines, Fifth Edition.

With regard to the cervical spine, the patient is a DRE Cervical Category II, which is 6 percent whole person impairment as outlined on page 392, Table 15-5.

There is no rateable impairment to the patient's bilateral shoulders.

There is no rateable impairment to the patient's bilateral elbows.

There is no rateable impairment for the patient's bilateral hands or wrists.

With regard to the lumbar spine, the patient is a DRE Lumbar Category I, which is 0 percent whole person impairment as outlined on page 384, Table 15-3.

There is no rateable impairment for the patient's bilateral hips.

There is no rateable impairment for the patient's right knee.

With regard to the left knee, the patient is status post an anterior cruciate ligament reconstruction with residual mild cruciate laxity, which is a 3 percent whole person impairment as outlined on page 546, Table 17-33. He is also status post a partial medial meniscectomy, which is a 1 percent whole person impairment as outlined on page 546, Table 17-33. The patient therefore has a total 4 percent whole person impairment for his left knee.

There is no rateable impairment to the patient's bilateral feet or ankles.

This patient therefore has a combined 10 percent whole person impairment.

## RETURN APPOINTMENT

Mr. Davis will be seen again only if necessary.

I hope these notes have been helpful to you and please feel free to call upon me if you should have further questions.

DATE OF REPORT: September 19, 2013

Dated this 19th day of September, 2013 at Los Angeles County, California.

Sincerely,

DOMENICK J. SISTO, M.D.

DJS:chp
106742_09192012_QME-DJS_DSISTO

cc: Seyfarth & Shaw
Attorneys at Law
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021

# ORTHOPAEDIC MEDICAL GROUP OF SANTA ANA, INC.

DAVID S. KIM, M.D.,F.A.A.O.S.
Diplomate, American Board of Orthopedic Surgery

SOHEIL M. AVAL, M.D.
Diplomate, American Board of Orthopedic Surgery

ALBERT SIMPKINS, JR., M.D.,F.A.A.O.S.
Diplomate, American Board of Orthopedic Surgery

MARK W. BROWN, M.D.
Diplomate, American Board of Orthopedic Surgery

November 5, 2013

EXHIBIT
D

Christopher Ginocchio, Attorney at Law
**LEVITON, DIAZ & GINOCCHIO, INC.**
2700 North Main Street, Suite 200
Santa Ana, California 92705

| | |
|---|---|
| RE: | **DAVIS, Ronald** |
| SS#: | [redacted] |
| EMP: | Atlanta Falcons, et al |
| OCC: | Professional Football Player/ Defensive Cornerback |
| DOI: | 07/25/95 to 12/28/95, CT; 09/10/95 |
| CASE#: | [redacted] |
| CLAIM#: | [redacted] |

## ORTHOPEDIC QUALIFIED MEDICAL EVALUATION

Dear Mr. Ginocchio:

Mr. Ronald Davis was seen in this office for orthopedic evaluation. It should be noted that an extraordinary amount of time is required in order to fully and comprehensively evaluate professional athletes. This is due to the fact that professional athletes often play for many teams and sustain multiple injuries, making the history extremely difficult to obtain, as well as quite time consuming. In addition, professional athletes also usually injure numerous parts of their body, requiring extensive medical evaluation, including multiple x-ray studies. A great deal of time is spent with each of the professional athletes by not only me, but also my staff members. It is obvious, that these examinations are quite complex in nature. Therefore, I am charging at the **ML 104** level, as it is simply not appropriate that professional athletes would fit within my usual and customary billing schedule.

**DISCUSSION (Continued):**

his level of symptomatology in the future, and should symptoms warrant, diagnostic workup may also be necessary. However this is not immediately indicated and therefore this gentleman is considered to be at Maximal Medical Improvement. His final status is outlined below.

With respect to this gentleman's complaint of headaches, jaw pain, poor memory, depression and anxiety, sleep difficulty, high blood pressure and high cholesterol, these are not within my area of expertise and therefore any comment in this regard is deferred to the appropriate specialist.

