**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**BALTIMORE DIVISION**

| | |
|---|---|
| **STACEY BAILEY, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN, *et al.***<br><br>**Defendants.** | Case No. 1:23-cv-02661-JRR |

## CLASS COUNSEL'S REPORT REGARDING INACCURATE COMMUNICATIONS CONCERNING THE SETTLEMENT AND MOTION FOR IN-PERSON, IN-CAMERA HEARING

Court appointed Class Counsel respectfully submit this Report concerning objectors, objections, and communications about the proposed settlement directed to members of the Settlement Class. This Report brings several issues to the Court's attention and is provided in furtherance of Class Counsel's duty to represent the Class fairly and adequately and to preserve the Court's supervision of Class Notice, communications with Class Members, and the settlement proceedings. Fed. R. Civ. P. 23(d), (g)(4). The conduct at issue appears to arise from a lone source, attorney Samuel Katz, who is one counsel proposed as co-lead for the plaintiffs in the *Alford* matter pending before this Court. *See Alford, et al v The NFL Disability & Survivor Benefit Plan, et al,* 1:23-cv-00358-JRR.

Mr. Katz's communications directed to Class Members include a presentation styled as a "Bailey Settlement Town Hall," organized by Sheilla Dingus, in which Mr. Katz spoke about the Bailey Settlement and the Court-approved notice and objection process as well as text communications from Mr. Katz to members of the *Bailey* Class. Both of these communications

misrepresent the posture of the cases (*Bailey* compared with *Alford*), the work performed to achieve this settlement, the settlement relief, and Class Counsel's actions.

Mr. Katz's communications misrepresent the posture of this case, the terms of the Settlement Agreement preliminarily approved by the Court, the work performed to achieve this settlement, the settlement relief flowing from the injunctive remedy, and Class Counsel's actions in this matter. The communications also contained representations that greater benefit would flow from an *Alford* class and encouraged objections to the *Bailey* Settlement. Throughout both the Town Hall and additional communications by Mr. Katz directed to Class Members,[1] Mr. Katz described his presentation (reportedly including slide shows and lasting more than thirty minutes at the Town Hall) as informational and contrasted it with the advice he provides "my clients," which suggests Mr. Katz was not (at the time of the communication(s) with Class Members) an attorney for the Class Member(s) he was addressing.

Class Counsel do not ask the Court, on this report alone, to adjudicate the merits of any Class Member's objection, or to restrict any class member's right to object, or to otherwise participate in the settlement process. The purpose is narrower: to advise the Court of the circumstances while the Court-supervised notice and objection processes are ongoing and to ask the Court to conduct an in-person, in-camera hearing to determine what steps, if any, to address and prevent continued misrepresentations to Members of the Settlement Class by other attorneys not associated with the Litigation.

## I. PROCEDURAL POSTURE AND APPLICABLE LAW

The Court preliminarily approved the Settlement, certified the Settlement Class for settlement purposes, appointed Class Counsel, and directed notice to the Settlement Class. ECF

[1] Based on the language of the text, Class Counsel believes it was a mass text provided to numerous members of the *Bailey* Settlement Class but can only confirm receipt by Mr. Chidi Ahanotu.

82. The Court-approved notice explains the Settlement and establishes the procedure through which Class Members may evaluate it and, if they choose, object. "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S. Ct. 2193, 2200, 68 L. Ed. 2d 693 (1981). Further, "the district courts must closely monitor the notice process and take steps to safeguard class members from 'unauthorized [and] misleading communications from the parties or their counsel.'" *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 310 (3d Cir. 2005) (quoting *Erhardt v. Prudential Group, Inc.,* 629 F.2d 843, 846 (2d Cir.1980)). "Under Rule 23(e) of the Federal Rules of Civil Procedure, the district court acts as a fiduciary who must serve as a guardian of the rights of the absent class members." *Runion v. U.S. Shelter*, 98 F.R.D. 313, 318 (D.S.C. 1983) (citing *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.1975). The Fourth Circuit recognized this duty, even prior to certification, in *Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1306 (4th Cir.1978), stating that district courts have "an ample arsenal to checkmate any abuse of the class action procedure…." More broadly, Rule 23 provides discretion to the court to issue orders relating to the action and govern communication with members of the class. Fed. R. Civ. P. 23(d)(1), and (e).

