# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**BALTIMORE DIVISION**

| | |
|---|---|
| JASON ALFORD, DANIEL LOPER, WILLIS MCGAHEE, MICHAEL MCKENZIE, JAMIZE OLAWALE, ALEX PARSONS, ERIC SMITH, CHARLES SIMS, JOEY THOMAS, and LANCE ZENO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE DISABILITY BOARD OF THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; LARRY FERAZANI; JACOB FRANK; BELINDA LERNER; SAM MCCULLUM; ROBERT SMITH; HOBY BRENNER; and ROGER GOODELL,<br><br>Defendants. | **No. 1:23-cv-00358-JRR** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

**Page**


INTRODUCTION .......... 1

ARGUMENT .......... 2

I. THE CLASSES ARE APPROPRIATELY DEFINED .......... 2

II. DEFENDANTS' INSISTENCE THAT THE CHALLENGED POLICIES AND PRACTICES DO NOT EXIST IS BOTH MISPLACED AND MERITLESS .......... 4

III. PLAINTIFFS' CLAIMS ARE TYPICAL OF ABSENT CLASS MEMBERS' CLAIMS .......... 7

IV. RESOLUTION OF THE CLAIMS ASSERTED ON BEHALF OF THE PROPOSED CLASSES WILL NOT ENTAIL EXAMINATION OF INDIVIDUAL CLASS MEMBERS' ADMINISTRATIVE RECORDS .......... 10

V. EQUITABLE REOPENING OF CLAIMS IS AVAILABLE RELIEF HERE .......... 11

VI. RULE 23(b)(1)(A) AND 23(b)(2) CERTIFICATION ARE APPROPRIATE .......... 14

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 14

*Anderson v. Lab'y Corp. of Am. Holdings*,
2023 WL 1970953 (M.D.N.C. Feb. 13, 2023) ........ 15

*Austin v. Cont'l Cas. Co.*,
216 F. Supp. 2d 550 (W.D.N.C. 2002) ........ 6

*Ballas v. Anthem Blue Cross Life & Health Ins. Co.*,
2013 WL 12119569 (C.D. Cal. Apr. 29, 2013) ........ 15

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014) ........ 14

*Brent v. Advanced Med. Mgmt., LLC*,
733 F. Supp. 3d 376 (D. Md. 2024) ........ 13

*C. P. ex rel. Pritchard v. Blue Cross Blue Shield of Ill.*,
705 F. Supp. 3d 1273 (W.D. Wash. 2023) ........ 12

*Cunningham v. Cornell Univ.*,
2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) ........ 14

*Curtis v. Hartford Life & Accident Ins. Co.*,
64 F. Supp. 3d 1198 (N.D. Ill. 2014) ........ 6

*D. K. v. United Behav. Health*,
67 F.4th 1224 (10th Cir. 2023) ........ 5

*DeGennaro v. Liberty Life Assur. Co. of Bos.*,
561 F. Supp. 2d 811 (W.D. Mich. 2008) ........ 6

*Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
2018 WL 1258147 (N.D. Cal. Mar. 12, 2018) ........ 5

*Does 4, 7, 22, 27, 28, & 29 v. Musk*,
350 F.R.D. 246 (D. Md. 2025) ........ 3

*Dunbar v. Orbital Scis. Corp. Grp. Disability Plan*,
265 F. Supp. 2d 572 (D. Md. 2003) ........ 5

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*,
95 F.4th 181 (4th Cir. 2024) .................................................................................................... 4

*Gagliano v. Reliance Standard. Life Ins. Co.*,
547 F.3d 230 (4th Cir. 2008) ............................................................................................... 7, 12

*Gariety v. Grant Thornton, LLP*,
368 F.3d 356 (4th Cir. 2004) .................................................................................................... 4

*Ginwright v. Exeter Fin. Corp.*,
280 F. Supp. 3d 674 (D. Md. 2017) ........................................................................................ 15

*Grossmuller v. Budd Co. Consol. Ret. Ben. Plan for Emps.*,
547 F. Supp. 111 (E.D. Pa. 1982), *aff'd in part & rev'd in part*,
715 F.2d 853 (3d Cir. 1983) ...................................................................................................... 5

*Harrison v. Wells Fargo Bank*, N.A.,
773 F.3d 15 (4th Cir. 2014) ....................................................................................................... 5

*Howard v. Aetna Life Ins. Co.*,
2024 WL 1098789 (C.D. Cal. Feb. 27, 2024) ......................................................................... 11

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
91 F.4th 174 (4th Cir. 2024) .................................................................................................... 13

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) .............................................................................................. 14

*Lacko v. United of Omaha Life Ins. Co.*,
926 F.3d 432 (7th Cir. 2019) .................................................................................................... 6

*Laser v. Provident Life & Acc. Ins. Co.*,
211 F. Supp. 2d 645 (D. Md. 2002) ...................................................................................... 5, 6

*Learn v. Lincoln Nat'l Life Ins. Co.*,
724 F. Supp. 3d 494 (W.D. Va. 2024) ....................................................................................... 5

*Lumpkin v. Farmers Grp., Inc.*,
2009 WL 10698662 (W.D. Tenn. Mar. 24, 2009) .................................................................. 15

*Lutz Surgical Partners PLLC v. Aetna, Inc.*,
2023 WL 2153806 (D.N.J. Feb. 21, 2023) ............................................................................. 15

*Martin v. Wilks*,
490 U.S. 755 (1989) ................................................................................................................ 13

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) .......... 13

*McAdams v. Robinson*,
26 F.4th 149 (4th Cir. 2022) .......... 13

*Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*,
332 F.R.D. 138 (S.D.N.Y. 2019) .......... 11

*Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353 (3d Cir. 2015) .......... 14

*Nickola v. Grp. Life Assur., Co.*,
2005 WL 1910905 (N.D. Ill. Aug. 5, 2005) .......... 6

*Peoples v. Wendover Funding, Inc.*,
179 F.R.D. 492 (D. Md. 1998) .......... 14

*Peters v. Aetna Inc.*,
2 F.4th 199 (4th Cir. 2021) .......... 12

*Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*,
654 F.3d 618 (6th Cir. 2011) .......... 15

*Rawls v. Unum Life Ins. Co. of Am.*,
219 F. Supp. 2d 1063 (C.D. Cal. 2002) .......... 11

*Rhodes v. E.I. du Pont de Nemours & Co.*,
253 F.R.D. 365 (S.D.W. Va. 2008) .......... 14-15

*Romberio v. UnumProvident Corp.*,
385 F. App'x 423 (6th Cir. 2009) .......... 15

