**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| **STACEY BAILEY, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN, *et al.***<br><br>**Defendants.** | Case No. 1:23-cv-02661-JRR |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR ENTRY OF AN ORDER APPROVING FINAL CLASS SETTLEMENT AND CERTIFYING THE PROPOSED CLASS FOR SETTLEMENT PURPOSES ONLY**

## TABLE OF AUTHORITIES

**Cases** **Page**

*Alloways v. Cruise Web, Inc.*,
No. CV CBD-17-2811, 2019 WL 1902813 (D. Md. Apr. 29, 2019) .................................. 9

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2015) .................................................................... 9, 11, 21

*Birks v. Small Cmty. Specialists, L.L.C.*,
No. 8:23-CV-00837-BAH, 2024 WL 5344437 (D. Md. Dec. 10, 2024) ........... 7, 8, 11, 13

*Dated 8/8/88 v. Banner Life Ins. Co.*,
28 F.4th 513 (4th Cir. 2022) ......................................................................... 9, 21

*Durm v. Am. Honda Fin. Corp.*,
No. CV WDQ-13-223, 2015 WL 6756040 (D. Md. Nov. 4, 2015) ................................... 9

*Erny on behalf of India Globalization Cap., Inc. v. MuKunda*,
No. CV DKC 18-3698, 2020 WL 3639978 (D. Md. July 6, 2020) .................................... 9

*Feinberg v. T. Rowe Price Grp., Inc.*,
610 F. Supp. 3d 758 (D. Md. 2002) ........................................................ 9, 10, 13

*Goodlaxson v. Mayor & City Council of Baltimore*,
776 F. Supp. 3d 311 (D. Md. 2025) .......................................................... 8, 9, 13

*Gould v. Alleco, Inc.*,
883 F.2d 281 (4th Cir. 1989) ........................................................................... 18

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ................................................................ 7, 8, 9, 10

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020) ......................................................................... 7, 10

*Kappel v. LL Flooring, Inc.*,
91 F.4th 174 (4th Cir. 2024) ............................................................................. 21

*Lewis v. Precision Concepts Grp. LLC*,
No. 1:18CV64, 2021 WL 7185505 (M.D.N.C. Mar. 23, 2021) ....................................... 13

*McAdams v. Robinson*,
26 F.4th 149 (4th Cir. 2022) ........................................................................ 10, 21

*Mikhlin v. Oasmia Pharm. AB*,
2021 WL 1259559 (E.D.N.Y. 2021) ........ 12

*Sharp Farms v. Speaks*,
917 F. 3d 276 (4th Cir. 2019) ........ 11

*Thompson v. Metro. Life Ins. Co.*,
216 F.R.D. 55 ........ 12

**Statutes**

12, VI.C.6-7 ........ 25

42 U.S.C. § 1981 ........ 12

**Rules**

Fed. R. Civ. P. 23(a) and (b); (c) ........ 25

Fed. R. Civ. P. 23(e) ........ 6, 9, 25

Fed. R. Civ. P. 23(e)(2)(A) ........ 7

Fed. R. Civ. P. 23(e)(2)(A)-(D) ........ 6

Fed. R. Civ. P. 23(e)(2)(B) ........ 7

Fed. R. Civ. P. 23(e)(2)(c)(i)-(iv) ........ 9

Fed. R. Civ. P. 23(e)(2)(C)(ii) ........ 13

Rule 23 ........ 6, 7, 15, 17

Rule 23(e)(2) ........ 7

Rule 23(e)(2)(C)(i) ........ 11, 13

Rule 23(e)(2)(D) ........ 14

Rule 23(e)(3) ........ 9

Rule 23(f) ........ 11

# TABLE OF CONTENTS

I. INTRODUCTION ... 1
II. SUMMARY OF SETTLEMENT AND NOTICE ... 1
A. Class Definition ... 1
B. Summary of Relief ... 2
C. Notice Implementation ... 3
D. Responses to Notice and Objections ... 3
III. LEGAL STANDARD FOR FINAL APPROVAL ... 4
A. Proposed Class Representatives and Class Counsel Adequately Represented the Class ... 5
B. The Settlement Was Negotiated at Arm's Length by Informed Counsel ... 5
C. The Relief Provided by the Approved Settlement is Fair, Reasonable, and Adequate ... 7
i. The Benefits of the Proposed Settlement Outweigh the Costs, Risks, and Delay of Trial and Appeal ... 9
ii. The Convenience and Well-Designed Administration of the Settlement Relief Supports Final Approval ... 11
iii. The Attorneys' Fees, Costs, and Expenses Award and the Class Representative Service Awards ... 12
iv. The Agreements Made in Connection with the Proposed Settlement Are Typical and Support Final Approval ... 12
D. The Proposed Relief Treats Settlement Class Members Fairly Relative to One Another 12
E. Notice Satisfied Rule 23 and Due Process ... 13
IV. THE COURT SHOULD OVERRULE ALL OBJECTIONS ... 15
A. Non-Class Members and Individual Question Objections Should be Overruled ... 16
B. Individual, Non-Settled Issues Should Have No Impact on Final Approval ... 17
C. Objections Based on Misrepresentations Should be Overruled, Not Only Because They Were Achieved Through Misrepresentations, But Because They Are Substantively False ... 17
i. Release of all ERISA rights ... 18
ii. No opt-out opportunity ... 19
iii. Exclusions from the Rescoring Protocol ... 20
iv. The injunction prohibiting the use of race ... 21
v. Categorization of certain awarded benefits ... 22
V. CONCLUSION ... 23

## I. INTRODUCTION

This motion asks the Court to approve a class action settlement resulting from a complex, years-long negotiation. The settlement identifies the Players who were subjected to the practice of race-based adjustments, provides a rescoring and adjudication mechanism for those Players whose benefit claims were materially impacted by the practice, and restores those Players to the position they would have maintained but for the practice by (1) paying full benefits retroactively and prospectively to the Players, and (2) providing 6% interest on any retroactive awards.

