**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

STACEY BAILEY, *et al.*,

Plaintiffs,

vs.

THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; *et al.*,

Defendants.

**No. 1:23-cv-02661-JRR**

**RESPONSE TO CLASS COUNSEL'S REPORT**

**INTRODUCTION**

Undersigned counsel, on behalf of Samuel L. Katz of Athlaw LLP, respectfully submits this brief response to the "Report" filed by Class Counsel on September 25, 2026 (ECF No. 108). Mr. Katz will appear in person on October 13, 2026, as directed by the Court in its September 30, 2026 Order (ECF No. 131), and will be prepared, if necessary, to address questions from the Court relating to the matters that Class Counsel raise in their Report. In the meantime, Mr. Katz's supporting Declaration sets forth the background of his relationship with the absent putative settlement class members in question and the nature of his communications with those absent members, correcting the multiple misstatements in the Report regarding the relationship and communications with current and former Athlaw LLP clients. The text message attached as Exhibit A to the Report was an entirely proper attorney-client communication to a client about the proposed Class Action Settlement Agreement (ECF No. 79-3) ("Settlement") and whether he should object to it. Additionally, Mr. Katz's acceptance of an invitation to speak at a forum regarding the Settlement was likewise not improper. The PowerPoint he presented primarily consisted of quotes from the Settlement along with screenshots of the Court-approved Notice (including all of Class Counsel's names and contact information) and was not an improper communication that warrants further investigation or action by the Court.

In their "Report," Class Counsel chose to mischaracterize Mr. Katz's critiques of the Settlement as "misinformation," presumably to undermine the validity of Objections that were forthcoming at the time and to paint them as an organized effort to instigate widespread opposition to the Settlement. The timing of their filing as well as the limited factual and legal support suggests that they did so as a preemptive strike against the legitimacy and strength of the then-anticipated objections that were filed four days later on behalf of 101 Objectors by counsel in *Alford v. The*

*NFL Player Disability & Survivor Benefit Plan*, No. 1:23-cv-00358-JRR ("*Alford*"), and other objections filed by *pro* se litigants (nearly all of whom are current, prospective, or former Athlaw LLP clients). That Class Counsel may *disagree* with Mr. Katz's critiques of the Settlement does not make those critiques "misinformation" designed to mislead or incite class members to oppose or opt out of the proposed mandatory class settlement. The Court should reject Class Counsel's speculative contentions, as well as their effort to launch a fishing expedition into Mr. Katz's privileged communications with his clients. The proper forum to address the strength of those critiques is the scheduled October 20, 2026 Fed R. Civ. P. 23(e)(2) Fairness Hearing, not through the sideshow of an unsubstantiated, open-ended investigation of Mr. Katz without any legal or factual basis.

## ARGUMENT

### THE DISPUTED COMMUNICATIONS WITH ABSENT PUTATIVE CLASS MEMBERS WERE ENTIRELY LEGITIMATE AND PROPER BECAUSE ATHLAW LLP MAY COMMUNICATE INFORMATION AND ADVICE TO ITS CLIENTS, AND THE POWERPOINT PRESENTATION CONTAINED ACCURATE INFORMATION INCLUDING FROM THE PUBLIC SETTLEMENT AND COURT-APPROVED NOTICE

The centerpiece of Class Counsel's "Report" is their assertion that Mr. Katz communicated "misinformation" about the Settlement and their insinuation that he mounted a campaign to stir absent class members into filing objections to the Settlement. *See* Report at 6-15. Relying on *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100-01 (1981), and similar cases concerning courts' authority to police communications with absent class members when abuses occur, they ask the Court to conduct an investigation into Mr. Katz's communications with absent class members, and they raise the specter of possible sanctions. Report at 15-16. Class Counsel's accusations are unfounded and their request for an investigation meritless. "[T]he mere possibility of abuses does not justify routine adoption of a communications ban." *Gulf Oil Co.*, 452 U.S. at 102, 104 n.16

(noting "stereotyped and conclusory statements" insufficient evidence for protective order); *Slavinski v. Columbia Assn, Inc.*, No. CIV. CCB-08-890, 2011 WL 1310256, at *3 (D. Md. Mar. 30, 2011); *see also In re M.L. Stern Overtime Litig.*, 250 F.R.D. 492, 500 (S.D. Cal. 2008) ("Court will not impose limitations based on speculation and conjecture").