**STATUS OF DISABILITY:**

Based on findings on physical examination, coupled with the patient's subjective complaints, it is this examiner's opinion that Mr. Davis has reached **MAXIMAL MEDICAL IMPROVEMENT** in accordance with the AMA Guides to the Evaluation of Permanent Impairment, (Fifth Edition) and is therefore considered **PERMANENT AND STATIONARY** from an orthopedic standpoint.

It is further this examiner's opinion that Mr. Davis reached a clinical plateau approximately three months after he discontinued his professional athletic activities.

As requested, the following has been prepared two ways: First, included is a section reflecting impairment as per the AMA Guides to the Evaluation of Permanent Impairment, per the SB 899 legislation; Second, to reflect permanent disability according to workers' compensation law prior to SB 899.

**AMA IMPAIRMENT ANALYSIS:**

**Cervical Spine:**

Referring to Chapter 15, I chose the DRE method for the following reason:

1. The DRE method is the preferred rating method.

FACTORS OF PERMANENT DISABILITY (Continued):

* OBJECTIVE FACTORS OF DISABILITY

1. Slight limitation on range of motion, right hip.
2. Areas of tenderness, bilateral knees.
3. Crepitus with patellofemoral compression.
4. Post-operative status, left knee surgery.
5. Pain with squatting, bilateral knees.
6. Findings on x-ray examination, left knee.
7. Findings on MRI scan, bilateral knees.
8. Areas of tenderness, bilateral ankles/feet.
9. Limitation on range of motion, bilateral ankles.

RECOMMENDED WORK RESTRICTIONS:

Based on this gentleman's cervical spine condition, work restrictions are recommended precluding heavy work.

Based on this gentleman's bilateral shoulders condition, work restrictions are recommended precluding heavy lifting, carrying, pushing and pulling, and work at or above shoulder level.

Based on the patient's bilateral wrists, hands and fingers condition, work restrictions are recommended precluding very repetitive gripping and grasping.

Based on Mr. Davis' lumbar spine condition, work restrictions are recommended precluding heavy work.

**FINAL AMA IMPAIRMENT RATING:**

Cervical Spine Whole Person Impairment........................................8%
Right Shoulder Whole Person Impairment........................................7%
Right Elbow Whole Person Impairment........................................1%
Right Wrist Whole Person Impairment........................................4%
Right Hand/Fingers Whole Person Impairment........................................8%
Left Shoulder Whole Person Impairment........................................4%
Left Elbow Whole Person Impairment........................................1%
Left Wrist Whole Person Impairment........................................4%
Left Hand/Fingers Whole Person Impairment........................................7%
Lumbar Spine Whole Person Impairment........................................8%
Right Hip Whole Person Impairment........................................2%
Right Knee Whole Person Impairment........................................2%
Right Foot/Ankle Whole Person Impairment........................................4%
Whole Person Impairment rating for pain (Right Foot/Ankle)....................3%
Left Hip Whole Person Impairment........................................0%
Left Knee Whole Person Impairment........................................5%
Left Foot/Ankle Whole Person Impairment........................................4%

*The following addresses permanent disability pursuant to pre-SB899 legislation, in which subjective factors of disability, as well as work restrictions, play a factor.*

**FACTORS OF PERMANENT DISABILITY:**

Concerning the patient's ***cervical spine and lumbar spine:***

* **SUBJECTIVE FACTORS OF DISABILITY**

I would best characterize this gentleman's cervical spine symptomatology as constant slight to moderate.

I would best characterize Mr. Davis' lumbar spine symptomatology as constant slight to moderate.

* **OBJECTIVE FACTORS OF DISABILITY**

1. Tenderness, cervical spine and associated musculature.

DECLARATION UNDER PENALTY OF PERJURY (Continued):

information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.

Very truly yours,

David S. Kim

David S. Kim, M.D.
Diplomate, American Board
of Orthopedic Surgery
CA Lic# A24397

Signed and dated in Orange County on 11-25-13.