Although specifically discussing notice requirements, the Ninth Circuit put it simply that "the trial court has an obligation to those not before it to ensure that they are apprised of proceedings that may finally affect them; and pursuant to this responsibility the court is vested with broad administrative as well as adjudicative power." *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977); *see Greenfield v. Villager Industries, Inc*., 483 F.2d 824, 832 (3d Cir. 1973); Note, Developments in the Law Class Actions, 89 Harv. L. Rev. 1318, 1411 (1976). Part of fulfilling that obligation is to protect absent members of the class from biased and inaccurate

communication. "If putative plaintiffs are to be contacted regarding this lawsuit, then it is important to a fair resolution of the case that communications with them are neutral, balanced, and complete." *L. Offs. of Leonard I. Desser, P.C. v. Shamrock Commc'ns, Inc.*, No. CIV. JKB-12-2600, 2013 WL 2552141, at *2 (D. Md. June 10, 2013) (Noting the courts concern over counsel having contact with "potential class members for the specific purpose of opposing class certification", and implementing restrictions on communications); *Jones v. Hoffberger Moving Servs. LLC*, No. 13-CV-0535-JKB, 2013 WL 5973145, at *2 (D. Md. Nov. 8, 2013).

Specifically, "[c]onsidering first the possible solicitation of representation and/ or funds, [courts] regard regulation aimed at preventing such an abuse as promotive of both the public's and the legal profession's interests. Not only does curbing solicitation by less than scrupulous attorneys serve those laymen liable to be unfairly badgered and/or persuaded by the activity, but it also protects the reputation and professional image of the bar itself." *Waldo v. Lakeshore Ests., Inc.*, 433 F. Supp. 782, 789 (E.D. La. 1977). The Manual for Complex Litigation, Fourth, adds further support because of the control the Court exerts over communications with the Class. *See generally*, Manual for Complex Litigation, Fourth § 21.31, at 285 (Federal Judicial Center 2024) ("The Manual"); § 21.311; §21.312; § 21.33; §§ 21.6, *et seq.*

Finally, while there is no doubt that good-faith objectors/objections "can play a useful role" in a court's review of a class action settlement, "[s]ome objections, however, are made for improper purposes, and benefit only the objectors and their attorneys…." The Manual, § 21.643. For this reason, "a challenge for the judge is to distinguish between meritorious objections and those advanced for improper purposes." *Id.* (Also noting that Fed. R. Civ. P. 11 "applies to objectors and their attorneys and should be invoked in appropriate cases.") (*citing In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993)). While Mr. Katz may have had

broader permissible contact with members of the Settlement Class prior to preliminary certification, his obligation of truthfulness always existed. *See* Maryland Attorneys' Rules of Professional Conduct, Rule 19-304.1 (Truthfulness in Statements to Others); Rule 19-304.2 (Communications with Persons Represented by an Attorney); and Rule 19-308.4(a), (c), and (d) (Misconduct). After certification, though, "the rules governing communications apply as though each class member is a client of the class counsel." The Manual, § 21.33, at 300. Mr. Katz, as proposed co-lead class counsel in *Alford*, should be aware of the obligations attaching to that role.