*Shapiro v. Aetna, Inc.*,
2023 WL 4348601 (D.N.J. June 5, 2023) .......... 11-12

*Skelton v. Radisson Hotel Bloomington*,
33 F.4th 968 (8th Cir. 2022) .......... 6

*Smith v. Cox Enters., Inc. Welfare Benefits Plan*,
127 F.4th 541 (4th Cir. 2025) .......... 5

*Smith v. Sydnor*,
184 F.3d 356 (4th Cir. 1999) .......... 13

*Spurlock v. Wexford Health Sources, Inc.*,
175 F.4th 232 (4th Cir. 2026) .......... 4, 7

*Stafford v. Bojangles' Restaurants, Inc*,
123 F.4th 671 (4th Cir. 2024) .......... 3

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
445 F.3d 311 (4th Cir. 2006) .......... 4

*Trauernicht v. Genworth Fin. Inc.*,
169 F.4th 459 (4th Cir. 2026) .......... 3

*Turner v. Ret. & Ben. Plans Comm. Robert Bosch Corp.*,
585 F. Supp. 2d 692 (D.S.C. 2007) .......... 6

*White v. Eaton Corp. Short Term Disability Plan*,
308 F. App'x 713 (4th Cir. 2009) .......... 5

*Williams v. Metro. Life Ins. Co.*,
632 F. Supp. 2d 525 (E.D.N.C. 2008), *aff'd*, 609 F.3d 622 (4th Cir. 2010) .......... 5

*Wilson v. Eagle Nat'l Bank*,
2023 WL 2478933 (D. Md. Mar. 13, 2023) .......... 3

*Wit v. United Behav. Health*,
79 F.4th 1068 (9th Cir. 2023) .......... 12

*Wit v. United Behav. Health*,
2025 WL 2227681 (N.D. Cal. Aug. 5, 2025) .......... 12

**Statutes**

ERISA § 404, 29 U.S.C. § 1104 .......... 11, 12, 13

ERISA § 409, 29 U.S.C. § 1109 .......... 12,13

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) .......... 1, 3, 10, 12, 15

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) .......... 12, 13, 14

ERISA § 503, 29 U.S.C. § 1133 .......... 12, 13

**Rules**

Fed. R. Civ. P. 23(a)(1) .......... 15

Fed. R. Civ. P. 23(a)(2) .......... 4

Fed. R. Civ. P. 23(b)(1) ........ 2, 4, 14, 15

Fed. R. Civ. P. 23(b)(1)(A) ........ 11, 14, 15

Fed. R. Civ. P. 23(b)(2) ........ 3, 11, 13, 15

Fed. R. Civ. P. 23(b)(3) ........ 2, 3, 7, 14

**Regulations**

81 Fed. Reg. 92316 (Dec. 19, 2016) ........ 13

29 C.F.R. § 2560.503-1(b)(1)(iii) ........ 5

29 C.F.R. § 2560.503-1(b)(2) ........ 5

## INTRODUCTION

None of Defendants' arguments alone or in concert justify denying Plaintiffs' renewed class certification motion. *First*, Defendants assert that not one of the four proposed Classes has a common thread (*see* DM 7-20) and that Plaintiffs' renewed motion suffers from the same deficiencies identified by the Court in its ruling on Plaintiffs' initial motion (ECF No. 337) (*e.g.*, DM1, 3-7, 11-12, 20-21, 29).[1] These contentions cannot withstand even minimal scrutiny because each one of Plaintiffs' revised Classes challenges a *single*, discrete policy or practice, which fully comports with the Court's prior decision and controlling Fourth Circuit precedent.

*Second*, Defendants argue the merits of Plaintiffs' substantive claims at length, insisting that the challenged practices and policies do not, in fact, exist (*see* DM2-3, 8-17). That misguided and unfounded attack contravenes settled precedent that Rule 23 proceedings are not a forum for deciding whether the plaintiff will ultimately prevail on the merits. The proper question here is *not* whether Plaintiffs have proven their claims or whether they have a high likelihood of success but, rather, whether they are suitable for class-wide resolution, which they are. At any rate, Plaintiffs adduced evidence that confirms the policies' and practices' existence. *See* OM6-8 (citing evidence); Section II, *infra*.

*Third*, by improperly reframing them as ERISA § 502(a)(1)(B) wrongful denial of benefits claims, Defendants contend that Plaintiffs' claims can be resolved only by looking at class members' individual administrative records (*e.g.*, DM7, 11, 20-22). Plaintiffs' claims, though,

[1] "DM" refers to Defendants' Opposition to Plaintiffs' Renewed Motion for Class Certification (ECF No. 359). "OM" refers to the Memorandum of Law in Support of Plaintiffs' Renewed Motion for Class Certification (ECF No. 346-2) ("Opening Memorandum"). "Ex.__" standing alone refers to exhibits to the Declaration of Benjamin R. Barnett in Support of Plaintiffs' Renewed Motion for Class Certification, dated March 24, 2026 (ECF No. 346-2) and the Reply Declaration of Benjamin R. Barnett in Further Support of Plaintiffs' Renewed Motion for Class Certification, dated June 18, 2026 ("Barnett Reply Decl."). "¶"and "¶¶" standing alone refer to the Amended Class Action Complaint (ECF No. 56). Except where otherwise indicated, internal citations, quotation marks, and footnotes are omitted from all quotations and emphasis is added. Finally, Plaintiffs herein adopt the Opening Memorandum's shorthand terms.

center on the injury to the *integrity of the Plan's claims process* that Defendants have inflicted through their breaches of fiduciary duty. Defendants compromised the Plan's integrity through unlawful policies or practices governing the claims process under which Plaintiffs' and absent members' applications were handled. Defendants' *own* physician manuals and the testimony of their *own* witnesses as to those policies and practices are sufficient to certify the revised Classes, avoiding the need to comb through every class member's administrative record.

*Fourth*, Defendants maintain that Plaintiffs' class definitions are overbroad, encompassing applicants who were not injured by the challenged practices and policies, and they bemoan the absence of a "methodology" to show that each class member's application would have succeeded but for the challenged policy or practice (DM2, 23-29). They further contend that the absence of such a "methodology" bars the equitable relief of claims reopening. DM2, 4, 19, 23-24. Concerns about the presence of uninjured members, however, are relevant (if at all) to Rule 23(b)(3) damages classes, *not* 23(b)(1) or (b)(2) classes. Moreover, Defendants' fixation on whether individual class members' applications turned solely on a particular policy or practice ignores Plaintiffs' fiduciary duty breach claim, asking the Court instead to look at this entire case solely through the distorting prism of wrongful benefits denial claims. Defendants' unprecedented but-for test would mean that *no* fiduciary duty breach harming a disability plan's integrity could ever be resolved on a plan-wide basis unless it is shown at the Rule 23 stage that every class member would otherwise have prevailed on his application. The Court should reject this novel theory, as well as Defendants' other strained and unsupported arguments, and certify the revised proposed Classes.