A series of similar objections propose that this settlement was the product of collusion, and through it Players release ***everything*** and receive ***nothing***. Such allegations are objectively false. There was no collusion. And the release given by Players under this settlement is limited to claims arising from or relating to the facts alleged in the Complaint, and nothing more. Finally, this settlement provides make-whole relief on a scale that no court could otherwise implement. Players who, for example, have long since lost the right to claim benefits due to the statute of limitations or their failure to exhaust administrative remedies will see those claims resurrected – and potentially rewarded – under this settlement.

In sum, the settlement is a fair one, and the relief it provides far exceeds what Class Members could reasonably expect to recover in individualized litigation, particularly when balanced against the risk and costs of litigation. As such, the Court should approve the settlement.

## II. SUMMARY OF SETTLEMENT AND NOTICE

To assist in the Court's review, the parties provide the below summary of the Preliminarily Approved Class Definition and Relief.

### A. Class Definition

The parties seek Final Approval of the preliminarily approved class, defined as:

all persons (other than white, non-Hispanic persons) who (i) are participants in any of the Plans; (ii) applied for 88 Plan benefits, Total and Permanent ("T&P") disability benefits, Line of Duty ("LOD") disability benefits, and/or Neurocognitive ("NC") benefits under one or more of the Plans from January 1, 2012 to the present; (iii) underwent neuropsychological testing in connection with that benefits application; and (iv) had their neuropsychological test scores adjusted using (non-white) race-based demographic adjustments.

**B. Summary of Relief**

| SUMMARY OF SETTLEMENT BENEFITS | |
|---|---|
| **Prohibition on Race-Based Adjustments** | Defendants are permanently prohibited from using race-based demographic adjustments in the administration of neuropsychological tests for any Plan participant. *Settlement Agreement § VI. A.* ECF 79-3 at p. 14. |
| **Rescoring Protocol** | All eligible class members' prior neuropsychological tests, dating back to applications filed on/after January 1, 2012, will be rescored using race-neutral methodology under a Rescoring Protocol designed by the parties with the advice of experts. Results are reviewed first by Plaintiffs' Expert, then by Defendants' Expert, and—where the two experts do not agree—a Neutral Third Expert whose conclusion is final. *Settlement Agreement § VI. B.* ECF 79-3 at p. 14. |
| **Retroactive Benefit Reconsideration** | Any class member whose rescored test demonstrates entitlement to a higher level or new benefit will receive the full past due benefits from two months prior to the rescored application. *Settlement Agreement § VI. C.* ECF 79-3 at p. 19. |
| **Interest on Retroactive Benefits** | Qualifying class members who are entitled to past due benefits will receive simple interest on that amount at the rate of six percent (6%) per annum, calculated from the date benefits would have originally been paid through the date of actual payment. *Settlement Agreement § VI. C. 3.* ECF 79-3 at p. 20. |
| **Waiver of Limitations Defenses** | Defendants waived any statute of limitations defense or damages-limitation provision against qualifying class members with respect to retroactive benefit claims arising under the Settlement. *See Memorandum of Law in Support of Joint Motion for Entry of an Order Preliminarily Approving Class Settlement, Conditionally Certifying the Proposed Class for Settlement Purposes Only, and Scheduling a Final Fairness Hearing,* Doc 79-3 at p. 31. |

| | |
|---|---|
| **No Reduction of Existing Awards** | No class member's current benefit award will be reduced as a result of the rescoring process, regardless of outcome. *Settlement Agreement § VI. B. 10.* ECF 79-3 at p. 18. |
| **Attorneys' Fees and Service Awards Paid Separately** | All attorneys' fees, costs, expenses, and service awards are paid by Defendants separate from and in addition to any benefits payable to Settlement Class Members. No class member's recovery is reduced by any fee or service award. *Settlement Agreement § VIII.E.* ECF 79-3 at p. 24. |
| **Preservation of Future or Different Benefit Claims** | Future benefit claims are preserved in accordance with the terms of the Plans and no claims that are not described in the Settlement Agreement are released. *Settlement Agreement § VI.C.* ECF 79-3 at p. 19 |

### C. Notice Implementation

Initial Notice was mailed to 631 Class Members within thirty days of preliminary approval. Of those, twenty-three have been returned as undeliverable to date. Notice to those Class Members was then attempted via email at their last known email addresses (with one pending at this time). The Amended Notice was mailed within five business days of its approval to 916 Class Members, including 616 initial Class Members and the 300 additionally identified Class Members, and was emailed to the 15 initial Class Members whose Notices had been returned without an updated address. From the Amended Notice, six have been returned as undeliverable to date, and a follow-up email with the Amended Notice was sent to four of those Class Members (with two pending at this time). These returns equate to a 96.4% delivery rate for the initial Notice and 99.6% delivery rate for the Amended Notice.

### D. Responses to Notice and Objections

To date, Class Counsel have spoken to over 30 distinct members of the Class and several non-class members calling seeking information. All of those to whom Class Counsel spoke expressed gratitude and appreciation for the Settlement and the Relief achieved.

There were 114 objections timely received and filed with the Court. Of those, including the 102 identified in the Objection filed on behalf of Jason Alford *et al*., ECF 123,[1] thirteen (13) are not members of the Settlement Class.[2] One additional objection was also received and filed after the objection deadline. ECF 135. None of the timely-received objections from Members of the Settlement Class support denial of Final Approval. Each should be overruled.

## III. LEGAL STANDARD FOR FINAL APPROVAL

Although preliminary and final approval occur at different procedural stages, the inquiry is markedly similar, with a focus on whether the proposed class settlement is "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e). The factors for Final Approval under Rule 23 are not materially different from Preliminary Approval but require a more in-depth review after time for notice and an opportunity to object. At preliminary approval, the Court (at ECF 82) determined that final approval was likely to be granted and certified for purposes of judgment. *See* Fed. R. Civ. P. (e)(1)(B). For final approval, the Court is asked to confirm or reject the earlier determination, taking into consideration notice and any responses from members of the proposed class. *Id*.

In making its determination on Final Approval, a court must consider whether: (A) "the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D).