Mr. Katz has represented retired NFL players for a decade in connection with claims for disability benefits under the Plan,[1] as well as for benefits claims under the class action settlement in the multidistrict *National Football League Players' Concussion Injury Litigation*, MDL No. 2323. *See In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 421-25, 436-48 (3d Cir. 2016), *aff'g*, 307 F.R.D. 351, 361-70 (E.D. Pa. 2015). It was in *that* context that past, present and prospective[2] clients communicated with him to obtain information and guidance about the Settlement. Mr. Katz did *not* solicit unrepresented parties for the purpose of objecting to the Settlement. Declaration of Samuel L. Katz, Exhibit 1, Paragraphs 10-11.

Class Counsel's Report incorrectly suggests the possibility that Mr. Katz interfered with their attorney-client relationship with absent class members. *See* Report at 5. That suggestion fails for one simple reason: they had no such relationship. The Court's June 1, 2026 Preliminary Approval Order (ECF No. 82) did not formally certify a class. As the Sixth Circuit has explained, "the main purpose of a Rule 23(e)(1) order … is to determine whether to give notice of the proposal [*i.e.*, a proposed settlement] to the class[.] … [P]reliminary approval of a class action settlement is at most a determination that there is what might be termed probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness. Thus, a Rule 23(e)(1) order is

[1] This memorandum adopts the shorthand definitions in the objections to the Settlement filed by Jason Alford *et al.* ("the *Alford* Objectors") on September 29, 2026 (ECF No. 123).

[2] Prospective clients are individuals who contacted Athlaw for legal advice, or to ask questions about legal matters, but have not yet formally retained the firm. Athlaw considers the communications with these prospective clients to be protected by the attorney-client privilege.

[only] a determination whether to send notice of a proposed settlement to a proposed class. What a Rule 23(e)(1) order does not do is actually certify a proposed class." *Wayside Church v. Van Buren Cnty., Michigan*, 103 F.4th 1215, 1222 (6th Cir. 2024) (citations and internal quotation marks omitted). Thus, "[c]ommunications with potential class members … [are] *not* communications with persons already represented by another lawyer." *Id.* at 1223 (emphasis added).[3]

At any rate, "nothing in Rule 23 prohibits class members from being represented by their own attorneys." *Chester v. Beard*, 2012 WL 4758346, at *1 (M.D. Pa. Oct. 5, 2012). Potential class members were entirely free to communicate with Mr. Katz about the Settlement. *See Wayside Church*, 103 F.4th at 1224 ("lawyers other than class counsel are well-situated—by knowledge and incentives alike—to point out to potential class members why their recovery is too low or class counsel's fees too high."); *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 313 n.30 (3d Cir. 2005) ("[T]here is a distinction between the unilateral action of a class member who seeks the advice of outside counsel, *often his or her prior counsel*, and the unsolicited communications from outside counsel designed to disrupt a proposed settlement." (emphasis added)); *see also Ross v. Wolf Fire Prot., Inc.*, 799 F. Supp. 2d 518, 526 (D. Md. 2011) (defendant "free to [appropriately] communicate with unrepresented prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit." (internal citations omitted)).

In this case, as explained in Mr. Katz's, the text message communication with a single absent class member referred to in Exhibit A by Class Counsel was with an individual who is a

[3] Indeed, Class Counsel would be hard pressed to assert a genuine attorney-client relationship with anyone other than their two named plaintiff clients. In contrast to Mr. Katz, who has communicated with, advised, and represented hundreds of retired NFL players over the course of a decade, Class Counsel's time records (ECF Nos. 88-2, 88-3) show that they had virtually no contact with class members during this case, and the scant contacts they did have occurred only *after* the Court granted preliminary approval of the Settlement. *See* ECF No. 88-3 at 67.