DSK:ma/10
1013tu
97551

# Social Security Administration

## Important Information

Southeastern Program Service Center
1200 Rev. Abraham Woods, Jr. Blvd.
Birmingham, AL 35285-0001
Date: July 29, 2026
BNC#: [redacted]

##0004414 00011407 . 1 AB 0.672 0721M2CDR3PN T35 P6

RONALD R DAVIS
[redacted]
JONESBORO, AR 72401-4168

0101ALOTY00472•NOTAFP.X3.PBCDRNOT.PC3.R260721.PAM 000000000 00260106356277343652724014168 40

We sent you a letter telling you that we were going to review your disability case. However, we do not need to review your case at this time. Therefore, we will not contact your doctor now. We will keep any information that you have given us.

We will contact you later if we need to review your case.

### Things To Remember

It is important that you report changes right away. Be sure to tell us about any of the following changes:

- You return to work.
- Your job, pay or work expenses change, if you are working now.
- Your doctor says your health is better.
- Your income or resources change.

### Suspect Social Security Fraud?

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

### If You Have Questions

### Need more help?

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at 1-800-772-1213, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY 1-800-325-0778. Please mention this letter when you call.

See Next Page

# Social Security Administration
# Supplemental Security Income
Notice of Award

SOCIAL SECURITY
1809 LATOURETTE DRIVE
JONESBORO AR 72404

Date: February 5, 2019
Claim Number: [redacted]

0000799 00000799 3 MB 0.428 SI6LNA T6 P1
SSI M06 01/29 758 19S1799K67867
RONALD R DAVIS
[redacted]
JONESBORO AR 72401-4168

We have carefully reviewed the facts of your case and have approved the claim for Supplemental Security Income (SSI) benefits that you filed on March 26, 2018. As of March 2018 you meet all the rules to be eligible for SSI based on being disabled.

The rest of this letter explains your current monthly payment, your back payments, how we figured your payment amount, information about Medicaid, your reporting responsibilities, and your appeal rights.

## Your Current Monthly Payment

Your current monthly payment is $514.00 for March 2019. This amount will continue unless there is a change in the information we use to determine your SSI eligibility and payment amount.

## Your Back Payments

| From | Through | Monthly Payment Amount | Total |
|---|---|---|---|
| April 2018 | December 2018 | $500.00 | $4,500.00 |
| January 2019 | February 2019 | $514.00 | $1,028.00 |
| | Total Back Payments Due To You | | $5,528.00 |

We explain how we figured the monthly payment amounts on the worksheets at the end of this letter. The explanation shows how your income, other than any SSI payments, affects your SSI payment.

See Next Page

Social Security Administration                                        Form Approved: OMB No. 0960-0579

1764038/12Q        0317030900000425

1300 Church St
Apt N 10
72401

RQID:LAR000CA4FG00                SITE:S04 DR:S
SSN:********* DOCTYPE:0105 RF:D CS:64ac

# FUNCTION REPORT – ADULT – THIRD PARTY
## 12Q

*How the disabled person's illnesses, injuries, or conditions limit his/her activities.*

**SECTION A - GENERAL INFORMATION**

1. **NAME OF DISABLED PERSON**
   **RONALD R DAVIS**

2. **YOUR NAME** *(person completing form)* Marie Davis
3. **RELATIONSHIP** mother

4. **DATE** *(Month, Day, Year)* March 4, 2017

5. **DAYTIME TELEPHONE NUMBER** *(If there is no telephone number where you can be reached, please give us a daytime number where we can leave a message for you.)*

   901 (Area Code) 634-0631 (Phone Number)

   Check if this is: ✓ Your Number ___ Message Number ___ None

6. a. How long have you known the disabled person? 46 years

   b. How much time do you spend with the disabled person and what do you do together?
   ~~46 years~~ He live in Jonesboro and I live in Memphis Come occasions to spend time With Family.