With regard to the rights of the parties, the class, and absent class members, any limitations on communication "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101, 101 S. Ct. 2193, 2200, 68 L. Ed. 2d 693 (1981). The major concern raised by Class Counsel, here, is the misinformation, misrepresentations, and purpose behind Mr. Katz's dissemination of this false narrative. By this filing, Class Counsel is presenting record evidence sufficient to support relief, but, instead of ruling solely on this Report, Class Counsel requests this Court to investigate this conduct, request copies of these communications and presentations, and conduct an in-person, in-camera hearing to address the allegations, concerns, and behavior detailed herein. Doing so would allow the Court to review the communications, hear directly from Mr. Katz, ascertain whether any action should be taken, and decide what that action should be. *See, e.g.*, *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478 (E.D.Pa.1995) (invalidating all opt-out requests, issuing curative notice, and re-opening opt-out period because several law firms "sent misleading solicitations to members of the potential settlement class, urging them to opt-out or to object to the fairness of a proposed settlement."); *In re Fed. Skywalk Cases*, 97 F.R.D. 370, 374 (W.D.Mo.1983); *Impervious Paint Indus., Inc. v.*

*Ashland Oil*, 508 F.Supp. 720, 722 (D.Ky.1981); The Manual § 21.31 (if corrective notice is deemed appropriate, "[t]hose who made the misstatements should bear the cost of a notice to correct misstatements."); The Manual § 21.33 ("Objectors to a class settlement or their attorneys may not communicate misleading or inaccurate statements to class members about the terms of a settlement to induce them to file objections or to opt out. If improper communications occur, curative action might be necessary, such as extending deadlines for opting out ... or voiding improperly solicited opt outs and providing a new opportunity to opt out. Other sanctions may be justified, such as . . . contempt and fines,[2] [or] assessment of fees. . ..").

## II. REPORTED COMMUNICATIONS

On July 28, 2026, a virtual event identified as the "Bailey Settlement Town Hall" was held. Materials promoted Samuel L. Katz as the event's "Special Guest." Mr. Katz is counsel for the plaintiffs in *Alford* and identified himself as proposed lead class counsel in that matter. Mr. Katz delivered a presentation that reportedly also included a PowerPoint presentation concerning *Bailey* and the Class Settlement, the Settlement's release and non-opt-out structure, and offered comparisons between *Bailey* and *Alford*. Over the course of the presentation, he purported to explain and evaluate the settlement's class definition, mandatory nature, release, consideration, rescoring eligibility and exclusions, expert review process, experts, monetary relief, interest provision, and objection procedure. Such information included that members of the *Bailey* class are giving up all rights to every benefit under any potential issue that relates, in any way, to ERISA; that Plaintiffs' expert could not be trusted because he has only ever testified on behalf of the party

[2] *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99 CIV. 4567 (AGS), 2001 WL 1035132, at *7 (S.D.N.Y. Sept. 7, 2001) (ordering corrective notice at the expense of the party at fault); *Hammond v. City of Junction City, Kansas*, 167 F. Supp. 2d 1271, 1293 (D. Kan. 2001) (ordering party at fault to pay attorneys' fees and costs incurred by opposing party to file protective orders); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1247 (N.D. Cal. 2000) (ordering costs of curative notice to be paid by party at fault).

that retained him; and that the "NFL" was so downtrodden by the *Alford* case that it went out and found firms that would collude with it to get a full release of all possible liability under the Plans and ERISA. By prefacing the presentation that he would advise his clients differently, the implication is that at least some of those attending the presentation were ***not*** his prior clients. He concluded by giving what may be described as a call-to-arms; that the number of objections could potentially defeat Final Approval. The presentation was not part of the Court-Ordered notice program, was not reviewed by Class Counsel, and was not reviewed or approved by the Court. Nor were Class Counsel notified or invited to speak to members of the Class to whom they have been appointed to represent.

More recently, on September 22, Class Representatives received a text message that was purportedly sent by Mr. Katz to a Member of the Class. It is currently unknown whether Mr. Katz had a prior relationship with the Class Member. That text communication was forwarded to Mr. Curry, a Court-appointed Class Representative in *Bailey*, who then provided the same to Class Counsel. It is attached hereto as Exhibit A. The information—more accurately, misinformation—contained in that communication is patently false and, at a minimum, misrepresents the legal status, the posture of the two cases, the relief achieved, and the mediation/negotiations between Class and Defense Counsel.