## ARGUMENT

### I. THE CLASSES ARE APPROPRIATELY DEFINED

Despite Plaintiffs' labors to adhere to and honor the Court's prior class certification ruling, Defendants argue that Plaintiffs' revised class definitions are nonetheless overbroad, asserting that

they encompass individuals not entitled to relief. DM4, 23-29. This contention merits little discussion. Each objectively defined class is composed of (a) unsuccessful applicants for the benefits type(s) relevant to that class, (b) during specific and narrowed timespans, and (c) whose benefits applications would have invariably been subjected to the particular identified improper policy or practice that existed during that period by reason of the Plan's qualifying criterion. For example, members of the Cumulative Impairments Class had to have been evaluated by Neutral Physicians in *different* specialty areas. That would *necessarily* mean that the combined effect of their different conditions was not considered given Defendants' longstanding policy of not weighing the cumulative impact of different types of impairments. *See* Section II, *infra*.[2]

Moreover, Defendants' concerns about the inclusion of uninjured members are generally irrelevant at the Rule 23 stage because they relate to *standing*, not class definitions' sufficiency, and are implicated only where—unlike here—certification of a 23(b)(3) damages class is sought.[3] Beyond that fatal flaw, Defendants' argument rests entirely on their reformulation of Plaintiffs' claims as an ERISA § 502(a)(1)(B) benefits recovery action when Plaintiffs' actual objectives are to rectify and remedy the injury to the Plan's integrity resulting from Defendants' policies and practices that render the Plan in a constant state of non-compliance with ERISA and breach Defendants' fiduciary duties. *See* Sections III-V, *infra*.

[2] This fact easily distinguishes this case from *Stafford v. Bojangles' Rests., Inc*, 123 F.4th 671 (4th Cir. 2024) (DM23-24), where "the classes' sole defining characteristic [was] that they contain[ed] Bojangles shift managers who worked for the company during a three-year period." *Id.* at 681. Here, by contrast, the Classes are defined in such a manner that members' benefits applications would necessarily have been subject to the respective policy or practice.

[3] *See Trauernicht v. Genworth Fin. Inc.*, 169 F.4th 459, 473-74 (4th Cir. 2026) ("[F]ederal courts may not certify a *damages* class under Rule 23 when … the proposed class includes both injured and uninjured class members[.]"); *Does 4, 7, 22, 27, 28, & 29 v. Musk*, 350 F.R.D. 246, 260 (D. Md. 2025) (argument asserting class lacked commonality because it included uninjured members "sound[ed] in standing, but arguments relating to absent class members' lack of standing do not have "anything to do with class certification"; certifying class under Rule 23(b)(2)); *Wilson v. Eagle Nat'l Bank*, 2023 WL 2478933, at *9 (D. Md. Mar. 13, 2023) (Rubin, J.) ("Plaintiffs … are not obliged to demonstrate that every putative Class member has standing at the class certification stage.").

Contrary to Defendants' contentions, if successful on their claims, all class members *would* be entitled to relief—the declaratory and equitable relief described in the Opening Memorandum, including injunctive relief, Plan reformation, equitable reopening of claims, the stripping of the Board's discretion, and removal of Board members (OM24-28). That some class members may not ultimately *recover benefits* after the award and implementation of the declaratory and equitable relief sought here has no bearing on Rule 23(b)(1) and (b)(2) certification and does not detract from the sufficiency of the revised proposed Classes.

## II. DEFENDANTS' INSISTENCE THAT THE CHALLENGED POLICIES AND PRACTICES DO NOT EXIST IS BOTH MISPLACED AND MERITLESS

Also unavailing is Defendants' contention that Plaintiffs fail to satisfy Rule 23(a)(2) commonality because the practice or policy challenged by each class is or was non-existent. *See* DM2-3, 7-20. Class certification proceedings are not a proving ground for deciding the strength of the movant's substantive claims, let alone a preliminary trial on the merits.[4]

Nor is there any merit to Defendants' denials of their own challenged policies and practices. Even in the absence of full class discovery, Plaintiffs have already developed ample evidence concerning the existence of the policies and practices, principally through Defendants' own documents and the testimony of their own witnesses. *See* OM6-8 (citing evidence).

Although they contend that the Board has properly exercised its discretion by "faithfully" following the Neutral Rule (DM8-9),[5] Defendants have perverted that rule to create an

---

[4] *E.g.*, *Spurlock v. Wexford Health Sources, Inc.*, 175 F.4th 232, 252 (4th Cir. 2026) ("[I]t is not appropriate to treat class certification as a merits-determination or to delve into the merits further than necessary to satisfy the requirements of Rule 23."); *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 95 F.4th 181, 188 (4th Cir. 2024) ("[I]n a class certification analysis, the court determines whether the Rule 23 requirements have been satisfied without considering whether the proposed class is likely to prevail on the merits.") (citing cases); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) ("likelihood of the plaintiffs' success on the merits … is not relevant to the issue of whether certification is proper"); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) ("an evaluation of the merits to determine the strength of plaintiffs' case is not part of a Rule 23 analysis").

[5] Once again, Defendants insinuate that the Neutral Rule is inviolable by noting that it resulted from collective bargaining (DM8), but such origin does not insulate Defendants from their ERISA-mandated duties and obligations.

insurmountable hurdle that applicants can never overcome if a Neutral Physician does not opine in their favor, no matter the quantum and weightiness of any other evidence that they present. That runs afoul of ERISA, which mandates that *all* evidence submitted in support of applicants' claims be *genuinely* considered, not merely acknowledged pro forma using boilerplate language.[6] Furthermore, although they maintain that there are instances where the Board may ask questions of a Neutral Physician or order another examination of an applicant (DM9), Defendants do not—and cannot—deny that, at the end of the day, what will *always* control are Neutral Physicians' or MAPs' opinions. "That is the *abandonment* of discretion, not the exercise of it." *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2018 WL 1258147, at *4 (N.D. Cal. Mar. 12, 2018).