Further, the Fourth Circuit has developed "multifactor standards" for assessing whether a class-action settlement is "fair, reasonable, and adequate," often called the *Jiffy Lube* factors, which

---

[1] The *Alford* counsel's filing of an objection on October 1, 2026, at ECF 134 is untimely, but that filing appears to be properly described as a corrected objection rather than a new objection. To the extent any new arguments or bases for objection are asserted, they are untimely and should be overruled.

[2] *See* Objector Class Status, attached hereto as Exhibit A, identifying the status of each objector.

courts in the Fourth Circuit continue to apply alongside the Rule 23(e)(2) factors. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991); *In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) (quoting Fed. R. Civ. P. 23(e)(2)); *Birks v. Small Cmty. Specialists, L.L.C.*, No. 8:23-CV-00837-BAH, 2024 WL 5344437, at *4 (D. Md. Dec. 10, 2024). The Court should grant final approval because the proposed Settlement is fair, reasonable, and adequate and the Notice satisfied Rule 23 and due process.

### A. Proposed Class Representatives and Class Counsel Adequately Represented the Class

Rule 23 requires courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Plaintiffs' counsel have extensive experience in litigating class action cases, have a nationwide complex litigation practice, extensive experience in litigation involving the Employee Retirement Income Security Act including prior ERISA class actions and have dedicated resources and time to resolve this matter. *See* Dkt. No. 28-2 (qualifications of Beasley Allen Law Firm Attorneys and Firm Resume) and Dkt. No. 28-8 (qualifications of Thomas O. Sinclair, Esq.). The Proposed Class Representatives have represented the Class both in-person at mediation and through multiple strategy sessions and discussions with counsel. Proposed Class Representatives and Class Counsel submit that Rule 23(e)(2)(A) is satisfied because they have zealously represented and pursued the best interests of the proposed Class as evident from the results achieved in the Settlement.

### B. The Settlement Was Negotiated at Arm's Length by Informed Counsel

A key consideration in determining whether a class-wide settlement is fair, reasonable, and adequate is whether the parties "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158-59. The Parties reached the Settlement Agreement

through arm's-length, good faith negotiations that spanned over two years. While the case "procedurally speaking—is not very advanced, nor has any formal discovery occurred, the parties engaged in a vigorous informal discovery process," which is sufficient to demonstrate the Settlement's procedural fairness. *See Goodlaxson v. Mayor & City Council of Baltimore,* 776 F. Supp. 3d 311, 333 (D. Md. 2025). As in *Birks v. Small Cmty. Specialists, L.L.C.*, "Defendants provided substantial informal discovery to allow Class Counsel to intelligently evaluate the Settlement offered against the risks and benefits of continued litigation." No. 8:23-CV-00837-BAH, 2024 WL 5344437, at *5 (D. Md. Dec. 10, 2024) (citing *In re Jiffy Lube*, 927 F.2d at 159 (recognizing that informal discovery can provide satisfactory information prior to preliminary approval).

The record reflects a substantial exchange of information and expert work in a two-year, mediator supervised negotiation with multiple in-person mediation days, numerous calls, thousands of pages of Plan and participant material productions, and a July 11, 2025 Term Sheet. Prelim. Mem., ECF 79-1 at pp. 12, 27. Through confirmatory discovery, Defendants produced relevant documents and information and Class Counsel, with the assistance of Plaintiffs' Expert, were able to assess the possible scope and impact of the race-based adjustments and reviewed the process to identify Class Members and those whose scores should be excluded under the terms of the Settlement.

Moreover, Class Counsel have substantial experience serving as class counsel in a multitude of complex class actions including through successful jury trial, and, as such, were well-positioned to assess the benefits of the proposed Settlement balanced against the strengths and weaknesses of their claims and Defendants' defenses. Additionally, the Parties retained mediator Hon. Gerald E. Rosen (Ret.) in September 2024, with the first round of mediations occurring in October 2024 and additional mediation sessions continuing until July 11, 2025. Indeed, "the aid of

'extensive formal mediation' is a 'hallmark[ ] of a non-collusive, arm's-length settlement process.'" *Erny on behalf of India Globalization Cap., Inc. v. MuKunda*, No. CV DKC 18-3698, 2020 WL 3639978 at *2 (D. Md. July 6, 2020) (internal citation omitted).

**C. The Relief Provided by the Approved Settlement is Fair, Reasonable, and Adequate**

The third factor under Rule 23(e), the relief provided, takes into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(c)(i)-(iv). In the Fourth Circuit, "[t]he fairness analysis is intended primarily to ensure that a 'settlement is reached as a result of good-faith bargaining at arm's length, without collusion.' " *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022) (quoting *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (alteration omitted) (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991))). To that end, in assessing the procedural fairness of a settlement, courts have generally considered the following *Jiffy Lube* factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [particular] area of . . . class action litigation." *Alloways v. Cruise Web, Inc.*, No. CV CBD-17-2811, 2019 WL 1902813, at *9 (D. Md. Apr. 29, 2019) (quoting *In re Jiffy Lube*, 927 F.2d at 158–59). This Court has recognized that there is a "strong presumption in favor of finding a settlement fair*." Durm v. Am. Honda Fin. Corp.*, No. CV WDQ-13-223, 2015 WL 6756040, at *4 (D. Md. Nov. 4, 2015) (citations omitted).

Reasonableness "at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *See, e.g.*, *Goodlaxson*, 776 F. Supp. 3d at 335; *Feinberg v. T. Rowe Price Grp., Inc.,* 610 F. Supp. 3d 758, 769 (D. Md. 2022). The

Court need not "decide the merits of the case nor substitute its judgment of what the case might be worth for that of class counsel," but "must at least satisfy itself that the class settlement is within the 'ballpark' of reasonableness." *Feinberg*, 610 F. Supp. 3d at 769 (quoting *McAdams v. Robinson*, 26 F.4th 149, 160 (4th Cir. 2022)).