*current* Athlaw client who reached out to Mr. Katz for information and guidance about the Settlement. Exhibit 1, Paragraphs 9-21; *cf. Jones v. Fidelity Res., Inc.*, No. SAG-17-1447, 2020 WL 2112141, at *2, *4 (D. Md. May 4, 2020) (court "unable to make the significant finding required to invalidate a litigant's decision to opt out" of a class action based solely on single unverified allegation from one class member). Moreover, Athlaw was permitted to communicate with each of the 101 objectors who are former and current clients and who are absent class members, including some who were confused about the nature and extent of the relief the Settlement provides and the scope of the proposed release of all claims including ERISA claims. Exhibit 1, Paragraphs 8, 30.

Class Counsel's contentions about the substance of Mr. Katz's representations to his clients—and, in particular, their characterization of that substance as "misinformation"—are devoid of any factual support and are simply a matter of attorney opinion. Disagreement among counsel regarding legal issues and interpretations does not constitute improper "misinformation." *See Wayside Church*, 103 F.4th at 1223–24 ("Nor were… [solicitation] communications with potential class members improper on the ground that they 'appear[ed] to undermine the class settlement agreement.' To the contrary, some proposed settlements should be undermined, *see, e.g., Dry Max*, 724 F.3d at 721; and every proposed settlement should be subject to scrutiny before the court finally approves it.") Moreover, these issues can and should be fully and fairly addressed during the October 20th Fairness Hearing. There, the Court can consider, and resolve, the merits of the *Alford* Objectors' objections (ECF No. 123), which Mr. Katz helped author. What Class Counsel have done instead, however, is cast unwarranted and unsupported aspersions on the professional conduct of Mr. Katz for speaking with his existing or former clients who happen to be putative class members. Their self-serving and unsupported "Report" is little more than a

calculated preemptive strike against the *Alford* Objectors' objections to try to distract the Court from the validity of those objections and manufacture a time-consuming and disruptive sideshow in advance of the October 20th Fairness Hearing.

Importantly, there was nothing coercive in any of Mr. Katz's communications. *See Keystone Tobacco Co. v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151, 158 (D.D.C. 2002) (coercion occurs where communication "somehow overpowers the free will or business judgment of the potential class members"); *Jenifer v. Delaware Solid Waste Auth.*, 1999 WL 117762, at *5 (D. Del. Feb. 25, 1999) (same). Nor, contrary to Class Counsel's assertion (Report at 5), was there anything ethically improper about them. Indeed, to wrongly characterize Athlaw's communications with its former and current clients as unethical would undermine absent putative class members' right to consult individual counsel. *See In re Cmty. Bank of N. Va.*, 418 F.3d at 315 (district court's determination that outside counsel's communication with absent class member would violate counsel's ethical duty would eviscerate member's right to have his own counsel).

Crucially, "a lawyer's truthful, non-misleading criticisms of a proposed settlement are not a valid reason to proscribe his communications with members of a proposed (or actual) class." *Wayside Church*, 103 F.4th at 1221 ("Relatedly, in the years since *Gulf Oil*, the Supreme Court has held that attorney communications with potential clients is attorney speech and, as such, 'is accorded a measure of First Amendment protection.' *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995)."); *see Slavinski*, No. CIV. CCB-08-890, 2011 WL 1310256, at *3 (explaining that the fact that communications were "conducted… *ex parte* does not make the communications improper or abusive to the proper functioning of the lawsuit."; rejecting argument by counsel that "interviews were deliberately concealed from the court and plaintiff's counsel, who was neither invited to participate, nor informed, of the interviews"); *see*

*also Griffin v. Aldi, Inc.*, No. 516CV0354LEKATB, 2017 WL 1957021, at *4 (N.D.N.Y. May 11, 2017) ("In general, communications that are litigation-neutral—that do not alter the legal relationship between the defendants and members of a putative class—are not subject to restriction.").