7. a. Where does the disabled person live? (Check one.)
   ___ House ✓ Apartment ___ Boarding House ___ Nursing Home
   ___ Shelter ___ Group Home ___ Other (What?)________

   b. With whom does he/she live? (Check one.)
   ✓ Alone ___ With Family ___ With Friends
   ___ Other (Describe relationship)________

0317030990000425

13. What was the disabled person able to do before his/her illnesses, injuries, or conditions that he/she **CANNOT** do now?

Physically fit maintaining gainful employment

14. Do the illnesses, injuries, or conditions affect his/her sleep? ✓ Yes ___ No

If **YES**, how?

15. **PERSONAL CARE** (Check here ___ if **NO PROBLEM** with personal care.)

a. Explain how the illnesses, injuries or conditions affect this person's ability to:

Dress — No affects at this time accept with Showering.

Bathe — difficult reaching certain

Care for hair — body parts (buttx)

Shave — Fair

Feed self

Use the toilet

Other?

b. How much time do chores take, and how often does he/she do each of these things?

3min to take out Garbage once a Week
Load and unload Dishwasher Vacuum ~~twice~~ a month

c. Does he/she need help or encouragement doing these things? ✓ Yes ___ No

If YES, what help is needed? motivating

d. If the disabled person doesn't do house or yard work, explain why not.

Person does some house work
No yard work live in an apartment

18. **GETTING AROUND**

a. How often does this person go outside? 4 days a week

If he/she doesn't go out at all, explain why not.

b. When going out, how does he/she travel? *(Check all that apply.)*

✓ Walk ___ Drive a car ___ Ride in a car ___ Ride a bicycle

___ Use public transportation ___ Other *(Explain)*

c. When going out, can he/she go alone? ✓ Yes ___ No

If **NO**, explain why this person can't go out alone.

d. Does the disabled person drive? ___ Yes ✓ No

If he/she doesn't drive, explain why not.

22. **SOCIAL ACTIVITIES** 0311/0300000003425

a. Does the disabled person spend time with others? *(In person, on the phone, on the computer, etc.)* ____ Yes _✓_ No

If **YES**, describe the kinds of things he/she does with others.

How often does he/she do these things?

b. List the places he/she goes on a regular basis. *(For example, church, community center, sports events, social groups, etc.)*

Does he/she need to be reminded to go places? ____ Yes _✓_ No

How often does he/she go and how much does he/she take part? Sunday Morning Service 1 hour Wed Night Bible Study 45 min

Does he/she need someone to accompany him/her? _✓_ Yes _✓_ No

c. Does this person have any problems getting along with family, friends, neighbors, or others? ____ Yes _✓_ No

If **YES**, explain.

d. Describe any changes in social activities since the illnesses, injuries, or conditions began:

## SECTION D – INFORMATION ABOUT ABILITIES

23. a. Circle any of the following items the disabled person's illness, injuries, or conditions affect:

| | | | |
|---|---|---|---|
| Lifting | Standing | Walking | Sitting |
| Stair Climbing | Kneeling | Squatting | Reaching |
| Using hands | Seeing | Hearing | Talking |
| Bending | Memory | Concentration | Completing Tasks |
| Understanding | Following Instructions | | Getting Along with Others |

Form SSA-3380-BK (12-2009) ef (04-2010)



10131900

j. If **YES**, give name of employer.

How well does this disabled person handle stress? Fair

k. How well does he/she handle changes in routine? Fair

l. Have you noticed any unusual behavior or fears in the disabled person? ____ Yes ✓ No

If **YES**, explain.

24. Does the disabled person need the use of any of the following?
*(Please check all that apply.)*

____ Crutches
____ Walker
____ Wheelchair
____ Other (Explain)
____ Cane
____ Brace/Splint
____ Artificial Limb
____ Hearing Aid
✓ Glasses/Contact Lenses
____ Artificial Voice Box

Which of these was prescribed by a doctor?

When was it prescribed?

When does this person need to use these aids?