First, as noted throughout the filings in this case, because it is an injunctive remedy, the rescoring protocol has not begun and the relief that may flow to an individual cannot yet be determined. Mr. Katz's communication ignores this with statements like **"IT WILL BE EXTREMELY RARE FOR ANY PLAYER IN THE BAILEY SETTLEMENT TO SEE A DOLLAR RESULTING FROM THE BAILEY SETTLEMENT"** (emphasis in original); **"ALL PLAYERS WHO ARE CLASS MEMBERS IN BAILEY ARE GIVING UP**

**EXTREMELY VALUABLE RIGHTS TO POTENTIAL BENEFITS EVEN THOUGH IT WILL BE RARE FOR ANY PLAYER TO SEE ANY VALUE FROM THE SETTLEMENT"** (emphasis in original); and "**The Bailey settlement is a desperate trap by the NFL disability board to force ALL retired NFL players in the Bailey settlement to waive their rights to pursue ANY AND ALL relief and lawsuits including for benefits or higher levels of benefits, etc. that relate in ANY way to an evaluation of benefits.**" (emphasis in original). *Id.*

Further, Mr. Katz attacks Class Counsel in saying:

> "**• BAILEY SETTLED WITH NO ACTUAL FIGHT.**
> **◦ Bailey filed a complaint only. The NFL didn't even fight them AT ALL before settling. For this, the Bailey lawyers are looking to pocket $4 million in fees and expenses and for $50K in cash for the two named plaintiffs while most class members will get diddly squat out of the deal."** (emphasis in original).

The text communication goes on to describe *Alford* and the efforts there while mischaracterizing the posture ("… is significantly farther ahead than Bailey. . . . the Alford v. NFL disability lawsuit continues to move forward against the NFL disability board! The Alford players' class action lawsuit largely defeated the NFL disability board's motion to dismiss, overcame statute of limitations defenses for the breaches of fiduciary duties, completed discovery, and defeated three NFL disability board motions for summary judgment.").

Overall, the bulk of the communications from Mr. Katz display a gross misunderstanding of class action litigation and the nature of the injunctive remedy contained within the Settlement Agreement. This type of inflammatory and false information issued by an officer of the Court who has appeared before this Court in a separate litigation is disappointing.

## III. MISREPRESENTATIONS

Mr. Katz's representations to Members of the *Bailey* Settlement Class are sufficient to warrant inquiry, as are the potential motivations as to why Mr. Katz is contacting members of a Class he does not represent but who are represented by Class Counsel and soliciting objections therefrom. When combined (within those same communications) with suggestions as to whether the *Alford* matter and lawyers are better suited to address the conduct within the *Bailey* complaint; Mr. Katz's possible motivation for the communications is even more troubling.

This behavior is inappropriate, and the misrepresentations are being made for the purpose of convincing Class Members to object for, what Class Counsel believes, is in an attempt to bolster the *Alford* case. Doing so is not in the best interest of the Players nor the members of the certified *Bailey* Settlement Class or even the proposed classes in *Alford*. As discussed in the Joint Motion for Entry of an Order Preliminary Approving Class Settlement, Conditionally Certifying the Proposed Class for Settlement Purposes Only, and Scheduling a Final Fairness Hearing, ECF No. 79 and the Settlement Agreement attached thereto, the relief achieved through the *Bailey* settlement exceeds what is available under the Plans. It also exceeds limitations applied to the proposed classes in *Alford*.