Likewise, Defendants contend that there is "no Board policy" against consideration of the combined effect of impairments (DM3), but the testimony of their own witnesses and their own physician manuals demonstrate that this assertion is false.[7] Defendants point to instances where

---

*See Grossmuller v. Budd Co. Consol. Ret. Ben. Plan for Emps.*, 547 F. Supp. 111, 115 (E.D. Pa. 1982) (plan established pursuant to collective bargaining agreement did not "provide review procedures satisfying due process requirements of the ERISA statute and the implementing regulations"; existence of grievance and arbitration procedure as referred to in 29 C.F.R. § 2560.503-1(b)(2) did not eliminate need "to comply with the spirit and language of § 2560.503-1(b)(1)(iii) requiring that a benefit plan not be 'administered in a way which unduly inhibits or hampers the initiation or processing of plan claims'") (quoting regulation), *aff'd in relevant part*, 715 F.2d 853, 856-59 (3d Cir. 1983).

[6] *E.g.*, *Harrison v. Wells Fargo Bank*, N.A., 773 F.3d 15, 21 (4th Cir. 2014) (willful blindness breached fiduciary duties; administrator "shut [its] eyes to the most evident and accessible sources of information that might support a successful claim"); *Smith v. Cox Enters., Inc. Welfare Benefits Plan*, 127 F.4th 541, 545, 547 (4th Cir. 2025) (administrator "did not properly consider" medical report, which "denied [plaintiff] his statutory right to a full and fair review"); *D. K. v. United Behav. Health*, 67 F.4th 1224, 1237, 1241 (10th Cir. 2023) ("duties under ERISA" required administrator "to address medical opinions, particularly those which may contradict [its] findings" and refused to credit and "effectively shut [its] eyes" to treating physicians' medical opinions); *White v. Eaton Corp. Short Term Disability Plan*, 308 F. App'x 713, 719 (4th Cir. 2009) (plan "failed adequately to address medical evidence in [plaintiff's] favor"); *Learn v. Lincoln Nat'l Life Ins. Co.*, 724 F. Supp. 3d 494, 517 (W.D. Va. 2024) (plan "ignored substantial evidence of [plaintiff's] disability"); *Williams v. Metro. Life Ins. Co.*, 632 F. Supp. 2d 525, 541-42 (E.D.N.C. 2008) (failure to address several pieces of medical evidence), *aff'd*, 609 F.3d 622, 633-34 (4th Cir. 2010); *Dunbar v. Orbital Scis. Corp. Grp. Disability Plan*, 265 F. Supp. 2d 572, 583 (D. Md. 2003) (administrator "chose to disregard without discussion the opinions of three of plaintiff's treating doctors"); *Laser v. Provident Life & Acc. Ins. Co.*, 211 F. Supp. 2d 645, 655 (D. Md. 2002) (administrator "failed to consider all of plaintiff's medical evidence").

[7] Ex. J (Vincent Dep. Tr. 176:22-177:9, 179:14-21, 180:2-16) (evaluating applicants holistically is "*not part of the Plan*"); Ex. I at 3 ("the Plan neutral physicians do not confer with each other'), Ex. H at 4 (same), Ex. W at 3 (same), Ex. N at 3 ("it is not expected that the Plan neutral physicians will confer with each other"), Ex. P at 3 (same), Ex. T at 3 (same), Ex. Y at 3 (same) (Defendants' manuals, all directing Plan physicians not to consider cumulative

LOD applicants' different *orthopedic* ailments were looked at to determine whether they added up to the requisite number of LOD points (DM3, 14), but that is irrelevant and disingenuous. The Cumulative Impairments Class covers only *T&P* applicants, and Defendants do *not* consider the combined impact of different *types* of impairments (*i.e.*, neurological, orthopedic, psychiatric, and psychological).[8] Defendants cannot credibly argue that Plaintiffs must show at this stage that the combined effect of each class member's multiple impairments was not considered when they themselves—through their own testimony and documents—have declared that *it never is*.[9]

---

effect of applicants' impairments); Ex. J (Vincent Dep. Tr. 176:12-177:9, 179:14-21) ("Q. [T]he language in the training manual is 'stick to your lane.' So they are, by instructions, told to limit their analysis and their opinions to their area of their specialties, correct?... THE WITNESS: That is correct[.]"); Ex. B (Smith Tr. 185:23-186:11) (Board member Smith could not recall the last time that the Board had employed a vocational expert to weigh the cumulative impact of applicants' impairments). Although unnecessary to prove the policy's existence, Defendants' own exhibits relating to absent class members (ECF Nos. 359-12 to 359-14) only confirm it. *See* Defs.' Exs. 10 ([redacted], 11 [redacted]), 12 ([redacted]).

[8] Needless to say, Defendants' policy—which imprudently disregards a vast body of precedent besides the cases already cited in the Opening Memorandum (OM27 n36)—runs afoul of ERISA. *E.g.*, *Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 447 (7th Cir. 2019) (failure to consider combination of different impairment types on ability to perform job was fatal to benefits denial); *Curtis v. Hartford Life & Accident Ins. Co.*, 64 F. Supp. 3d 1198, 1214 (N.D. Ill. 2014) (reversing benefits denial where none of insurer's medical experts considered combined effect of plaintiff's physical and cognitive impairments); *DeGennaro v. Liberty Life Assur. Co. of Bos.*, 561 F. Supp. 2d 811, 817 (W.D. Mich. 2008) (administrator failed to "fully and fairly consider[] the potentially disabling impact of the combined effects of [plaintiff's] multiple medical conditions, as opposed to the particular impact of each separate condition in isolation, and of the effects of her medications"); *Turner v. Ret. & Ben. Plans Comm. Robert Bosch Corp.*, 585 F. Supp. 2d 692, 703 (D.S.C. 2007) ("It is quite well-established that when presented with a disability claim by an insured who suffers from multiple ailments, a plan administrator may not simply evaluate each condition independently to determine whether any single condition is sufficiently disabling. Rather, ERISA requires the administrator to evaluate the possibly disabling effect of all medical conditions taken together.") (citing cases); *Austin v. Cont'l Cas. Co.*, 216 F. Supp. 2d 550, 558 (W.D.N.C. 2002) ("It is consideration of the full panoply of ailments and their combined impact on capacity for work that is important, as appellate courts consistently have found[.]"); *Laser*, 211 F. Supp. 2d at 655 (administrator failed to consider "injuries and illnesses in conjunction with one another"); *Nickola v. Grp. Life Assur., Co.*, 2005 WL 1910905, at *9 (N.D. Ill. Aug. 5, 2005) ("Precedent teaches that an administrator making a disability determination must make a reasoned assessment of whether the total combination of a claimant's impairments justify a disability finding, even if no single impairment standing alone would warrant the conclusion.") (citing cases).