When it comes to adequacy, the Fourth Circuit, again, turns to *Jiffy Lube* for the following factors:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*1988 Tr. for Allen Child. Dated 8/8/88*, 28 F.4th at, 526 (quoting *In re: Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). Consideration of these factors further supports final approval, particularly where, as here, Defendants consent to the relief making Settlement Class Members whole for any benefits denied due to disability determinations that were impacted by the use of race-based demographic adjustments.

Here, the complaint sought an "injunctive remedy requiring Defendants to reconsider any claims which were impacted by the discrimination described herein and provide the relief required by the [p]lan terms to any resultant award of benefits with said reconsideration to be supervised by Class [C]ounsel." ECF 1 at p. 32. That relief has been obtained with an injunctive remedy secured in the Settlement equal to or exceeding what Class Members could recover in litigation. The Parties have agreed to an injunctive remedy directing the Plans to implement race-neutral rescoring, which is a recovery at least equal to what Plaintiffs could obtain after trial and appeal on the claims in their complaint. Ultimately, the process will make each affected player whole through the implementation of the Rescoring Protocol and any resulting benefit payment. Weighed

against the risks, costs and delays of continued litigation and eventual appeals, the proposed Settlement is well within the range of possible judicial approval.

#### i. The Benefits of the Proposed Settlement Outweigh the Costs, Risks, and Delay of Trial and Appeal

*First*, "Rule 23(e)(2)(C)(i), and the first two *Jiffy Lube* adequacy factors focus on the relief provided" in light of the strength of Plaintiff's case and the existence of difficulties of proof or strong defenses. *Birks v. Small Cmty. Specialists, L.L.C.*, No. 8:23-CV-00837-BAH, 2024 WL 5344437, at *5 (D. Md. Dec. 10, 2024). Indeed, "[t]he most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F. 3d 276, 299 (4th Cir. 2019) (citing *Berry v. Schulman*, 807 F.3d 600, 614-15 (4th Cir. 2015)).

Plaintiffs maintain they would succeed if the case were to proceed to trial and Defendants dispute the merits and deny liability as to Plaintiffs' claims under both ERISA and Section 1981. The Parties recognize that there is significant uncertainty about the outcome. To prevail, Plaintiffs would need to defeat Defendants' dispositive motion(s), engage in protracted discovery, overcome any statute of limitations defenses as to certain claims, prove the Defendants' knowledge and use of race-based adjustments to neuropsychological testing, prevail on a contested motion for class certification and potentially defend an interlocutory appeal under Rule 23(f), successfully oppose summary judgment concerning their ERISA and Section 1981 claims, obtain a verdict following a complex trial involving disputed scientific issues that could last many weeks, if not longer, and successfully defend class certification and the verdict on appeal.

The difficulty of obtaining class certification against these Defendants is not hypothetical. Here, although Plaintiffs allege a single practice, Defendants dispute the existence of any such practice, and in addition assert that each Class Member's entitlement to relief would require

individualized review of testing data, medical history, and Plan eligibility, making contested class certification uncertain. Plaintiffs dispute that such an individual assessment or review is dictated because of the single practice alleged in the Complaint but recognize the issue would be disputed and settlement removes the associated risk. The Settlement's Rescoring Protocol addresses this problem by providing a structured, expert-driven process for conducting that review on a class-wide basis in the context of the Parties' Settlement.

Defendants also assert that Plaintiffs would face difficulty achieving class-wide relief under 42 U.S.C. § 1981, another point with which Plaintiffs disagree. Whether the administration of claims under the Plans using racial filters in cognitive test scores constitutes "purposeful discrimination" would undergo much contested litigation, trial, and appeals lasting years. Moreover, litigation on this issue would inevitably involve a complex battle of experts on questions including whether the use of race-based demographic adjustments in neuropsychological testing constituted discrimination, the impact of those adjustments on benefit determinations, and the existence and extent of any resulting damages. A battle of experts on subject matter of this complexity "always adds an element of uncertainty as to the outcome." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 63 (S.D.N.Y. 2003 (citation omitted); *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *5 (E.D.N.Y. 2021).

The Settlement avoids these risks and provides immediate, concrete relief. Promptly after the final approval, the Rescoring Protocol will be implemented, and Class Members' neuropsychological testing will be rescored without race-based adjustments. Class Members who are determined to be entitled to a new or higher benefit will receive a lump sum payment of Past Due Benefits Amount plus interest. Further, under the Settlement, Defendants have waived statute of limitations and damages-limitation defenses, potentially resulting in higher recoveries than Class Members could obtain through individual litigation and allowing additional Class Members

to receive more relief than may have been possible if the limitations were contested. Consequently, the Parties and Counsel agree that the immediacy and certainty of relief under the Settlement outweigh the substantial risks of continued litigation.

*Second*, "Rule 23(e)(2)(C)(i) and *Jiffy Lube* adequacy factor three require the Court to consider the likely duration and expense of continued litigation." *Birks*, 2024 WL 5344437, at *5. Given the posture of the case, "a resolution would be years away should the case proceed." *Goodlaxson*, 776 F. Supp. 3d at 334. Moreover, the expense resulting from further ligation would be substantial given the number of potential class members and length of time involved, which would result in voluminous discovery and many fact and expert depositions.

*Third*, while it is a *Jiffy Lube* factor, "a defendant[ʻs] ability to withstand a greater judgment standing alone, does not suggest that the settlement is unfair." *Lewis v. Precision Concepts Grp. LLC*, No. 1:18CV64, 2021 WL 7185505, at *4 (M.D.N.C. Mar. 23, 2021) (internal citation omitted); *see also Feinberg*, 610 F. Supp. at 769 ("[A]lthough Defendants' solvency is not contested, it does not weigh against approval of the proposed settlement").

**ii. The Convenience and Well-Designed Administration of the Settlement Relief Supports Final Approval**

In considering a final approval motion, the Court must evaluate "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the benefit determination and distribution process is well-tailored for the convenience and benefit of Class Members. The procedure was negotiated at length and included the assistance of both Plaintiffs' and Defendants' experts.