Here, Mr. Katz's acceptance of an invitation to speak on a video conference about an "already… well-publicized" Settlement[4] and provide a PowerPoint presentation which "clearly conveyed the existence of" the Settlement, did not seek "to coerce prospective class members into excluding themselves from the litigation." *Fangman v. Genuine Title, LLC*, No. CV RDB-14-0081, 2015 WL 8915564, at *6-*7 (D. Md. Dec. 15, 2015) ("Rather than misleading potential class members, … communications in this case have clearly conveyed the existence of a cause of action", "the allegations… have already been well-publicized"; "Overall, … [movants] have not presented a 'clear record and specific findings' of abusive conduct or threatened conduct" warranting limitation); *Ross*, 799 F. Supp. 2d at 521, 526-527 (finding communication not sufficiently abusive when defendant's attorney held a meeting with absent class members informing them that she was conducting an investigation into the allegations, had prepared an affidavit, and that they should sign it if "they agreed with the contents."; concluding communication with absent class members was not a concern, even considering "'the danger of... coercion between employers and employees.'"). Importantly, this Settlement does not provide the ability for any class member to opt out and therefore, Mr. Katz's communications could not "somehow overpower[] the free will or business judgment of the potential class members" "into

[4] *See e.g.*, Jacklyn Wille, *NFL Benefit Plans Strike Deal Over Cognitive Test Race-Norming*, Bloomberg Law (June 1, 2026, 10:52 AM), https://news.bloomberglaw.com/employee-benefits/nfl-benefit-plans-strike-deal-over-cognitive-test-race-norming.

excluding themselves from the litigation." *Ross*, 799 F. Supp. 2d at 526; *Keystone Tobacco Co.*, 238 F. Supp. 2d at 158-159.

Furthermore, Class Counsel "provide no evidence to support a finding that even a single" absent Class Member "felt coerced or pressured in any way" "into excluding themselves from the litigation." *In re M.L. Stern Overtime Litig.*, 250 F.R.D. at 499 (disagreeing with assertion that the "*mere fact* that more than fifty percent (50%)… [of those] who received the" communication "elected to execute releases 'is clear indicia of the coercive nature'"); *Ross*, 799 F. Supp. 2d at 526. Indeed, no absent Class Member "has stepped forward to object to the" PowerPoint presentation "as misleading or coercive." *Slavinski*, No. CIV. CCB-08-890, 2011 WL 1310256, at *4.

Of significance, Mr. Katz took several steps in creating the PowerPoint to avoid providing inaccurate, coercive, or misleading information. Mr. Katz only "agreed to present on the condition that it would be clear that he was not attempting to solicit new clients or represent objectors outside his current client base." Declaration of Sheilla Dingus, Exhibit 2, Paragraph 4; *see Keystone Tobacco Co.*, 238 F. Supp. 2d at 157 ("Court concludes that while" communications "contain some self-serving advocacy for… position, it cannot find that the statements therein are inaccurate or misleading. The correspondence itself does not appear to contain any incorrect assertions of fact regarding the current class action or the terms of the settlement agreement…. [Defendants] took steps to avoid providing inaccurate or misleading information and to assure that they were in compliance with established law.")

Moreover, the PowerPoint contains publicly available information about this case and *Alford*, and much of that substantive information consisted of quotes from the proposed settlement itself, including the settling parties' joint memorandum (ECF No. 79-1), and screenshots from the

Court approved Notice sent to Players. Exhibit 1, Paragraphs 26-28; PowerPoint, Exhibit 1-A. The PowerPoint contained direct quotes from the proposed Settlement and Notice which included the Settlement Class definition (Exhibit 1-A, Slide 8), the "Released Claims" (Exhibit 1-A, Slide 9), the continuing directive in Section VI.A and the rescoring eligibility requirements and exclusions in Section VI.B (Exhibit 1-A, Slides 10-15), the provision outlining the right to object if a Class Member did not believe the Settlement was fair, adequate, and reasonable (Exhibit 1-A, Slides 7, 16-17), and the relevant deadlines and the Amended hearing date. (Exhibit 1-A, Slides 7, 16-17). Exhibit 1, Paragraphs 26-28; Exhibit 1-A; Exhibit 2, Paragraph 8; *see Mitchell v. CoreLogic, Inc.*, No. SACV172274DOCDFMX, 2019 WL 7171595, at *3 (C.D. Cal. July 19, 2019) (finding that absent class members were "not being solicited" but "rather they are being notified" of "the effects" of "Agreement and Release"); *see also Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 500 n.41 (E.D. Pa. 1995) (court comments that it is "disturbing that the letter does not discuss *any* of the specific attributes or deficiencies of the *Georgine* settlement."); *cf. Keystone Tobacco Co.*, 238 F. Supp. 2d at 159 ("Several of the communications at issue here were improper because they misrepresented basic facts as to the settlement agreement and relevant deadlines, but the actions… did not overpower the business judgment of the direct purchasers. … Based on the record before it, the Court concludes that plaintiffs have not presented a 'clear record' of abuses").