To assist the Court in considering the misrepresentations, the Court need only review the docket for a status of each case. Of note, the *Alford* case was initially filed on February 9, 2023, with an amended Class Action Complaint filed on May 12, 2023 ("CAC"), and the *Bailey* case was filed on September 9, 2023. The requested relief in the *Alford* CAC does not include rescoring to remove race-based adjustments. *Alford, et al v The NFL Disability & Survivor Benefit Plan, et al,* 1:23-cv-00358-JRR at ECF 56 CAC ¶¶ 355-387. In fact, the word "race" appears ***once*** in *Alford's* first motion for class certification, which the Court denied, and only as "Whether

Defendants routinely treated similarly situated applicants differently based on applicants' demographics, including ethnicity and race" in the list of 45 common questions of law and fact.[3] Chris Seeger, whose firm is the other proposed co-lead counsel in *Alford*, also confirmed that the *Alford* case has nothing to do with race in an email to Class Counsel on October 2, 2023.[4] Mr. Seeger was rather blunt in saying "My case has nothing to do with norming. . . I don't see your case in any way overlapping with mine." *Id.* It was not until the second attempt at class certification, that is still pending and was filed after the *Bailey* Term Sheet[5] was executed, that the *Alford* case first brought up race-based adjustments.

*Bailey*, on the other hand, pleaded a narrow focus and ***only*** sought to address the use of race in adjusting neuropsychological scoring. The release in *Bailey* is likewise narrow. In fact, Class Counsel were aware of *Alford*, of course, and were careful to craft release language that did not impact the progress of that case. It is, therefore, false of Mr. Katz to state that "ALL PLAYERS WHO ARE CLASS MEMBERS IN BAILEY ARE GIVING UP EXTREMELY VALUABLE RIGHTS TO POTENTIAL BENEFITS…" and that "The Bailey settlement is a desperate trap by the NFL disability board to force ALL retired NFL players in the Bailey settlement to waive their rights to pursue ANY AND ALL relief and lawsuits including for benefits or higher level of benefits, etc. that relate in ANY way to an evaluation of benefits."

The actual language of the Release is:

> [A]ny and all claims, demands, rights, suits, liabilities, obligations, damages, actions, rights of action, and causes of action of every nature and description whatsoever, whether known or unknown, suspected or unsuspected, whether based in law or equity and whether seeking legal or equitable relief, and whether arising under federal, state, local, statutory, common, or foreign law, that the Releasing Parties (as defined [in the Settlement Agreement]) or any of them ever had, now

---

[3] *Alford, et al. v. The NFL Player Disability & Survivor Benefit Plan, et al.,* 23-cv-00358-JRR, ECF No. 102-1.
[4] Email from Chris Seeger to Dee Miles, dated October 2, 2023, attached hereto as Exhibit B.
[5] The Term Sheet for the *Bailey* settlement was executed in front of Judge Rosen, Ret., on July 11, 2025 and *Alford's* renewed motion for class certification was filed on March 24, 2026.

> have, or hereafter can, shall, or may have against the Released Parties (as defined [in the Settlement Agreement]) **that (i) were asserted in the Action, or (ii) that arise out of or relate in any way to the matters, facts, or occurrences alleged in the Action, including but not limited to any claims arising out of or related to the use of race-based demographic adjustments or consideration of race in any way in neuropsychological or cognitive testing or scoring, or evaluation of claims for benefits under the Plans at any time prior to the Effective Date.** The Released Claims include, without limitation, all claims under ERISA (including but not limited to claims for benefits, breach of fiduciary duty, or equitable relief under 29 U.S.C. §1132) and all claims under 42 U.S.C. § 1981 or any other federal or state law prohibiting race discrimination, to the extent such claims arise from or relate to the allegations in this Action. The Released Claims do not include any claims to enforce: (i) the terms of this Settlement Agreement; (ii) any rights or benefits due to Class Members under this Settlement Agreement; or (iii) claims under 29 U.S.C. 1132(g) for Attorneys' Fees, Costs, and Expenses.

Settlement Agreement, § II.20 (as quoted in the Joint Motion) (emphasis added). The release is only for the allegations in the Complaint—the use of race-based adjustments in neuropsychological testing—and how those race-based adjustments impacted benefit determinations. The Release does not include, for example, the classification of a player under a certain level of benefits under T&P, or the hiring and payments to "Neutral Plan Physicians."