[9] Cherry-picked examples from Plaintiffs' administrative records that Defendants cite cannot whitewash their policy. Although different specialists suggested that other conditions needed to be *looked into* for [redacted] (DM14), Defendants offer *no* evidence that *they themslves* actually weighed the combined effect of multiple conditions in deciding whether he was entitled to benefits. Indeed, Defendants' decisions only illustrate [redacted] *see Skelton v. Radisson Hotel Bloomington*, 33 F.4th 968, 978 (8th Cir. 2022) (allowing fiduciary to escape liability because it designed system that ensured it would be unaware of unlawful result "would endorse willful blindness"). Similarly,

Defendants insist that consideration of education and training is proper because educational norming of neuropsychological test scores is to applicants' benefit (DM17-18). They concede, however (DM8 n.5), that "ERISA requires the Plan to be administered *as written* and to do otherwise violates not only the terms of the Plan but causes the Plan [itself] to be in violation of ERISA." *Gagliano v. Reliance Standard. Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008).

As to the use of racially based adjustments to neuropsychological test results, Defendants meekly note that the policy is no longer employed (DM19). But even after they issued a June 2021 memorandum that purported to halt it, their 2021 Neuropsychologist manual (issued the same day) *continued* to mandate it[10]; racial norms were applied to [redacted] test scores in [redacted] (Ex. M ([redacted])); and Plaintiffs previously adduced examples of physician reports showing that, as late as [redacted]). A revised manual proscribing the policy was not issued until August 2024 (Ex. I (at Ex. 3, p. 6))—well into the course of this litigation.

**III. PLAINTIFFS' CLAIMS ARE TYPICAL OF ABSENT CLASS MEMBERS' CLAIMS**

Equally without merit are Defendants' attacks on the typicality of Plaintiffs' claims. *See* DM29-32. As to the Education and Training Class, Plaintiffs Loper, McKenzie, McGahee, Olawale, Sims, and Smith were each exposed to Defendants' adoption and implementation of their uniform written policy in the Plan physician manuals that required consideration of T&P Disability

---

Defendants cite a footnote in Plaintiffs' summary judgment opposition, identifying a few instances where Plan physicians considered the combined effect of some of the impairments (DM3 (citing ECF No. 197 at 57 n.84)). That, too, is disingenuous because Defendants omit that they *rejected* several of those reports and that they never considered the cumulative impact of *all* of the impairment *types* combined—only a select few. Even if there are outlier instances where the cumulative effect of some, but not all, types of impairments was actually taken into account, that would not preclude certification. *Cf. Spurlock*, 175 F.4th at 252 (outlier instances of uninjured class members do not defeat showing of 23(b)(3) predominance of common questions).

[10] *Compare* Ex. N (Ex. 3 at pp. 1 ("Demographic Adjusted T score"), 6 ("Enter the raw score scale score and the T-score based on the Heaton norms.")) (August 2018 manual) *with* Ex. H (Ex. 3 at pp. 1 ("Demographic Adjusted T score"), 6 ("Enter the raw score scale score and the T-score based on the Heaton norms.")) (June 2021 manual).

applicants' educational level. Proving that they were exposed to Defendants' ERISA-violative conduct in adopting and implementing the same discrete and well-defined policy in each of the Plan physician manuals—which directed *all* Plan-compensated psychiatrists, neurologists, and neuropsychologists to consider a T&P applicant's educational level—and that they therefore share the same breach of fiduciary duties legal theory and claims on behalf of the Plan can be done so objectively and without recourse to examination of individual administrative records.

For example, Plaintiff Loper can be identified as a member of the Education and Training Class by reviewing Defendants' V3 dataset for applications, using [redacted] etc. [redacted] ( [redacted] Ex. O (NFL_ALFORD-0068253); *see* Barnett Reply Decl. ¶¶ 11, 14-19.[11]

Likewise, as to the Cumulative Impairments Class, Plaintiff McGahee, like absent members, can be identified as a class member by reviewing the V3 dataset for applications, using

[11] Similarly, whether Plaintiffs are typical of their respective classes for appeals of applications they submitted can be identified by reviewing the V3 data and Defendants' Plan physician manuals. Each class representative and absent member can be identified in the same manner. Even the absent class members whom Defendants identified— [redacted] (DM12 & n.19, 18 n.35, 20 n.40, 27 n.46)—do not require individualized review of their administrative records to determine whether the named Plaintiffs' claim and underlying theory is typical of their own claims. Proving that Plaintiffs' claims are typical of theirs can be done merely from the same common proof in the V3 data, Defendants' manuals, and the Plan to demonstrate that they, like other absent class members, were all similarly exposed to the same actions through Defendants' Plan physician manuals requiring consideration of educational level in breach of Defendants' fiduciary duties. *See* Barnett Reply Decl. ¶¶ 4-19.

[redacted] (*i.e.*, after October 15, 2020) ([redacted])).[12] Ex. O (NFL_ALFORD-0068253); *see* Barnett Reply Decl. ¶¶ 13, 20-22. The same is true for Plaintiffs Olawale and McKenzie.[13]

Moreover, all ten Plaintiffs, like absent members, can be identified as members of the Neutral Physician Class by reviewing Defendants' V3 dataset for applications, checking the [redacted] (*i.e.*, since the April 1, 2017 date of the Neutral Physician Rule). Ex. O (NFL_ALFORD-0068253, NFL_ALFORD-0068254); *see* Barnett Reply Decl. ¶¶ 7-10 . Each absent class member exposed to Defendants' steadfast unlawful practice of inflexible deference to the Neutral Physician Rule can be identified in the same manner.

---

[12] Defendants incorrectly assert that [redacted] is not typical because his application was submitted before the relevant time period. They ignore, however, that the class definition explicitly states that members have to have "received an *adverse determination*" between October 15, 2020 and the date of class certification. *See* OM1; Barnett Reply Decl. ¶ 22.

[13] Defendants' V3 dataset demonstrates that Plaintiffs Loper and Smith do not meet the class definition for the Cumulative Impairments Class. Plaintiffs accordingly withdraw them as proposed representatives of this class.

Finally, as to the Neuropsychological Testing Class, proving Plaintiffs Alford's, McGahee's (*see* ¶ 167), and Parsons' exposure to Defendants' adoption and implementation of a racially discriminatory policy in breach of their fiduciary duties would also prove the same for absent class members. No individualized review is required because Plaintiffs and absent class members seek to remedy a policy that was in place for, at the very least, the August 1, 2018-June 8, 2021 period, and likely over a much longer timespan. *See* Barnett Reply Decl. ¶ 12.