Under the Rescoring Protocol, Class Members' previous scores used by the Plans in making benefit award determinations will be converted to raw scores, rescored without using race as a consideration, and then reviewed by one or more independent neuropsychology experts. SA, §§

VI.B.3-7. ECF 79-3 at pp. 14-17. The expert review process, including the roles of Plaintiffs' Expert, Defendants' Expert, and the Neutral Third (Dr. Jason Soble,[3] whose conclusions are dispositive), is described in detail in the Settlement Agreement and in the Motion for Preliminary Approval. This method of calculating and administering each Class Member's impairment and benefits is fair and reasonable and is intended to remove any potential impact of race-based adjustments from the benefit award determinations made by the Plans.

#### iii. The Attorneys' Fees, Costs, and Expenses Award and the Class Representative Service Awards

The Parties have not reached an agreement on Plaintiffs' application for Attorneys' Fees, Costs, and Expenses or Class Representative Service Awards. Class Counsel filed a separate Fee Petition, which Defendants opposed. But, regardless of that result, Attorneys' Fees, Costs, and Expenses and Class Representative Service Awards will be paid separately from and in addition to any relief that flows to the Class and pursuant to the Settlement Agreement "shall not affect the other terms of the Settlement.". SA, §§ VIII. A-E. ECF 79-3 at pp. 23-24.

#### iv. The Agreements Made in Connection with the Proposed Settlement Are Typical and Support Final Approval

The substantive terms of the Settlement are set forth in the Settlement Agreement, and a sample Determination Letter to be sent to Settlement Class Members following completion of the Rescoring Protocol and benefit eligibility review is attached as an exhibit to the Settlement Agreement. ECF 79-3 at p. 36. No other agreement between the Parties exists.

### D. The Proposed Relief Treats Settlement Class Members Fairly Relative to One Another

The final element for consideration under Rule 23(e)(2)(D) is whether the proposed settlement treats Settlement Class Members equitably in relation to one another. This is an

[3] https://www.psych.uic.edu/profile/jason-r-soble

equitable relief Settlement in which all Settlement Class Members are treated the same through the performance of the injunction. All Settlement Class Members are entitled to a review of their prior claims and, for those who meet the agreed-upon eligibility criteria, a rescoring of prior neuropsychological tests and reconsideration of benefit determinations. In addition, Class Members will receive retroactive payment for the benefits newly awarded, if any, with 6% per annum interest. Accordingly, no Class Member will receive benefits from the Settlement beyond those flowing from implementation of the injunctive remedy and no Class Member will receive benefits at the expense of another Class Member. Ultimately, each eligible Class Member will have race-based adjustments removed from their pre-Settlement benefit determinations and, should the removal result in new entitlement to or an increase in benefits, will receive 100% of what they would have received had race-based adjustments never been applied, plus 6% per annum interest, with no limitation on damages or statute of limitations applied. Furthermore, the Class Representatives' claims are treated the same as all other Class Members under the Settlement.

**E. Notice Satisfied Rule 23 and Due Process**

The Notice and Amended Notice provided to the Settlement Class, as approved by the Court on June 1, 2026 and September 4, 2026, respectively, were fair, reasonable, and adequate under Rule 23 and comply with all requirements of due process. ECF 82, ECF 97. The Court initially approved the Notice as "the best notice practicable under the circumstances" that was "reasonably calculated" to apprise the Settlement Class of the action, the terms of the Settlement, and Class Members' rights to object and appear at the Final Fairness Hearing. Order Preliminarily Approving Settlement, ECF No. 82, ¶ 6. Thereafter, the parties conferred and additional Class Members were identified. In order to properly notify those newly identified Class Members and notify all Class Members of the Court's previously granted extension to the objection deadline and changed date for the Final Fairness Hearing, the parties sought to issue an Amended Notice. ECF

96. The Court granted that request, making the same findings as to the Amended Notice. Order, ECF No. 97, ¶ 6-7.[4]

In accordance with the Court's Order Preliminarily Approving Settlement, Defense counsel mailed the Court-approved Notice to 631 Class Members on June 30, 2026. That initial Notice included the date of the Final Fairness Hearing as September 16, 2026, with an objection date of August 26, 2026. After that mailing, however, the Court rescheduled the Final Fairness Hearing to October 20, 2026 and moved the objection deadline to September 29, 2026. *See* ECF Nos. 86, 91. In addition to the change in dates, the parties identified additional Class Members to whom Notice should be provided. Because of the changed dates and additional Class Members, the parties sought and the Court approved the Amended Notice, which was mailed on September 10, 2026, within five business days of the Order approving the Amended Notice, to 916 Class Members, and emailed to the 15 initial Class Members whose Notices had been returned without an updated address.

As of the filing of this Motion for Final Approval, only 24 of the 631 initial Notices and 5 of the 916 Amended Notices have been returned as undeliverable, and each of those Class Members was sent notice by email (except for three, which are pending), consistent with the Court's Order (ECF No. 97, ¶ 5). Approximately 96.4% of the initial Notices and 99.6% of the

[4] As part of their ongoing obligation and in an attempt to ensure compliance with all laws and rules of the Court, Class Counsel and Defense Counsel have continued to review Player information. Through that effort, an additional 9 Class Members have been identified who were inadvertently not included in the previous Notice campaign. All 9 of those Class Members, however, received actual notice and filed objections (which are addressed separately, herein). As of the date of this filing, Class Counsel and Defense Counsel have not identified any other members of the Class who were not provided the Court-approved Notice. The parties believe that reasonable efforts have been made to identify, and provide notice to, all Class Members, and they commit to applying the Settlement to any later-identified Class Members, if any.

Amended Notices were therefore likely received by the members of the Settlement Class. Under these circumstances, the Notice program satisfies Rule 23 and Due Process.[5]

## IV. THE COURT SHOULD OVERRULE ALL OBJECTIONS

First, non-Class Members do not have standing to object as the Settlement does not release or waive any rights on their behalf. Rule 23(e)(5)(A) only confers the right of objection on a "class member." Of the total 114 objections received (including the combined *Alford* filing), 13 are not members of the Settlement Class. Those 13 can be summarily overruled for lack of standing.