An important factor in determining the propriety of a communication to absent class members about a proposed settlement is whether the communication included Class Counsel's contact information and/or information from the court approved notice. *E.g.*, *Gulf Oil Co.*, 452 U.S. at 96-97, 103 (communication that "you may be giving up very important… rights. It is important that you fully understand what you are getting in return for the release" was not improper where it "contained the names and addresses of respondents' counsel and referred to this case.");

*Jackson v. Am. Elec. Warfare Assocs., Inc.*, No. CV 22-1456-TDC, 2025 WL 1638520, at *14, *16 (D. Md. June 9, 2025) (finding employer's communication threatened the proper functioning of the litigation when it "*did not show* [the notice of conditional certification] *during the meetings*" which "undermined cooperation with… counsel, particularly by *not showing the… notice*", and employer's communication *did not* provide the contact information for counsel (emphasis added)); *Keystone Tobacco Co.*, 238 F. Supp. 2d at 153, 157 (communications which "provide[d] notice of the identities of plaintiffs' class counsel with their addresses and telephone numbers" was not misleading or coercive); *Mitchell*, No. SACV172274DOCDFMX, 2019 WL 7171595, at *4 ("Court orders that… any communication to putative class members through a letter of termination must include the contact information for Plaintiffs counsel, … including a telephone number"); *Griffin*, No. 516CV0354LEKATB, 2017 WL 1957021, at *5-*7 (communications at issue "did not include the plaintiffs' counsel's contact information" and "corrective notice should provide Plaintiffs' counsel's contact information"); *Georgine*, 160 F.R.D. at 498 ("In fact, because most of the communications did not advise class members of the existence of the Court-approved notice package, class members were asked to opt out without the neutral and accurate presentation of the issues as required by Rule 23 of the Federal Rules of Civil Procedure.") Here, Mr. Katz included screenshots in the PowerPoint presentation from the Court approved Notice which provided the full contact information for Plaintiffs' counsel "so any viewer could easily reach out to Class Counsel to discuss Class Counsel's perspective on the Settlement." Exhibit 1, Paragraph 31. "[T]he inclusion of that information gives" any viewer of the PowerPoint presentation "direct access to get 'the other side of the story' regarding the settlement." *In re M.L. Stern Overtime Litig.*, 250 F.R.D. at 498 ("The Court is at a loss to understand how it could be… in any way coercive or

detrimental to the" members of the proposed class "interests" to be provided plaintiff counsel's contact information).

Furthermore, the PowerPoint presentation accurately clarified that this case is distinct from *Alford*, to address the confusion previously expressed by multiple Athlaw clients who had read the Class Notice. Mr. Katz specifically communicated that Beasley Allen, Sinclair, and the Groom Law Group were the Settling Parties' Counsel in this Settlement (Exhibit 1-A, Slides 2-4, 18-19). Exhibit 1, Paragraph 32. Also, the PowerPoint presentation provided screenshots of the actual Notice, noting the representation therein that settling counsel, (and not Athlaw) "will represent the interests of the members of the Settlement Class at the Final Fairness Hearing." *Id.* at Paragraph 33. In fact, "[d]uring the PowerPoint presentation," Mr. Katz identified himself "as counsel in the *Alford* matter and proceeded to refer to the information on the PowerPoint slides." *Id.* at Paragraph 37; *see Slavinski*, No. CIV. CCB-08-890, 2011 WL 1310256, at *2-*4 (finding no specific evidence that communications were abusive when "[a]t the beginning of each meeting, … informed" who attorney represented "and that the purpose of the meeting was to discuss… lawsuit."); *Ross*, 799 F. Supp. 2d 518, 526–27 (describing as "troubling" the fact that "employees were not advised that she did not represent them."); *see also Georgine*, 160 F.R.D. at 495–96 ("While this Court encourages the free flow of ideas relating to the advantages and disadvantages of the settlement, in order to evaluate the relative merits of conflicting arguments, identification of their source may be required." (citing *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 791, 792 n. 32, 98 S.Ct. 1407, 1423-24, 1424 n. 32, 55 L.Ed.2d 707 (1978)).