When comparing the progress of the cases, it is also false to imply that the Defendants sought out (and found) Plaintiffs' counsel in response to *Alford*. At the time *Bailey's* complaint was filed, the only substantive filings in *Alford* were the defendants' motion to dismiss and opposition thereto. To that end, the parties in *Bailey* engaged in extensive mediation with the assistance of Retired Federal Judge Gerald Rosen, culminating in the execution of a Term Sheet on July 11, 2025. On that date, in *Alford*, defendants' motion for summary judgment was pending and so was the first motion for class certification, which the Court later denied. But the Term Sheet included an agreement to resolve *Bailey* on a class-wide basis. Thus, *Alford* is behind *Bailey*, not the other way around.

For the relief, Mr. Katz proclaims that the *Bailey* settlement is, essentially, a farce because the "THE NFL DISABILITY BOARD SAYS THAT WHAT THEY ARE GIVING PLAYERS IS AN END TO RACIAL DISCRIMINATION IN TESTING BUT THE NFL DISABILTY BOARD ALREADY AGREED TO END THIS PRACTICE IN JUNE 2021".[6] This is inaccurate for many reasons, not the least of which is that Mr. Katz's communication implies that is the ***only*** relief afforded in the *Bailey* Settlement. This ignores that in June of 2021, while the Plans issued a unilateral directive to physicians, that directive could be revoked at any time and cannot now be revoked. It also ignores the rescoring protocol, the reassessment for benefits as a result, the full, 100% payment of any arrearage, the 6% interest, and the waiver of the look-back and statute of limitations. Mr. Katz also purportedly informed *Bailey* Class Members that the *Alford* team had already achieved relief relating to the statute of limitations, but that is inaccurate. For one, at the time of the Term Sheet, that issue was pending. And second, the *Bailey* class goes all the way back to January 1, 2012. *Alford* is limited by a ruling of this Court and begins August 9, 2019.

While it may be partially correct that "Bailey filed a complaint only," the remainder of that portion of the text is inaccurate. Bailey did not settle "WITH NO ACTUAL FIGHT." Nor is it true that "[t]he NFL didn't even fight them AT ALL before settling." As discussed in multiple filings with the Court, the parties engaged in years of negotiations, led by Judge Rosen, including seven in-person mediation sessions and multiple additional meetings, sometimes including experts from both sides. Likewise, a case is not "significantly farther ahead" simply because the parties to it could not foresee any path to resolution.

Finally, it is false that "[t]he fine print of the Bailey settlement EXCLUDES NEARLY ALL retired NFL players in the settlement from receiving ANYTHING of value." What this

[6] Email, dated 9/22/2026 from Wilatreal Curry to Rebecca Gilliland, attached hereto as Exhibit A.

statement demonstrates is a misunderstanding of the injunctive remedy, the Plans, benefit determinations, and the impact of race on neurocognitive deficit determinations. Those excluded from the rescoring are excluded because the reason those players did not receive benefits will not and cannot be altered by the removal of race-based adjustments from their scores. Those exclusions are, also, delineated within the Plans. For example, if a player was found disqualified because they failed validity testing, removing race does not make the player's scores valid. In point of fact, even the classes sought to be certified by *Alford* asserts that players' were denied benefits because decisions were not made "in accordance with Plan documents." The Plan documents dictate the potential relief in an ERISA-governed benefit claim and the *Bailey* settlement simply recognizes that as true.

Mr. Katz's actions have directly impacted objections. For example, the first true objection was filed by Vaughn Booker as ECF No. 100 on September 21, 2026. Therein, Mr. Booker states the settlement is unreasonable because he does "not wish to waive all of important ERISA rights related to any evaluation of benefits and any ERISA remedies in exchange for worthless value.. . . all I am getting is that the defendants agree to stop doing something they already stopped years ago, that was not even stopped because of Bailey." These statements mirror Mr. Katz's misleading and false statements. Mr. Booker, though, is not a member of the *Bailey* Settlement Class and was not provided with Class Notice. Yet, he objected making the same arguments that Mr. Katz urged.