## IV. RESOLUTION OF THE CLAIMS ASSERTED ON BEHALF OF THE PROPOSED CLASSES WILL NOT ENTAIL EXAMINATION OF INDIVIDUAL CLASS MEMBERS' ADMINISTRATIVE RECORDS

Even though Plaintiffs expressly do not seek certification of their Count I ERISA § 502(a)(1)(B) wrongful denial of benefits claim (OM3, 25), Defendants recast Plaintiffs' Count II, III, and V claims collectively as such, arguing repeatedly that Plaintiffs must prove that the policies and practices challenged by the Classes were outcome-determinative to class members' individual benefits applications and that this cannot be done without examining each class member's administrative record. *E.g.*, DM7,11, 20. Defendants' arguments entirely miss the point.

The proposed Classes do not challenge individual benefits denials but, rather, Defendants' persistent and institutionalized failure to provide full and fair review and their continual breaches of fiduciary duty. Defendants' conduct has harmed the Plan's integrity by rendering it in a uniform state of non-compliance with ERISA by (1) in the case of the Neutral Physician Class, creating an irrebuttable presumption in favor of Neutral Physicians' or MAPs' opinions, irrespective of the evidence proffered by applicants; (2) in the case of the Cumulative Impairments Class, through the categorical refusal to consider the combined effect of T&P Disability applicants' different types of impairments; (3) in the case of the Education and Training Class, through the consistent improper consideration of T&P Disability applicants' education and training; and (4) in the case of the Neuropsychological Testing Class, through racially based adjustments to

neuropsychological test scores over at least a three-year period (and likely much longer).

Contrary to Defendants' contention, there is no "but-for" prerequisite that Plaintiffs must satisfy. It suffices for Rule 23(b)(1)(A) and (b)(2) purposes that class members' claims were decided *under a process governed by* unlawful practices and policies. As the court in *Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138 (S.D.N.Y. 2019), explained, "courts have certified classes under subsection (b)(2) where defendants allegedly employed an unlawful general policy that *affected the process for adjudicating all claims* of the class," *id.* at 154, not that the policy was the sole determinative factor. Certification is appropriate because the relief is *not* monetary. Plaintiffs' requested declaratory and equitable relief does *not* guarantee any awards of benefits.[14] By insisting that Plaintiffs need to show at the Rule 23 stage that absent class members' claims would have fared differently but for the challenged policy or practice and that this can be determined only by poring over each class member's administrative record (DM24-29), Defendants concoct a standard nowhere required by Rule 23(b)(1)(A) and (b)(2) precedent.

## V. EQUITABLE REOPENING OF CLAIMS IS AVAILABLE RELIEF HERE

Plaintiffs' requested injunctive relief, including altering and reforming how Defendants administer and implement the Plan's claims processes and directing the equitable reopening of claims, are appropriate forms of equitable relief because harm to "the integrity of the [Plan's claim and appeal] ... process ... is a valuable distinct right under ERISA that is separate from just [a] benefits decision."[15] Here, Defendants' discrete policies and practices in violation of ERISA §§

---

[14] *See id.* at 155 (23(b)(2) certification appropriate "because reprocessing of claims would not necessarily result in payment of benefits") (citing cases); *Howard v. Aetna Life Ins. Co.*, 2024 WL 1098789, at *11 (C.D. Cal. Feb. 27, 2024) ((23(b)(1)(A) certification appropriate because reprocessing of claims free of erroneous denial basis preserved right to "individualized review consistent with the terms of the plan" and did not guarantee payment of benefits).

[15] *Rawls v. Unum Life Ins. Co. of Am.*, 219 F. Supp. 2d 1063, 1066, 1068 (C.D. Cal. 2002) (injunction was "not a request for monetary relief" where it would remedy conduct that breached fiduciary duties in violation of ERISA, and would require reopening of all claims for the conduct of "meaningful review … in accordance with the requirements of ERISA" and enjoin alleged unlawful conduct); *Shapiro v. Aetna, Inc.*, 2023 WL 4348601, at *7 (D.N.J. June 5,

404 and 503, 29 U.S.C. §§ 1104 and 1133, harm the Plan by "*caus*[*ing*] *the Plan* [*itself*] *to be in violation of ERISA*." *Gagliano*, 547 F.3d at 239. Plaintiffs' requested declaratory and equitable relief—including enjoining conduct that harms the integrity of the Plan's claims process, equitable reopening of claims, and removal of Board members to remedy Defendants' past and ongoing violations of ERISA and breaches of fiduciary duty (¶¶ 374-77, 387)—are appropriate remedies for their § 502(a)(2) claim because this relief would inure to the benefit of the integrity of the *Plan's* claims process and bring Defendants' practices and policies into compliance with ERISA.[16]

Defendants' contention that the Ninth Circuit's decision in *Wit v. United Behav. Health*, 79 F.4th 1068 (9th Cir. 2023), precludes reprocessing relief here (DM19, 24, 33-34) is without merit. In *Wit*, the plaintiffs sought the entirely distinct "remand for reevaluation" remedy *only* in connection with a § 502(a)(1)(B) wrongful denial of benefits claim.[17] Unlike the plaintiffs in *Wit*, here Plaintiffs seek broad equitable relief. This includes injunctive relief, to reform Defendants' implementation of the Plan's claims process, mandate that Defendants conduct a full and fair review of claims in accordance with ERISA requirements, bring the integrity of the Plan's claims process into compliance with ERISA, and direct an equitable reopening of claims—all in order to remedy Defendants' adoption and implementation of improper policies and practices that breached

---

2023) ("A reprocessing order is an appropriate form of equitable relief for ERISA actions."); *see also C. P. ex rel. Pritchard v. Blue Cross Blue Shield of Ill.*, 705 F. Supp. 3d 1273, 1286 (W.D. Wash. 2023) (possible payment of benefits after reprocessing did not "transform the equitable injunctive remedy into one for money damages").

[16] *See Peters v. Aetna Inc.*, 2 F.4th 199, 215, 243 (4th Cir. 2021) (plaintiffs sought similar 502(a)(2) injunctive and other equitable relief "to remedy … past and ongoing violations of ERISA and breaches of fiduciary duty, including but not limited to enjoin further misconduct, … and removal"; court found "common issues of law and fact, including, for instance, … whether [the claims administrator] breached its duties to plans and plan participants … *in the claims process*; and whether its breach amounted to a harm as to the particular plan and plan participants").