Next, a few objectors raise individual questions about their benefit status that are outside the scope of the Class in this case. Those individual benefit determination questions are not before the Court and do not, therefore, provide a basis to support denial of Final Approval. Furthermore, under the terms of the Settlement Agreement, those individualized claims are specifically preserved for those objectors to pursue. *Settlement Agreement* § VI.C. ECF 79-3 at p. 19.

Finally, the largest group of objections is based largely, if not entirely, upon what Class Counsel believes to be the (mis)representations made by Mr. Samuel Katz, proposed co-lead counsel for the as-yet uncertified *Alford* classes. As this Court is aware, Class Counsel filed a Report describing how those (mis)representations were likely intended to, and did, as discussed below, mislead Members of the Settlement Class. The Court has set that Report, ECF 108, for a hearing on October 13, 2026.

Of note, the structure of the Rescoring, the process, itself, does not appear to be the subject of any objection and it should not be. The Protocol was independently developed by the parties in *Bailey*, but the removal of race is not drastically different, if different at all, from that proposed as

[5] The recently identified Class Members who received notice via means other than direct mailing or email constitute less than 1% of the Class.

part of the *In re: NFL Players Concussion Litigation* by counsel for the *Alford* objectors, Seeger Weiss. ECF 123.

**A. Non-Class Members and Individual Question Objections Should be Overruled**

Undisputedly, non-Class Members do not have standing to object to the Settlement or to Final Approval. *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("non-class members have no standing to object, pursuant to a Rule 23(e) notice directed to class members, to a proposed class settlement."). Several of the objectors, including those presented as part of the *Alford* objection, are not members of the Class. For example, Caucasian Players are not members of the *Bailey* Settlement Class, yet two Caucasian players are included on the *Alford* objection.[6] Additionally, some, though they may appear to meet the Class Definition, did not have race-based adjustments applied to their neuropsychological testing and are, therefore, not Class Members.[7] At least three objectors never underwent neuropsychological testing and are not members of the Class for that reason.[8] Others are not members of the Class for other reasons.[9]

One objection, though in support of the Settlement, raises an individual question relating to vesting requirements and an amendment to the Plan that impacted those requirements.[10] *Bailey* does not address, nor does it, therefore, resolve that question. Some objectors, because of the reasons described immediately below, misunderstand the Release in this matter and object because

[6] John Estes and Aaron Francisco are Caucasian.

[7] Matthew Asiata, Robert Blanton, Qasim Mitchell, Jamize Olawale, Sidney Rice, Bobbie Williams, and Dewayne Robertson (ECF 115).

[8] Jamir Miller (ECF 135), Ovie Mughelli (ECF 114), and Tamarick Vanover (ECF 116). Mr. Tamarick Vanover filed not only his objection, but included a position statement from Ms. Sheilla Dingus. Therein, Ms. Dingus requested to speak on behalf of Mr. Vanover at the Final Fairness Hearing. Mr. Vanover is not a member of the Settlement Class.

[9] Vaughn Booker (applied for and received T&P and no race-based adjustments were applied to his testing).

[10] Ronald Davis, ECF 99.

they were led to believe that *Bailey* will extinguish their other, individual issues. Those issues are not addressed or released by this settlement and, therefore, the objections should be overruled.

For ease of review and in compliance with the Court's Order to identify Class Status of each objector, please see the attached Exhibit A, which contains the class status of each objector sorted by ECF and last name.

### B. Individual, Non-Settled Issues Should Have No Impact on Final Approval

Some of the timely-filed objections describe individual issues relating to testing, prior denials, and a different interpretation of the Plans. Those questions, such as the category of T&P benefits within which an eligible player is placed, were not raised nor were they resolved by *Bailey*. Because those issues are not before the Court and were not released by the Settlement Agreement, they should not be considered as part of the determination on Final Approval.

For example, Ronald Davis (ECF 99)[11] affirmatively supports the Rescoring Protocol but asks the Court to reform Plan terms, reinstate a claim benefit window, declare a vested classification, and award a specific monthly back payment. ECF 99 at pp. 2, 5-6. Adrian Ross (ECF 101), Amon Arnold (ECF 103), Michael Hamilton (ECF 119), and others similarly describe their own benefit histories or anticipated exclusions and seek individual re-review, guaranteed eligibility, or preservation of claims beyond the Settlement, here, and the Rescoring Protocol that will begin once, and if, Final Approval is granted.

### C. Objections Based on Misrepresentations Should be Overruled, Not Only Because They Were Achieved Through Misrepresentations, But Because They Are Substantively False

As described in Class Counsel's Report, others, outside of the *Bailey* matter, have misrepresented the litigation, the scope of the relief, and the scope of the release achieved in this

[11] ECF 99 "completely supersedes and replaces" Ronald Davis' earlier objection at ECF 98. ECF 99 at p. 2.

settlement. Fourteen timely objections were filed in addition to the *Alford* objection. Of those, all fourteen appear to be a direct result of those misrepresentations described in Class Counsel's Report and Motion (ECF 108) and discussed herein.[12] They mirror the *Alford* objection and at least one specifically names a conversation with *Alford*'s counsel. Class Counsel will address these, briefly, herein and fully respond at the Final Fairness Hearing, and/or the Hearing scheduled on October 13.

**i. Release of all ERISA rights**

Selective quotations and rearranging of the Settlement language does not change its scope. *See* ECF 123, at pp. 10-13. Each paragraph in the Settlement that includes release language ties the release directly to the allegations in the Complaint. Generally speaking, the release covers claims arising from or relating to the facts alleged in this action, including the use of race-based demographic adjustments or consideration of race and neurocognitive testing and benefit determinations before the effective date. SA § II.20; id. § VII. More specifically, Released Claims are limited to claims asserted in this Action or claims that "arise out of or relate in any way to the matters, facts or occurrences ***alleged in the Action***." SA § II.20 (emphasis added). The Settlement Agreement's reference to ERISA and other claims is expressly limited "***to the extent*** such claims arise from or relate to the ***allegations in this Action***." *Id.* (emphasis added). Sections VII.A and VII.B repeat that factual predicate limitation (because it is defined using the term "Released Claims"); the "interpreted broadly" language is likewise limited to "any and all claims that were brought or could have been brought, ***arising from or relating to the matters alleged in the Action***." *Id.* (emphasis added); Section VII.C's (titled "Release by Class Representatives") broader individual general release applies only to the two Class Representatives; and Section VII.D