The PowerPoint presentation also included two slides that accurately conveyed that the Final Fairness Hearing was moved back to October 20th, 2026. (Exhibit 1-A, Slides 7, 16). Exhibit 1, Paragraph 33. The final PowerPoint slide included a screenshot from the Court approved Notice,

which stated in bold, that **"If you are satisfied with the proposed Settlement and do not wish to be heard with respect to its terms or with respect to the request of Class Counsel for an award of attorneys' fees and reimbursement of expenses and service awards to Class Representatives, you need not appear at the Final Fairness Hearing or take any other action."** (Exhibit 1-A, Slide 19) *Id.* at Paragraph 35; *see Jackson*, No. CV 22-1456-TDC, 2025 WL 1638520, at *16 ("deny[ing]… request to invalidate all of the opt-out forms submitted…. Though communications between an employer and its employees have a 'heightened potential for coercion,'… and… email gave a one-sided view of the merits of the case and overly emphasized how to opt out of the… class action in a way that could be construed as encouraging that action, that message was tempered in part by the additional statement that AEWA was '**NOT** advising any employee on what they should do.' … The Court therefore declines to invalidate the opt-out forms submitted.")

Even if Mr. Katz's assessment of the Settlement was somehow incorrect, being incorrect does not rise to the level of abuse warranting judicial intervention or investigation. The assessment was made in good faith and based on his representation of hundreds of retired NFL Players with respect provisions in the Plans at issue in this action and in *Alford*. *See Fangman*, 2015 WL 8915564, at *6 (record must demonstrate "a blatant attempt to subvert the class action process, or show the bad faith typically present in cases in which broad protective orders … have been issued") (citation and internal quotation marks omitted). Courts have required evidence demonstrating actual abuse to warrant judicial intervention in matters involving communications with absent class members.[5] Likewise, courts have refused to permit discovery relating to class settlement

[5] *E.g.*, *Ross*, 799 F. Supp. 2d at 521, 526-27 (although court found defendants' failure to inform employees at meeting held concerning lawsuit that it was a FLSA class action suit that they might be entitled to join "troubling," because employees were asked to sign affidavits containing statements that could prevent them from joining the class but not advised that the counsel making the presentation did not

objections absent a showing of malfeasance on the part of objectors or their counsel.[6] No such showing has been made here.

## CONCLUSION

Mr. Katz's communications with past and present clients who are absent putative members of the proposed Settlement Class were entirely proper because those members reached out for advice concerning the Settlement, and the communications did not constitute "misinformation" merely because Class Counsel disagree with their substance. Moreover, Mr. Katz's truthful, non-misleading PowerPoint presentation about the proposed Settlement is not a valid reason to proscribe his communications with clients who may be members of the proposed class. Accordingly, while Mr. Katz is prepared to address the Court's questions during the proceeding ordered by the Court (ECF No. 131), the Court should deny Class Counsel's request for an investigation into those communications.

Dated: October 9, 2026

Respectfully submitted,

*/s/ James P. Ulwick*
James P. Ulwick (Fed. Bar No. 00536)
KRAMON & GRAHAM, P.A.
750 E. Pratt Street, Suite 1100
Baltimore, Maryland 21202
Phone: (410) 752-6030
Fax: (410) 361-8233
julwick@kg-law.com

represent them, that did not rise to "a blatant attempt to subvert the class action process," or "show the bad faith typically present in cases in which broad protective orders … have been issued") (internal quotation marks omitted).

[6] *E.g.*, *Kim v. Tinder, Inc.*, 2019 WL 3064464, at *1 (C.D. Cal. May 24, 2019) (court should not compel discovery from objectors unless class counsel makes some preliminary showing of collusion or malfeasance, such as proof that objector's attorney is a professional objector or has previously been sanctioned by a court for objection abuse).

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of October, 2026, a copy of the foregoing was filed electronically via CM/ECF, causing same to be served on all counsel of record.

*/s/ James P. Ulwick*
James P. Ulwick