Next, at ECF No. 101, is the objection from Mr. Adrian Ross. He too objects because the settlement "requires class members to release potentially valuable claims without providing fair, adequate, or meaningful consideration in return." Mr. Ross further argues five points: 1) the promised end to race norming provides little new value (false, and pushed by Mr. Katz); 2) the rescoring process does not provide a sufficiently independent review (false, the review includes

three layers and three experts and narrative pushed by Mr. Katz); 3) the release is broader and more valuable than the relief class members receive (false, and reflects a misunderstanding of the rescoring protocol and the scope of the release, both of which are pushed by Mr. Katz); 4) the requested payments to the named plaintiffs and class counsel highlight the lack of comparable class relief (false, and pushed by Mr. Katz); and 5) the limited adversarial development does not support the breadth of the release (false and based entirely on Mr. Katz's misrepresentations regarding the comparative progress of each case and the years of judge-presided mediations).

Mr. Dixon's objection, ECF No. 102, states "[t]he NFL defendants wiped out the billions that were owed to players, including that related to the evaluation of benefits. They basically made themselves liability proof." This statement mimics directly Mr. Katz's misrepresentations regarding the scope of the Release and the rescoring protocol. Mr. Dixon also complains that there was "No fight at all. The NFL, Bailey and Curry just went right into settlement. No discovery fight at all." This narrative, again, is pushed by Mr. Katz. Simply because Class Counsel were able to draft a pointed, narrow Class Complaint that immediately gave the defendants pause does not negate the years of judge-monitored mediations that occurred to reach resolution.

ECF No. 103 is the objection of Mr. Amon Arnold. He too objects that the settlement is "unreasonable, unfair, and inadequate" for a variety of reasons. First, Mr. Arnold takes issue with the lack of opt-out opportunity. That is an issue pushed by Mr. Katz during his Town Hall. It also reflects a misunderstanding of the law surrounding an injunctive relief class action that reflects poorly on Mr. Katz. Next, Mr. Arnold raises illusory consideration (again, mirroring Mr. Katz misrepresentations, that the only relief is the stopping of race-based adjustments), arbitrary and unequal exclusion from rescoring (raised by Mr. Katz, and reflecting his misunderstanding of the Plans, their exclusions, and ERISA), inadequate representation by Class Counsel because of the

lack of discovery (also a narrative from Mr. Katz and addressed, above), and inadequate notice and insufficient time to object. This Court approved the Notice, and Mr. Arnold did timely object.

Class Counsel also received, via mail another objection (that is expected to be filed shortly), from Mr. Tamarick Vanover. Exhibit C. In that objection, Mr. Vanover asks for his non-attorney advocate, Sheilla Dingus, to be able to speak at the Final Fairness Hearing on his behalf. Ms. Dingus was the facilitator and marketer for the Town Hall presentation by Mr. Katz. Her actions not only include conveying the same false information put forth by Mr. Katz, but she went a step further, describing *Bailey* as an attempt "to ambush Black and Brown retirees, and strip them of their ERISA rights."[7] Rather than contacting Class Counsel, Ms. Dingus used her forum to solicit objectors on behalf of and alongside Mr. Katz. Ultimately, Mr. Vanover is not a member of the *Bailey* Settlement Class and his objection is not valid.

These communications have misled members of the Settlement Class, are directly impacting the Class Members understanding of the Class Settlement in conflict with the Court approved Notice, and are impacting the Class Representatives, leading to harassing communications that arise from the misrepresentations. Class Counsel requests the Court utilize its authority to address these concerns after investigation and conducting an in-person, in-camera hearing on the matter.