[17] *See Wit*, 79 F.4th at 1089 ("For their breach of fiduciary duties claim, Plaintiffs sought injunctive and declaratory relief. *As to their denial of benefits claim, Plaintiffs sought reprocessing of their claims*[.]"); *Wit v. United Behav. Health*, 2025 WL 2227681, at *21 (N.D. Cal. Aug. 5, 2025) ("[B]ecause *Plaintiffs have not asked for reprocessing as a remedy on their breach of fiduciary duty claim*—and stipulated at the motion hearing that they do not intend to seek that remedy in this case—*the Court does not address whether that remedy is available.*").

fiduciary duties under ERISA §§ 404 and 409, 29 U.S.C. §§ 1104 and 1109, and have caused the Plan's claims process to be continuously in violation of the statute.[18]

Perhaps most informative of the speciousness of Defendants' arguments is their Janus-like pivot with respect to the Neuropsychological Testing Class. Defendants argue that this class cannot possibly be certified (DM3-4, 17-19, 27-28), yet in the *Bailey* action, they *agreed* to the Rule 23(b)(2) certification of a class of benefits applicants who underwent neuropsychological testing since January 1, 2012 and had their test scores adjusted using race-based norms.[19] Notably, while arguing here that the Court is legally prohibited from ordering class-wide injunctive relief to the Neuropsychological Testing Class (DM19), in the proposed *Bailey* class settlement, they have *acceded* to a permanent injunction. Similarly, in *Bailey*, Defendants have *consented* to a form of reprocessing relief (rescoring of tests and reconsideration of denied claims)—meanwhile

[18] *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (discussing availability of equitable and appropriate relief "pursuant to §§ 502(a)(2) and 409" for "breach of fiduciary obligations"); *Smith v. Sydnor*, 184 F.3d 356, 363 (4th Cir. 1999) (equitable remedies on behalf of the plan sought pursuant to §§ 409 and 502(a)(2) "is precisely what ERISA … provides"; "[a]lthough this remedy will undoubtedly benefit Smith and other participants in the Plan, it does not solely benefit the individual participants"; resolution of claims "rest[ed] upon the interpretation and application of *ERISA* rather than simply upon the interpretation and application of the … Plan"). In issuing regulations to implement ERISA § 503, 29 U.S.C. § 1133, as to disability benefits plans, the U.S. Department of Labor described how there are "*practices and behavior* which cannot be reconciled with the 'full and fair review' guarantee in section 503 of ERISA *and with the basic fiduciary standards* that must be followed in *implementing* the *plan's* claim procedures." 81 Fed. Reg. 92316, 92319 (Dec. 19, 2016).

[19] Indeed, in a recent filing, Defendants asserted that the claims of the Neuropsychological Testing Class and the *Bailey* settlement class overlap (ECF No. 362), having already argued (incorrectly) that the former is subsumed by the *Bailey* action (DM20). Defendants do not, however, suggest that the *Bailey* class overlaps with, let alone subsumes, the other three Classes. Nor can they, because those Classes do not share identical factual predicates and theories with the *Bailey* plaintiffs, who alleged that they (1) applied only for NC benefits, (2) were awarded the "mild" category of NC benefits, and (3) did not receive the "moderate" level solely due to the use of racial norms. Compl., ¶¶ 20-24, 32-50, *Bailey v. The NFL Player Disability & Survivor Benefit Plan*, No. 1:23-cv-02661-JRR ("*Bailey*") (D. Md. Sept. 29, 2023) (ECF No. 1); *see In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 91 F.4th 174, 183 (4th Cir. 2024) (applying "identical factual predicate" doctrine and stating that "to authorize and approve a class settlement that seeks to settle materially distinct and non-litigated claims goes too far"); *McAdams v. Robinson*, 26 F.4th 149, 160-61 (4th Cir. 2022) (to have identical factual predicate, claims must "depend[] upon *the very same set of facts*"); *Brent v. Advanced Med. Mgmt., LLC*, 733 F. Supp. 3d 376, 384 (D. Md. 2024) (release is "broader than permitted in the Fourth Circuit" when it extinguishes more than claims with identical factual predicates); *see also Martin v. Wilks*, 490 U.S. 755, 762 (1989) ("[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings"; recognizing that uncircumscribed ability to settle non-litigants' claims would run headlong into "our deep-rooted historic tradition that everyone should have his own day in court," and would present serious due process concerns).

insisting that a Ninth Circuit decision (*Wit*) makes it impossible for the Court to order any form of reprocessing relief class-wide in this case.[20]

## VI. RULE 23(b)(1)(A) AND 23(b)(2) CERTIFICATION ARE APPROPRIATE

Defendants' arguments against Rule 23(b)(1)(A) and 23(b)(2) certification (DM33-40) fare no better. As to the former, Defendants contend that separate adjudications would not impose conflicting obligations on them (DM37-40), but they (again) completely ignore Plaintiffs' fiduciary duty breach claim. Where, as here, allegations "implicate misconduct in the management in [a] Plan as a whole, disparate lawsuits by individual participants would raise the specter of varying adjudications" for Rule 23(b)(1)(A) purposes. *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 459 (D. Md. 2014).[21] Absent certification, there is a risk of inconsistent adjudications concerning whether Defendants' fiduciary duty breaches injured the Plan, sufficient to warrant appropriate relief under § 502(a)(2), including injunctions to bring the Plan into compliance with ERISA, Plan reformation, equitable reopening of claims, and removal of Board members.[22]

[20] *See* Mem. of Law in Supp. of Joint Mot. for Entry of an Order Prelim. Approving Class Settlement, Conditionally Certifying the Proposed Class for Settlement Purposes Only, and Scheduling a Final Fairness Hearing at 5-7, 10-16, *Bailey* (May 29, 2026, ECF No. 79-1) (joint mem. detailing class-wide relief and arguing satisfaction of Rule 23(a) and (b)(2) criteria). Defendants' justification for their volte-face—that the *Bailey* class satisfies Rule 23 only because it is for settlement purposes, *id.* at 10—is unsupportable. Except for the element of manageability of classes certified under Rule 23(b)(3), the Rule 23 requirements are *not* relaxed for settlement classes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be *no* trial. But other specifications of the Rule … demand *undiluted, even heightened*, attention in the settlement context."); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 n.4 (3d Cir. 2015) ("Rule 23's rigors are *not* relaxed as to a settlement class; we simply do not weigh issues of trial management as they are irrelevant in such a situation."). Simply stated, Defendants cannot have it one way in *Bailey* and another in this case.