[12] Some of these *pro se* objections even use identical language to the *Alford* objection and/or appear to be a form objection (including a check box).

preserves claims based on future events—it is the absence of a release. *Id.* §§VII.A-D. The governing law supplies the same boundary. A settlement may release unpleaded claims that depend on the very same set of facts but may not release materially distinct claims merely because they concern the same defendant, product, or statutory label. *McAdams v. Robinson*, 26 F.4th 149, 160–61 (4th Cir. 2022); *Kappel v. LL Flooring, Inc.*, 91 F.4th 174, 186–92 (4th Cir. 2024); *1988 Trust*, 28 F.4th at 526 n.8.

The Complaint in this matter alleged a uniform use of race-based adjustments in neuropsychological testing, regardless of the benefits for which the Player applied. The Settlement and release, likewise, are limited to the use of race-based adjustments applied to neuropsychological testing. The Relief, through the Rescoring Protocol, redetermination of benefits, and payment of any identified back payment plus 6% simple interest, is narrowly tailored to only address and remove the use of race-based adjustments in neuropsychological testing and the resulting impact. The Complaint was purposefully narrowly crafted to only address this issue and the Settlement and Release language are likewise narrowly crafted.

There is no valid objection, based on the actual language of the Complaint, the Settlement, or the Release, that "all" ERISA claims are released. All objections based on this misunderstanding, whether purposeful or genuine, should be overruled.

**ii. No opt-out opportunity**

Adrian Ross (ECF 101), Amon Arnold (ECF 103) and others object that the Settlement Class is non-opt out. The objections misunderstand the nature of an injunctive remedy and the applicable Rules and law. The 4th Circuit has explained that the mandatory Rule 23(b)(2) classes rest on uniform relief and uniform class interests, making opt out rights unnecessary. *Berry*, 807 F.3d at 612–14. Here, the cessation of race-based adjustments, and the uniform reassessment procedure are class-wide remedies. The prevalent basis underlying this category of objections

stems from, it appears, a misunderstanding of the scope of the relief. As noted throughout, the *Bailey* Settlement and Release language are limited to the claims asserted in the action or that arise out of or relate to what was alleged in the action. As described above, the Release is limited despite representations to the contrary. No objector has stated they affirmatively wish to opt-out in any way from what is actually a part of the Release or the relief achieved.

**iii. Exclusions from the Rescoring Protocol**

This basis for objection misunderstands the Plans and, perhaps, the nature of race-based adjustments. The exclusions from Rescoring are derived from the Plans' rules or the realities of medical science.

First, the Settlement Agreement expressly refers to exclusions flowing from the Plans themselves. Prior neuropsychological results were excluded from the Rescoring Protocol for this reason because removing race-based adjustments from a given neuropsychological test would not change the outcome of the prior benefits determination. There would, for example, be no possibility of a change in benefit determination for a Player who was ***awarded*** the benefit he sought. Similarly, rescoring could not change a prior benefit determination based on a Player's failure to comply with the Plans' medical-evaluation procedures. The same reasoning justifies the other exclusions from the Rescoring Protocol. For each listed exclusion, if rescoring occurred, the result would not change the existing benefit determination. For example, a Player could have undergone a neuropsychological evaluation ***yesterday*** that was not subjected to race-based adjustments (an application/evaluation that is outside the terms of the Settlement), and that "clean" evaluation found either no impairment (*i.e.*, no entitlement to benefits under the Plans) or no change in impairment (*i.e.*, consistent with a prior benefit determination). There is no reason to rescore an earlier neuropsychological evaluation when a more recent one completed without race-based adjustments supports the preexisting benefits determination.

Notably, no objector argues that the exclusions themselves are inappropriately applied in the Settlement or that the stated exclusions do not exist in the Plans. No objector supplies class wide evidence that these criteria fail to distinguish claims affected by the alleged practice from claims that were not. To the extent an objector asks the Court to either determine their vesting, categorization, or exclusion status under the Plans or that the Court should only approve the Settlement if those changes are mandated, doing so would require a reformation and rewriting of the Plans and would necessarily require individual determinations to be made on a per-player basis that is the antithesis of a uniformly applied injunctive remedy. This basis for objection should be overruled.

**iv. The injunction prohibiting the use of race**

The Settlement's forward-facing injunction is not merely retrospective acknowledgment of a prior directive. If, for example, an objector contends that race-based adjustments were used after June 8, 2021, the Agreement's permanent prohibition, enforcement provisions, and preservation of future claims remain material; that contention does not make the agreed relief illusory. Interestingly, though, the *Alford* objection not only alleges the injunction against future use of race-based adjustments is illusory, it also argues that the use of race-based adjustments continued after the June 8, 2021 letter. Both cannot be true. Class Counsel have reviewed, along with their expert, testing data for players after the directive and will address the substance of that argument at the Final Fairness Hearing.

It bears noting that many, if not all, objectors suggest that the entire Settlement provides no relief because of the misunderstanding attributed to the forward-looking injunctive relief. But this ignores that the Settlement also includes a waiver of statute of limitations and damage limitation terms within the Plans that may otherwise reduce the class. For example, in *Alford*, this Court determined the 42-month limitation in the Plans bar wrongful denial of benefit claims

involving players where the Board's final appeal letters were issued prior to August 9, 2019. That limitation applies to all claims alleged in *Alford* but does not apply to the Settlement Class seeking Final Approval, here. That relief is massive considering the cessation of race-based adjustments in June of 2021. If the *Bailey* settlement did not exist (or is never awarded Final Approval) and only *Alford* proceeds (assuming *Alford* achieves class certification), most of the objector's claims for wrongful denial of benefits based upon the use of race-based adjustments in neuropsychological scoring appear to be barred. Reliance on the as-yet-pending certification in *Alford* is not in the best interest of the members of ***either*** *Bailey's* or *Alford's* classes.