## REQUEST FOR RELIEF

Court-appointed Class Counsel respectfully request the Court utilize its authority to address these concerns, conduct an investigation into these communications, and conduct an in-person, in-camera hearing on the matter to allow the Court the opportunity to hear directly from Mr. Katz

[7] Screen shots of social media posts from the account of Sheilla Dingus marketing the Town Hall of Mr. Katz, attached hereto as Exhibit D and Exhibit E, conveying the same or similar information from Mr. Katz's written communication to Class Members.

and his co-counsel regarding the communications and contact with members of the *Bailey* Settlement Class, and to determine whether corrective action and/or sanctions are proper in this situation.

Respectfully submitted this 25th day of September, 2026.

*/s/ Christopher T. Nace*
Christopher T. Nace (16442)
**PAULSON AND NACE, PLLC**
1025 Thomas Jefferson Street, NW, Suite 810
Washington, D.C. 20007
Telephone: 202-463-1999
Facsimile: 202-223-6824
ctnace@paulsonandnace.com

W. Daniel "Dee" Miles, III (*pro hac vice)*
Alison D. Hawthorne (*pro hac vice*)
Leon H. Hampton, Jr. (*pro hac vice*)
Paul W. Evans (*pro hac vice*)
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
218 Commerce Street
Montgomery, AL 36104
Telephone: 334-269-2343
Facsimile: 334-954-7555
Dee.Miles@BeasleyAllen.com
Alison.Hawthorne@BeasleyAllen.com
Leon.Hampton@BeasleyAllen.com
Paul.Evans@BeasleyAllen.com
(Signed by Christopher T. Nace with the permission of W. Daniel "Dee" Miles, III)

Rebecca D. Gilliland (*pro hac vice*)
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
301 St. Louis Street
Mobile, AL 36602
Telephone: 251-308-1515
Facsimile: 334-954-7555
Rebecca.Gilliland@BeasleyAllen.com

(Signed by Christopher T. Nace with the permission of Rebecca Gilliland)

Thomas O. Sinclair (*pro hac vice*)
**SINCLAIR LAW FIRM, LLC**
PO Box 59627
Birmingham, Alabama 35259
Telephone: 205-868-0818
Facsimile: 205-868-0894
tsinclair@sinclairlawfirm.com
(Signed by Christopher T. Nace with the permission of Thomas O. Sinclair)

***Lead Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2026, I filed a copy of the foregoing document using the Court's ECF/CM system, which will automatically send notice of such filing to all counsel of record in this matter and have served the following counsel via electronic mail:

Anillo Alvaro
Edward J. Meehan
Mark C. Nielsen
Michael L. Junk
Jovana Vujovic
**Groom Law Group, Chartered**
1701 Pennsylvania Ave. N.W. Suite 1200
Washington, D.C. 20006
Telephone: 202-861-5429
aia@groom.com
emeehan@groom.com
mnielsen@groom.com
mjunk@groom.com
jvujovic@groom.com

***Counsel for Defendants***

Hillary R. Fidler
**Seeger Weiss LLP**
55 Challenger Rd., 6th Fir.,
Ridgefield Park, NJ 07660
Telephone: 973-639-5349
hfidler@seegerweiss.com

Diogenes P. Kekatos
55 Challenger Rd., 6th Fir.,
**Seeger Weiss LLP**
Ridgefield Park, NJ 07660
Telephone: 212-584-0734
dkekatos@seegerweiss.com

Benjamin R Barnett
**Seeger Weiss LLP**
325 Chestnut Str., Ste 917
Philadelphia, PA 19106
Telephone: 215-553-7980
bbarnett@seegerweiss.com

***Counsel for Objectors Jason Alford et al***.

And served via U.S. Certified Mail and electronic mail to the counsel below:

Sam Katz, Esq.,
**Athlaw LLP**
8383 Wilshire Blvd. Suite 800
Beverly Hills, CA 90211
samkatz@athlawllp.com

*/s/ Christopher T. Nace*
Christopher T. Nace