[21] *Accord In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (because allegations "implicate[d] misconduct in the management of the Plan as a whole, disparate lawsuits by individual participants would raise the specter of varying adjudications"; "allowing multiple actions, each of which would seek the same relief from the Defendants on behalf of the Plan, would potentially prejudice individual class members and would threaten to create incompatible standards of conduct for the Defendants"); *Cunningham v. Cornell Univ.*, 2019 WL 275827, at *8 (S.D.N.Y. Jan. 22, 2019) (because claims were "brought with respect to breaches of fiduciary duties to the Plans as a whole," any ruling with respect to one class member's claims "would not only impact other Plan participants but would risk incompatible judgments if separate actions required different remedial or equitable actions").

[22] All of Defendants' Rule 23(b)(1) cases (DM37-38) are easily distinguished. *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 495, 500 (D. Md. 1998), was a Fair Debt Collection Practices Act damages action. *Rhodes v.*

Case 1:23-cv-02653-RRR Document 136-3 Filed 09/18/26 Page 23 of 25

As to the latter, Defendants maintain that 23(b)(2) certification is improper because the absence of a common thread within any of the Classes and the need for individual examination of class members' administrative records show a lack of class cohesion, thereby foreclosing class-wide declaratory and equitable relief (DM33-37). Those derivative arguments merely repackage Defendants' attacks on the class definitions, the commonality and typicality elements, and the availability of equitable reopening. They fail for the reasons discussed in Sections I-V above.[23]

## CONCLUSION

For the foregoing reasons and those set forth in the Opening Memorandum, the Court should (i) certify the Classes pursuant to Rules 23(b)(1)(A) and 23(b)(2), and (ii) make the Class Representative and Class Counsel appointments requested in the Opening Memorandum (*see* OM28-29), save the minor modification noted above (*see supra* at 9 n.13).

---

*E.I. du Pont de Nemours & Co.*, 253 F.R.D. 365, 367, 381 (S.D.W. Va. 2008), was a medical monitoring action arising from water supply contamination, and the court denied 23(b)(1)(A) certification because determining whether each class member had experienced a significantly increased risk of disease and required medical monitoring would require extensive individual inquiries. In *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 633 (6th Cir. 2011), there was no risk of inconsistent adjudications because the question of whether the defendants even owed a fiduciary duty to class members turned on particular contract and funding arrangements with *each* member. Similarly, there was no risk of inconsistent adjudications in *Lutz Surgical Partners PLLC v. Aetna, Inc.*, 2023 WL 2153806, at *11-12 (D.N.J. Feb. 21, 2023), because the insurer's duties differed from plan to plan. In *Ballas v. Anthem Blue Cross Life & Health Ins. Co.*, 2013 WL 12119569, at *1-2, *13-14 (C.D. Cal. Apr. 29, 2013), the court held that certification under 23(b)(2) would be warranted if the 23(a)(1) numerosity element were satisfied and thus addressed 23(b)(1) certification "only briefly"; hence its discussion was *dictum*. Importantly, the plaintiff there did *not* sue on the plan's behalf, asserting only a § 502(a)(1)(B) wrongful denial of benefits claim.

[23] Defendants' Rule 23(b)(2) cases (DM34-35) are similarly off point. The unpublished *Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 427, 430-31 (6th Cir. 2009), involved a class whose disability benefits claims had been denied (or who had their benefits terminated) "after being subjected to any of the practices alleged in the Complaint," which necessarily required "individualized fact-finding" to determine who had been subjected to any one of a "group of loosely-defined practices" and thus even *belonged* in the class. Each class here challenges a single policy or practice, not a slew of them. *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 690 (D. Md. 2017), entailed a challenge to a finance company's auto-dialed calls, and the class lacked cohesion because the legality of the calls turned on individualized questions of whether class members consented to or revoked their consent to them. *Anderson v. Lab'y Corp. of Am. Holdings*, 2023 WL 1970953, at *7-11, *15 (M.D.N.C. Feb. 13, 2023), involved a challenge to a laboratory's billing practices, and class cohesion was lacking because "disparate factual circumstances" surrounded what constituted a "reasonable value" for each of the many thousands of tests ordered for class members. In *Lumpkin v. Farmers Grp., Inc.*, 2009 WL 10698662, at *4 (W.D. Tenn. Mar. 24, 2009), a race discrimination suit, class cohesion was unattainable by reason of the flawed class definition itself, which required extensive individualized fact-finding to determine whether class members had been "negatively impacted" by the defendant insurers' credit-scoring practice.

Dated: June 18, 2026

Respectfully submitted,

**SEEGER WEISS LLP**

By: *s/ Benjamin R. Barnett*
Benjamin R. Barnett
**SEEGER WEISS LLP**
325 Chestnut Street, Suite 917
Philadelphia, PA 19106
Telephone: (215) 553-7980
bbarnett@seegerweiss.com

***Counsel for Plaintiffs and for the Proposed Classes***

Christopher A. Seeger *(admitted pro hac vice)*
Diogenes P. Kekatos *(admitted pro hac vice)*
Caleb A. Seeley *(admitted pro hac vice)*
Hillary R. Fidler *(admitted pro hac vice)*
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com
dkekatos@seegereiss.com
cseeley@seegerweiss.com
hfidler@seegerweiss.com

Samuel L. Katz *(admitted pro hac vice)*
Julia M. Damron *(admitted pro hac vice)*
Noah T. Reid *(admitted pro hac vice)*
Yasha Torabi *(admitted pro hac vice)*
**ATHLAW LLP**
8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211
Telephone: (818) 454-3652
samkatz@athlawllp.com
julia@athlawllp.com
noahreid@athlawllp.com
yasha@athlawllp.com

***Counsel for Plaintiffs and for the Proposed Classes***

Jason S. Rathod
Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H Street, N.E.
Washington, DC 20002
Telephone: (202) 470-3520
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

***Counsel for Plaintiffs and Liaison Counsel***
***for the Proposed Classes***

Bryan F. Aylstock *(admitted pro hac vice)*
Justin G. Witkin *(admitted pro hac vice)*
Douglass A. Kreis *(admitted pro hac vice)*
Bobby J. Bradford (*admitted pro hac vice*)
**AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, PLLC**
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
BAylstock@awkolaw.com
JWitkin@awkolaw.com
DKreis@awkolaw.com
BBradford@awkolaw.com

Robert K. Scott *(admitted pro hac vice)*
Gerry H. Goldsholle *(admitted pro hac vice)*
**ADVOCATE LAW GROUP P.C.**
2330 Marinship Way, Suite 260
Sausalito, CA 94965
Telephone: (949) 753-4950
bob@advocatelawgroup.com
gerry@advocatelawgroup.com

***Additional Counsel for Plaintiffs***