**v. Categorization of certain awarded benefits**

The categorical assertion that the Agreement excludes all Total and Permanent disability ("T&P") and Line of Duty ("LoD") claims is contrary to its text. Section VI.B.1(b) expressly includes several combined Neurocognitive/T&P and Neurocognitive/LoD application settings, including claims for a higher benefit denied while a lower one was awarded. Section VI.B.2(a) excludes testing associated with an approved T&P claim; it does not exclude every T&P claim. And the reason is simple: an award of T&P is the highest category of award a player could receive. What category of T&P benefits is not impacted by the use of race and so was not part of the Release or the relief in this matter. Section VI.B.2(c) applies only when a later or contemporaneous non-race adjusted examination also found no qualifying impairment. The relevant question is whether a particular prior determination was affected by the use of race-based adjustments, not whether the claimants benefit category bears the words T&P or LoD.

Some objectors take issue with the non-appealable nature of determinations resulting from the Rescoring Protocol. The Rescoring Protocol leads to a medical determination that is binding on the Plans. Review is a built into the Rescoring Protocol: Plaintiffs' expert makes the initial medical determination; a favorable determination is independently reviewed by Defendants'

expert; disagreements go to the agreed Neutral Third; and the Board is directed to apply the resulting medical determination to the governing Plan terms. *Id.* §§ II.16, VI.B.6-8. The Board is not given an open-ended right to redo that medical conclusion. Class Members also retain settlement enforcement rights and the right to make a new or different Plan claim. *Id.* §§ VI.B.12, VI.C.6-7.

## V. CONCLUSION

For all the above-stated reasons, the Parties respectfully request that the joint motion be granted and the Court enter an order: (a) approving the proposed Settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e); (b) granting final certification to the proposed Class for settlement purposes under Fed. R. Civ. P. 23(a) and (b); (c) appointing the proposed Class Representatives as Settlement Class Representatives; (d) appointing the proposed Class Counsel as Settlement Class Counsel; (e) enter the proposed Final Approval Order and Judgment dismissing this Action with prejudice and incorporating the releases set forth in the Settlement Agreement; and (f) authorize the Parties to implement the Settlement according to its terms.

Respectfully submitted this 6th day of October, 2026.

*<u>/s/ Christopher T. Nace</u>*
Christopher T. Nace (16442)
**NACE LAW GROUP**
1025 Thomas Jefferson Street, NW, Suite 810
Washington, D.C. 20007
Telephone: 202-463-1999
Facsimile: 202-223-6824
ctnace@nacelawgroup.com

W. Daniel "Dee" Miles, III (*pro hac vice)*
Alison D. Hawthorne (*pro hac vice*)
Leon H. Hampton, Jr. (*pro hac vice*)
Paul W. Evans (*pro hac vice*)
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**

*<u>/s/ Edward J. Meehan</u>*
Edward J. Meehan (04775)
Mark C. Nielsen (30913)
Jovana Vujovic (*pro hac vice*)
**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Ave. N.W., Suite 1200
Washington, D.C. 20006
Telephone: 202-857-0620
emeehan@groom.com
mnielsen@groom.com
jvujovic@groom.com
(signed and submitted by Christopher T. Nace with permission of Mr. Meehan)
Counsel for Defendants

218 Commerce Street
Montgomery, AL 36104
Telephone: 334-269-2343
Facsimile: 334-954-7555
Dee.Miles@BeasleyAllen.com
Alison.Hawthorne@BeasleyAllen.com
Leon.Hampton@BeasleyAllen.com
Paul.Evans@BeasleyAllen.com
(Signed by Christopher T. Nace with the
permission of W. Daniel "Dee" Miles, III)

Rebecca D. Gilliland (*pro hac vice*)
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
301 St. Louis Street
Mobile, AL 36602
Telephone: 251-308-1515
Facsimile: 334-954-7555
Rebecca.Gilliland@BeasleyAllen.com
(Signed by Christopher T. Nace with the
permission of Rebecca Gilliland)

Thomas O. Sinclair (*pro hac vice*)
**SINCLAIR LAW FIRM, LLC**
Post Office Box 59627
Birmingham, Alabama 35259
Telephone: 205-868-0818
Facsimile: 205-868-0894
tsinclair@sinclairlawfirm.com
(Signed by Christopher T. Nace with the
permission of Thomas O. Sinclair)

***Lead Counsel for Plaintiffs***

# CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2026, I filed a copy of the foregoing document using the Court's ECF/CM system, which will automatically send notice of such filing to all counsel of record in this matter and have served the following counsel via electronic mail:

Anillo Alvaro
Edward J. Meehan
Mark C. Nielsen
Michael L. Junk
Jovana Vujovic
**Groom Law Group, Chartered**
1701 Pennsylvania Ave. N.W. Suite 1200
Washington, D.C. 20006
Telephone: 202-861-5429
aia@groom.com
emeehan@groom.com
mnielsen@groom.com
mjunk@groom.com
jvujovic@groom.com

***Counsel for Defendants***

Christopher A. Seeger
Diogenes P. Kekatos
Hillary R. Fidler
55 Challenger Rd., 6th Fir.,
**Seeger Weiss LLP**
Ridgefield Park, NJ 07660
Telephone: 212-584-0734
cseeger@seegerweiss.com
dkekatos@seegerweiss.com
hfidler@seegerweiss.com

Benjamin R Barnett
**Seeger Weiss LLP**
325 Chestnut Str., Ste 917
Philadelphia, PA 19106
Telephone: 215-553-7980
bbarnett@seegerweiss.com

Sam Katz, Esq.,
Julia M. Damron
Noah T. Reid
**Athlaw LLP**
8383 Wilshire Blvd. Suite 800
Beverly Hills, CA 90211
samkatz@athlawllp.com
Telephone: (818)454-3652
samkatz@athlawllp.com
julia@athlawllp.com
noahreid@athlawllp.com

***Counsel for Objectors Jason Alford et al***.

*/s/ Christopher T. Nace*
Christopher T. Nace